DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone:    (415) 554-3894
Facsimile:    (415) 437-4644
E-Mail:    molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR, SBN 224018
bhur@willkie.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@willkie.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@willkie.com
STEPHEN HENRICK, SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON, SBN 327699
avernon@willkie.com
MICHAEL MORIZONO, SBN 359395
mmorizono@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:    (415) 858-7400

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,<br><br>    Defendants. | Case No. 3:25-cv-02425-EMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

BACKGROUND .........................................................................................................................2

    I.    Plaintiffs' AmeriCorps Programs Serve Critical Human, Educational, and
Environmental Needs. ...................................................................................2

        A.    AmeriCorps Funding Supports SFUSD's Vulnerable Students. .................2

        B.    AmeriCorps Funding Supports Santa Fe's Programming for Seniors and
Children. ..........................................................................................3

    II.    Defendants Seek to Impose Unlawful Conditions on Plaintiffs' AmeriCorps
Grants. .......................................................................................................4

LEGAL STANDARD ..................................................................................................................7

ARGUMENT ..............................................................................................................................7

    I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims. ...........................7

        A.    The AmeriCorps Directive and New Grant Conditions Violate the
Spending Clause. ...............................................................................7

            1.    The New AmeriCorps Conditions Are Unconstitutionally
Ambiguous. ...............................................................................8

            2.    The New AmeriCorps Conditions Impermissibly Place
Retroactive Conditions on Funds. ................................................9

            3.    The New Grant Conditions Are Unrelated to the Purpose of
AmeriCorps. ............................................................................11

        B.    The AmeriCorps Directive and New Grant Conditions Violate the APA. 12

            1.    The AmeriCorps Directive Constitutes Final Agency Action. ......13

            2.    The AmeriCorps Directive Is Arbitrary and Capricious. ..............13

            3.    The AmeriCorps Directive Is Contrary to the Constitution. ..........16

            4.    The AmeriCorps Directive Exceeds Defendants' Statutory
Authority. ...............................................................................16

    II.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief. ....17

        A.    SFUSD Is Being Forced to Alter the Healthy Choices Program in Ways
that Negatively Impact Students or Lose the Funds Entirely. ..................17

        B.    Santa Fe Is Being Forced to Alter Its Programs in Ways that Negatively
Impact Seniors and Children or Lose the Funds Entirely. ......................20

    III.    The Balance of Hardships and the Public Interest Strongly Favor Preliminary
Relief. ......................................................................................................21

CONCLUSION..........................................................................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................................7

*Ariz. Dream Act Coal. v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ......................................................................21

*Bennett v. Spear*,
   520 U.S. 154 (1997)........................................................................................13

*Blain v. Cal. Dep't of Transp.*,
   616 F. Supp. 3d 952 (N.D. Cal. 2022) ............................................................7

*City & Cnty. of San Francisco v. Sessions*,
   349 F. Supp. 3d 924 (N.D. Cal. 2018), *vacated on other grounds by City & Cnty. of*
   *San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020)....................................9, 10, 12

*City & Cnty. of San Francisco v. Sessions*,
   372 F. Supp. 3d 928 (N.D. Cal. 2019), *vacated on other grounds by City & Cnty. of*
   *San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022)....................................9, 12

*Cnty. of Santa Clara v. Trump*,
   250 F. Supp. 3d 497 (N.D. Cal. 2017) ..........................................................12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
   591 U.S. 1 (2020)............................................................................................14

*Drakes Bay Oyster Co. v. Jewell*,
   747 F.3d 1073 (9th Cir. 2014) ......................................................................21

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016)........................................................................................15

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009)........................................................................................15

*Farmers Union Ctr. Exch., Inc. v. F.E.R.C.*,
   734 F.2d 1486 (D.C. Cir. 1984) ....................................................................15

*FCC v. Prometheus Radio Project*,
   592 U.S. 414 (2021)........................................................................................14

*Food & Water Watch v. EPA*,
   20 F.4th 506 (9th Cir. 2021) ..........................................................................14

*Gengler v. U.S. ex rel. its Dep't of Def. & Navy,*
    453 F. Supp. 2d 1217 (E.D. Cal. 2006).................................................................................10

*Louisiana v. Biden,*
    622 F. Supp. 3d 267 (W.D. La. 2022)................................................................................13

*Marin Audubon Soc'y v. Fed. Aviation Admin.,*
    121 F.4th 902 (D.C. Cir. 2024)...........................................................................................16

*Melendres v. Arpaio,*
    695 F.3d 990 (9th Cir. 2012)...............................................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co. (State Farm),*
    463 U.S. 29 (1983)..............................................................................................13, 14, 15

*New York v. U.S.,*
    505 U.S. 144 (1992).............................................................................................................11

*New York v. U.S. Dep't of Health & Hum. Servs.,*
    414 F. Supp. 3d 475 (S.D.N.Y. 2019)................................................................................10

*Northrop Grumman Info. Tech., Inc. v. U.S.,*
    535 F.3d 1339 (Fed. Cir. 2008)...........................................................................................10

*Ohio v. EPA,*
    603 U.S. 279 (2024).....................................................................................................13, 15

*Pennhurst State Sch. & Hosp. v. Halderman,*
    451 U.S. 1 (1981)............................................................................................7, 8, 9, 10

*Pub. Hous. Auths. Dirs. Ass'n v. U.S.,*
    130 Fed. Cl. 522 (2017)......................................................................................................11

*Rodriguez v. Robbins,*
    715 F.3d 1127 (9th Cir. 2013) ...........................................................................................21

*Santiago v. Rumsfeld,*
    425 F.3d 549 (9th Cir. 2005) .......................................................................................10, 11

*School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.,*
    584 F.3d 253 (6th Cir. 2009)................................................................................................9

*South Dakota v. Dole,*
    483 U.S. 203 (1987)......................................................................................................7, 11

*Washington v. Trump,*
    847 F.3d 1151 (9th Cir. 2017) ..............................................................................................7

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)..................................................................................................................7

iii

**Statutes**

5 U.S.C. § 704 ..................................................................................................................13

5 U.S.C. § 706(2)(A)–(C) ................................................................................................13

42 U.S.C. § 4950 *et seq.* .................................................................................................16

42 U.S.C. § 12501 *et seq.* ...............................................................................................16

42 U.S.C. § 12572(c)(1)(A) ........................................................................................2, 12

42 U.S.C. § 12613(c) ..................................................................................................12, 16

42 U.S.C. § 12651d(b)(2)(B) ...........................................................................................16

**Other Authorities**

Exec. Order No. 14,151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025), https://perma.cc/YBY7-265U ...................5

Exec. Order No. 14,168, *Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025), https://perma.cc/RWR4-9Q8C ............................................................5, 8

Exec. Order No. 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8,633 (Jan. 21, 2025), https://perma.cc/UJ3M-NFLY ...............5, 6

Tara Copp, et al., *War Heroes and Military Firsts Are Among 26,000 Images Flagged for Removal in Pentagon's DEI Purge* ........................................................................9

U.S. Const. art. I, § 8, cl. 1 ................................................................................................7

United States Department of Justice, Executive Orders, https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/executive-orders (last visited March 8, 2025) ........................................................................................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Congress created AmeriCorps to support a variety of efforts to address local challenges through citizen service, particularly in diverse, underserved communities. Plaintiffs, the San Francisco Unified School District ("SFUSD") and the City of Santa Fe, New Mexico ("Santa Fe"), use their AmeriCorps grants to do just that—to support vulnerable students through mentoring and other interventions, to connect seniors with at-risk children, and to assist senior citizen clients with day-to-day tasks.

But on February 13, 2025, in the middle of Plaintiffs' grant terms and in a complete about-face, Defendants issued a new directive to all current AmeriCorps grantees: start complying with President Trump's new policy preferences regarding diversity, gender, and climate issues, as announced in recent executive orders, and immediately stop all grant "activities that promote DEI activities"—or else. Specifically, AmeriCorps gave recipients, including Plaintiffs, just a few days to either "immediately" cease any activities that promote DEI, promote "gender ideology," or address climate change or other environmental issues—without explaining what activities would be "noncompliant"— and agree to amended grant terms, or lose their AmeriCorps grants entirely.

These new grant conditions—imposed mid-stream and in contravention of Congress' stated purpose—are unlawful in several ways.

AmeriCorps' new conditions violate the Spending Clause of the United States Constitution in three ways. Under the Spending Clause, grant conditions must be set forth unambiguously and before the grantee executes an agreement, and they must relate to the subject matter of the grant program. The new AmeriCorps conditions are so vague that it is impossible for Plaintiffs to know the full range of activities the federal government considers prohibited. AmeriCorps is seeking to impose the conditions in the middle of grant terms, thus surprising recipients with post-acceptance retroactive conditions. And the conditions not only lack a nexus with the purpose of the implicated funds, but undermine Congress' purpose in providing AmeriCorps grants, which includes an intent to expand educational and civic opportunities for underserved and disadvantaged populations, including racial minority populations.

1

AmeriCorps' recent directive is also clearly unlawful under the Administrative Procedure Act because the new conditions violate the Constitution, contravene AmeriCorps' statutory authority by adding conditions that conflict with Congress's stated purpose, and arbitrarily fail to consider easily foreseeable impacts, including Plaintiffs' reliance on now-suddenly jeopardized funding.

And the new conditions are as harmful as they are unlawful. To preserve its funding, SFUSD has already been forced to make unwanted changes to its mentoring and student-support programs, including overhauling a mentor training that occurred yesterday. Santa Fe is evaluating how to comply, and may be forced to reduce mentorship opportunities for at-risk youth, cut culturally responsive training for volunteers, and scale back initiatives that target historically underserved populations. Plaintiffs thus face a Hobson's Choice: forego funding that helps support their students, families, seniors, and communities, or make changes that undermine those programs entirely. This choice is untenable and unlawful. An immediate temporary restraining order is needed to prevent current, ongoing harm to Plaintiffs until this Court can issue a preliminary injunction.

## BACKGROUND

This case arises out of an effort by the Trump Administration to force AmeriCorps grant recipients to implement President Trump's anti-equity, anti-LGBTQ+, and anti-environmental policy preferences in their AmeriCorps-funded programs. The very purpose of AmeriCorps grants is to support vulnerable populations. Congress explicitly envisioned programs "that meet[] unmet . . . health, veteran, and other human, educational, environmental, or public safety needs and promote[] greater community unity through the use of organized teams of participants of varied social and economic backgrounds, skill levels, physical and developmental capabilities, ages, ethnic backgrounds, or genders." 42 U.S.C. § 12572(c)(1)(A). But Plaintiffs' programs, which were developed with these goals in mind, now face uncertain futures due to Defendants' actions.

## I.    Plaintiffs' AmeriCorps Programs Serve Critical Human, Educational, and Environmental Needs.

### A.    AmeriCorps Funding Supports SFUSD's Vulnerable Students.

SFUSD relies on federal AmeriCorps funding to support its "Healthy Choices AmeriCorps Program ("Healthy Choices")." Declaration of Laurie Vargas-Zeuschner in Supp. of Mot. for Temp.

Restraining Order ("Vargas Decl.") ¶¶ 3–4, 6. Specifically, in August 2024, SFUSD executed a $667,194 grant from AmeriCorps to run its Healthy Choices program for the 2024-25 school year. Vargas Decl. Ex. A at 1. The grant funds 44 AmeriCorps members to serve as mentors and "support 38 schools with economically disadvantaged students" in SFUSD. *Id.* at 4. Through the Healthy Choices Program, SFUSD is able to promote student learning and wellbeing by providing its students with services such as highly qualified mentors. *Id.* at 22, ¶¶ 6–7. The program has helped "combat chronic absenteeism, promote academic success, and cultivate students' sense of belonging." *Id.* ¶ 6.

Indeed, Mentor Logs for the 2022-2023 school year show that students' attendance rate for mentoring services was 95.8%. Vargas Decl. Ex. A at 25. And survey responses show that students value the program: a substantial majority (93% of elementary and 78% of secondary students) said the time they spend with their mentor is "meaningful." *Id.* An overwhelming 92% of secondary students reported they "feel heard and respected by their mentor" and 93% of elementary students "liked to meet with their mentor." *Id.* Peer-reviewed studies have also demonstrated that the model Healthy Choices uses to support students results in "improvements in the perceived safety of schools; improved academics; improved social-emotional functioning; increased prosocial behaviors; significantly fewer suspensions; and reduced bullying." *Id.*

### B. AmeriCorps Funding Supports Santa Fe's Programming for Seniors and Children.

Santa Fe has been a grantee of AmeriCorps for at least twenty-five years and is the current recipient of three grants focused on seniors and children. The first grant supports the Foster Grandparent Program, connecting seniors with at-risk children with needs. Foster Grandparents are placed in schools, Head Start programs, and daycare centers. These seniors act as mentors and tutors and help assigned "grandchildren" with developmental tasks and learning skills such as reading and arithmetic. The AmeriCorps grant funding this program consists of $38,013 for the period between July 1, 2024 and June 30, 2025. Declaration of Henri Hammond-Paul in Supp. of Mot. for Temp. Restraining Order ("Hammond Decl.") ¶ 6.

In Santa Fe's Senior Companion Program, AmeriCorps volunteers serve as "Senior Companions" that assist senior citizen clients with day-to-day tasks. *Id.* ¶ 7. These may include paying

bills, completing grocery shopping, running errands, providing transportation to medical appointments, completing light housekeeping, and providing respite care for primary caregivers. *Id*. The AmeriCorps grant funding for this program consists of $2,500 as a one-time grant. *Id.* ¶ 9.

Santa Fe also administers the Retired & Senior Volunteer Program ("RSVP"). The RSVP program pairs approximately 300 volunteers ages 55 and older with community organizations across Santa Fe. *Id.* ¶ 13. Volunteers choose how, where, and when they want to serve, with commitments ranging from a few hours to 40 hours per week. *Id.* Currently, Santa Fe deploys volunteers across more than 50 different volunteer sites throughout the city. *Id.* The AmeriCorps grant funding for this program consists of $52,500 for the period between April 1, 2024 and March 31, 2025. *Id.* ¶ 14.

Among other things, the AmeriCorps funding enables Santa Fe to offer volunteers a modest stipend, mileage reimbursement, and supplemental insurance coverage. *Id.* ¶ 15. The AmeriCorps grants also support the cost of trainings offered by the City as well as annual recognition events for the volunteers participating in the program. *Id.* ¶¶ 11, 15.

## II.    Defendants Seek to Impose Unlawful Conditions on Plaintiffs' AmeriCorps Grants.

On February 13, 2025, AmeriCorps issued a directive to all grant recipients entitled "Executive Order Compliance Instructions" (the "AmeriCorps Directive"), which required grant recipients to attest to the following statement by February 19: "I certify that [Program Name], [application ID] complies with all administration Executive Orders and does not include any activities that promote DEI activities." Request for Judicial Notice in Support of Plaintiffs' Motion for Temporary Restraining Order ("RJN"), Ex. A at 3.

If a grant recipient could not certify its compliance but wanted to retain its grant funding, the recipient was required to "cease [all noncompliant] activities immediately, initiate an amendment to [the] most recent grant award and remove or update any language related to out of compliance activities." *Id.* at 2. If a non-compliant recipient did not want to change its programming and amend its grant, it was required to relinquish the grant by emailing the regional AmeriCorps office by February 19. Finally, the AmeriCorps Directive warned grant recipients that "[n]onresponse" by the February 19 deadline "may result in the termination of your awards." *Id.* at 5. Thus, AmeriCorps forced recipients to pick one of the three options or risk the loss of its grant funding.

4

In short, the AmeriCorps Directive imposed two new conditions on grant recipients—that grant funded programs (a) "compl[y] with all administrative executive orders" and (b) do not "promote DEI activities." But AmeriCorps provided little detail on what compliance with these conditions looks like. The Directive did not identify "activities that promote DEI activities" or define the acronym "DEI."[1] And without acknowledging the fact that none of the executive orders in fact impose any direct requirements on non-federal entities, it stated that "AmeriCorps Grantee/Sponsors awards must comply with all executive orders, including but not limited to," the following:

- Exec. Order No. 14,168, *Defending Women From Gender Ideology Extremism And Restoring Biological Truth To The Federal Government*, 90 Fed. Reg. 8,615 (Jan. 20, 2025) ("Anti-Gender Order"),[2] which directs federal agencies to "assess grant conditions and grantee preferences and ensure grant funds do not promote gender ideology." Anti-Gender Order § 3(g).

- Exec. Order No. 14,151, *Ending Radical and Wasteful Government DEI Programs and Preferencing*, 90 Fed. Reg. 8,339 (Jan. 20, 2025) ("Jan. 20 Anti-DEI Order"),[3] which directs federal agencies to "terminate . . . 'equity-related grants'"—without defining "equity-related" or even "equity." Jan. 20 Anti-DEI Order § 2(b)(1).

- Exec. Order No. 14,173, *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, 90 Fed. Reg. 8,633 (Jan. 21, 2025) ("Jan. 21 Anti-DEI Order"),[4] which directs federal agencies to insert terms in every grant award requiring the recipient to certify that it does not operate any programs promoting DEI "that violate any applicable Federal anti-discrimination laws." Jan. 21 Anti-DEI Order § 3(b)(iv)(B).

None of these executive orders purport to impose any requirements directly on Plaintiffs. Moreover, the AmeriCorps Directive goes beyond what the Anti-DEI Orders would require even if

---

[1] The President's recent executive orders reference both "diversity, equity, and inclusion" ("DEI") and "diversity, equity, inclusion, and accessibility" ("DEIA"). Because "diversity, equity, and inclusion" necessarily includes accessibility, Plaintiffs use "DEI" to refer to both "DEI" and "DEIA," and presume that the Directive's reference to "DEI" similarly encompasses both.

[2] https://perma.cc/RWR4-9Q8C

[3] https://perma.cc/YBY7-265U

[4] https://perma.cc/UJ3M-NFLY

MPA ISO MOTION FOR TRO
CASE NO. 3:25-CV-02425-EMC

they could be read to place direct requirements on grant recipients. The most applicable language from any of the executive orders comes from the Jan. 21 Anti-DEI Order, which directs agency heads to include a term in every grant requiring the "recipient to certify that it does not operate any programs promoting DEI *that violate any applicable Federal anti-discrimination laws*." *Id.* (emphasis added). But the new anti-DEI condition imposed by AmeriCorps excludes the italicized phrase and requires recipients to certify that they do not use the funds for "*any activities* that promote DEI activities" (emphasis added), regardless of whether the activities comply with or violate federal anti-discrimination laws. RJN Ex. A at 4, 6. Moreover, the term in the Jan. 21 Anti-DEI Order can only reasonably be read to apply to the making of *future* grants, not current ones.

Plaintiffs were given just a few days to pick among the three options set forth in the AmeriCorps Directive. *See* Vargas Decl. ¶ 24. And if they picked anything other than full compliance with the new conditions, they risked having their funds terminated immediately, putting their critical programs in jeopardy. Accordingly, Plaintiffs submitted proposed revisions to their grant applications for review by AmeriCorps that attempted to remove "noncompliant" words and activities. *Id.* ¶ 23. Plaintiffs submitted these proposals under duress, with some expressly reserving their rights to take appropriate legal action. *Id.* ¶ 22; Hammond Decl. ¶ 22. Plaintiffs are expecting AmeriCorps to return revised grant agreement documents to Plaintiffs for execution at any time in the near future, possibly within days. Vargas Decl. ¶ 24. Plaintiffs face the imminent choice of either executing new grant agreements with the federal government based on unlawful new terms, or losing the funding entirely.[5]

In the meantime, pursuant to AmeriCorps' direction that grantees must "cease [all noncompliant] activities immediately" to retain funding, RJN Ex. A at 3, Plaintiffs have already been forced to take measures to begin implementing the new, unlawful conditions, causing immediate harm to their programs and the purposes and individuals served by them. *See* section I.A.2., II.A., *infra*.

---

[5] On March 10, 2025, Santa Fe received correspondence from AmeriCorps regarding the renewal of its RSVP grant. The letter imposes similar conditions on Santa Fe's grant renewal and requires Santa Fe to choose among three options: make no revisions and certify compliance; make revisions to comply with the executive orders; or relinquish the grant by March 17, 2025. Hammond Decl. ¶¶ 37–40.

**LEGAL STANDARD**

The "standards applicable to [temporary restraining orders] and preliminary injunctions are substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (quotation marks and citation omitted). A plaintiff must establish "(1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Blain v. Cal. Dep't of Transp.*, 616 F. Supp. 3d 952, 956 (N.D. Cal. 2022) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Alternatively, a plaintiff may obtain an injunction if it shows "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff," as long as it shows that "the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks omitted).

**ARGUMENT**

**I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims.**

**A.    The AmeriCorps Directive and New Grant Conditions Violate the Spending Clause.**

Assuming arguendo that Defendants have the power to impose substantive conditions on AmeriCorps grants,[6] they violated the Spending Clause by imposing requirements that exceed constitutional limits on the spending power. Under the Spending Clause of the United States Constitution, grant conditions must be (1) set forth unambiguously (2) before a recipient enters into the grant agreement with the federal government, and (3) must be related to the subject matter of the grant program. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *South Dakota v. Dole*, 483 U.S. 203, 206 (1987). AmeriCorps' new conditions fail each of these requirements. The conditions are so vague that it is impossible for Plaintiffs to know the full range of activities the federal government would consider prohibited. AmeriCorps is seeking to impose the conditions in the

---

[6] The Constitution grants Congress—not the Executive Branch—the power to impose conditions on federal funds. *See* U.S. Const. art. I, § 8, cl. 1; *see also South Dakota v. Dole*, 483 U.S. 203, 206 (1987). Accordingly, agencies can only impose such conditions if expressly authorized to do so by Congress. Although these Separation of Powers principles may prohibit Defendants from adding any of the new conditions, Plaintiffs are not raising this argument at this time.

middle of grant terms, thus surprising recipients with post-acceptance retroactive conditions. And the conditions not only lack a nexus with the purpose of the implicated funds, but in fact undermine the purpose of the funds Congress appropriated here, which includes an intent to expand educational and civic opportunities for underserved and disadvantaged populations, including racial minority populations.

### 1. The New AmeriCorps Conditions Are Unconstitutionally Ambiguous.

Grant conditions must be clear and unambiguous to pass constitutional muster under the Spending Clause. *See Pennhurst*, 451 U.S. at 17 (1981) ("[I]f Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously . . . The legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State voluntarily and knowingly accepts [Congress' conditions] . . . There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it." ). The new conditions are anything but.

The new conditions require AmeriCorps funded programs to (a) "compl[y] with all administrative executive orders" and (b) not "promote DEI activities." Neither of these conditions are clear enough to put recipients on notice of what is required of them. RJN Exs. A, B.

As an initial matter, nothing in any of the executive orders places *any* direct requirements on grant recipients like Plaintiffs. Nor could they since executive orders can only impose requirements on executive agencies, officers, and employees—not private parties or state and local governments. *See* United States Department of Justice, Executive Orders, https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/executive-orders (last visited March 8, 2025) (executive orders are "official documents . . . through which the President of the United States manages the operations of the Federal Government."). Accordingly, it is entirely unclear what it would mean for Plaintiffs to certify that their programs comply with the executive orders.

Moreover, even if the executive orders did apply to recipients, nothing in the Anti-Gender Order, the Anti-DEI Orders, or the AmeriCorps Directive explains what activities constitute "promoting gender ideology" or "promoting DEI." For example, AmeriCorps members in SFUSD's Healthy Choices program receive diversity and equity training to be able to meaningfully interact with the district's diverse students and provide effective mentorship, which is vital for the success of the

8

Healthy Choices program. Gonzalez Decl. ¶¶ 7–8. It is unclear whether this training would violate the new grant conditions.[7] And nothing in the Unleashing American Energy Order gives any indication at all as to what recipients can or cannot do. AmeriCorps grants were flagged by Defendants as potentially non-compliant for including such words as "racial justice," "diversity," "equity" and "gender expression," seemingly indicating that anything remotely related to "DEI" could be off-limits. *See* Vargas Decl. ¶ 23.

Such ambiguous conditions violate the Spending Clause. *See School Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 277 (6th Cir. 2009) (requirements of grant were ambiguous in violation of the Spending Clause where its requirements were subject to multiple, plausible interpretations); *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 950 (N.D. Cal. 2019), *vacated on other grounds by City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022) (finding immigration-related conditions on federal grants unconstitutionally ambiguous under the Spending Clause); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 955–58 (N.D. Cal. 2018), *vacated on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (same).

### 2. The New AmeriCorps Conditions Impermissibly Place Retroactive Conditions on Funds.

Under the Spending Clause, federal grant conditions must be set forth unambiguously *before* a recipient enters into the grant agreement with the federal government. In *Pennhurst*, the Supreme Court explained that this restriction arises because a grant is "much in the nature of a contract" between the states and federal government. 451 U.S. at 17. Accordingly, in the Court's view, the "legitimacy of Congress' power to legislate under the spending power . . . rests on whether the State

---

[7] Plaintiffs are not the only ones struggling to understand what it means to "promote DEI." In late February, Secretary Hegseth ordered all the military services to review website postings, photos, news articles and videos to remove any that "promote diversity, equity, and inclusion." In response, the Pentagon has created a database of thousands of images and posts for deletion, including many related to women and minorities and a large number of posts that mention various commemorative months—such as those for Black and Hispanic people and women. "In some cases, photos seemed to be flagged for removal simply because their file included the word 'gay,' including service members with that last name and an image of the B-29 aircraft Enola Gay, which dropped the first atomic bomb on Hiroshima, Japan, during World War II." Tara Copp, et al., *War Heroes and Military Firsts Are Among 26,000 Images Flagged for Removal in Pentagon's DEI Purge*, ASSOCIATED PRESS (March 7, 2025).

voluntarily and knowingly accepts" the federally imposed conditions. *Id*. The Court concluded that "[t]hough Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or 'retroactive' conditions." *Id*. at 25. The federal government "cannot implement new conditions after-the-fact because [recipients] must decide to opt-in to a federal program willingly and aware of the conditions." *City & Cnty. of San Francisco. v. Sessions*, 349 F. Supp. 3d at 955 (citations omitted).

But that is exactly what the AmeriCorps Directive attempts to do. It conditions Plaintiffs' continued receipt of federal funds—funds they have *already* been awarded—on compliance with the Administration's new executive orders and additional, ambiguous anti-DEI demand. RJN Ex. A. Courts have regularly invalidated federal funding conditions in such circumstances. *See, e.g.*, *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 568–69 (S.D.N.Y. 2019).

It is irrelevant that Plaintiffs agreed in their original grant agreements to comply "with all other applicable . . . executive orders . . . governing the award." *See, e.g.*, Vargas Decl. Ex. A at 113; *see also id*. at 140; Hammond Decl. Ex. A at 5 (linking to 2024 general terms and conditions). Even assuming the executive orders could and did impose requirements on grantees, Plaintiffs' agreement to comply with executive orders applies only to orders that were in existence at the time the agreement was executed. A government contract—including a federal grant—incorporating federal law must be "express and clear" on the incorporation. *Northrop Grumman Info. Tech., Inc. v. U.S.*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) (federal common law rule governing grants); *see also Pennhurst*, 451 U.S. at 17 (likening a federal grant to a contract). That is true of terms that "specifically anticipated and allowed for the application of current and future [versions]." *Gengler v. U.S. ex rel. its Dep't of Def. & Navy*, 453 F. Supp. 2d 1217, 1233 (E.D. Cal. 2006) (citing *Santiago v. Rumsfeld*, 425 F.3d 549, 555 (9th Cir. 2005)).

The executive order-related terms here do not meet this threshold. The terms are unlike those federal courts, including the Ninth Circuit, have deemed explicitly "provided for modification of the contract terms by subsequent orders." *Gengler*, 453 F. Supp. 2d at 1233. For example, the Ninth Circuit approved of a term that clarified: "Laws and regulations that govern military personnel *may change without notice to me. Such changes may affect my status, pay, allowances, benefits, and*

*responsibilities* as a member of the Armed Forces REGARDLESS of the provisions of this enlistment/reenlistment document." *Santiago*, 453 F. Supp. 2d at 556 (emphasis added). Similarly, the Court of Federal Claims approved of a term that specified: "[T]hose regulations promulgated by HUD at Title 24 of the Code of Federal Regulations, which are hereby incorporated into this [contract] by reference as if fully set forth herein, *and as such regulations shall be amended from time to time*." *Pub. Hous. Auths. Dirs. Ass'n v. U.S.*, 130 Fed. Cl. 522, 526–27, 532 (2017) (emphasis added). Unlike these terms, SFUSD's grant agreement does not include "express and clear" language that provides for, let alone anticipates, the possibility of amendment by future executive orders.

### 3.    The New Grant Conditions Are Unrelated to the Purpose of AmeriCorps.

AmeriCorps' new grant conditions also violate the basic rule that conditions imposed on federal grants must be "reasonably related to the purpose of the expenditure." *New York v. U.S.*, 505 U.S. 144, 172 (1992) (citation omitted); *see also South Dakota v. Dole*, 483 U.S. 203, 207, 209 (1987) ("[C]onditions on federal grants" must be "reasonably calculated to address th[e] particular . . . purpose . . . for which the funds are expended."). This requirement is crucial:  Without "some relationship" between spending conditions and "the purpose of the federal spending," "the spending power could render academic the Constitution's other grants and limits of federal authority." *New York*, 505 U.S. at 167. There is no such relationship here. Nothing in the statutes creating the AmeriCorps program indicate any desire by Congress to condition grant funding on anything approaching President Trump's anti-equity, anti-LGBTQ+, and anti-environmental policy.

To the contrary, the new conditions AmeriCorps seeks to impose on grantees are, if anything, antithetical to Congress's purpose to "meet the unmet human, educational, environmental, and public safety needs of the United States." 42 U.S.C. § 12501(b). The statutory framework demonstrates that Congress designed the AmeriCorps program with inclusivity and equity at the forefront, expressing a clear intent to promote diversity within the program and uplift underserved and under-resourced communities, including racial minority communities. For example, in the National and Community Service Act ("NCSA") that created AmeriCorps, Congress directed that AmeriCorps, in selecting participants, "shall endeavor to ensure that participants are from economically, geographically, and ethnically diverse backgrounds." 42 U.S.C. § 12613(c). Similarly, the NCSA's provision on grants for

11

service programs in schools provides that in considering applications from state educational agencies, AmeriCorps "shall give priority" to entities that submit applications for programs "that are in the greatest need of assistance, such as programs targeting low-income areas or serving economically disadvantaged youth." *Id.* § 12526(b). For service programs carried out by institutions of higher education, the NCSA specifically provides for "special consideration" of applications from "institutions serving primarily low-income populations," including HBCUs, "predominantly black institutions," Asian American and Pacific Islander-serving institutions, Latino-serving institutions, Native American-serving institutions, and "community colleges serving predominantly minority populations." *Id.* § 12561(e). And Congress has directed that AmeriCorps grant recipients should "promote[] greater community unity through the use of organized teams of participants of *varied social* and *economic* backgrounds, skill levels, *physical and developmental capabilities*, ages, *ethnic backgrounds*, or *genders*." *Id.* § 12572(c)(1)(A) (emphases added).

Principles of environmentalism, diversity, equity, and inclusion are thus baked into AmeriCorps' legislative directive. The new grant conditions, however, are aimed at eliminating programs and services that support these very principles. Because the new conditions are antithetical to Congress's purpose in creating the program, they lack a "nexus with the purpose of the implicated funds." *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 532 (N.D. Cal. 2017); *see also, e.g.*, *City and Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d at 961, *vacated on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (holding that immigration related conditions were unconstitutional under the Spending Clause because they were not related to the grant funds at issue); *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 948–49 (N.D. Cal. 2019) (same).

## B. The AmeriCorps Directive and New Grant Conditions Violate the APA.

Under the APA, a "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C). AmeriCorps' actions fall in all three of these prohibited categories. Because the

12

AmeriCorps Directive is a final agency action that is arbitrary and capricious, contrary to the Constitution, and in excess of AmeriCorps' statutory authority, and it must be held unlawful and set aside.

### 1.     The AmeriCorps Directive Constitutes Final Agency Action.

The AmeriCorps Directive marks "the 'consummation' of the agency's decisionmaking process," from which "legal consequences will flow," and is therefore a final agency action reviewable under the APA. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted); 5 U.S.C. § 704.

The AmeriCorps Directive is a command to "all grantees" and imposes new conditions on their existing grants. *E.g.*, RJN Ex. A at 9 ("AmeriCorps Grantee/Sponsors awards must comply with all executive orders"). The AmeriCorps Directive requires all grantees to take specific and immediate action to do one of three things: (1) certify compliance, (2) amend their grant program to ensure compliance and cease "noncompliant" activities, or (3) relinquish funds. *See id.* at 5; *cf. Louisiana v. Biden*, 622 F. Supp. 3d 267, 291–92 (W.D. La. 2022) (collecting over a dozen cases in which courts found final agency action where agencies paused or delayed particular programs). AmeriCorps took further steps to implement the AmeriCorps Directive, including requiring state agencies to enact the new conditions by contacting grantees, *see* Vargas Decl. ¶ 20, Ex. B, and sending spreadsheets to grantees identifying offending parts of their grant applications, Vargas Decl. ¶ 23, making clear that the Directive imposed new, purportedly binding legal obligations on grantees.

### 2.     The AmeriCorps Directive Is Arbitrary and Capricious.

The AmeriCorps Directive and new grant conditions are unlawful under the APA because they are arbitrary and capricious. Agency actions are arbitrary and capricious if the agency relied on factors that Congress did not authorize it to consider or if the agency entirely failed to consider important aspects of the problem. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* (*State Farm*), 463 U.S. 29, 43 (1983). Actions that are not reasonable or reasonably explained are likewise arbitrary and capricious in violation of the APA. *Ohio v. EPA*, 603 U.S. 279, 292 (2024); *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). The AmeriCorps Directive and new conditions are unexamined and unreasonable, and therefore unlawful.

Unsurprisingly, given the short time it took to contemplate the issue before rolling out the AmeriCorps Directive, the agency failed to consider the catastrophic consequences of the new conditions on AmeriCorps programs currently operating around the country. For Plaintiffs, compliance with these new conditions requires them to make their AmeriCorps programs less effective, *see* Vargas Decl. ¶ 26; Gonzalez Decl. ¶ 7—and in some respects, undermines Plaintiffs' programs in important ways, *see* Gonzalez Decl. ¶ 8, Vargas Decl. ¶ 30. The agency disregarded these significant, fundamental, and obvious aspects of the problem. *See State Farm*, 463 U.S. at 43; *Food & Water Watch v. EPA*, 20 F.4th 506, 518 (9th Cir. 2021) (failure to consider clear risk of run-off was arbitrary and capricious).

AmeriCorps also failed to consider the impact of its actions on grantees in relation to Congress's purpose in enacting AmeriCorps grant programs. Had the agency considered the impact on grantees, including Plaintiffs, of requirements to excise all program aspects related to climate change, diversity, equity, and inclusion, or "gender ideology," among other things, it would have been forced to grapple with the reality that these program aspects allow grantees to implement Congress's mandate. *See* section I.A.3, *supra*. But AmeriCorps did not consider Congress's purpose in enacting the NCSA or the Domestic and Volunteer Service Act of 1972 ("DVSA"). Instead, the agency's explanation for the Directive and new conditions was that "AmeriCorps, as part of the Executive branch of government, must comply with all applicable executive orders and memoranda" and that "[n]o AmeriCorps funding may be spent on any activity not compliant with the executive orders and memoranda." RJN Ex. A at 8. This conclusory explanation fails to consider the agency's other, predominant legal obligations—to regulate in a manner consistent with applicable statutes, including the APA and relevant authorizing statutes.

Defendants also ignored Plaintiffs' significant reliance interests. When an agency suddenly changes course, it must recognize "that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotation marks omitted) (quoting *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221–22 (2016)). Here, Congress's policy to support local communities, especially low-income, environmentally vulnerable, and disadvantaged communities, through service and mentoring

14

programs is longstanding. Plaintiffs had additional reliance interests because they were already

awarded funds for their programs (including to fund the now "noncompliant" aspects). Defendants

entirely failed to consider these reliance interests, and it was "arbitrary and capricious" for them "to

ignore such matters." *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Rather than consider grantees' reliance interests, the agency instead committed a complete

about-face. At the beginning of the grant cycle that culminated in Plaintiffs' original agreements,

AmeriCorps *required* applicants to commit to program activities that the agency now prohibits. As

detailed in the agency's 2024 Notice of Funding Opportunity, RJN Ex. C, consistent with the

implementing acts, AmeriCorps previously required grantees to verify their "Commitment to

Diversity, Equity, Inclusion, and Accessibility" in a section of its application worth four percentage

points in the review process. *Id.* at 21. Plaintiffs had to explain how their "leadership and

staff . . . have similar lived experience as the beneficiary population and/or community being served,"

*id.* at 25, how "definitions of diversity, equity, inclusion, and accessibility [are] demonstrated by the

organization," *id.*, and how Plaintiffs "uphold[] a supportive and safe environment for individuals of

diverse backgrounds," *id.* at 26. Moreover, the Notice specified that the agency would "prioritize

investment in the most critical issues of our time," including "climate and the environment," *id.* at 4,

and listed "environmental stewardship" among its focus areas. *Id.* at 36 ("Supporting communities to

become more resilient through measures that reduce greenhouse gas emissions . . . especially in

underserved households and communities."). The new grant conditions and AmeriCorps Directive

prohibit these same program aspects, without any explanation for this reversal or "rational connection

between the facts and the choice made." *See Ohio*, 603 U.S. at 292 (quoting *State Farm*, 463 U.S. at

43).

Defendants also failed to "consider responsible alternatives to its chosen policy and to give a

reasoned explanation for its rejection of such alternatives." *Farmers Union Ctr. Exch., Inc. v.

F.E.R.C.*, 734 F.2d 1486, 1511 (D.C. Cir. 1984); *see also Su*, 121 F.4th at 17 (obligation to consider

alternatives is "well settled") (citation omitted). Indeed, Defendants failed to consider alternatives at

all, and instead acted as though the executive orders imposed on them an obligation to impose the new

conditions, when those orders did no such thing. *See* section II at 6-7, *supra* (Trump executive orders impose no obligations on grantees directly).

For each of these reasons, Defendants' actions were arbitrary and capricious.

### 3.    The AmeriCorps Directive Is Contrary to the Constitution.

As discussed above (*see* section I.A., *supra*), the AmeriCorps Directive and the new grant conditions it imposes violate the Spending Clause. Accordingly, those new conditions and the Directive should also be set aside as contrary to the Constitution under APA section 706(2)(B).

### 4.    The AmeriCorps Directive Exceeds Defendants' Statutory Authority.

"Administrative agencies are creatures of statute" and "possess only the authority that Congress has provided." *NFIB*, 595 U.S. at 117; *see also Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 912 (D.C. Cir. 2024). Defendants had no statutory authority to impose the new conditions or issue the AmeriCorps Directive, and, more to the point, Defendants' actions contravene Congress's purpose in creating AmeriCorps grant programs. *See* section I.A.2, *supra*. They should, accordingly, be held unlawful. 5 U.S.C. § 706(2)(C).

Nothing in AmeriCorps' enabling statutes, 42 U.S.C. § 4950 *et seq.* (the "DVSA") and 42 U.S.C. § 12501 *et seq.* (the "NCSA"), confers authority on the agency to withdraw already obligated AmeriCorps grants because those grants "promote DEI activities," promote "gender ideology," or relate to climate change.[8] *See* RJN Ex. A at 8–9. Rather, under the NCSA, only AmeriCorps' Chief Executive Officer is permitted to make grants. And once grant agreements are executed, there is no authority for the Chief Executive Officer (or anyone else) to impose new conditions on those funds, *see* 42 U.S.C. § 12651d(b)(2)(B), particularly conditions antithetical to the purpose of the enabling Acts, *see* section I.A.2, *supra* (discussing lack of nexus); 42 U.S.C. § 12613(c); *id.* § 12511(13); *id.* § 12526(b); *id.* § 12561(e); *id.* § 4950). Thus, the recent executive orders—Defendants' purported sources of authority—do not and cannot authorize Defendants' actions for the reasons discussed above/below. *See* section I.A.1, *supra* (executive orders do not impose obligations on Plaintiffs); *see*

---

[8] In fact, the DVSA expressly prohibits Defendants, as a government agency and officer, from "exercis[ing] any direction, supervision, or control over the curriculum, program of instruction, administration, or personnel of any education institution or school system." 42 U.S.C. § 5049.

16

*also* sections I.A.2–3. Likely for this reason, the AmeriCorps Directive does not explain the alleged basis of AmeriCorps' authority to condition grants on the termination of DEI activities.

Because no statute confers on Defendants the authority to command Plaintiffs to alter their previously authorized programs, Defendants acted "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

## II.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

Plaintiffs imminently face an impossible choice: forfeit their relied-upon AmeriCorps funds or drastically and permanently alter their program to comply with the new conditions. Vargas Decl. ¶¶ 21, 24, 26–34; Hammond Decl. ¶¶ 22–23, 27–31. And even if Plaintiffs attempt to comply, their funds could still be at risk because the vagueness of the conditions makes it impossible for them to know exactly what they are prohibited from doing. *See supra* n.7. Moreover, pursuant to AmeriCorps' direction that grant recipients had to "cease [all noncompliant] activities immediately" if they wanted to retain their grants, Plaintiffs have already been forced to begin implementing the new, unlawful conditions to avoid any loss of critical funding to support vulnerable children and seniors. Vargas Decl. ¶¶ 26–31; Hammond Decl. ¶¶ 24–30, 34. Plaintiffs therefore need immediate relief from this Court to address the extant and imminent harm they face until a motion for preliminary injunction can be heard.

### A.    SFUSD Is Being Forced to Alter the Healthy Choices Program in Ways that Negatively Impact Students or Lose the Funds Entirely.

The AmeriCorps Directive instructed recipients who wanted to retain funds to "immediately" cease non-compliant program activities while amendments eliminating non-compliant programming from their grant agreements were prepared. SFUSD could not risk losing AmeriCorps funding that is supporting critical services to some of the District's most vulnerable students. Accordingly, while it pursues legal avenues to challenge defendants' actions, SFUSD has had to begin taking steps to adjust the Healthy Choices program in ways that will negatively impact students. For example:

- AmeriCorps members provide primary support for groups known as "Rainbow" or Gender and Sexuality Alliance (GSA) clubs in many schools. These clubs provide a safe space for students of all backgrounds to learn about LGBTQ+ identities, and for students who are themselves

17

LGBTQ+, come from families with LGBTQ+ members, or who want to support LGBTQ+ people to find community. Because these groups would likely be considered to "promote DEI" or "promote gender ideology," SFUSD is beginning the process of determining which programs may need to stop meeting completely due to lack of resources and which may be able to continue with less support for students in these groups, and a greater burden on other staff. Vargas Decl. ¶ 28.

• SFUSD is having to revamp how it pairs students with mentors who work closely with students to support their learning, literacy, and attendance. One of the considerations in making a match is to find mentors that look like and reflect the values of the student, which often means matching students and mentors of the same racial or ethnic background, gender identity, or sexual orientation. But this, too, would likely be considered to violate the new conditions imposed on SFUSD's grant. *Id.* ¶ 27.

• SFUSD is in the process of reviewing and revamping its training materials, which involve principles of diversity, equity, and inclusion, either directly or indirectly. For example, the district trains members (and all SFUSD staff) to respect students of all gender identities by offering their pronouns when meeting someone and using those pronouns chosen by others. The district will need to remove this from all future trainings, since the federal government may believe it violates the President's "Anti-Gender" executive order or the prohibition on DEI activities. SFUSD has already been forced to spend time and resources to remove diversity, equity, and inclusion-related materials from trainings, including one that occurred on Monday, March 10, 2025. Having to remove all "noncompliant" materials from its trainings will meaningfully diminish SFUSD's ability to train members in evidence-based ways, such as involving trauma-informed care, Youth Mental Health First-Aid, or social-emotional learning. *Id.* ¶ 26.

In the absence of immediate relief from this court, SFUSD will have to continue down these— and many other—unwanted and unwarranted roads. *Id.* ¶¶ 25–32. And SFUSD fears that even these actions may not protect its AmeriCorps grant funds. Because the Healthy Choices program serves students that bear witness to community violence, racism, and poverty, discussions of racial identity, ethnicity, gender, and sexuality often occur. *Id.* ¶ 30. Because this could be considered "activities that promote DEI activities," SFUSD's members now face a serious dilemma if a student, seeking

18

mentoring and support, wants to talk about one of those facets of their identity. Members may feel forced to end such conversations, which would effectively nullify the purpose of the AmeriCorps program at SFUSD—to provide mentoring and guidance to students by a caring adult. *Id.* ¶ 31. Indeed, uncertainty around the meaning of the new federal requirements for AmeriCorps—particularly, what it means for activities to "promote DEI activities" or what violates the new executive orders—has contributed to confusion at SFUSD. This confusion is starting to have a chilling effect on members' activities that simply relate to diversity, equity, and inclusion, or involve discussions of gender identity, or even relate to climate science. Members and SFUSD employees worry that their conversations, questions, good intentions, and attempts to help students may jeopardize the entire Healthy Choices program. As Members start to censor themselves or end conversations with students about these important topics, SFUSD students are left underserved. *Id.* ¶¶ 30–31. All these harms are extant right now.

Against this backdrop, SFUSD expects that it will soon be presented with a revised grant agreement in which it commits to making these changes permanent—and that it will be expected to sign that agreement in a matter of days or lose its AmeriCorps funding altogether. *Id.* ¶¶ 21, 24.

SFUSD is experiencing a significant budget deficit due to declining enrollment trends, reduced state funding, and rising expenditures. Declaration of Maria Su in Support of Motion for Temporary Restraining Order ("Su Decl.") ¶ 5. The district must implement $113 million in reductions for 2025-26 to balance its budget. To close the $113 million deficit for the 2025-26 school year, it will be necessary to reduce the district's existing workforce in the central office and across schools. Accordingly, last month, SFUSD issued preliminary layoff notices for over 500 positions. *Id.* ¶. In this budget climate, losing the $667,000 that is used to fund 44 AmeriCorps members would be a significant hardship and will further impact the adults available to support students. *Id.* ¶ 6.

In the absence of these funds, SFUSD "would need to drastically cut the number of mentors" available to students "and significantly reduce the programs provided." Vargas Decl. ¶ 33. "These program reductions would have a drastic, negative impact on [the] student population as a whole, and would harm the learning (and grade point averages) of many students and increase rates of absenteeism. Without the full suite of services offered by Healthy Choices, students' social-emotional

19

functioning and pro-social behaviors would likely decrease, while suspensions and bullying may increase." *Id.*

### B. Santa Fe Is Being Forced to Alter Its Programs in Ways that Negatively Impact Seniors and Children or Lose the Funds Entirely.

Santa Fe does not know what the federal government believes that compliance with the new terms and conditions means, including what might "promote DEI activities." Hammond Decl. ¶ 25. Santa Fe already has identified several program activities that could be interpreted as falling within this prohibition. Foster Grandparents support diverse student populations. *Id.* ¶¶ 26–27. Many children in the program are Latino, Native American, bilingual learners, and/or come from economically disadvantaged backgrounds. *Id.* ¶ 27. The one-on-one mentorship provided by Foster Grandparents inherently works to close opportunity gaps in education—which could be interpreted as a DEI- related effort. *Id.*

RSVP volunteers support culturally inclusive initiatives. *Id.* ¶ 28. Volunteer placements include food security programs, literacy projects, and community engagement initiatives tailored to meet the needs of underrepresented groups. *Id.* The new AmeriCorps restrictions could require the elimination of bilingual outreach, cultural competency training, and targeted services. *Id.* Senior Companions provide care for homebound individuals, many of whom belong to historically underserved populations. *Id.* ¶ 29. If the new AmeriCorps restrictions prohibit services tailored to specific demographics, the program may no longer be able to prioritize clients facing systemic barriers to care. *Id.*

In each of these instances, the now-questionable programmatic components are foundational to the delivery of services. If such practices are not in compliance with the new grant requirements, Santa Fe will either have to dramatically change its practices or simply eliminate the programs. *Id.* ¶ 31. On the other hand, the City is not in a position to forego this federal funding. *Id.* ¶¶ 23, 34. As a result, the City finds itself in an untenable choice of foregoing needed funds, guessing at what compliance might mean, or changing integral components of its AmeriCorps-funded programs. *Id.* ¶¶ 34–36.

**III.    The Balance of Hardships and the Public Interest Strongly Favor Preliminary Relief.**

The balance of the equities and the public interest favor an injunction. In a case against the government, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). And in a case involving an alleged constitutional violation, the two factors are satisfied by success on the merits of the underlying claim. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014); *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that "it is always in the public interest to prevent the violation of a party's constitutional rights") (quotation marks and citation omitted).

This approach is sensible, because there can be no harm to the Defendants from an injunction prohibiting them from enforcing grant requirements that offend established constitutional principles. *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (defendants "cannot suffer harm from an injunction that merely ends an unlawful practice"). And recent court orders granting similar preliminary relief undercuts any hardship argument that Defendants could proffer; if eleven different executive agencies can comply with a preliminary injunction against the enforcement of the anti-DEI executive orders, for example, then Defendants have no serious argument that they cannot comply with an injunction in this case.

By contrast, in the absence of immediate relief, there will continue to be serious harm to Plaintiffs, their programs, their children, their students, their seniors, their residents, and their communities. *See* section II, *supra*.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court grant a temporary restraining order prohibiting Defendants from enforcing the AmeriCorps Directive and new conditions, withholding funding on the basis of those unlawful conditions, or imposing any similar conditions on AmeriCorps grants by another name, and issue an order to show cause why a preliminary injunction should not be issued.

1

Dated: March 11, 2025

2

3          DAVID CHIU
           City Attorney, City and County of San Francisco
4          YVONNE R. MERÉ
           Chief Deputy City Attorney
5          MOLLIE M. LEE
           Chief of Strategic Advocacy
6          SARA J. EISENBERG
           Chief of Complex and Affirmative Litigation
7          MOLLY J. ALARCON
           Deputy City Attorney
8

9          By: /s/ David Chiu
           DAVID CHIU
10         City Attorney

11         WILLKIE FARR & GALLAGHER LLP
           Benedict Hur
12         Simona Agnolucci
           Eduardo Santacana
13         Stephen Henrick
           Alyxandra Vernon
14         Michael Morizono
15

16         Attorneys for Plaintiff
           CITY AND COUNTY OF SAN FRANCISCO
17
           By: /s/ Erin K. Sherry
18         ERIN K. MCSHERRY*
           City Attorney City of Santa Fe, New Mexico
19         200 Lincoln Ave Santa Fe, NM 87501
           505-955-6512
20         ekmcsherry@santafenm.gov
21         Jill Habig, SBN 268770
           Jonathan B. Miller*
22         Public Rights Project
           490 43rd Street, Unit #115
23         Oakland, CA 94609
           (510) 738-6788
24         jon@publicrightsproject.org
25         Attorneys for Plaintiff
           CITY OF SANTA FE, NEW MEXICO
26
           * Application for admission pro hac vice
27         forthcoming
28

MPA ISO MOTION FOR TRO
CASE NO. 3:25-CV-02425-EMC