DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5402
Telephone:     (415) 554-3894
Facsimile:      (415) 437-4644
E-Mail:           molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR, SBN 224018
bhur@willkie.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@willkie.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@willkie.com
STEPHEN HENRICK, SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON, SBN 327699
avernon@willkie.com
MICHAEL MORIZONO, SBN 359395
mmorizono@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:     (415) 858-7400

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,<br><br>Defendants. | Case No. 3:25-cv-02425<br><br>**DECLARATION OF BIANCA GONZALEZ IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |

B. GONZALEZ DECL. ISO MOTION FOR TRO
CASE NO. 3:25-cv-02425

I Bianca Gonzalez, declare and state the following:

1. I am a former AmeriCorps Member who worked for two years within the San Francisco Unified School District ("SFUSD" or "the District").

2. During my first year, the 2021-2022 school year, I was placed at Sanchez Elementary School and Hillcrest Elementary School. Both schools have diverse student bodies, including a large percentage of Latino students. I am Mexican American and speak Spanish. I helped run mentoring programs at both elementary schools under SFUSD's Mentoring for Success program.

3. During my second year, the 2022-23 school year, I was placed at the SFUSD central office to assist in various ways with Mentoring for Success. Mentoring for Success is a student mentoring program that operates in many SFUSD schools to pair vulnerable students, including those with high truancy rates and low rates of academic achievement, with caring adults to promote students' wellbeing and academic success.

4. During my time at Hillcrest and Sanchez elementary schools, I helped run the mentorship program at each school, recruiting other mentors and coordinating their activities, and provided direct, weekly mentoring to a few students, all under the supervision of a School Social Worker. In addition, I staffed a school "Wellness Center" where any student could come for support when they felt upset and unable to be in class, so that we could assist and help them return quickly. I also participated in and helped plan school-wide events, such as an educational game during Black History Month to highlight notable historical figures, including some from San Francisco, who are Black.

5. I am aware of the recent actions taken by AmeriCorps that threaten SFUSD's ability to maintain the Healthy Choices and Mentoring for Success programs. Based on my experience as a Member, I believe there would be significant and harmful effects to students and SFUSD if the Healthy Choices program were changed to remove activities related to DEI or gender identity, or if the programs were dismantled or reduced due to a lack of funding.

6. During my time as a Member, SFUSD trained me on a variety of best practices and mentoring approaches that respect diversity, equity, and inclusion, restorative principles, and gender identities. This was important because conversations with students would often involve their feelings

and experiences related to students' backgrounds, gender identities, or feelings of inclusion (or lack thereof). If I had not been trained to connect with students across difference, or if I had not been coached in restorative practices to address incidents of racism that occasionally arose, I would not have been an effective mentor. Additionally, students would have lacked my support to assist in their social emotional learning.

7. During my time as an AmeriCorps Member at Sanchez and Hillcrest elementary schools, I helped support our schools' Wellness Centers. Students of all backgrounds would come in, and, after a cool-down period, would have the opportunity to speak with me (or other staff) about their feelings or the events that precipitated them. Students could be upset about anything, from recess spats to nerves over school to hearing derogatory language on the playground. Without the training I received, I would not have felt prepared to be the best supportive adult I could be for these situations. It also may have been more difficult for me to connect with students and help them feel ready to return to the classroom to continue their academic learning. Additionally, I cannot imagine how I would have approached a scenario in which a student used a slur or other derogatory language without incorporating discussion of diversity, equity, and inclusion. It strikes me as impossible to talk to students about those issues without doing something that would likely be viewed as "promoting" diversity, equity, and inclusion.

8. The new conditions imposed by AmeriCorps suggest that many of the conversations I had with students—which often touched on their backgrounds and identities—may now be prohibited. If those conditions had been in effect during my time, especially the prohibition on activities that promote DEI, I would have censored myself and felt unable to speak to students who brought up issues of race, gender identity, or concerns related to equity more broadly—either in Wellness Centers or during mentoring sessions. I can imagine, for example, if a student wanted to talk about how they felt different from other students because of their race or gender identity, or how a student overheard someone saying something about another student that they did not understand, I would have felt like I could not fully engage in the conversation for fear of "promoting DEI" and threatening the entire AmeriCorps program in the District. I might have felt forced to end conversations entirely with students if they explicitly asked me about topics related to race, equity, or identity. Not having these

B. GONZALEZ DECL. ISO MOTION FOR TRO           2
CASE NO. 3:25-cv-02425

conversations at all and effectively withdrawing my support as a mentor would have contradicted the purpose of the mentoring program entirely. Moreover, if I could not engage in these conversations in school hallways or classrooms, I could not model behavior for other students about how to respect and value peoples' differences. I would have felt very uncertain about what I could discuss with students, and that uncertainty alone probably would have made me a less successful mentor or communicator with students.

9. At Sanchez Elementary School, I co-led a group for Spanish-speaking newcomers to the United States, many of whom were learning English. I know that my Mexican-American heritage and ability to speak Spanish helped me connect with group participants, helped them feel safe and cared for, and ultimately helped them succeed in school more than they would have without the group. I loved seeing students from that group—who spanned all different grade levels—saying hi to each other on the playground or in the halls. I believe that if the new AmeriCorps conditions were in effect when I helped run this group, I would not have been permitted to continue it. This would have harmed these students by removing a safe space for them to connect with similarly situated new students, find comfort in others who shared their circumstances, and have friends at school.

10. Principles of diversity, equity, and inclusion across lines of race and gender identity were, simply, vital to my work as an AmeriCorps Member. They were a necessary part of my training, and a crucial part of my ability to support students' wellbeing and social emotional learning. It seems antithetical to the AmeriCorps program as a whole to prohibit these important values.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration was executed in Los Angeles, California, on March 10, 2025.

*Bianca Gonzalez*