PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

SAPNA MEHTA (CABN 288238)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7478
    FAX: (415) 436-6748
    sapna.mehta@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT and CITY OF SANTA FE, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICORPS and JENNIFER BASTRESS TAHMASEBI, Interim Agency Head of AmeriCorps, <br><br> Defendants. | Case No. 3:25-cv-02425-EMC <br><br> **DEFENDANTS' OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER** <br><br> Date: March 28, 2025 <br> Time: 1:30pm <br> Location: Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................1

    A. AmeriCorps' Grant Programs ...................................................................................1

    B. San Francisco Unified School District's AmeriCorps Grant Funding......................2

    C. City of Santa Fe's AmeriCorps Grants .....................................................................3

    D. AmeriCorps' Executive Order Compliance Instructions..........................................4

    E. Plaintiffs' Responses to AmeriCorps' Executive Order Compliance Instructions..................................................................................................................5

III. LEGAL STANDARD ...........................................................................................................7

IV. ARGUMENT .........................................................................................................................7

    A. The Court Should Deny Plaintiffs' Motion for TRO Because Plaintiffs Do Not Show Irreparable Harm to Justify the Extraordinary Relief of a TRO. ..............8

    B. Plaintiffs Cannot Show That They Are Likely to Succeed on the Merits of Their Claims Because the Court Lacks Jurisdiction Over Plaintiffs' Claims.....................9

    C. The Public Interest Does Not Favor a TRO. ...........................................................13

    D. Any Preliminary Relief Granted Should be Limited to the Grants Identified in Plaintiffs' Motion. ...................................................................................................14

V. CONCLUSION....................................................................................................................14

# TABLE OF AUTHORITIES

## CASES

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .......................................... 7

*Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58 (1st Cir. 1978) ................................................ 12

*Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301 (1991) .................................................................................................................. 13

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ..................................... 8

*Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1 (1st Cir. 1989) ................................................. 13

*Cohen v. Postal Holdings, LLC*, 873 F.3d 394 (2d Cir. 2017) .................................................... 12

*Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330 (Fed. Cir. 2021) .................................. 12

*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ............................................... 13

*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010) ......................................................... 7

*FDIC v. Meyer*, 510 U.S. 471 (1994) .......................................................................................... 10

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir. 2024) ................................................................................................................... 14

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) ............................................................... 7, 8

*Jachetta v. United States*, 653 F.3d 898 (9th Cir. 2011) ............................................................. 10

*James v. Caldera*, 159 F.3d 573 (Fed. Cir. 1998) ....................................................................... 12

*Koller v. Brown*, 224 F. Supp. 3d 871 (N.D. Cal. 2016) .............................................................. 8

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ................................................................... 9

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .................................................................................... 10, 11

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) .......................................................................... 7

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) .......................................................... 12

*Nken v. Holder*, 556 U.S. 418 (2009) .......................................................................................... 13

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014) ................................................ 9

*Randall v. United States*, 95 F.3d 339 (4th Cir. 1996) ............................................................... 12

*San Juan City Coll. v. United States*, 391 F.3d 1357 (Fed. Cir. 2004) ...................................... 12

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007) .................................................................................................................. 10

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...................................................... 10

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ............................................................................................................................. 7

*Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411 (1995) ................................................ 12

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal filed*, No. 25-5066 (D.C. Cir.) ................................................................................................................... 12, 13

*United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023) ......................................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................................... 7, 8

**STATUTES**

28 U.S.C. § 1346 ............................................................................................................... 12

28 U.S.C. § 1491 ............................................................................................................... 12

42 U.S.C. § 12571 .......................................................................................................... 2, 11

42 U.S.C. § 12651 ................................................................................................................ 1

42 U.S.C. § 5001 ............................................................................................................ 2, 11

42 U.S.C. § 5011 ............................................................................................................ 2, 11

42 U.S.C. § 5013 ............................................................................................................ 2, 11

42 U.S.C. § 5022 ............................................................................................................ 2, 11

5 U.S.C. § 701 .................................................................................................................... 10

5 U.S.C. § 702 .................................................................................................................... 10

**REGULATIONS**

2 C.F.R. § 200.342 ............................................................................................................... 8

45 C.F.R. § 1206.1-5 ........................................................................................................... 8

45 C.F.R. § 2510.10 ............................................................................................................. 1

45 C.F.R. § 2540.400 ........................................................................................................... 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 (9th Cir. 2001) ............................................................................................................................. 7

*Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411 (1995) ................................................ 12

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal filed*, No. 25-5066 (D.C. Cir.) ................................................................................................................... 12, 13

*United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023) ......................................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................................... 7, 8

**STATUTES**

28 U.S.C. § 1346 ............................................................................................................... 12

28 U.S.C. § 1491 ............................................................................................................... 12

42 U.S.C. § 12571 .......................................................................................................... 2, 11

42 U.S.C. § 12651 ................................................................................................................ 1

42 U.S.C. § 5001 ............................................................................................................ 2, 11

42 U.S.C. § 5011 ............................................................................................................ 2, 11

42 U.S.C. § 5013 ............................................................................................................ 2, 11

42 U.S.C. § 5022 ............................................................................................................ 2, 11

5 U.S.C. § 701 .................................................................................................................... 10

5 U.S.C. § 702 .................................................................................................................... 10

**REGULATIONS**

2 C.F.R. § 200.342 ............................................................................................................... 8

45 C.F.R. § 1206.1-5 ........................................................................................................... 8

45 C.F.R. § 2510.10 ............................................................................................................. 1

45 C.F.R. § 2540.400 ........................................................................................................... 8

## I. INTRODUCTION

Plaintiffs frame their request for emergency relief in this matter as necessary to prevent defunding of their federal grants, but neither Plaintiff is facing termination of their federal funding nor eradication of their grant-funded programs for non-compliance with executive orders. The issue presented here is far narrower: whether AmeriCorps can, consistent with its existing conditions for providing federal financial assistance to these Plaintiffs, bring their federal grants into compliance with new executive orders. Plaintiffs' Motion for a Temporary Restraining Order—which asks the Court to prohibit enforcement of the February 13, 2025 memorandum to AmeriCorps grant recipients titled "Executive Order Compliance Instructions" (Dkt. 18 at 1)—should be denied for at least the following two reasons. First, this case does not present an emergency. Both Plaintiffs are still operating their federally funded programs without threat of termination. Plaintiffs fail to demonstrate that having to litigate the merits of this action in the normal course will cause them irreparable harm. Second, the Court should not proceed to evaluate the merits of Plaintiffs' claims because it lacks subject matter jurisdiction. Plaintiffs have failed to satisfy their burden of proving entitlement to the extraordinary relief requested, and Defendants thus respectfully request that the Court deny Plaintiffs' motion for a TRO.

## II. FACTUAL BACKGROUND

### A. AmeriCorps' Grant Programs

The Corporation for National and Community Service, which operates as AmeriCorps, is a federal agency that was established by the National and Community Service Act of 1990. 42 U.S.C. § 12651. Its mission is to improve lives, strengthen communities, and foster civic engagement through service and volunteering. Declaration of Carly Bruder in Support of Defendants' Opposition to Motion for Temporary Restraining Order ("Bruder Decl.") ¶ 2; *see also* 45 C.F.R. § 2510.10 ("The Corporation's mission is to engage Americans of all ages and backgrounds in community-based service."). One of the ways it advances its mission is by investing in efforts of members and volunteers to serve in their communities across the country. Bruder Decl. ¶ 2. AmeriCorps offers a number of programs that provide different volunteer opportunities. *Id.* AmeriCorps administers some of these programs through grant awards by providing federal financial assistance to states and nonprofits; it directly funds and operates some of its other programs, which are not at issue here. *Id.*

For AmeriCorps State and National programs, AmeriCorps "may make grants" to states and subdivisions of states "subject to the availability of appropriations" in furtherance of national service programs. 42 U.S.C. § 12571(a). AmeriCorps Seniors programs are specifically for individuals 55 and older. Bruder Decl. ¶ 2. These programs include the Retired and Senior Volunteer Program ("RSVP"), the Foster Grandparent Program, and the Senior Companion Program. *Id.* AmeriCorps "is authorized to make grants" in accordance with regulations prescribed by AmeriCorps for these programs. *See* 42 U.S.C. §§ 5001(a), 5011(a), 5013(a). RSVP grants are directed to helping "retired individuals and working older individuals to share their experiences, abilities, and skills to improve their communities and themselves through service in their communities." *Id.* § 5001(a). These grants are awarded for a 3-year period through a competitive process. *Id.* § 5001(e). Foster Grandparent Program grants are directed to "opportunities for low-income persons age 55 or over to provide supportive person-to-person services in health, education, welfare, and related settings to children having special or exceptional needs or circumstances identified as limiting their academic, social, or emotional development. *Id.* § 5011. Senior Companion Program grants further "opportunities for low-income persons age 55 or older to serve as 'senior companions' to persons with exceptional needs." *Id.* § 5013(a). Payments for these grants "may be made . . . on such conditions" as AmeriCorps determines. *Id.* § 5022.

**B.    San Francisco Unified School District's AmeriCorps Grant Funding**

AmeriCorps awarded an AmeriCorps State and National grant to California Volunteers, the State Service Commission of California, in 2024. Bruder Decl. ¶ 3, Ex. 1. The grant was to support service programs throughout the state of California for Fiscal Year 2024. Bruder Decl. ¶ 3. It is a 3-year grant but all the funds are not committed at the outset. The Notice of Grant Award only provides funds for the approved 2024-2025 programs, and the state must renew annually for funds for the upcoming Fiscal Year. *Id.* The Terms of Acceptance in its Notice of Grant Award state: "By accepting funds under this grant, recipient agrees to comply with" the General Terms and Conditions, Program Terms and Conditions, assurances and certifications, and applicable federal statutes, regulations, and guidelines. *Id.*, Ex. 1 at 2. The FY 2024 General Grant and Cooperative Agreement Terms and Conditions[1] state in Section II.B. that

---

[1] *Available at* https://americorps.gov/sites/default/files/document/FY2024-General-Terms-Conditions-508-20230919.pdf (last visited Mar. 19, 2025).

the recipient must comply with executive orders. Bruder Decl. ¶ 3. When California Volunteers submitted its grant application through the electronic system, it also certified that it would comply with the 2023-2024 Assurances and Certifications. *Id.* ¶ 4. These included an assurance that the applicant "will comply with all applicable requirements of all other Federal laws, executive orders, regulations, application guidelines, and policies governing this program." *Id.*

California Volunteers awarded a subgrant of some of its AmeriCorps grant funds to Plaintiff San Francisco Unified School District ("SFUSD"). The state commission has its own process to award subgrants to organizations within California, and AmeriCorps thus does not directly communicate with subgrantees like SFUSD. Bruder Decl. ¶ 5. California Volunteers awarded a subgrant to SFUSD for $667,194 of California Volunteers' AmeriCorps grant funding for a program named "Healthy Choices AmeriCorps" with improved academic engagement as a primary performance measure and slots for 44 AmeriCorps members. Declaration of Laurie Vargas-Zeuschner (Dkt. 18-3) ("Vargas-Zeuschner Decl."), Ex. A at 13-15.[2] SFUSD's subgrant has a budget period of August 15, 2024 to August 14, 2025. *Id.*

SFUSD's agreement with California Volunteers incorporates by reference "Federal Regulations, 2024 General Grant and Cooperative Agreement Terms and Conditions, and 2024 Terms and Conditions for AmeriCorps State and National Grants." Vargas-Zeuschner Decl., Ex. A at 13. As noted above, the 2024 General Terms and Conditions required compliance with "all other applicable statutes, executive orders, regulations, and policies governing the award . . . ." *Id.* at 125. SFUSD also agreed to comply with AmeriCorps Program Assurances and Certifications (*Id.* at 13), which required it to certify that it "[w]ill comply with all applicable requirements of all other Federal laws, executive orders, regulations, application guidelines, and policies governing this program." *Id.* at 152. SFUSD's grant application estimated that its program funding for FY 2024 would total $1,404,155, of which less than half—$667,194—would come from AmeriCorps funds. *Id.* at 33, 62.

C.   **City of Santa Fe's AmeriCorps Grants**

Plaintiff the City of Santa Fe ("Santa Fe") currently has three AmeriCorps grants for AmeriCorps Seniors programs. Bruder Decl. ¶ 6. First, AmeriCorps awarded Santa Fe an RSVP continuation grant

---

[2] Exhibit A to the Vargas-Zeuschner Declaration is not consecutively paginated so Defendants' page cites refer to the page number in the ECF header of Dkt. 18-3.

for $52,500 to carry out the City of Santa Fe's RSVP program in Fiscal Year 2024. *Id.* ¶ 6, Ex. 2; *see also* Declaration of Henri Hammond-Paul (Dkt. 18-6) ("Hammond-Paul Decl.") ¶ 14. Second, AmeriCorps awarded Santa Fe a Senior Companion Program continuation grant of $2,500 for Fiscal Year 2024. Bruder Decl. ¶ 6, Ex. 3; *see also* Hammond-Paul Decl. ¶ 9. Third, AmeriCorps awarded Santa Fe a Foster Grandparent Program continuation grant, which provided it $62,632 in federal funds for Fiscal Year 2024. Bruder Decl. ¶ 6, Ex. 4. The federal assistance provided to Santa Fe through these grants goes toward recruiting, onboarding, training, volunteer stipends, transportation reimbursement, meal reimbursement, liability insurance, and annual recognition events. Hammond-Paul Decl. ¶¶ 10, 15; *see also id.*, Ex. A at 16, Ex. B at 47, Ex. C at 57.[3]

When applying for these three grants, Santa Fe certified that it would comply with AmeriCorps' 2023-2024 Assurances and Certifications, which included an assurance that the applicant "will comply with all applicable requirements of all other Federal laws, executive orders, regulations, application guidelines, and policies governing this program." Bruder Decl. ¶ 7; *see also* Hammond-Paul Decl., Ex. A at 14, Ex. B at 35, Ex. C at 54. These grants were also awarded subject to the FY 2024 General Terms and Conditions, which require that the recipient comply with executive orders. Bruder Decl. ¶ 7; *see also* Hammond-Paul Decl., Ex. A at 14, Ex. B at 35, Ex. C at 54.

### D. AmeriCorps' Executive Order Compliance Instructions

After President Trump took office on January 20, 2025, AmeriCorps took steps to align its programs and grant funding with the administration's executive orders. Bruder Decl. ¶ 8. AmeriCorps sent an electronic message to all AmeriCorps grantees on February 3, 2025 to advise that it was reviewing President Trump's applicable executive orders and corresponding guidance and would take steps to ensure AmeriCorps' alignment. *Id.*, Ex. 5. AmeriCorps sent a follow-up electronic message to all grantees on February 11, 2025 to keep them apprised that AmeriCorps' on-going review of applicable executive orders may require action from the grantees. *Id.* ¶ 9, Ex. 6. On February 13, 2025, AmeriCorps finalized "Executive Order Compliance Instructions" ("Instructions") for AmeriCorps grantees to provide instructions on updating current AmeriCorps grants to comply with the President's new executive orders.

---

[3] The exhibits to the Hammond-Paul Declaration are not consecutively paginated so Defendants' page cites refer to the page number in the ECF header of Dkt. 18-6.

*Id.* ¶ 10, Ex. 7. This was sent to grantees by their AmeriCorps portfolio manager. *Id.* ¶ 10. Each grantee was asked to respond to its portfolio manager by February 19 with one of three actions: (1) a "self-certification statement," (2) a grant amendment "to move your program into compliance with the executive orders," or (3) a request to relinquish the grant. *Id.* ¶ 10, Ex. 7 at 1. Grantees were directed to ensure subapplicants who received subgrants are compliant through "their memorandum of understanding and subsite monitoring." *Id.* AmeriCorps explained in its Instructions that it, "as part of the Executive branch of government, must comply with all applicable executive orders and memoranda. No AmeriCorps funding may be spent on any activity not compliant with the executive orders and memoranda." *Id.*, Ex. 7 at 7.

Almost all of AmeriCorps' grantees responded to the February 13, 2025 Instructions either by taking one of the three requested actions or by providing some other response, such as expressing opposition to the Instructions. Bruder Decl. ¶ 19. For those grantees that self-certified as to their compliance, AmeriCorps is taking no further action with regard to the February 13 Instructions. *Id.* For those grantees that requested grant amendments, AmeriCorps is generally processing those amendments. *Id.* Some amendment requests have already been processed and the grant amendments have been issued. *Id.* For those, AmeriCorps is taking no further action with regard to the February 13 Instructions. *Id.* For those grantees that chose to relinquish their grants, AmeriCorps has processed or is processing those relinquishments pursuant to relinquishment procedures. *Id.* For those grantees that responded in a different manner not contemplated by the February 13 Instructions, AmeriCorps has sent them a message that it will follow up with additional instructions and is taking no further action to enforce the February 13 Instructions until lawsuits challenging the legality of the applicable executive orders have been resolved. *Id.* AmeriCorps has not terminated any grants as a result of the Instructions.

  **E. Plaintiffs' Responses to AmeriCorps' Executive Order Compliance Instructions**

AmeriCorps sent Santa Fe letters on February 14, 2025 identifying specific language from each of Santa Fe's grants that required clarification to confirm that federal funds were not being used to promote or provide services out of compliance with recent executive orders. Bruder Decl. ¶ 12, Ex. 9. AmeriCorps also sent Santa Fe the Instructions. *Id.* ¶ 12. Santa Fe was granted a partial extension to respond, until February 21, and it responded on that date with a request to amend language in its grants. Bruder Decl.

¶¶ 14, 17, Ex. 13. AmeriCorps approved Santa Fe's amendments for all three grants on February 26 and 28. Bruder Decl. ¶ 17, Ex. 12.

AmeriCorps similarly sent California Volunteers a letter with the Instructions on February 14, 2025. Bruder Decl. ¶ 11, Ex. 8. The letter identified language from California Volunteers' grant that required clarification as to whether the quoted language indicated that the program is using federal funds to promote or provide services out of compliance with recent Executive Orders. Bruder Decl. ¶ 11. The letter also attached a spreadsheet identifying language that required clarification for California Volunteer's subgrantees. *Id.* California Volunteers requested an extension of its response deadline to February 26, which AmeriCorps approved. *Id.* ¶ 13. AmeriCorps did not send the February 13 Instructions to SFUSD. *Id.* ¶ 5. Instead, AmeriCorps' Instructions were relayed to SFUSD, as a subgrantee, by grantee California Volunteers on February 19, 2025. Vargas-Zeuschner Decl. ¶ 20, Ex. B. California Volunteers advised SFUSD that "AmeriCorps is a federal program, and that grant agreements require that recipients comply with federal law and executive orders." *Id.* California Volunteers thus requested SFUSD's assessment of its compliance. *Id.* It advised SFUSD that "[t]his review applies only to activities directly supported by federal grant funding from AmeriCorps." *Id.* SFUSD responded on February 21 to California Volunteers, not to AmeriCorps. *Id.* ¶ 22, Exs. D, E.

In subsequent correspondence with grantee California Volunteers on February 25, 2025, AmeriCorps advised that the agency was aware of a preliminary injunction related to the two DEI-related executive orders and was accordingly not taking "any action related to award terminations in relation to this review." Bruder Decl. ¶ 15, Ex. 10. AmeriCorps asked that California Volunteers "[p]lease continue with your review of your award, including submitting the self-certification or amendment, as applicable." *Id.* California Volunteers responded to the Instructions on February 26; its response included an amendment request for SFUSD's subgrant. *Id.* ¶ 16. SFUSD's requested grant amendment would change language in their grants to remove references to equity training, Black, Indigenous, and People of Color, and racial equity, among other changes. *Id.*, Ex. 11. AmeriCorps has not processed SFUSD's grant amendment. *Id.* ¶ 16. AmeriCorps responded to California Volunteers on March 13, thanking it for its response and clarifying that "[i]n accordance with the preliminary injunction [in *National Association of Diversity Officers in Higher Education, et al. v. Trump, et al.*, Case No. 1:25-cv-00333 (D. Md.)], no

additional action is needed at this time and you may continue with grant activities. Upon the resolution of the preliminary injunction AmeriCorps will follow up with additional instructions." *Id.* ¶ 18, Ex. 14.

### III. LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks and citation omitted), that is "never awarded as of right," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks and citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction). Thus, this relief "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez*, 680 F.3d at 1072 (internal quotation marks and citation omitted; emphasis in original). This is a "difficult task." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). To prove their entitlement to such relief, Plaintiffs must establish that: (1) they are likely to succeed on the merits, (2) are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding scale test for preliminary injunctive relief, "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

### IV. ARGUMENT

Plaintiffs ask for a temporary restraining order on the theory that AmeriCorps' February 13 Instructions threaten termination, are causing uncertainty, and undermine their grant-funded programs, despite the fact that AmeriCorps is not currently taking further action on Plaintiffs' grants with respect to its compliance instructions. In any event, Plaintiffs' claims of interim injury are speculative and do not rise to the level of irreparable harm. Nor can Plaintiffs show that this Court has subject matter jurisdiction over their claims for relief or, if the Court had jurisdiction, that Plaintiffs are likely to prevail.

### A. The Court Should Deny Plaintiffs' Motion for TRO Because Plaintiffs Do Not Show Irreparable Harm to Justify the Extraordinary Relief of a TRO.

The "most important" *Winter* factor is whether Plaintiffs demonstrate irreparable harm. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Koller v. Brown*, 224 F. Supp. 3d 871, 879 (N.D. Cal. 2016) (noting it is the "single most important prerequisite" for a TRO). The "possibility" of harm is insufficient to secure a TRO; Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). "Speculative injury" does not suffice; Plaintiffs must show both immediacy and likelihood that they will be harmed absent a TRO. *See Caribbean Marine Servs. Co.*, 844 F.2d at 674. Where "[m]ultiple contingencies must occur" before Plaintiffs' claimed injuries, the injuries are "too speculative" to justify a TRO. *Id.* at 675.

Plaintiffs have failed to make the requisite, threshold "clear showing of irreparable harm." *See Garcia*, 786 F.3d at 746 (reiterating that "[h]arm must be proved, not presumed"). Plaintiffs' theory of harm—that they "face a Hobson's Choice" (Dkt. 18-1 at 2, 17) to either forfeit their grant funds or entirely upend their federally funded programs—is unsupported. First, neither Plaintiff is facing termination of awarded funds because they both replied to AmeriCorps' Instructions (SFUSD through California Volunteers). Bruder Decl. ¶¶ 16, 17, 19. California Volunteers submitted SFUSD's amendment request for its subgrant, which AmeriCorps does not intend to process pending the outcome of this case. *Id.* ¶ 16. And Santa Fe also submitted amendment requests for its grants, which AmeriCorps approved and issued before this lawsuit was filed. *Id.* ¶ 17. AmeriCorps is thus taking no further action with regard to the February 13 Instructions. *Id.* ¶ 19. Moreover, AmeriCorps has not terminated any grants pursuant to its Instructions. *Id.* Even if termination of Plaintiffs' funds were "possible"—which is too speculative to support a TRO—such harm would not be imminent given that Plaintiffs could pursue an administrative hearing to challenge termination. *Id.*; *see also* 45 C.F.R. § 1206.1-5; 45 C.F.R. § 2540.400; 2 C.F.R. § 200.34. Plaintiffs thus cannot show that their federal grant funding is imminently likely to be terminated absent a TRO.

Second, neither Plaintiff has established that AmeriCorps' Instructions required them to entirely change, or essentially cancel, their respective programs. As noted above, both Plaintiffs submitted grant amendment requests to bring their AmeriCorps funded activities into compliance with executive orders,

DEFENDANTS' OPP TO MOTION FOR TRO
3:25-CV-02425- EMC                                           8

evidencing their own beliefs that they could continue to operate their respective programs in compliance. *See* Bruder Decl. ¶¶ 16-17. That AmeriCorps issued Santa Fe's amendment evidences AmeriCorps' acceptance that Santa Fe is now compliant; AmeriCorps is requiring no further action from Santa Fe with respect to the Instructions. *Id.* ¶¶ 17, 19. AmeriCorps has not processed SFUSD's amendment request given the filing of this litigation. *Id.* ¶ 16. It has also communicated to California Volunteers that "no additional action is needed at this time and you may continue with grant activities" pending legal challenges to the underlying executive orders. *Id.* ¶ 18. If review and processing of SFUSD's amendment request is resumed, however, an approval (like Santa Fe's) would evidence AmeriCorps' belief that SFUSD is now compliant and would require no further action with respect to AmeriCorps' compliance instructions. *See id.* ¶ 19. Plaintiffs' assertion that their entire programs "face uncertain futures" due to AmeriCorps' Instructions is thus overstated (Dkt. 18-1 at 2) and too speculative to support entry of a TRO.

To the extent Plaintiffs claim harm in the amendments they submitted, they have made no attempt to show that this harm is irreparable. SFUSD, for example, points to the negative impact to its students if it "may need to stop" clubs, "revamp how it pairs students with mentors," and remove certain training materials for its staff. Dkt. 18-1 at 17-18. It assumes without explanation, let alone proof, that those program changes would cause irreparable harm even if they are interim modifications that are ultimately reinstated after this case is litigated. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014) (reiterating requirement that irreparable harm must be "grounded in evidence, not in conclusory or speculative allegations of harm"). Plaintiffs do not establish, for example, why delaying certain staff trainings—which presumably take place only periodically—while this case is litigated would cause irreparable harm.

Ultimately, Plaintiffs' failure to establish their irreparable harm requires denial of their motion, and the Court need not reach the other *Winter* factors. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (holding that irreparable harm is a "threshold showing," absent which injunctive relief should be denied).

**B.     Plaintiffs Cannot Show That They Are Likely to Succeed on the Merits of Their Claims Because the Court Lacks Jurisdiction Over Plaintiffs' Claims.**

Before a court may rule on the merits of a claim, it must first determine if "it has the jurisdiction

over the category of claim in suit (subject [] matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)). The burden of proving subject matter jurisdiction rests with the plaintiff, and the requirement that a plaintiff establish subject matter jurisdiction "as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception." *Steel Co.*, 523 U.S. at 95 (internal quotation marks omitted).

AmeriCorps issues discretionary grants of federal funds and is authorized to impose (and enforce) terms and conditions on the use of its federal funds. As a threshold matter, this Court should not proceed to determine purported merits arguments because it does not have jurisdiction to review AmeriCorps' discretionary grant funding and management decisions. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citation omitted). The terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit. *Id.* (citations omitted). Thus, before the Court "may exercise jurisdiction over any suit against the government," it "must have a 'clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver.'" *Jachetta v. United States*, 653 F.3d 898, 903 (9th Cir. 2011). Here, Plaintiffs assert the Administrative Procedure Act, which provides a limited waiver of sovereign immunity for claims "seeking relief other than money damages." 5 U.S.C. § 702. That limited waiver does not, however, extend to this action for two reasons.

First, the Court lacks jurisdiction to review AmeriCorps' discretionary grantmaking decisions. The APA does not permit judicial review of "agency action" that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). The Court therefore lacks jurisdiction because decisions about the substance of AmeriCorps' challenged Instructions—which concern the administration of grants and enforcement of conditions on the use of grant funds to bring its grants into compliance with executive orders—are firmly committed to the agency's discretion. In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court held that the Indian Health Service's decision to discontinue a program it had previously funded and to instead reallocate those funds to other programs was committed to agency discretion by law and thus not reviewable under the APA's reasoned-decisionmaking standards. *See id.* at 185-88. The Court explained that the "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally

regarded as committed to agency discretion," because the "very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.

Indeed, "an agency's allocation of funds from a lump-sum appropriation requires 'a complicated balancing of a number of factors which are peculiarly within its expertise': whether its 'resources are best spent' on one program or another; whether it 'is likely to succeed' in fulfilling its statutory mandate; whether a particular program 'best fits the agency's overall policies'; and, 'indeed, whether the agency has enough resources' to fund a program 'at all.'" *Id.* at 193. "Congress may always circumscribe agency discretion to allocate resources by putting restrictions in the operative statutes." *Id.* But as long as the agency abides by the relevant statutes (and whatever self-imposed obligations may arise from regulations or grant instruments), the APA "gives the courts no leave to intrude." *Id.*

AmeriCorps exercises discretion over the grant programs at issue here in determining how to allocate and administer appropriated funds across applicants. The statutes governing the RSVP, Foster Grandparent Program, and Senior Companion Program provide that AmeriCorps "is authorized to make grants" in accordance with regulations prescribed by AmeriCorps for these programs. *See* 42 U.S.C. §§ 5001(a), 5011(a), 5013(a); *see also id.* § 5022 (permitting that payments for each of these grants "may be made . . . on such conditions" as AmeriCorps determines). The statute governing the AmeriCorps State and National program similarly provides that AmeriCorps "may make grants" to states and subdivisions of states "subject to the availability of appropriations" in furtherance of national service programs. 42 U.S.C. § 12571(a). These statutes confer AmeriCorps discretion to determine how best to allocate the funding for each program. AmeriCorps' grantmaking decisions are discretionary decisions regarding how to allocate and administer funds, not subject to arbitrary-and-capricious review under the APA.

Second, this Court lacks jurisdiction because this case implicates the parties' rights under a contract, where Plaintiffs' claims exceed $10,000, and exclusive jurisdiction lies with the Court of Federal Claims. When a party seeks to secure funding that it believes the government is obligated to pay under a contract or grant, the proper remedy is typically suit under the Tucker Act, not the APA. The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States."

28 U.S.C. § 1491(a). This jurisdiction is only concurrent with district courts for civil actions not exceeding $10,000 in amount. 28 U.S.C. § 1346(a)(2). Grants such as Plaintiffs are considered contracts under the Tucker Act. *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 420-21 (1995) (holding that where the government uses "a bilateral agreement that satisfies the traditional requirements for a contract, then that arrangement would fall within the scope of this court's Tucker Act jurisdiction"); *see also Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021); *San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a contract).

In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (applying *Megapulse* test); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978) ; *Randall v. United States*, 95 F.3d 339, 347 (4th Cir. 1996) ; *James v. Caldera*, 159 F.3d 573, 579 (Fed. Cir. 1998)  ("Our inquiry, however, does not end with the words of the complaint, however instructive they may be, for we still must look to the true nature of the action in determining the existence or not of jurisdiction.") (internal quotation marks omitted); *cf. United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1025-26 (9th Cir. 2023) (interpreting "the Tucker Act to 'impliedly forbid' an APA action seeking injunctive and declaratory relief" when it is a "'disguised' breach-of-contract claim") . Conducting such an analysis, another district court recently denied a request for a preliminary injunction seeking to prevent the government from pausing or cancelling funding under the Refugee Assistance Program on the ground that the motion "at its core, seek[s] a purely contractual remedy." *U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738, at *1 (D.D.C. Mar. 11, 2025), *appeal filed*, No. 25-5066 (D.C. Cir.). The court explained that "the Tucker Act instructs that all contract disputes with the Government must be resolved by the Court of Federal Claims." *Id.* It thus held that the plaintiff was "unlikely to prevail on the merits because this Court lacks the authority to grant the relief it seeks." *Id.* at *4.

Likewise, here, the source of the rights that—if vindicated—could conceivably result in the relief

from AmeriCorps' compliance instructions that Plaintiffs seek, are the grant agreements. Plaintiffs' claims and rights flow from the terms and conditions of their grants. Plaintiffs' lawsuit is essentially a contract dispute—*i.e.*, whether AmeriCorps unlawfully imposed *new* grant conditions, as Plaintiffs claim, or whether AmeriCorps merely took steps to bring its grantees into compliance with the conditions of their grants. Although Plaintiffs also invoke the APA, their APA theory is simply that AmeriCorps' "new" grant terms were unlawful. If that were sufficient to circumvent the Tucker Act, every breach-of-contract plaintiff could do so. *See U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *5 ("[C]ourts are to be wary of plaintiffs artfully pleading their way around the jurisdictional strictures of the Tucker Act.").

At bottom, the grants themselves give rise to any obligation to fund Plaintiffs' programs. And Plaintiffs' claim that the grants were improperly subjected to "new" conditions boils down to an argument that the government violated the terms of the grant. Plaintiffs ultimately seek prohibition against AmeriCorps's ability to condition or withhold money under the terms of Plaintiffs grants. However, "[f]ederal courts do not have the power to order specific performance by the United States of its alleged contractual obligations." *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989); *see also U.S. Conf. of Catholic Bishops*, 2025 WL 763738, at *5 (explaining that a "request for an order that the government 'must perform' on its contract is one that must be resolved by the Claims Court"). As the First Circuit has explained, the APA's waiver of sovereign immunity for claims seeking relief other than money damages does not extend to "specific performance for breach of contract." *Coggeshall Dev. Corp.*, 884 F.2d at 3. Thus, regardless of whether Plaintiffs seek to compel Defendants to pay money allegedly owed under the grants or seek to prohibit Defendants from taking actions Plaintiffs believe contravene the terms of the grants, this Court lacks jurisdiction.

**C.     The Public Interest Does Not Favor a TRO.**

Where the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Courts "explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Barnes v. E-Sys., Inc. Grp. Hosp. Med. & Surgical Ins. Plan*, 501 U.S. 1301, 1305 (1991) (internal quotation marks and citation omitted). To weigh these factors, Plaintiffs rely on their previous arguments by pointing to their allegation of a constitutional violation and their alleged harm (Dkt. 18-1 at

21), but as described above, neither the purported merit of their claims nor their alleged injury support entry of a TRO. *Supra* IV.A, IV.B. This is particularly true because Plaintiffs make no attempt to explain how the broad relief requested in their proposed order (Dkt. 18-9) is tethered to the harms they claim. On the other hand, Defendants are legally entitled to make decisions about the disbursement of their federal grants. *See, e.g.*, 42 U.S.C. §§ 5001(a), 5011(a), 5013(a), 5022, 12571(a).

### D. Any Preliminary Relief Granted Should be Limited to the Grants Identified in Plaintiffs' Motion.

Plaintiffs have not satisfied their burden to show their entitlement to a TRO, and the Court should thus deny their motion. Even if the Court were to find preliminary relief appropriate, however, the Court should limit relief to the grants that Plaintiffs identified in their motion for a TRO and for which the Court concludes Plaintiffs have established irreparable harm. Preliminary injunctions "must be tailored to remedy the specific harm alleged." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 (9th Cir. 2024) (internal quotation marks and citation omitted). In other words, the injunction's scope "must be no broader and no narrower than necessary to redress the injury shown *by the plaintiffs.*" *Id.* (internal quotation marks, citation, and alteration omitted; emphasis added). Portions of Plaintiffs' proposed order (Dkt. 18-9 at 1) flout this requirement by improperly asking the Court to broadly restrict AmeriCorps's grant actions (ranging from "impeding" to terminating awards) as to unspecified "recipients" without *any* discussion in their motion of other grantees' programs, responses to AmeriCorps' Instructions, and the claimed harm (if any) to these other grant recipients. The Court should thus limit any relief granted.

## V. CONCLUSION

For these reasons, the Court should deny Plaintiffs' motion for a temporary restraining order.

DATED: March 19, 2025                                          Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

*/s/ Sapna Mehta*
SAPNA MEHTA
Assistant United States Attorney