DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone:    (415) 554-3894
Facsimile:    (415) 437-4644
E-Mail:        molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR, SBN 224018
bhur@willkie.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@willkie.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@willkie.com
STEPHEN HENRICK, SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON, SBN 327699
avernon@willkie.com
MICHAEL MORIZONO, SBN 359395
mmorizono@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:    (415) 858-7400

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE, | Case No. 3:25-cv-02425 |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| vs. | |
| AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps, | Date:      March 28, 2025<br>Time:      1:30 p.m.<br>Place:     Courtroom 5 – 17th Floor<br>Judge:    Hon. Edward M. Chen |
| Defendants. | |

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.      Plaintiffs Have Demonstrated a Likelihood of Success on the Merits. ...................1

            A.      AmeriCorps' Unlawful Conditions Are Not Committed to Agency Discretion by Law and Are Therefore Reviewable By This Court. ............2

            B.      The Tucker Act Does Not Deprive This Court of Jurisdiction to Hear Challenges to Unlawful Conditions on Federal Grants. .............................5

    II.     Plaintiffs Have Demonstrated Irreparable Harm. ...................................................7

    III.    The Balance of Equities and Public Interest Favor a TRO. ..................................11

    IV.    The Preliminary Relief Should Enjoin the Full Scope of Defendants' Unlawful Conduct. .............................................................................................................12

CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Laboratories v. Gardner,*
   387 U.S. 136, 140 (1967) ...................................................................................................2

*Aids Vaccine Advoc. Coal. v. U.S. Dep't of State,*
   No. 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ...........................................6

*All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011) ..........................................................................................3, 9

*Beno v. Shalala,*
   30 F.3d 1057 (9th Cir. 1994) ...............................................................................................5

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ............................................................................................................6

*Bresgal v. Brock,*
   843 F.2d 1163 (9th Cir. 1987) ...........................................................................................12

*Califano v. Sanders,*
   430 U.S. 99 (1977) ..............................................................................................................2

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ..........................................................................................................12

*California ex rel. Becerra v. Sessions,*
   No. 3:17-CV-04701-WHO, 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018) ...........................5

*California v. Trump,*
   379 F. Supp. 3d 928 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) .......................4, 5

*California v. Trump,*
   963 F.3d 926 (9th Cir. 2020) ...............................................................................................4

*California v. U.S. Dep't of Educ.,*
   No. 25-1244 (1st Cir. Mar. 21, 2025) ..................................................................................7

*City & Cnty. of San Francisco v. Barr,*
   965 F.3d 753 (9th Cir. 2020) ...............................................................................................5

*City & Cnty. of San Francisco v. Garland,*
   42 F.4th 1078 (9th Cir. 2022) ..............................................................................................5

*City & Cnty. of San Francisco v. Sessions,*
   349 F. Supp. 3d 924 (N.D. Cal. 2018) .................................................................................5

ii

*City & Cnty. of San Francisco v. Sessions*,
    372 F. Supp. 3d 928 (N.D. Cal. 2019) ...................................................................5

*City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*,
    408 F. Supp. 3d 1057 (N.D. Cal. 2019), *aff'd.*, 981 F.3d 742 (9th Cir. 2020) ........................9

*City of Phila. v. Att'y Gen. of U.S.*,
    916 F.3d 276 (3d Cir. 2019)..............................................................................5

*Climate United Fund v. Citibank, N.A.*,
    No. 25-CV-698, 2025 WL 842360 (D.D.C. Mar. 18, 2025) ...................................7

*Cnty. of Santa Clara v. Trump*,
    250 F. Supp. 3d 497 (N.D. Cal. 2017) ..............................................................11

*Coggeshall Dev. Corp. v. Diamond*,
    884 F.2d 1 (1st Cir. 1989) .................................................................................6

*Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*,
    175 F. Supp. 2d 375 (N.D.N.Y. 2001) ...............................................................9

*Colo. v. U.S. Dep't of Just.*,
    455 F. Supp. 3d 1034 (D. Colo. 2020) ...............................................................5

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) .......................................................................................2, 3

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
    98 F.4th 1180 (9th Cir. 2024) ......................................................................12, 13

*Franchise Tax Bd. of Cal. v. Hyatt*,
    587 U.S. 230 (2019) .......................................................................................1, 12

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) .........................................................................................10

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*,
    490 F.3d 940 (Fed. Cir. 2007) ...........................................................................7

*Jajati v. U.S. Customs & Border Prot.*,
    102 F.4th 1011 (9th Cir. 2024) .......................................................................3, 5

*Keita v. U.S. Small Bus. Admin.*,
    2010 WL 395980 (E.D.N.Y. Feb. 3, 2010).........................................................2

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
    941 F.2d 970 (9th Cir. 1991) ...........................................................................12

*Lincoln v. Vigil*,
    508 U.S. 182 (1993).........................................................................................3

iii

*Maine Cmty. Health Options v. United States*,
590 U.S. 296 (2020)..................................................................................5, 7

*Maryland Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*,
763 F.2d 1441 (D.C. Cir. 1985) ...................................................................6

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) .....................................................................6

*Melendres v. Arpaio*,
695 F.3d 990 (9th Cir. 2012) ......................................................................11

*N. D. v. Reykdal*,
102 F.4th 982 (9th Cir. 2024) ......................................................................9

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025) ...................10

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
2025 WL 750690 (D. Md. Mar. 10, 2025)..........................................................10

*New York v. Dep't of Just.*,
343 F. Supp. 3d 213 (S.D.N.Y. 2018), *rev'd and remanded sub nom. State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ..................................................................5

*New York v. U.S. Dep't of Homeland Sec.*,
475 F. Supp. 3d 208 (S.D.N.Y. 2020)..........................................................12

*Newman v. Apfel*,
223 F.3d 937 (9th Cir. 2000) .................................................................3, 5

*Nguyen v. Kissinger*,
528 F.2d 1194 (9th Cir. 1975) .....................................................................2

*NJOY, LLC v. iMiracle (HK) Ltd.*,
No. 24-CV-00397-BAS-JLB, 2024 WL 5324728 (S.D. Cal. Dec. 20, 2024) ...........10

*Pac. Dawn LLC v. Pritzker*,
831 F.3d 1166 (9th Cir. 2016) .....................................................................1

*Perez Perez v. Wolf*,
943 F.3d 853 (9th Cir. 2019) .................................................................3, 5

*R.I. Latino Arts v. Nat'l Endowment for the Arts*,
No. 1:25-cv-00079 (D.R.I. filed Mar. 6, 2025).....................................................10

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) ...................................................................11

*State v. Dep't of Just*,
951 F.3d 84 (2d Cir. 2020).............................................................................5

iv

*Texas v. United States*,
    809 F.3d 134 (5th Cir. 2015) ...................................................................................12

*Tootle v. Sec'y of Navy*,
    446 F.3d 167 (D.C. Cir. 2006) ...................................................................................7

*United Aeronautical Corp. v. U.S. Air Force*,
    80 F.4th 1017 (9th Cir. 2023) ...................................................................................6

*U.S. Conf. of Catholic Bishops v. U.S. Dep't of State*,
    No. 1:25-cv-00465 (TNM), 2025 WL 763738, at *1 (D.D.C. Mar. 11, 2025)......................6

*United States v. Concentrated Phosphate Exp. Ass'n, Inc.*,
    393 U.S. 199 (1968)...................................................................................10

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) ...................................................................................12

*Webster v. Doe*,
    486 U.S. 592 (1988) ...................................................................................2

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    586 U.S. 9 (2018) ...................................................................................3

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)...................................................................................7, 11

*Wong v. Warden, FCI Raybrook*,
    171 F.3d 148 (2d Cir. 1999)...................................................................................2

**Statutes**

5 U.S.C. § 701(a)(2)...................................................................................2, 3, 5

5 U.S.C. § 704 ...................................................................................7

28 U.S.C. § 1331 ...................................................................................5

28 U.S.C. § 1491 ...................................................................................5

42 U.S.C. § 12501 ...................................................................................4

42 U.S.C. § 12526 ...................................................................................4

42 U.S.C. § 12571 ...................................................................................4

42 U.S.C. § 12572 ...................................................................................4

**Other Authorities**

U.S. Const. art. I, § 8, cl. 1...................................................................................2, 11, 12

2 C.F.R. § 200.34 ..................................................................................................................8

45 C.F.R. § 1206.1-5 .....................................................................................................2, 11, 12

45 C.F.R. § 2540.400 .....................................................................................................2, 11, 12

REPLY ISO MOTION FOR TRO
CASE NO. 3:25-CV-02425-EMC

**INTRODUCTION**

In their motion, Plaintiffs San Francisco Unified School District and City of Santa Fe explained that Defendants were imposing unlawful conditions on federal grants being used—in accordance with Congress's stated intent—to support vulnerable students through mentoring and other interventions, to connect seniors with at-risk children, and to assist senior citizens with day-to-day tasks. Plaintiffs also demonstrated that, in response to Defendants' demand that they "immediately" cease all potentially noncompliant activities, they have been forced to begin cutting or meaningfully changing some of these valuable services.

Remarkably, Defendants do not disagree that the new conditions are unlawful. Nor do they contest that Plaintiffs were, and are, required to eliminate significant aspects of their programs to retain their funds. Instead, they argue that this Court lacks jurisdiction to hear the case and that forcing jurisdictions to cut services to vulnerable children and seniors does not qualify as harm that warrants preliminary relief. Defendants are flatly wrong on both counts.

This Court can and should issue an immediate temporary restraining order to allow Plaintiffs to continue to provide the full range of services AmeriCorps previously authorized, without fear of financial reprisal, until the Court can consider a preliminary injunction.

**ARGUMENT**

**I.    Plaintiffs Have Demonstrated a Likelihood of Success on the Merits.**

Defendants' argument concerning Plaintiffs' likelihood of success on the merits is most notable for what it does *not* include. Defendants do not even attempt to argue, and therefore concede, that the new AmeriCorps conditions satisfy the requirements of the Spending Clause or the Administrative Procedure Act.[1] Instead, they argue only that Plaintiffs are unlikely to succeed on the merits because this Court lacks jurisdiction for two reasons: (A) AmeriCorps' grantmaking decisions are committed to agency discretion by law; and (B) exclusive jurisdiction is vested in the United States

---

[1] Having failed to address these issues, Defendants have waived any argument that the conditions comply with the law. *See, e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 234 n.1 (2019) (deeming an argument waived where the defendant failed to raise an issue in the opposition brief); *see also Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that "the plaintiffs did not raise that argument to the district court in their . . . opposition to the defendants' motion for summary judgment, so the argument was waived").

Court of Federal Claims under the Tucker Act. Defendants' Opp. to Mot. for Temporary Restraining Order ("Opp.") at 9–13. Defendants are wrong on both fronts.

### A. AmeriCorps' Unlawful Conditions Are Not Committed to Agency Discretion by Law and Are Therefore Reviewable By This Court.

This Court has jurisdiction to review the Spending Clause challenge, and Plaintiffs' remaining APA claims. None of Plaintiffs' arguments implicate 5 U.S.C. § 701(a)(2), which Defendants invoke to overcome the "basic presumption of judicial review" under the APA. *Dep't of Commerce v. New York*, 588 U.S. 752, 771 (2019) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

First, § 701(a)(2) never applies to constitutional challenges, unless Congress takes the additional step of clearly and unmistakably attempting to preclude judicial review of constitutional challenges. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (holding § 701(a)(2) did not preclude constitutional challenge because Congress did not evince a clear intent to preclude judicial review of constitutional claims). "[N]othing in the APA purports to sanction the violation of constitutional rights committed under the guise of the exercise of discretion, or prevents a court from inquiring into and remedying the deprivation." *Nguyen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975); *see also Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir. 1999) ("It is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary."); *Keita v. U.S. Small Bus. Admin.*, 2010 WL 395980, at *4 (E.D.N.Y. Feb. 3, 2010) (collecting cases).

Defendants do not argue that Congress intended to preclude review of constitutional deprivations here, and nothing in the relevant statutes evinces any such intent. As such, Defendants' argument under Section 701(a)(2) does not apply to Plaintiffs' claims that the new AmeriCorps conditions are contrary to the Constitution. *See* Memorandum of Points and Authorities in Support of Plaintiff's Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Mot.") at 7–12, 16.

Second, Section 701(a)(2) also does not preclude Plaintiffs' APA claim that Defendants exceeded their statutory authority. Section 701(a)(2) precludes judicial review where "agency action is

committed to agency discretion by law." 5 U.S.C. § 701(a)(2). It is a "quite narrow[]" exception to the presumption of judicial review and is restricted to "those rare circumstances where the relevant statute is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion." *Dep't of Commerce v. New York*, 588 U.S. 752, 772 (2019) (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)) (emphasis added). Only if there is "truly no law to apply" is it appropriate to follow § 701(a)(2). *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024) (citing *Perez Perez v. Wolf*, 943 F.3d 853, 861 (9th Cir. 2019)). Because the authorizing statutes provide a basis for this Court to provide judicial review, AmeriCorps' action is not "committed to agency discretion by law." *Newman v. Apfel*, 223 F.3d 937, 943 (9th Cir. 2000).

Accordingly, Defendants are incorrect that *all* AmeriCorps grant decisions—including their decision to condition grants on compliance with unconstitutional conditions—are "firmly committed to the agency's discretion" and therefore unreviewable. Opp. at 10. And the only case they cite, *Lincoln v. Vigil*, 508 U.S. 182, 192–93 (1993), does not support their position. In *Lincoln*, the Supreme Court held that the Native American Health Service's decision to reallocate funds from a lump-sum appropriation was committed to agency discretion and unreviewable. *Id*. at 193. But of course: deciding which grant applicant will receive funds under a lump-sum appropriation is by definition committed to agency discretion, because Congress has not "circumscribe[d] [the] agency['s] discretion to allocate resources." *Id.* Nothing in *Lincoln* purports to authorize agencies to arbitrarily and unlawfully rescind or re-allocate appropriations in a manner contrary to law, e.g., in violation of constitutional provisions or in direct contravention of the authorizing statute.

In fact, in *Lincoln*, the Court first assured itself that the fund allocation was consistent with statutory objectives. *See id*. at 198. As the Court put it, "*as long as* the agency allocates funds from a lump-sum appropriation to *meet permissible statutory objectives*, § 701(a)(2) gives the courts no leave to intrude." *Id.* (emphasis added). Because the Court *first* concluded that "[t]he reallocation of agency resources . . . clearly falls within the Service's statutory mandate," it only then concluded that judicial review was precluded. *Id.* at 194.

1      Thus, "even accepting Defendants' argument that the APA precludes judicial review so long as

2  the [agency] 'meets permissible statutory objectives,' judicial review is available because Plaintiffs

3  maintain that the [agency] is transferring funds in a statutorily *impermissible* manner." *California v.*

4  *Trump*, 379 F. Supp. 3d 928, 953 (N.D. Cal. 2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) (cleaned up).

5  And of course, this is essential to the analysis; AmeriCorps could not, for example, re-allocate these

6  funds to the for-profit company of a political supporter or personal friend of the agency's

7  administrator.

8      While AmeriCorps' new conditions may not be as blatant as that, they clearly do not "meet

9  permissible statutory objectives" and, indeed, seek to condition funds "in a statutorily impermissible

10 manner." *See id*. Congress circumscribed AmeriCorps' discretion and directed it to "meet the unmet

11 human, educational, environmental, and public safety needs of the United States," 42 U.S.C.

12 § 12501(b)(1), by making "grants . . . to carry out full- or part-time national service programs,"

13 through services like tutoring, academic support, and mentorship. 42 U.S.C. §§ 12571(a),

14 12572(a)(1)(B). Congress directed that grant recipients can carry out the national service programs by

15 increasing mentorship opportunities for "*disadvantaged youths*," through activities such as "direct

16 mentoring" or "support [for] mentoring partnerships." *Id*. § 12572(b)(2)(C) (emphasis added). And

17 Congress directed that grant recipients should "promote[] greater community unity through the use of

18 organized teams of participants of *varied social* and *economic* backgrounds, skill levels, *physical and*

19 *developmental capabilities*, ages, *ethnic backgrounds*, or *genders*." *Id*. § 12572(c)(1)(A) (emphases

20 added). Similarly, Congress directed that AmeriCorps "shall give priority" to entities that submit

21 applications for programs "that are in the greatest need of assistance, such as programs targeting low-

22 income areas or serving economically disadvantaged youth." *Id*. § 12526(b).

23      The new conditions are in direct contradiction with the statutes authorizing the allocation of

24 funds; under the above authorities, this Court is empowered to declare as much.

25      Third, while these provisions and the provisions identified by Defendants, Opp. at 11, provide

26 Defendants with some discretion, it is not the type that renders judicial review unavailable. That they

27 cabin AmeriCorps' provision of funding for specific purposes means that Congress provided a

28 meaningful standard for this Court to use in measuring whether AmeriCorps' conduct was arbitrary

and capricious. Indeed, in the Ninth Circuit, even as little guidance from Congress as the words "reliable" and "currently available" is enough of a standard for courts to review. *Newman*, 223 F.3d at 943; *see also Beno v. Shalala*, 30 F.3d 1057, 1067 (9th Cir. 1994) (authorizing statute permitted "meaningful standard by which to judge" the agency's action where it prescribed how the action could be undertaken); *California v. Trump*, 379 F. Supp. 3d at 953 (authorizing statute's delineation of how funds should be used rendered 5 U.S.C. § 701(a)(2) inapplicable). Nor does it matter that AmeriCorps has discretion. "[C]ourts routinely treat discretion-laden standards" as subject to APA review because "'[e]ven if a determination is discretionary, it may still be rooted in a set of requirements or standards'"—like those above, *see also* Mot. at 11–12—"that courts can use to assess whether an agency wielded its discretion in a permissible manner." *Jajati*, 102 F.4th at 1017 (quoting *Perez Perez*, 943 F.3d at 862–63).

### B.     The Tucker Act Does Not Deprive This Court of Jurisdiction to Hear Challenges to Unlawful Conditions on Federal Grants.

This Court has jurisdiction to adjudicate Plaintiffs' constitutional and APA claims, and the Tucker Act does not provide otherwise.[2] District courts, including this one, have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Tucker Act provides jurisdiction in the Court of Federal Claims and waives the United States' sovereign immunity for *damages* claims "founded . . . upon any express or implied contract with the United States," or upon certain constitutional or statutory provisions that mandate the payment of money. 28 U.S.C. § 1491(a)(1); *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020). Plaintiffs' claims do not fall under the Tucker Act for two main reasons.

---

[2] Indeed, this Court, and courts across the country adjudicated multiple disputes about unlawful grant conditions imposed by the first Trump Administration without the administration ever raising this issue. *See, e.g.*, *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928 (N.D. Cal. 2019), *aff'd in part, vacated in part, remanded sub nom. City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924 (N.D. Cal. 2018), *judgment entered sub nom. California ex rel. Becerra v. Sessions*, No. 3:17-CV-04701-WHO, 2018 WL 6069940 (N.D. Cal. Nov. 20, 2018), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020); *Colo. v. U.S. Dep't of Just.*, 455 F. Supp. 3d 1034 (D. Colo. 2020); *New York v. Dep't of Just.*, 343 F. Supp. 3d 213 (S.D.N.Y. 2018), *rev'd and remanded sub nom. State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020); *City of Phila. v. Att'y Gen. of U.S.*, 916 F.3d 276 (3d Cir. 2019).

First, this is not "at its essence a contract action." Opp. at 12 (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)). Defendants articulate the right test—that courts evaluate both "the source of the rights" underlying a plaintiff's claims and "the type of relief sought (or appropriate)," Opp. at 12 (citing *Megapulse*, 672 F.2d at 968)—but misapply it here. Plaintiffs base their claims on the Constitution and the APA, not the grants themselves. The fact that a Court may have to consider the language of a contract (or here, Plaintiffs' original grant agreements) as part of its constitutional or statutory analysis does not convert the claim to one whose "essence" is a contract claim. *See Megapulse*, 672 F.2d at 969-70. Moreover, Plaintiffs seek vacatur of Defendants' new grant conditions and a declaration that those conditions are unlawful, not money damages. Vacatur of the AmeriCorps Directive is a far cry from damages as traditionally understood: a "substitute" for performance of contractual obligations. *E.g., Maryland Dep't of Hum. Res. v. Dep't of Health & Hum. Servs.*, 763 F.2d 1441, 1446 (D.C. Cir. 1985). Because Plaintiffs' rights and remedies are statutorily and constitutionally based, this Court has jurisdiction. *See United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (applying *Megapulse*).

Defendants' argument to the contrary simply ignores longstanding precedent. In *Bowen v. Massachusetts*, the Supreme Court squarely decided that plaintiffs may bring APA claims in district court seeking "specific relief" via an injunction or declaratory judgment, even if it results in the federal government having to pay money to the plaintiff. 487 U.S. 879, 893-901 (1988). Defendants' argument that courts lack the power to order specific performance of the federal government's *contract* obligations is therefore beside the point. *See* Opp. at 13 (citing *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989)).

Defendants' only contrary case cited, *U.S. Conference of Catholic Bishops v. U.S. Department of State*, now on appeal, refers only to Justice Scalia's dissent in *Bowen*, and the outcome clearly conflicts with *Bowen's* holding. *See* No. 1:25-cv-00465 (TNM), 2025 WL 763738, at *1 (D.D.C. Mar. 11, 2025), *appeal filed*, No. 25-5066 (D.C. Cir.). It stands alone among recent court rulings rejecting similar arguments from the Trump Administration in similar challenges to changes in federal funding programs. *E.g.*, *Aids Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. 25-00400 (AHA), 2025 WL 752378, at *8-10 (D.D.C. Mar. 10, 2025) (deciding that Tucker Act did not apply to a suit filed under

the APA challenging withholding of foreign aid); *Climate United Fund v. Citibank, N.A.*, No. 25-CV-698, 2025 WL 842360, at *6 (D.D.C. Mar. 18, 2025) (deciding that Tucker Act did not apply to claims that EPA unlawfully terminated plaintiffs' grants); *California v. U.S. Dep't of Educ.*, No. 25-1244, at 8 (1st Cir. Mar. 21, 2025) (affirming district court's decision that the Tucker Act was not a jurisdictional bar to a TRO in applying the APA).

Second, the Tucker Act "yields when . . . the [APA] provides an avenue for relief." *Maine Cmty. Health Options,* 590 U.S. at 323-24. This must be so because APA claims such as Plaintiffs' to set aside unlawful agency action generally *cannot* be brought in the Court of Federal Claims. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006) (deciding that the Court of Federal Claims lacked jurisdiction over "a routine APA case"); *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007) (claims under the Tucker Act generally cannot be for equitable relief, only monetary relief, except in limited circumstances). As they did by imposing the AmeriCorps Directive in the first place, Defendants yet again ignore Congressional commands—in this instance, to provide a judicial forum and waiver of sovereign immunity to review unlawful agency action. 5 U.S.C.§ 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").

Defendants' Tucker Act theory is simply contrary to law.

## II.     Plaintiffs Have Demonstrated Irreparable Harm.

Defendants ignore the specific and substantiated harms that both SFUSD and Santa Fe are currently experiencing and will continue to experience until this Court enjoins the new AmeriCorps conditions. For several reasons, Plaintiffs have demonstrated irreparable harm—including current, ongoing harm—warranting emergency relief. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

First, Defendants all but ignore the fact that the AmeriCorps Directive required Plaintiffs to "cease [all noncompliant] activities immediately." Request for Judicial Notice in Support of Plaintiffs' Motion for Temporary Restraining Order ("RJN"), Ex. A at 2. This caused and continues to cause irreparable harm. Plaintiffs have been forced to make unwanted, detrimental changes to their AmeriCorps-funded programs. As discussed in Plaintiffs' Motion, these changes have included pulling

7

back support for LGBTQ+ student groups in schools where AmeriCorps Members led them and revamping weekly trainings for AmeriCorps Members to remove evidence-based practices related to diversity, equity, and inclusion. Declaration of Laurie Vargas-Zeuschner in Supp. of Mot. for Temp. Restraining Order ("Vargas Decl.") ¶¶ 26–28. Plaintiffs submitted evidence to explain why these changes are harmful: withdrawing this support and removing these aspects of weekly trainings results in harm to students' wellbeing and negatively impacts Members' ability to perform their jobs. Vargas Decl. ¶¶ 26, 28. Based on this showing alone, Plaintiffs have satisfied their burden to demonstrate irreparable harm. Only an order from this Court can prevent AmeriCorps from continuing to require Plaintiffs to stop "noncompliant" activities and allow Plaintiffs to operate their programs as originally approved, in ways that promote, rather than undermine, student wellbeing.

Second, apart from these concrete, ongoing harms, Plaintiffs also face harm from the uncertainty caused by the new conditions and the threat of a total loss of funding. Plaintiffs are expending resources to catalog and anticipate objections to nearly every activity performed under their AmeriCorps grants. Vargas Decl. ¶¶ 26, 32; Declaration of Henri Hammond-Paul in Supp. of Mot. for Temp. Restraining Order ("Hammond Decl.") ¶¶ 32, 34. Further, Plaintiffs face the prospect of having to make further changes to even more fundamental aspects of their programs to retain their grants. Santa Fe, for example, is unsure whether its entire Foster Grandparent program, which serves children from racially diverse and economically disadvantaged communities, can exist at all, as the one-on-one mentoring provided by Foster Grandparents works inherently to close opportunity gaps, and thus could be viewed as "promoting" DEI. Hammond Decl. ¶ 27. If the federal government decides that these inherent aspects of Plaintiffs' programs are incompatible with the new conditions, Defendants will force Plaintiffs to relinquish their grants.[3] RJN, Ex. A at 5. Losing this funding entirely clearly

---

[3] Defendants suggest that any harm from grant terminations would not be imminent because Plaintiffs could avail themselves of an administrative process, but such administrative procedures are irrelevant. Pursuant to the regulations cited by Defendants, such hearings are to occur when the grant recipient fails to comply with grant terms and conditions. Opp. at 8 (citing 45 C.F.R. §§ 1206.1-5, 2540.400, & 2 C.F.R. § 200.34). Plaintiffs want to comply with their grant terms and conditions as originally executed. Plaintiffs require an order from this Court to prevent Defendants from imposing new, unlawful conditions on Plaintiffs that are causing irreparable harm, including a looming threat that Plaintiffs' grants will be terminated in an ultra vires manner.

constitutes irreparable injury. *See City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 408 F. Supp. 3d 1057, 1124 (N.D. Cal. 2019), *aff'd.*, 981 F.3d 742 (9th Cir. 2020).

Defendants callously contend that there is no evidence that taking away or modifying these important services for children and seniors causes irreparable harm. While Plaintiffs sincerely hope that altering their programs to attempt to comply with Defendants' unlawful conditions does not permanently disrupt students' development, this is not the legal showing Plaintiffs are required to make. Instead, Plaintiffs must show, and have shown, that the harm caused by Defendants' conduct cannot be ameliorated adequately later. *See, e.g.*, *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (significant environmental injury, by its nature, cannot be remedied later by money and therefore generally constitutes irreparable harm).

Plaintiffs submitted evidence that various services provided under their AmeriCorps grants "improve [student] wellbeing" and, without them, "students' social-emotional functioning and pro-social behaviors [will] likely decrease, while suspensions and bullying may increase." Vargas Decl. ¶¶ 28, 33. SFUSD also submitted evidence that "one of the most important aspects of mentorship is that students feel listened to and heard," but that Members cannot successfully achieve this in such a diverse school district without being able to discuss DEI-related topics. *Id*. ¶ 31. These are not the kinds of harms that money can reverse. Indeed, in similar contexts, courts have recognized that the discontinuation of services meant to support students' development causes irreparable harm. In the special education context, "'[i]t is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm.'" *N. D. v. Reykdal*, 102 F.4th 982, 995 (9th Cir. 2024) (alteration in original) (quoting *Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001)). This Court should decline Defendants' invitation to trivialize Plaintiffs' genuine harms.

Third, Defendants' purported voluntary cessation arguments do not negate Plaintiffs' showing of irreparable harm. Even if Defendants were to stop enforcing the AmeriCorps Directive going forward, it would not change the fact that Plaintiffs already submitted revised grant applications under duress and were forced to immediately stop "noncompliant" activities. That irreparable harm already occurred, and nothing in Defendants' brief suggests Plaintiffs could revert to their previously approved

grant programs without consequences. Furthermore, Defendants' assurances are illusive. Defendants assert that "AmeriCorps is not currently taking further action on Plaintiffs' grants with respect to [the AmeriCorps Directive]," Opp. at 7. This does not provide even cold comfort. Indeed, on March 17, AmeriCorps forced Santa Fe to revise and resubmit its RSVP continuation grant to comply with the new conditions, Hammond Decl. ¶¶ 37–39, putting the lie to AmeriCorps' assertion that it would take "no further action" to enforce the new conditions "until lawsuits challenging the legality of the applicable executive orders have been resolved," Opp. at 5, since several lawsuits remain pending. *E.g.*, *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 1:25-CV-00333-ABA, 2025 WL 573764 (D. Md. Feb. 21, 2025), *opinion clarified*, 2025 WL 750690 (D. Md. Mar. 10, 2025), *appeal filed*, No. 25-1189 (4th Cir.); *R.I. Latino Arts v. Nat'l Endowment for the Arts*, No. 1:25-cv-00079 (D.R.I. filed Mar. 6, 2025). Plaintiffs do not credit Defendants' gestures at voluntary cessation, and this Court should not either.

Even if Defendants' assurances could be credited, other courts have been unwilling to allow such arguments to negate a plaintiff's claim of irreparable injury. *See NJOY, LLC v. iMiracle (HK) Ltd.*, No. 24-CV-00397-BAS-JLB, 2024 WL 5324728, at *7 (S.D. Cal. Dec. 20, 2024) (finding irreparable harm despite defendant's voluntary cessation). Voluntary cessation of a defendant's conduct moots a case only when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Exp. Ass'n, Inc.*, 393 U.S. 199, 203 (1968). Defendants here have a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). Defendants cannot meet this "heavy" burden because they are, in fact, still enforcing the AmeriCorps Directive.[4] Hammond Decl. ¶¶ 37–39; Vargas Decl. ¶¶ 24, 26–28.

---

[4] Defendants' argument elevates the Catch-22 they have created for Plaintiffs and other AmeriCorps grant recipients. If, as they suggest, Defendants have approved grant amendments universally based on language changes submitted by grantees without further investigation, and they will in fact not be taking further action, then the new requirements have no purpose other than to harass or coerce recipients to voluntarily cease certain practices. And Plaintiffs must be protected against having to change such practices without authority. On the other hand, if Defendants plan to lie in wait and then punish supposed noncompliant programs based on unlawfully added additional terms and conditions, then the need for injunctive relief arises from the threat of enforcement.

Finally, Plaintiffs have constitutional injuries as a result of the new conditions, which violate the Spending Clause. The Ninth Circuit has repeatedly held that "the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation marks and citation omitted); *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). A plaintiff suffers a constitutional injury when, as here, it is forced to comply with an unconstitutional requirement or else face financial injury or enforcement action. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 537 (N.D. Cal. 2017). Defendants suggest that because Plaintiffs submitted revised grant applications, and Defendants view Santa Fe as "now compliant" and SFUSD as possibly compliant, Opp. at 9, and because Plaintiffs did not have to "entirely change, or essentially cancel, their respective programs" that Plaintiffs' harm is somehow overblown. Opp. at 8. But this completely ignores that Plaintiffs were forced to submit those proposed application changes—not to mention making actual, substantive programmatic changes—under duress and as a result of unlawfully imposed conditions. Without this Court's intervention, harm to seniors, children, and Plaintiffs' communities will endure and Plaintiffs' constitutional injuries will be prolonged. Plaintiffs have met their burden to establish a likelihood of irreparable injury. *Winter*, 555 U.S. at 20.

## III.    The Balance of Equities and Public Interest Favor a TRO.

As discussed above, Defendants do not challenge the merits of Plaintiffs' arguments that the new AmeriCorps conditions violate both the Spending Clause and the APA. Rather, Defendants only argue, incorrectly, that the Court lacks subject matter jurisdiction and that Plaintiffs have failed to show irreparable harm. Opp. at 8–13. Because this Court has jurisdiction to consider Plaintiffs' claims, *supra* I.A.B., and because Plaintiffs have demonstrated a likelihood of success on the merits of their claims, Mot. at 7–17, the public interest favors granting a TRO. *See Melendres*, 695 F.3d at 1002. And without immediate relief, there will continue to be serious harm to Plaintiffs, their communities, and other AmeriCorps grant recipients.[5] *See* Mot. at 21. Defendants' failure to address these arguments

---

[5] Defendants suggest that Plaintiffs have failed to show a public interest in a TRO since Plaintiffs' harms are specific to them. *See* Opp. at 14. However, as discussed below, Defendants' actions impact all AmeriCorps grantees, establishing the broad public interest in a TRO. *See* section IV, *infra*.

strongly favors a TRO, as their non-opposition waives any challenge that a violation of the Spending

Clause or APA would constitute a strong public interest. *See Hyatt*, 587 U.S. at 235 n.1.

Moreover, Defendants failed to submit any evidence of harm to the federal government or that

the public interest is served by denying the TRO. Indeed, Defendants' apparent willingness to

voluntarily cease implementation of the new conditions, Opp. at 5, 8, 9; Declaration of Carly Bruder in

Support of Defendants' Opposition ("Bruder Decl.") ¶ 19, suggests that they will face no harm by not

enforcing the AmeriCorps Directive, further establishing that the balance of equities favors Plaintiffs.

**IV.    The Preliminary Relief Should Enjoin the Full Scope of Defendants' Unlawful Conduct.**

Preliminary relief need not be limited to the grants Plaintiffs have identified in their motion for

temporary restraining order. *See* Opp. at 14. While preliminary injunctions should be "tailored to

remedy the specific harm alleged," *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th

1180, 1195 (9th Cir. 2024) (quotation marks and citation omitted), a "district court has considerable

discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v.

McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991).

Here, the harm stems from Defendants' enforcement of unlawful conditions against grant

recipients, including Plaintiffs. Because the AmeriCorps Directive is unlawful, and equally unlawful

as to all grant recipients, it should be enjoined entirely. *See Bresgal v. Brock*, 843 F.2d 1163, 1171 (9th

Cir. 1987) (affirming in part injunction requiring the Secretary of Labor to enforce a federal statute);

*Washington v. Trump*, 847 F.3d 1151, 1166-67 (9th Cir. 2017) (affirming injunction against travel ban

executive order). This is consistent with the Supreme Court's direction that "the scope of injunctive

relief is dictated by the extent of the violation established, not by the geographical extent of the

plaintiff." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (citation omitted). It also ensures federal

law applied uniformly, which is vital given that all AmeriCorps grant recipients are subject to the

new unlawful conditions. *See* Bruder Decl. ¶ 10; *Texas v. United States*, 809 F.3d 134, 187-88 (5th

Cir. 2015) (affirming nationwide scope of injunction to prevent enforcement of a federal statute

because federal law should be applied uniformly); *New York v. U.S. Dep't of Homeland Sec.*, 475 F.

Supp. 3d 208, 230-31 (S.D.N.Y. 2020) (issuing a nationwide injunction due to the volume of

stakeholders and the interest in uniform relief).

*Flathead-Lolo-Bitterroot* does not change this analysis. Defendants urge that *Flathead-Lolo-Bitterroot* demonstrates that an injunction "must be no broader and no narrower than necessary to redress the injury shown *by the plaintiffs*." Opp. at 14. But nothing in *Flathead-Lolo-Bitterroot* indicates an injunction must only address plaintiffs' injury. *See* 98 F.4th at 1195-97. Rather, there, the district court entered an injunction to protect grizzlies during the wolf-trapping season. *Id*. at 1187. While the Ninth Circuit held that the district court's order was geographically overbroad as it covered areas outside grizzlies' occupied range, the Ninth Circuit took no issue with the fact that the injunction limited the wolf-trapping season for everyone. *See id.* at 1195-97. Further, in contrast, AmeriCorps' conduct applies to all grant recipients across the country; it is not confined to a specific range of states, making *Flathead-Lolo-Bitterroot* inapposite. *See id*. at 1196-97.

Finally, a broad injunction preserves the resources of the federal courts: the alternative would require grantees across the country to flood federal courts with follow-on complaints and motions seeking the same relief to curb the same unlawful conduct. Enforcement of the Directive impacts all AmeriCorps grantees, and it would be equally unlawful as applied to all, not just Plaintiffs. As such, this Court should grant relief consistent with Plaintiffs' proposed injunction, ECF No. 18-9.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court grant a temporary restraining order prohibiting Defendants from enforcing the AmeriCorps Directive and new conditions, withholding funding on the basis of those unlawful conditions, or imposing any similar conditions on AmeriCorps grants by another name, and issue an order to show cause why a preliminary injunction should not be issued.

Dated: March 21, 2025

1

2                   DAVID CHIU
                   City Attorney, City and County of San Francisco
3                   YVONNE R. MERÉ
                   Chief Deputy City Attorney
4                   MOLLIE M. LEE
                   Chief of Strategic Advocacy
5                   SARA J. EISENBERG
                   Chief of Complex and Affirmative Litigation
6                   MOLLY J. ALARCON
                   Deputy City Attorney

By: */s/ Molly J. Alarcon*
MOLLY J. ALARCON
Deputy City Attorney

WILLKIE FARR & GALLAGHER LLP
Benedict Hur
Simona Agnolucci
Eduardo Santacana
Stephen Henrick
Alyxandra Vernon
Michael Morizono

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

By: */s/ Erin K. Sherry*
ERIN K. MCSHERRY*
City Attorney City of Santa Fe, New Mexico
200 Lincoln Ave Santa Fe, NM 87501
505-955-6512
ekmcsherry@santafenm.gov

Jill Habig, SBN 268770
Jonathan B. Miller (admitted pro hac vice)
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
jon@publicrightsproject.org

Attorneys for Plaintiff
CITY OF SANTA FE, NEW MEXICO

* Application for admission pro hac vice
forthcoming

1

**FILER'S ATTESTATION**

2

I, Molly Alarcon, am the ECF user whose identification and password are being used to file

3

this document. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named

4

signatories concur in this filing.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO MOTION FOR TRO
CASE NO. 3:25-CV-02425-EMC