DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5402
Telephone:     (415) 554-3894
Facsimile:     (415) 437-4644
E-Mail:        molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR, SBN 224018
bhur@willkie.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@willkie.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@willkie.com
STEPHEN HENRICK, SBN 310539)
shenrick@willkie.com
ALYXANDRA VERNON, SBN 327699
avernon@willkie.com
MICHAEL MORIZONO, SBN 359395
mmorizono@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:    (415) 858-7400

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,<br><br>Defendants. | Case No. 3:25-cv-02425-EMC<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF ISO TEMPORARY RESTRAINING ORDER** |

**TABLE OF CONTENTS**

**Page**

Introduction ................................................................................................................................... 1

Argument ....................................................................................................................................... 2

    I.    Nothing in *Department of Education v. California* Alters This Court's Jurisdiction Over Plaintiffs' Spending Clause Claim, Which Alone Justifies the TRO ................................................................................................................................ 2

    II.   The Supreme Court's Limited Analysis in Its Per Curiam Order Does Not Apply to APA Claims to Set Aside Unlawful Grant Conditions ............................. 4

Conclusion .................................................................................................................................... 5

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AIDS Vaccine Advocacy Coalition v. Dep't of State*,
 No. 1:25-cv-400-AHA (D.D.C.), ECF No. 56 ................................................................................ 3

*Alvarado Hosp., LLC v. Price*,
 868 F.3d 983 (Fed. Cir. 2017) ........................................................................................................ 5

*Bowen v. Massachusetts*,
 487 U.S. 879 (1988) ....................................................................................................................... 4

*Great-West Life & Annuity Ins. Co. v. Knudson*,
 534 U. S. 204 (2002) ...................................................................................................................... 5

*IAP Worldwide Servs., Inc. v. United States*,
 160 Fed. Cl. 57 (2022) ................................................................................................................... 3

*Jan's Helicopter Serv., Inc. v. FAA*,
 525 F.3d 1299 (Fed. Cir. 2008) ...................................................................................................... 3

*LeBlanc v. United States*,
 50 F.3d 1025 (Fed. Cir. 1995) .................................................................................................... 2, 3

*Lummi Tribe of the Lummi Rsrv., Wash. v. United States*,
 870 F.3d 1313 (Fed. Cir. 2017) ...................................................................................................... 3

*Maine Cmty. Health Options v. United States*,
 590 U.S. 296 (2020) ................................................................................................................... 2, 3

*Mendoza-Linares v. Garland*,
 51 F.4th 1146 (9th Cir. 2022) ......................................................................................................... 2

*Stanley v. Gonzales*,
 476 F.3d 653 (9th Cir. 2007) .......................................................................................................... 2

*Sustainability Inst., et al., v. Trump, et al.*,
 Case No. 2:25-02152 (D. S.C.) ...................................................................................................... 5

*U.S. Dep't of Educ. v. California*,
 No. 24A910, 604 U.S. ----, 2025 WL 1008354 (April 4, 2025) ........................................... 1, 2, 4, 5

*United States v. Testan*,
 424 U.S. 392 (1976) ................................................................................................................... 2, 3

*Webster v. Doe*,
 486 U.S. 592 (1988) ....................................................................................................................... 2

**Statutes**

28 U.S.C. § 1331 ................................................................................................................................2

28 U.S.C. § 1491(b)(2) .......................................................................................................................3

**Other Authorities**

U.S. Const., amend. I .........................................................................................................................3

U.S. Const., amend. XIV ...................................................................................................................3

**Introduction**

The Supreme Court's per curiam order in *U.S. Department of Education v. California,* 604 U.S. ----, 2025 WL 1008354, No. 24A910 (Apr. 4, 2025) (per curiam) ("*Department of Education*" or the "Order"), has no impact on this Court's subject-matter jurisdiction or on the existing TRO.

As an initial matter, as the federal government has conceded in other cases and impliedly conceded here, its Tucker Act defense only applies to APA claims brought by grantees and does not apply to constitutional claims like the Spending Clause claim SFUSD and Santa Fe have raised. There is no dispute that this Court has jurisdiction over that constitutional claim. *See* Part I, *infra.*

Moreover, *Department of Education* does not undermine this Court's conclusion that the Tucker Act is inapplicable to Plaintiffs' APA claims. *Department of Education* involved a challenge to blanket terminations of grants. As characterized by the federal government, the state plaintiffs in that case were seeking to force the federal government to "open[] federal funding spigots." Application to Vacate the Order Issued by the United States District Court For the District Of Massachusetts and Request For An Immediate Administrative Stay ("App.") at 4.[1] Here, by contrast, Plaintiffs are seeking to prevent the federal government from enforcing unconstitutional grant conditions, and are therefore not trying to turn on a funding spigot for monetary relief. Put differently, Plaintiffs do not seek an "order [mandating] the payment of money under the APA." *Dep't of Educ.*, 2025 WL 1008354, at *1. *See* Part II, *infra*. For both of these reasons, this Court continues to have jurisdiction over Plaintiffs' claims.

Accordingly—and because nothing in *Department of Education* impacts this Court's jurisdictional analysis or its findings as to irreparable harm, the balance of the hardships, or the public interest—this Court can and should maintain the existing TRO regardless of whatever impact *Department of Education* may have on Plaintiffs' APA claims.

---

[1] App. available at: http://www.supremecourt.gov/DocketPDF/24/24A910/353030/20250326114427721_24A%20Ed%20v.%20CA%20appl.pdf

## Argument

**I. Nothing in *Department of Education v. California* Alters This Court's Jurisdiction Over Plaintiffs' Spending Clause Claim, Which Alone Justifies the TRO**

Defendants' Tucker Act defense is relevant only to Plaintiffs' APA claims, not its non-statutory constitutional claims. As such, the Order has no bearing on Plaintiffs' standalone claim under the Spending Clause, which provides an independent basis for the TRO and this Court's jurisdiction.

As the Supreme Court and the Ninth Circuit have long held, to "preclude judicial review of constitutional claims" Congress must express a "clear" "intent to do so." *Webster v. Doe*, 486 U.S. 592, 603 (1988); *Stanley v. Gonzales*, 476 F.3d 653, 656 (9th Cir. 2007) ("In *Webster*, the Supreme Court held that a party must demonstrate a 'heightened showing' that Congress intended to eliminate judicial review when a federal statute is construed to deny any judicial forum for a colorable constitutional claim."). The Tucker Act nowhere expresses a "clear" intent to preclude judicial review of constitutional claims, and Defendants make no showing—let alone a heightened one—demonstrating that Congress intended the Tucker Act to eliminate judicial review of constitutional claims. They also cite no case (because there is none) so holding. *Cf. Mendoza-Linares v. Garland*, 51 F.4th 1146, 1160-62 (9th Cir. 2022) (Congress evidenced clear intent to preclude judicial review of constitutional claims by amending the Immigration and Naturalization Act to expressly limit "review of constitutional claims or questions of law" under certain provisions of the Act). Rather, it is clear that this Court has jurisdiction over Plaintiffs' Spending Clause claim under 28 U.S.C. § 1331, as this Court rightly concluded. Order Granting Plaintiffs' Motion for a Temporary Restraining Order and Order to Show Cause ("TRO"), Dkt. No. 33 at 4.

Further, the Court of Federal Claims (CFC) lacks jurisdiction over constitutional claims seeking equitable relief—that is, like the constitutional claims raised here, Complaint for Declaratory and Injunctive Relief ("Complaint"), Dkt. No. 1 at ¶¶ 107–09, 111, Prayer for Relief—that do not "mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *United States v. Testan*, 424 U.S. 392, 398 (1976) (the Tucker Act confers jurisdiction only when a constitutional provision expressly creates a substantive right enforceable against the federal government for money damages). Courts have interpreted language in the Tucker Act authorizing the CFC to hear claims "founded [] upon the Constitution" as being limited to those that are "money-

mandating," i.e., if the provision "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 322-23 (2020). As an example, the Federal Circuit has held that the Takings Clause is a money-mandating constitutional provision over which the CFC has jurisdiction. *See, e.g.*, *Jan's Helicopter Serv., Inc. v. FAA*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). In contrast, the CFC lacks jurisdiction over constitutional claims that do not mandate the payment of money to specific persons as damages for violations, like claims under the Due Process Clause, the Equal Protection Clause, and the First Amendment—as well as the doctrine of separation of powers. *See LeBlanc*, 50 F.3d at 1028 (collecting cases); *cf. Lummi Tribe of the Lummi Reservation, Washington v. United States*, 870 F.3d 1313, 1317-20 (Fed. Cir. 2017) (block grant statute was not "money-mandating" and therefore the CFC lacked jurisdiction).

Thus, because Plaintiffs' Spending Clause claim is not a "money-mandating" one, but rather seeks declaratory and injunctive relief, the CFC lacks jurisdiction over it. *See id*. Indeed, Defendants implicitly conceded this point by discussing only the APA in their Tucker Act arguments. *E.g.*, Defendants' Opp. to Motion for Temporary Restraining Order, Dkt. No. 30 at 11 ("the proper remedy is typically suit under the Tucker Act, not the APA."). And, the federal government made a similar concession at a recent hearing in a similar funding case. *See AIDS Vaccine Advocacy Coal. v. Dep't of State*, No. 1:25-cv-400-AHA (D.D.C.), Hearing Transcript, Mar. 8, 2025, ECF No. 56 at 87 (conceding that the Tucker Act defense applied only to the APA claim and not to a separation of powers claim).

The federal government *must* concede this point; otherwise, a plaintiff denied a grant on the basis of his race in violation of the Fourteenth Amendment would have no forum to obtain non-monetary, prospective injunctive relief. *See Maine Cmty. Health Options*, 590 U.S. at 327 (the CFC does not have the general equitable powers of district courts to order prospective relief).[2] Therefore,

---

[2] There are limited exceptions to this rule not relevant here. *Cf. Testan*, 424 U.S. at 404 (1976) (discussing Tucker Act remand statute that authorizes CFC to remand matters within its jurisdiction to federal bodies); 28 U.S.C. § 1491(b)(2) (authorizing CFC to award any relief it deems proper in challenges to federal procurement decisions); *see also IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57, 65 (2022) (discussing same).

based on Plaintiffs' likelihood of success on the merits of their Spending Clause claim, TRO, Dkt. No. 33 at 5, the Court can and should uphold the TRO.

## II. The Supreme Court's Limited Analysis in Its Per Curiam Order Does Not Apply to APA Claims to Set Aside Unlawful Grant Conditions

Because the Court can maintain the TRO on the basis of Plaintiffs' Spending Clause claim alone, the Court need not consider what, if any, effect *Department of Education* has on Plaintiffs' APA claims until later—such as when it considers whether to issue a preliminary injunction. Should the Court decide to consider the impact of the Order on Plaintiffs' APA claims for purposes of maintaining the TRO, it can swiftly conclude that it retains jurisdiction over those claims as well.

As an initial matter, it bears noting that the Order was issued "with barebones briefing, no argument, and scarce time for reflection." *Department of Education,* 2025 WL 1008354, at *2 (Kagan, J., dissenting). The Order is not dispositive on the application of the Tucker Act in cases involving federal grants, and the Court left open the possibility that the District Court could evaluate the state plaintiffs' claims on a more fulsome record and reach a different conclusion about the nature of the relief sought. *Id.* at *1 (concluding only that the federal government "is likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."); *see also id*. at *10 n.7 (Jackson, J., dissenting).

Further, in its Order, the Supreme Court cited approvingly to *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988), for the proposition that the Tucker Act does not provide a forum in the CFC for APA claims, like Plaintiffs' here, that seek "an order setting aside an agency's action [that] may result in the disbursement of funds." *Department of Education,* 2025 WL 1008354, at *1 (citing *Bowen*, 487 U.S. at 910). This precisely aligns with this Court's holding that the Tucker Act does not displace jurisdiction over Plaintiffs' APA claims, because Plaintiffs seek prospective relief to set aside unlawful agency action. *See* Feb. 28, 2025 TRO Hearing Transcript at 81–82.

In any event, Plaintiffs' APA claims seek relief that is markedly different than the relief sought in *Department of Education*, as characterized by the Supreme Court. As stated, there, the plaintiff states' claims were understood as an attempt to enforce contractual obligations to pay money after the Department of Education terminated various grants. 2025 WL 1008354, at *1; *see also* App. at 4 (arguing that the state plaintiffs sought to turn on the "spigot" of federal funding). To support this

characterization, the Court relied upon a single ERISA case, reflecting its view that the state plaintiffs' claims to obtain promised education grants were akin to claims seeking "to enforce a contractual obligation to pay money *past due*." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (emphasis added); *see also* Order, 2025 WL 1008354, at *1.[3]

In contrast, Plaintiffs do not seek to revive a contractual obligation to pay money following termination, nor to require Defendants to pay money past due. Instead, they seek an injunction invalidating the AmeriCorps Directive and enjoining Defendants from imposing unlawful conditions. This is demonstrated by Plaintiffs' prayer for relief, which seeks a "preliminary and permanent injunction enjoining Defendants from taking any steps to implement or enforce AmeriCorps Directive." Complaint, Dkt. No. 1 at 28. It is also reflected in the Court's TRO, which enjoins Defendants from "requiring Plaintiffs to make any 'certification' or other representation related to compliance with the [new conditions]" or "modifying, or requiring Plaintiffs to modify, the terms of any of Plaintiffs' extant federal grants and contracts to comply with the [new conditions], or adding, or requiring Plaintiffs to add, any terms to forthcoming grants and contracts predicated on the [new conditions] or similar language." TRO, Dkt No. 33 at 12. These are precisely the kinds of claims for relief the CFC cannot hear. *E.g.*, *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017). The TRO's focus on preventing the application of unlawful conditions on Plaintiffs renders *Department of Education* wholly inapplicable.[4]

### Conclusion

This Court need not decide now whether the Order has any present effect, and can maintain the TRO based on Plaintiffs' Spending Clause claim alone. If the Court decides to parse the Order now, it can easily distinguish the Supreme Court's view of the state plaintiffs' claims for money due from Plaintiffs' claims in this action for prospective relief to set aside AmeriCorps' new, unlawful grant conditions. There is no basis for this Court to find it lacks subject matter jurisdiction.

---

[3] While the Order omitted this "past due" qualifier from *Great-West*, the Court presumably took as a given that the claim in that case was for money past due. *Compare* 2025 WL 1008354, at *1 *with Great-West*, 534 U.S. at 212 ("to enforce a contractual obligation to pay money past due").

[4] Just today, the District Court in *The Sustainability Institute, et al., v. Trump, et al.*, a challenge to certain federal funding freezes, decided that *Department of Education* did not impact its jurisdiction. Case No. 2:25-02152 (D. S.C.), Dkt. No. 52 at 5-7.

Dated: April 9, 2025

DAVID CHIU
City Attorney, City and County of San Francisco
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON
Deputy City Attorney

By: /s/ Molly J. Alarcon
MOLLY J. ALARCON
Deputy City Attorney

WILLKIE FARR & GALLAGHER LLP
Benedict Hur
Simona Agnolucci
Eduardo Santacana
Stephen Henrick
Alyxandra Vernon
Michael Morizono

Attorneys for Plaintiff
CITY AND COUNTY OF SAN FRANCISCO

By: /s/ Erin K. Sherry
ERIN K. MCSHERRY*
City Attorney City of Santa Fe, New Mexico
200 Lincoln Ave Santa Fe, NM 87501
505-955-6512
ekmcsherry@santafenm.gov

Jill Habig, SBN 268770
Jonathan B. Miller*
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
jon@publicrightsproject.org

Attorneys for Plaintiff
CITY OF SANTA FE, NEW MEXICO

* Admitted pro hac vice

**FILER'S ATTESTATION**

I, Molly Alarcon, am the ECF user whose identification and password are being used to file this document. Pursuant to Civil Local Rule 5-1(i)(3), I hereby attest that the other above-named signatories concur in this filing.