UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICORPS, A.K.A. THE CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, et al.,<br><br>Defendants. | Case No. 25-cv-02425-EMC<br><br>**ORDER ON SUBJECT MATTER JURISDICTION**<br><br>Docket No. 18 |

## I. INTRODUCTION

Plaintiffs, the San Francisco Unified School District ("SFUSD") and the City of Santa Fe ("Santa Fe"), filed a lawsuit against Defendants Corporation for National and Community Service ("AmeriCorps") and its Interim Agency Head Jennifer Bastress Tahmasebi in her official capacity, seeking declaratory and injunctive relief. The complaint alleges, in part, violations of the United States Constitution and the Administrative Procedure Act ("APA"). On March 31, 2025, the Court granted Plaintiffs' motion for a temporary restraining order ("TRO") to enjoin Defendants from imposing and enforcing new conditions on Plaintiffs' AmeriCorps grants. *See* Dkt. 33. There, the Court included that a "more complete written order articulating the Court's jurisdictional analysis will follow." *Id.* at 4. This order articulates why the Court has subject matter jurisdiction over Plaintiffs' claims.

## II. LEGAL STANDARD

For temporary injunctive relief, a plaintiff must show that:
    (1) they are likely to succeed on the merits,
    (2) they are likely to suffer irreparable harm absent preliminary relief,
    (3) the balance of equities tips in their favor, and

>(4) an injunction is in the public interest.
>
>[A court] employ[s] a "sliding scale test," which allows a strong showing on the balance of hardships to compensate for a lesser showing of likelihood of success. Thus, when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show "serious questions" on the merits.

*Where Do We Go Berkeley v. Cal. DOT*, 32 F.4th 852, 859 (9th Cir. 2022) (spacing added); *see Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Further, because "a strong showing on the balance of hardships" can "compensate for a lesser showing of likelihood of success," "when plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits." *Id.* (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). At the TRO hearing the Court found the requisite showing for relief under *Winter* were met. This supplemental order sets forth the Court's analysis of jurisdiction.

### III.     DISCUSSION

**A.     Likelihood of Success on the Merits: Subject Matter Jurisdiction**

As the Court ruled on the bench during the hearing on Plaintiffs' motion for a temporary restraining order and order to show cause, this Court has subject matter jurisdiction over Plaintiffs' claims. *See* Dkt. 34 (Minute entry for March 28, 2025 proceeding). This order supplements the Court's oral findings at the hearing.

As a general rule, under 28 U.S.C. § 1331, a federal court has subject matter jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs allege violations of the Administrative Procedure Act ("APA") and the Spending Clause of the Constitution. Because the action involves federal questions, this Court has subject matter jurisdiction over Plaintiffs' claims.

**1.     Waiver of Sovereign Immunity**

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *see United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction"). The issue

here is whether sovereign immunity of AmeriCorp as a federal agency has been waived.

### a. APA § 702 Waives AmeriCorps' Sovereign Immunity

The APA envisions "a basic presumption of judicial review," *Lincoln v. Vigil*, 508 U.S. 182, 190 (1993), waiver of sovereign immunity which permits judicial review is expressed in APA § 702 which provides:

> An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party**.**

5 U.S.C. § 702.  Notwithstanding Defendant's contention to the contrary, §702 applies here for two reasons.

First, Plaintiffs seek declaratory and injunctive relief – relief "other than money damages." *See Dep't of Army v. Blue Fox, Inc.,* 525 U.S. 255 (1999) ("§ 702 waives the Government's immunity from actions seeking relief 'other than money damages') (citing 5 U.S.C. § 702).  In particular, § 702 authorizes "judicial review of [agency] actions" for declaratory and injunctive relief. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("[I]nsofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages").  In the case at bar, Plaintiffs seek declaratory and injunctive relief. *See* Dkt. 1 ("Complaint for Declaratory and Injunctive Relief").  For example, Plaintiffs request a "declaration that the AmeriCorps Directive is unconstitutional and invalid." *Id.* at 28 ("Prayer for Relief).  Further, Plaintiffs seek, in part, "preliminary and permanent injunction[s]" to enjoin "Defendants from taking any steps to implement or enforce" the "AmeriCorps Directive" and "the new grant conditions." *Id.*  Further, Plaintiffs seek an "order vacating the AmeriCorps Directive under 5 U.S.C. § 706" and an "order directing Defendants to restore the original grant conditions for Plaintiffs' AmeriCorps grants." *Id.*  Plaintiffs are not seeking "money damages" within the meaning of § 702.  Indeed, they are not, at this juncture, seeking payment of any moneys.

Second, the Supreme Court has long applied a "strong presumption favoring judicial review of administrative action" because "legal lapses and violations occur, and especially so when they have no consequence." *Mach Mining, LLC v. E.E.O.C.,* 575 U.S. 480, 489 (2015).

3

1    That presumption applies with particular force here where Congress specifically intended for §
2    702 to allow for judicial review of the administration of federal grant-in-aid programs. In *Bowen*
3    *v. Massachusetts*, the Supreme Court specifically noted:

> [B]oth the House and Senate Committee Reports indicate that Congress understood that § 702, as amended, would authorize judicial review of the 'administration of Federal grant-in-aid programs.' The fact that grant-in-aid programs were expressly included in the list of proceedings in which the Committees wanted to be sure the sovereign-immunity defense was waived is surely strong affirmative evidence that the members did not regard judicial review of an agency's [decision to withhold funds promised to grant-in-aid recipients by statute] as an action for damages.

*Id*. The Court referred to a "1970 [Congressional] Hearing [recommending statutory reform of the sovereign immunity doctrine] and the earlier scholarly writings" that "cited cases involving challenges to federal grant-in-aid programs." *Id.* at 898. These grant-in-aid programs concern the payment of federal funds to school districts. *See Dermott Special Sch. Dist. of Chicot Cnty. v. Gardner,* 278 F. Supp. 687 (E.D. Ark. 1968) (action by school district challenging conditions for eligibility of district for federal financial assistance); *see Lee Cnty. Sch. Dist. No. 1 v. Gardner*, 263 F. Supp. 26 (D.S.C. 1967) (action by school district to enjoin deferral of payment of federal funds to which school district was entitled). Such a payment of federal funds to a school district, which Congress considered a grant-in-aid program in *Dermott Special School District of Chicot County* and *Lee County School District,* is at issue here: AmeriCorps funding for SFUSD (San Francisco Unified School District).

### b. APA § 706 Expressly Permits Judicial Review of Plaintiffs' APA Claims

The waiver of sovereign immunity allowing judicial review of agency action under the APA is made doubly clear by APA § 706. Section 706 of the APA provides:

> To the extent necessary to decision and when presented, the reviewing **court shall** decide all relevant questions of law, **interpret constitutional and statutory provisions**, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) **hold unlawful and set aside agency action, findings, and conclusions found to be--**

4

> (A) **arbitrary, capricious**, an abuse of discretion, or otherwise not in accordance with law;
> (B) **contrary to constitutional right,** power, privilege, or immunity;
> (C) **in excess of statutory** jurisdiction, **authority**, or limitations, or short of statutory right;
> (D) without observance of procedure required by law;
> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.
>
> In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706 (emphasis added). Here, Plaintiffs argue that Defendants violated the APA because the AmeriCorps Directive is allegedly arbitrary and capricious, contrary to the constitution, and exceeds Defendants' statutory authority. 5 U.S.C. § 706 provides for judicial review of Plaintiffs' arguments under 5 U.S.C. § 706(2)(A), (B), and (C), respectively.

### 2. APA § 701(a)(2) Does Not Apply

Defendants argue that § 701(a)(2) precludes judicial review. Section 701(a)(2) provides an exception to the waiver of sovereign immunity under §§ 702 and 706. Under 5 U.S.C. § 701(a)(2), a court may not review an agency action if the "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). However, § 701(a)(2)'s exception is narrow.

An agency action "is committed to agency discretion by law" only "where a statute is drawn in **such broad terms** that in a given case there is **no law to apply**, and the court would have **no meaningful standard** against which to judge the agency's exercise of discretion." *Webster v. Doe*, 486 U.S. 592, 592 (1988) (emphasis added). *See Heckler v. Chaney*, 470 U.S. 821, 830 (1985); *see Jajati v. United States Customs & Border Prot.*, 102 F.4th 1011, 1014 (9th Cir. 2024) (holding that the § 701(a)(2) exception applies when "'there is truly no law to apply'"). Courts must "read the exception in § 701(a)(2) quite narrowly, restricting it to 'those *rare circumstances* where the relevant statute is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Weyerhaeuser Co. v. U.S.*

*Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018) (quoting *Lincoln*, 508 U.S. at 191) (emphasis added).[1] Even when Congress intended to create a wide zone within which decisions are committed to an agency's discretion, the agency still must meet "permissible statutory objectives." *Lincoln*, 508 U.S. at 183.

"The few cases in which [the Supreme Court has] applied the § 701(a)(2) exception involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation, *Lincoln*, 508 U.S. at 191, or a decision not to reconsider a final action, *ICC v. Locomotive Engineers*, 482 U.S. 270, 282 (1987)," or a decision to terminate an employee in the interests of national security, *Webster*, 486 U.S. at 600. *Weyerhaeuser,* 586 U.S. at 23 (internal citations revised).

In *Lincoln*, for instance, the Court found an agency's particular use of funds from a "lump sum" grant was committed to its discretion because "the very point of a lump-sum appropriation is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."  *Lincoln*, 508 U.S. at 192.  That is, "a lump-sum appropriation reflects a congressional recognition that an agency must be allowed flexibility to shift funds within a particular appropriation account so that the agency can make necessary adjustments for unforeseen developments and changing requirements."  *Id.* at 193 (internal citation omitted).

Here, there is no indication that Congress intended to commit the agency's imposition of grant conditions to its discretion thereby exempting such actions entirely from judicial review. As noted above, Congress specifically contemplated that federal grants-in-aid would be subject to judicial oversight.  *Bowen*, 487 U.S. at 898.  This case does not involve *e.g.* an agency's allocation of funds under a lump-sum grant by Congress (which by its nature implies delegation of wide discretion to the agency) as in *Lincoln*.

---

[1] That such commitment to unreviewable agency discretion is reserved for the rarest of circumstances should come as no surprise.  It is a profound step to say that unilateral executive action is bound neither by Congress nor reviewable by the judiciary, a situation where one branch of government is allowed act without any restraint by the other branches. *Cf. Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 589 (1952).

1    Here the Act establishes that overarching objectives of AmeriCorps encompass equity and
2  diversity in the provision of services thereunder.  *See e.g.* 42 U.S.C. § 12501(b) (purpose of
3  AmeriCorps includes "meet[ing] unmet human…needs" and supporting "diverse communities").
4  However, the AmeriCorps Directive now requires grantees to "terminate, to the maximum extent
5  allowed by law, all DEI…offices" and "terminate…all 'equity' actions."  Dkt. 18-2 at 15.
6  Plaintiffs allege that the anti-DEI conditions newly imposed by AmeriCorps squarely conflict with
7  the statutory objectives of the governing act.  Moreover, the statutory objectives are set forth in
8  additional detail:

- 42 U.S.C. § 12501(b)(1): AmeriCorps' purpose is to "meet the unmet human, educational, environmental, and public safety needs of the United States."
- 42 U.S.C. § 12571(a): AmeriCorps "may make grants…for the purpose of assisting the recipients of the grants…(1) to carry out…national service programs…described in subsection (a), (b), or (c) of section 12572 of this title; and (2) to make grants in support of other national service programs described in subsection (a), (b), or (c) of section 12572 of this title that are carried out by other entities."

16  As discussed below, these subsections set forth a wide range of activities in which grantees may
17  engage in activities, including those which might be characterized as those serving equity and thus
18  potentially at odds with the Directive.

19    The Court need not at this juncture determine conclusively whether the Directive is in fact
20  at odds with the statutory objectives as enunciated by Congress.  It simply determines for purposes
21  of section 701(a)(2), this is not a case where there is "no meaningful standard against which to
22  judge the agency's exercise of discretion."  *Weyerhaeuser Co.,* 586 U.S. at 23.  The detailed
23  statutory objectives provide guidance as to the outer legal bounds of AmeriCorps' authority.

24    Second, in cases involving an agency's allocation of funds, in determining whether matters
25  are committed to the agency's unreviewable discretion under section 701(a)(2), courts additionally
26  look to whether there are substantive "statutor[y] restricti[ons] [on] what can be done with those
27  funds."  *Heckler*, 470 U.S. at 830; *Lincoln*, 508 U.S. at 192 (quoting *LTV Aerospace Corp.*, 55
28  Comp. Gen. 307, 319 (1975)).  *See Jajati*, 102 F.4th at 1014 (question is whether there are

1  "meaningful standards under which courts can review whether [AmeriCorps] wielded its
2  discretion in a permissible manner"); *California v. Trump*, 379 F. Supp. 3d 928, 953 (N.D. Cal.
3  2019), *aff'd*, 963 F.3d 926 (9th Cir. 2020) (holding that § 701(a)(2) does not apply where plaintiffs
4  maintain that a federal agency seeks to allocate funds "in a statutorily *impermissible* manner"
5  (emphasis in original)).

Here, there are such direct restrictions. These include statutory instructions that AmeriCorps must allow recipients to use funds for certain purposes. For example:

- 42 U.S.C. § 12572(a)(1)(B): Covering grants for services such as tutoring, academic support, and mentorship. Specifically, "[a]n Education Corps [as grant recipients] …may carry out activities such as – (i) tutoring, or providing other academic support to elementary school and secondary school students;… (iii) mentoring students, including adult or peer mentoring;… (ix) conducting a preprofessional training program in which students enrolled in an institution of higher education--(I) receive training (which may include classes containing service-learning) in specified fields including early childhood education and care, elementary and secondary education, and other fields such as those relating to health services, criminal justice, environmental stewardship and conservation, or public safety;…(III) agree to provide service upon graduation to meet unmet human, educational, environmental, or public safety needs related to such training; (x) assisting economically disadvantaged students in navigating the college admissions process; [and] (xi) providing other activities, addressing unmet educational needs, that the Corporation may designate…"

- 42 U.S.C. § 12572(b)(2)(C): Instructing that grant recipients may carry out the national service programs by "expand[ing] the number of mentors for disadvantaged youths through activities such as "direct mentoring" or "support [for] mentoring partnerships."

- 42 U.S.C. § 12572(c)(1)(A): Instructing that grant recipients may:
    [M]eet[] unmet health, veteran, and other human, educational, environmental, or public safety needs and promotes greater community unity through the use of organized teams of participants of varied social and economic backgrounds, skill levels, physical and developmental capabilities, ages, ethnic backgrounds, or genders.

8

- 42 U.S.C. § 12526(b): In considering grant applications, AmeriCorps "shall give priority to entities that submit applications" for programs "that [serve those who] are in the greatest need of assistance, such as programs targeting low-income areas or serving economically disadvantaged youth."

These provisions effectively require AmeriCorps, in making grants, to permit grantees to (and thus may not prohibit grantees from) conducting a range of activities specifically permitted by the Act. Again, this is not one of the "rare" instances where Congress intended to grant complete unreviewable discretion to a funding agency. Nor is this a case where there are no meaningful standards by which the court may assess the legality of the AmeriCorps Directive under §§ 702 and 706. Instead, there are specific statutory objectives and restrictions to which the court may look in making that assessment.

### a. APA § 701(a)(2) Does Not Bar Judicial Review of Plaintiffs' Constitutional Claim

Further, absent clear congressional intent to preclude review of a constitutional claim, § 701(a)(2) does not bar review of colorable constitutional claims arising from agency actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see Webster v. Doe*, 486 U.S. 592, 603 (1988). *Webster* controls.

In *Webster*, the Court evaluated whether § 701(a)(2) precluded judicial review of the Central Intelligence Agency ("CIA") Director's decision to terminate a CIA employee under § 102(c) of the National Security Act of 1947. There, the discharged employee sued the Director of the CIA seeking declaratory and injunctive relief based on a claim that he was fired because of his homosexuality. The terminated employee alleged APA violations and constitutional violations under the First, Fourth, Fifth, and Ninth Amendments as well as his rights to procedural due process and equal protection under the Fifth Amendment. The Court held that "(1) Director's decision to discharge employee was not subject to judicial review under Administrative Procedure Act, but (2) discharged employee's constitutional claims were judicially reviewable." *Webster,* 486 U.S. 592.

The Court held that the discharged employees' constitutional claims were reviewable

because Congress must make any intent to preclude constitutional review clear and § 102(c) lacked such a clear statement barring constitutional claims. Specifically, the Court held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Id.* at 603. The Court found:

> Nothing in § 102(c)…persuades us that Congress meant to preclude consideration of colorable constitutional claims arising out of the actions of the Director pursuant to that section; we believe that a constitutional claim…may be reviewed by the District Court.

*Id.* at 603-4.

Similarly, here, Defendants fail to identify any clear congressional intent in AmeriCorps' statutory mandate or grant-related statutes precluding judicial review of constitutional claims. Consequently, "[n]othing…persuades" this Court that "Congress meant to preclude consideration of colorable constitutional claims arising out of the actions of" AmeriCorps' grantmaking decisions. *Id.*; *see Nguyen v. Kissinger*, 528 F.2d 1194 (9th Cir. 1975) ("[N]othing in the Act purports to sanction the violation of constitutional rights committed under the guise of an exercise of discretion"); *see Wong v. Warden, FCI Raybrook,* 171 F.3d 148, 149 (2d Cir. 1999) ("It is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary"). Thus, this Court may review Plaintiffs' constitutional claim that AmeriCorps allegedly violated the Spending Clause of the Constitution.

### 3. Tucker Act

Next, Defendants argue that the Tucker Act, not the APA, governs Plaintiffs' claims and the Tucker Act provides the Court of Federal Claims with exclusive jurisdiction over Plaintiffs' claims.

Under 28 U.S.C. § 1491, the Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491.

10

Further, 28 U.S.C. § 1346 recites:
> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of…[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, **except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort** which are subject to sections 7104(b)(1) and 7107(a)(1) of title 41.

28 U.S.C. § 1346 (emphasis added).

The Tucker Act does not vest the Federal Court of Claims with exclusive jurisdiction over the claims in the case at bar for at least two reasons. First, the "Tucker Act yields…when the Administrative Procedure Act…provides an avenue for relief." *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323–24 (2020). APA § 706(2)(A), (B), and (C) provide Plaintiffs with avenues for relief. 5 U.S.C. § 706.

Second, Plaintiffs' claims are in any event not damages claims which fall under the exclusive jurisdiction of the Court of Claims. The Court of Federal Claims has jurisdiction over damages claims founded "upon any express or implied contract with the United States" as well as statutory or constitutional claims involving monetary damages. 28 U.S.C. § 1491. To determine whether a claim falls under the Tucker Act under the first provision, the court evaluates whether a "particular action…is or is not 'at its essence' a contract action." *Megapulse, Inc.,* 672 F.2d at 967. This analysis depends "both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Id.*

As explained below, the instant case does not involve an action founded on contract or a constitutional or statutory claim which mandates compensation for damages sustained. Nor do Plaintiffs seek relief which the Court of Claims has the authority to grant. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (holding that the "Tucker Act…grants a limited waiver of sovereign immunity, allowing suit but limiting the Court of Claims to monetary relief only."). Instead, Plaintiffs seek prospective equitable declaratory and injunctive relief against allegedly unlawful conduct, relief outside the jurisdiction of the Court of Claims and properly within the

11

jurisdiction of the district court.

### a. Source of Rights: Statutes and the Constitution, Not Contract

Here, Plaintiffs allege violations of the Spending Clause and provisions of the APA. A Spending Clause claim is a constitutional claim. *See* U.S. CONST. Art. I, § 8, cl. 1. APA claims are statutory claims. *See* 5 U.S.C. § 706. None of their claims are based on the failure to perform a contractual obligation of AmeriCorps. The source of Plaintiffs' claims does not lie in any contractual provision of their grants. Instead, the sources of their rights claimed reside in statute and the Constitution, not the contractual obligations of the agency.

Other courts have so held. The Tenth Circuit decided:

> [W]hen a party asserts that the government's breach of contract is contrary to federal regulations, statutes, or the Constitution, and when the party seeks relief other than money damages, the APA's waiver of sovereign immunity applies and the Tucker Act does not preclude a federal district court from taking jurisdiction.

*Normandy Apts., Ltd. v. HUD*, 554 F.3d 1290, 1300 (10th Cir. 2009); *see Aids Vaccine Advoc. Coal. v. United States Dep't of State*, 2025 WL 752378, at *8 (D.D.C. Mar. 10, 2025) (granting preliminary injunction against United States Agency for International Development for suspending foreign aid and holding that plaintiffs' claims were not contract claims governed by the Tucker Act); *see Climate United Fund v. Citibank, N.A.*, 2025 WL 842360, at *5 (D.D.C. Mar. 18, 2025*)* (partially granting TRO to enjoin United States Environmental Protection Agency ("EPA") from terminating plaintiffs' grants and holding that plaintiffs' claims seeking declaratory and injunctive relief against EPA's termination of their grants were not contract claims governed by the Tucker Act).

Defendants argue that, like in *Department of Education v. California*, Plaintiffs seek "to enforce a contractual obligation to pay money." No. 24A910, 2025 WL 1008354, at *1 (U.S. Apr. 4, 2025). Not so.

There*,* the Supreme Court reviewed the Department of Education's request for an immediate administrative stay of and an application to vacate a TRO requiring the agency to "pay out past-due grant obligations and to continue paying obligations as they accrued" to eight states.

*Id.* In a per curiam decision vacating the TRO,[2] the Court did not render a decision on the merits. It only held that the Department was likely to succeed in showing that the district court lacked jurisdiction to order payment of the money under the APA because the suit sought "'to enforce a contractual obligation to pay money," and thus, under the Tucker Act, the Court of Federal Claims likely had jurisdiction over the suit. *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002) (ERISA case in which plaintiffs sought money damages under an ERISA plan). Specifically, the Court intimated that because the States' claims to continued grant payments arose from the grant agreements' contract-like obligations, the suit was governed by the Tucker Act and belonged in the Court of Federal Claims. *Id.*

*Department of Education* is not only not dispositive as an indicative ruling on a TRO, but in any event, the facts there are distinguishable from the case at bar. In *Department of Education*, the district court enjoined the defendants, in part, "from terminating any individual TQP and SEED grant for recipients in Plaintiff States, except to the extent the final agency action is consistent with…the grant terms and conditions." *California v. U.S. Dep't of Educ.*, No. CV 25-10548-MJJ, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). The relief sought in the TRO for the continued payment of grant moneys was, in part, *based the contractual obligations resting on the grant*; "the terms and conditions of each individual grant award [were] at issue" because the Department's statutory basis for terminating the awards, 2 C.F.R. § 200.340(a)(4), authorizes the termination of a federal grant award "pursuant to the terms and conditions of the federal award." *Dep't of Educ.*, No. 24A910, 2025 WL 1008354, at 96-97; *see* 2 C.F.R. § 200.340(a)(4). The States argued that "the terms and conditions of the TQP and SEED grant awards do not authorize termination on these grounds, and to the extent the Department's purported new priorities contravene the statutory purposes articulated by Congress, a termination on that basis is also not 'authorized by law.'" Compl., 2025 WL 725103. The States alleged that the Department had no authority – under the very language of their multi-year TQP/SEED grant awards – to terminate the grants.

---

[2] Chief Justice Roberts stated that he would deny the application. Justices Kagan and Jackson dissented. Justice Sotomayor joined Justice Jackson's dissent.

13

Here, Plaintiffs do not argue that the terms of their federal awards bar the newly imposed conditions. Rather, Plaintiffs challenge the lawfulness of the conditions based on statutory and constitutional rights. As Plaintiffs argued in the TRO hearing, the Court "could decide this case without ever reading the grant agreement[s]." Dkt. 41 at 35 (TRO Hearing Trs. 35:20-1). *See Aids Vaccine Advoc. Coal. v. United States Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378, at *9 (D.D.C. Mar. 10, 2025) ("[I]t would be quite extraordinary to consider Plaintiffs' claims to sound in breach of contract when they do not at all depend on whether the terms of particular awards were breached—they instead challenge whether the agency action here was unlawful, irrespective of any breach"); *see State of New York v. Trump,* No. 1:25-cv-39-JJM-PAS (D.R.I. April 14, 2025), Dkt. 182 (denying defendants' motion for reconsideration and request for a stay of the court's preliminary relief enforcement order because, unlike in *Dep't of Educ.*, "[t]he categorical funding freeze was not based on individualized assessments of any particular grant terms and conditions or agreements between the Agency Defendants and the States; it was based on the [Office of Management and Budget ("OMB")] Directive and the various Executive Orders that the President issued in the early days of the administration").[3]

Nor do the statutory or constitutional rights asserted by the Plaintiffs inherently mandate compensation, the second basis for Court of Claims jurisdiction. The Tucker Act exclusion of district courts' concurrent jurisdiction applies only to constitutional, statutory, or regulatory claims involving monetary damages that can "fairly be interpreted as *mandating* compensation by the Federal Government for the damage sustained." *United States v. Testan*, 424 U.S. 392, 402, 96 S. Ct. 948, 955, 47 L. Ed. 2d 114 (1976) (internal citation omitted) (emphasis added). For the Tucker Act to apply, "the plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). "Rarely has the Court determined whether a statute," let alone a constitutional claim, "can fairly be interpreted as mandating compensation by the Federal Government…[l]ikely because so-called money-

---

[3] This case involved federal funds from the U.S. Department of Agriculture to support the State's child nutrition programs.

1    mandating provisions are uncommon…and because Congress has at its disposal several blueprints
2    for conditioning and limiting obligations." *Maine*, 590 U.S. at 324.  As one exception, "the
3    Takings Clause of the Fifth Amendment is a money-mandating source for purposes of Tucker Act
4    jurisdiction." *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008)
5    (holding that because appellants "alleged a taking of their property by the government" and "are
6    within the class of plaintiffs entitled to recovery if a takings claim is established, the District Court
7    of Guam correctly decided that the Court of Federal Claims had subject matter jurisdiction over
8    appellants' complaints").  With regards to Plaintiffs' Spending Clause claim, defendants offer no
9    caselaw establishing that the Constitution's Spending Clause "is one of the rare laws permitting a
10   damages suit in the Court of Federal Claims." *Maine*, 590 U.S. at 324.   The Court finds no
11   support that the Spending Clause is such a "money-mandating provision[]". *Id.*

12        As to the statutory claim herein, the APA claims asserted by the Plaintiffs do not fall
13   within the Tucker Act's grant of exclusive jurisdiction to the Court of Claims.  First, as discussed
14   above, APA § 706 provides Plaintiffs with a specific avenue for relief, and the "Tucker Act yields
15   when …the Administrative Procedure Act… provides an avenue for relief. *Id.* at 323-24.  Second,
16   Plaintiffs' statutory claims under the APA do not mandate compensation; indeed, the APA does
17   not expressly provide for money damages as a form of available relief.  Thus, there is no basis for
18   finding exclusive jurisdiction of the Court of Claims over the statutory and constitutional claims at
19   bar.

### b. Type of Relief Sought: Declaratory and Injunctive Relief, Not Money Damages

22        Defendants argue that "the proper remedy" for Plaintiffs' claims "is typically suit under the
23   Tucker Act" because Defendants argue that Plaintiffs "seek[] to secure funding that it believes the
24   government is obligated to pay under a contract or grant." Dkt. 30 at 15 (Opposition to Mot. for
25   TRO).  This argument is without merit because 1) Plaintiffs seek declaratory and injunctive relief,
26   remedies the Court of Federal Claims cannot provide, and 2) that Plaintiffs' action involves
27   federal grants does not transform it into an action for money damages.
28        The "Court of Claims[']…jurisdiction is confined to the rendition of money judgments in

15

suits brought for that relief against the United States." *United States v. Sherwood*, 312 U.S. 584, 588 (1941). "From the beginning [the Court of Federal Claims] has been given **jurisdiction only to award damages, not specific relief**." *Zdanok*, 370 U.S. at 557 (emphasis added).

Plaintiffs seek, not money damages, but primarily declaratory and injunctive relief. *See* Dkt. 1 ("Complaint for Declaratory and Injunctive Relief"). In addition to Plaintiffs' requests for explicitly declaratory and injunctive relief, Plaintiffs seek: "[a]n order vacating the AmeriCorps Directive under 5 U.S.C. § 706" and "[a]n order directing Defendants to restore the original grant conditions for Plaintiffs' AmeriCorps grants." Dkt. 1 at 28 (Compl., "Prayer for Relief"). By seeking this equitable relief, Plaintiffs challenge AmeriCorps' imposition and enforcement of new conditions in the AmeriCorps Directive on Plaintiffs' existing grants. Because the Court of Federal Claims hears only cases involving the "rendition of money judgments," Plaintiffs do not seek money damages, and the Court of Federal Claims cannot provide the relief Plaintiffs seek, Plaintiffs' claims do not belong there. *United States v. Sherwood*, 312 U.S. at 588; *see Richardson v. Morris*, 409 U.S. 464, 465 (1973) ("[T]he Court of Claims has no power to grant equitable relief"). The declaratory and injunctive relief Plaintiffs request is particularly important given that Plaintiffs cannot protect their funding unless they know which activities are 'non-compliant'. *See* Dkt. 33 at 5-8 (Order Granting TRO, Irreparable Harm). That is, the purpose of the equitable relief sought here is to obtain guidance as to future conduct, something retrospective damages do not afford.

Further, that Plaintiffs' action implicates agreements for federal funds does not transform the action into one for money damages because the relief Plaintiffs seek is specific relief. Even if that relief were to affect future funding, money damages are not at issue. On this point, *Bowen v. Massachusetts*, 487 U.S. 879 (1988), is dispositive. In *Bowen,* the Supreme Court held that plaintiffs may bring APA claims in district court when they seek specific relief through a declaratory judgment or injunction, even if such relief requires that the federal government pay money to the plaintiffs. *Id.* at 893-901. There, Massachusetts sought judicial review of the Secretary of the Department of Health and Human Services's decision to disallow portions of its Medicaid reimbursement because the services at issue were more like educational services, not

16

covered under Medicaid. *Id.* at 890. In their petitions for certiorari, the Secretary asked the Court "to decide that the United States Claims Court had exclusive jurisdiction over the State's claim" and Massachusetts asked the Court "to decide that the District Court had jurisdiction to grant complete relief." *Id.*

To arrive at its holding, the Court distinguished between actions for "**damages**—intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—from **equitable actions for specific relief**—which may include an order providing for the reinstatement of an employee with backpay, or for 'the recovery of specific property *or monies*, ejectment from land, or injunction either directing or restraining the defendant officer's actions.'" *Id.* at 893 (bold emphasis added; italicized emphasis in original) (quoting *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688 (1949). The Court held:

> '[The State] is seeking funds to which a **statute allegedly entitles it, rather than money in compensation for the losses**, whatever they may be, that [the State] will suffer or has **suffered by virtue of the withholding of those funds.** If the program in this case involved in-kind benefits this would be altogether evident. **The fact that in the present case it is money rather than in-kind benefits that pass from the federal government to the states (and then, in the form of services, to program beneficiaries) cannot transform the nature of the relief sought—specific relief, not relief in the form of damages.**'

*Id.* at 895 (quoting Judge Bork's decision in *Maryland Dept. of Human Resources v. Department of Health and Human Services*, 246 U.S. App. D.C. 180, 763 F.2d 1441 (1985) (emphasis added)). Accordingly, the Supreme Court found that the district court, not the Court of Federal Claims, had jurisdiction to review the Department of Health and Human Services's decision to disallow portions of Massachusetts' Medicaid reimbursement because the complete relief sought by the state amounted to specific monetary relief for the reinstatement of the previously withheld or disallowed funds. Thus, the Court decided:

> [A] fair consideration of 'practical matters' supports the conclusion that the district courts and the regional courts of appeals have jurisdiction to review agency action of the kind involved in these cases and to grant the complete relief authorized by § 706.

*Id.* at 912.

As in *Bowen*, Plaintiffs seek "prospective, nonmonetary relief to clarify future

17

obligations," **not** "specific sums already calculated, past due, and designed to compensate for completed labors." *Maine*, 590 U.S. at 298–99.[4] In particular, Plaintiffs ask the Court to "set aside unlawful agency action" and provide Plaintiffs with other declaratory and injunctive relief from AmeriCorps' imposition and enforcement of new conditions on Plaintiffs' existing grants. Dkt. 31 at 14 (Reply ISO Mot. for TRO). Like Massachusetts, Plaintiffs do not seek "money in compensation for the losses…that [they] will suffer or ha[ve] suffered" from the AmeriCorps Directive. *Id.* at 895. Rather, Plaintiffs seek "specific relief" in the form of, for example, an "injunction either directing or restraining [AmeriCorps'] actions." *Id.* at 893 (internal citation omitted). Under *Bowen*, even if such relief results in the federal government paying money to Plaintiffs, "the nature of the relief" Plaintiffs seek remains one for "specific relief." *Id.* at 895 (internal citation omitted). Because the Court of Federal Claims "has been given jurisdiction only to award damages, not specific relief," and what Plaintiffs seek is specific relief, Plaintiffs claims do not belong in the Court of Federal Claims. *Zdanok*, 370 U.S. at 557. Thus, the Tucker Act does not preclude this Court from hearing Plaintiffs' claims. Importantly, the Court in *Department of Education v. California* cited *Bowen* with approval. *Dep't of Educ.*, No. 24A910, 2025 WL 1008354, at *1 ("True, a district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds" (quoting *Bowen*, 487 U.S. at 910).[5] *See Maine v. U.S. Department of Agriculture*, No. 1:25-cv-00131-JAW (D. Me. April 11, 2025), Dkt. 12 (holding that *Dep't of Educ.* "does not change the Court's

---

[4] *Department of Education* involved a different posture in which plaintiffs challenged the government's "purport[ed] terminat[ion] [of]grants midstream," and sought an order requiring the continued payment of grant moneys. *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 95 (1st Cir. 2025). Here, Plaintiffs' grants have not been terminated.
[5] In *The Sustainability Institute, et al., v. Trump, et al.*, a case involving certain federal funding freezes, a district court in South Carolina held that *Dep't of Educ.* did not foreclose its jurisdiction to order expedited discovery from defendants regarding the plaintiffs' grants at issue. Case No. 2:25-02152 (D. S.C.), Dkt. No. 52 at 5-7 (filed April 9, 2025). In its order on the defendants' motion to reconsider, the court stated: "[I]t is not clear that this Court lacks jurisdiction over this case at this time…The Supreme Court's brief treatment of *Bowen* and *Great-West Life* in [*Dep't of Educ.*] and the cursory mention of potential jurisdictional issues do not appear to settle all jurisdictional questions in this case. A careful examination of Plaintiffs' claims and the relief sought, mandated by *Bowen*, are necessary to resolve the question of whether Plaintiffs have jurisdiction with this Court under the APA or must pursue their claims under the Tucker Act before the Court of Federal Claims."

determination that it is a proper forum for this dispute under the APA" and that "[a]bsent clear guidance from the Supreme Court that *Bowen* and its progeny are no longer good law, the Court follows this well-established precedent in concluding the APA has waived the United States' sovereign immunity on this case seeking temporary injunctive relief, inclusive of the fact that, in the event the Plaintiff prevails, the requested TRO will likely result in monetary payments"); *see Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.,* No. 1:25-cv-00097-MSM-PAS, slip op. at 34–35 (D.R.I. Apr. 15, 2025), Dkt. 45 (holding *Bowen* controls notwithstanding *Dep't of Educ.*).  In sum, this Court has jurisdiction over Plaintiffs' APA and constitutional claims.

## IV. CONCLUSION

For the aforementioned reasons, this Court has jurisdiction over Plaintiffs' claims.

**IT IS SO ORDERED**.

Dated: April 23, 2025

_____
EDWARD M. CHEN
United States District Judge