1  PATRICK D. ROBBINS (CABN 152288)
   Acting United States Attorney

2

3  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division

4  SAPNA MEHTA (CABN 288238)
   Assistant United States Attorney

5

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
         Telephone: (415) 436-7478

7        FAX: (415) 436-6748
         sapna.mehta@usdoj.gov

8

9  Attorneys for Defendants

                    UNITED STATES DISTRICT COURT

                  NORTHERN DISTRICT OF CALIFORNIA

                    SAN FRANCISCO DIVISION

13  SAN FRANCISCO UNIFIED SCHOOL          )   Case No. 3:25-cv-02425-EMC
    DISTRICT and CITY OF SANTA FE,        )
14                                        )   **DEFENDANTS' RESPONSE TO ORDER TO**
             Plaintiffs,                  )   **SHOW CAUSE AND OPPOSITION TO A**
15                                        )   **PRELIMINARY INJUNCTION**
         v.                               )
16                                        )   Date:  May 30, 2025
    AMERICORPS and JENNIFER BASTRESS      )   Time: 9:00am
17  TAHMASEBI, Interim Agency Head of     )   Location:  Courtroom 5, 17th Floor
    AmeriCorps,                           )
18                                        )
             Defendants.                  )
19                                        )
                                          )
20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ............................................................................................................1

II.   LEGAL STANDARD....................................................................................................2

III.  ARGUMENT .................................................................................................................2

    A.    Plaintiffs Fail to Establish a Likelihood of Success on the Merits. ...................2

        1.    Plaintiffs Fail to Assert a Viable Constitutional Claim and, Even If
             They Had, AmeriCorps' Instructions Do Not Violate the Spending
             Clause.........................................................................................................2

        2.    AmeriCorps' Instructions Are Not Reviewable Under the APA and,
             Even If They Were, Are Consistent with APA Standards. .......................6

            (i)    AmeriCorps' Instructions Do Not Constitute Final Agency
                 Action..............................................................................................6

            (ii)   Even if Reviewable, AmeriCorps' Instructions Do Not Violate
                 the APA..........................................................................................8

    B.    Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims for the
        Additional Reason That the Court Lacks Jurisdiction Over Plaintiffs' Claims.................10

    C.    Plaintiffs Do Not Show Irreparable Harm to Justify the Extraordinary Relief
        of a Preliminary Injunction. ...............................................................................13

    D.    The Public Interest Does Not Favor a Preliminary Injunction. ..........................15

    E.    Any Injunctive Relief Should Be Stayed Pending Appeal and Accompany a
        Bond....................................................................................................................16

IV.   CONCLUSION.............................................................................................................16

1

## <u>TABLE OF AUTHORITIES</u>

2

### CASES

3
*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ..................................................................................................... 7

4
*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................. 2

5
*Am. Ass'n of Colleges For Teacher Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), ECF No. 30 ........................................................................ 12

6

7
*Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) ............................................... 3

8
*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................. 7

9
*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ............................................ 10, 11

10
*California v. U.S. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825 (D. Mass. Mar. 10, 2025) .............................................................................. 11, 12

11
*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ............. 13

12

13
*City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924 (N.D. Cal. 2018), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) ............................................. 3

14

15
*City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928 (N.D. Cal. 2019), *aff'd in part, vacated in part, remanded sub nom. City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022) ................................. 3

16

17
*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 981 F.3d 742 (9th Cir. 2020) ......................................................... 14

18
*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019) ........................... 5, 6

19
*Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497 (N.D. Cal. 2017) ................. 3

20
*Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) ................. 2, 13

21
*Dalton v. Specter*, 511 U.S. 462 (1994) ............................................................ 4

22
*Dep't of Educ. v. California*, 145 S. Ct. 966 (2025) .......................... 11, 12, 14, 15

23
*Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073 (9th Cir. 2014) ..................... 15

24
*Earth Island Inst. v. Carlton*, 626 F.3d 462 (9th Cir. 2010) ............................. 2

25
*Elrod v. Burns*, 427 U.S. 347 (1976) .............................................................. 15

26
*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) .............................. 8, 9

27
*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ................................. 8

28
*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180 (9th Cir. 2024) ......................................................................................... 11

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) .......................................................... 2, 13

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ........................................................................................ 10

*Lopez v. Brewer*, 680 F.3d 1068 (9th Cir. 2012) ........................................................................ 2

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d
    1197 (9th Cir. 1980)............................................................................................................ 14

*Louisiana v. Biden*, 622 F. Supp. 3d 267 (W.D. La. 2022) ........................................................ 8

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)................................................................... 15

*Nken v. Holder*, 556 U.S. 418 (2009) ...................................................................................... 15

*Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339 (Fed.
    Cir. 2008)............................................................................................................................ 12

Order, *Mass. Fair Housing Ctr, v. HUD*, No. 3:25-cv-30041 (D. Mass.
    Apr. 14, 2025), ECF No. 42 ................................................................................................ 12

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) .................................. 5, 13, 15

*Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118 (9th Cir. 2014)............................................ 13

*S. Dakota v. Dole*, 483 U.S. 203 (1987) ................................................................................. 2, 5

*Sols. in Hometown Connnections v. Noem*, No. 25-cv-00885, 2025 WL
    1103253 (D. Md. Apr. 14, 2025) ........................................................................................ 12

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018)................................ 5

*United States Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-cv-
    00465, 2025 WL 763738 (D.D.C. Mar. 11, 2025), *appeal voluntarily
    dismissed*, No. 25-5066 (D.C. Cir. Apr. 24, 2025) ............................................................. 13

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th
    1124 (11th Cir. 2023).......................................................................................................... 4

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ..................................................... 2, 13

**STATUTES**

28 U.S.C. § 1491 ....................................................................................................................... 10

42 U.S.C. § 12501 ...................................................................................................................... 6

42 U.S.C. § 12526 ...................................................................................................................... 6

42 U.S.C. § 12561 ...................................................................................................................... 6

42 U.S.C. § 12571 ........................................................................................................... 3, 5, 9, 15

42 U.S.C. § 12613 ...................................................................................................................... 6

42 U.S.C. § 12651a ..................................................................................................................... 3

42 U.S.C. § 12651b ................................................................................................................ 3

42 U.S.C. § 12651c ................................................................................................................ 3

42 U.S.C. § 12651d ................................................................................................................ 3

42 U.S.C. § 5001 ................................................................................................ 3, 6, 10, 15

42 U.S.C. § 5011 ................................................................................................ 3, 6, 10, 15

42 U.S.C. § 5013 ................................................................................................ 3, 6, 10, 15

42 U.S.C. § 5022 ...................................................................................................... 3, 10, 15

5 U.S.C. § 701 .................................................................................................................... 10

5 U.S.C. § 704 ...................................................................................................................... 6

5 U.S.C. § 706 ...................................................................................................................... 8

**RULES**

Federal Rule of Civil Procedure 65 ...................................................................................... 16

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. 1, § 8, cl. 1 .................................................................................................. 2

I.    **INTRODUCTION**

The Court should decline to extend its temporary restraining order into a preliminary injunction because Plaintiffs do not satisfy the requirements for such extraordinary relief.  Plaintiffs incorrectly describe their request for relief as necessary to enforce a statutory or Constitutional right.  But what they seek is relief from AmeriCorps' enforcement of the terms and conditions governing Plaintiffs' discretionarily awarded federal funding.  Defendants maintain that Plaintiffs have not satisfied their legal basis for such relief.  To avoid repeating arguments, Defendants fully incorporate the reasons outlined in their Opposition to Motion for Temporary Restraining Order (Dkt. No. 30) ("Opp.") and their Supplemental Brief in Response to the Court's Order (Dkt. No. 38) without restating them here.

Even assuming the Court does not revisit its previous orders granting Plaintiffs a temporary restraining order, it should still deny Plaintiffs a preliminary injunction.  First, Plaintiffs cannot show a likelihood of success on the merits of their claims because AmeriCorps' February 13, 2025 memorandum to its grant recipients regarding executive order compliance instructions ("Instructions")—the action that Plaintiffs challenge in this matter—does not implicate (or exceed) Congress' Spending Clause power and is not a final agency action reviewable under the APA.  Second, Plaintiffs' articulation of their claims and the broad preliminary injunctive relief that they have requested go beyond what the Court analyzed in determining that it has subject matter jurisdiction over Plaintiffs' claims.  Third, Plaintiffs' claimed harms could be remedied after a decision on the merits if Plaintiffs ultimately succeed on their claims, so preliminary injunctive relief is not warranted.  Finally, public interest factors weigh against further preliminary injunctive relief given that Plaintiffs seek to be absolved of an existing condition of their receipt of federal funds, which Congress entrusted AmeriCorps with the discretion to provide.  The Court should thus deny Plaintiffs' request for a preliminary injunction.

At a minimum, the Court's previous orders on the temporary restraining order reflect that any continued preliminary relief must be narrowly tailored to address the specific agency action challenged—the requirement that Plaintiffs comply with the Instructions for Plaintiffs' existing grants.  Because Defendants have raised threshold jurisdictional issues—including one that the Supreme Court has found "likely to succeed" in another grant case—Defendants request that the Court stay any preliminary injunctive relief granted to permit time for Defendants to appeal.

DEFENDANTS' RESPONSE TO OSC & OPPOSITION TO PRELIMINARY INJUNCTION
3:25-CV-02425- EMC                                            1

## II.    LEGAL STANDARD

Preliminary injunctive relief "is an extraordinary and drastic remedy," *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotation marks and citation omitted), that is "never awarded as of right," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (internal quotation marks and citation omitted). Thus, this relief "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez*, 680 F.3d at 1072 (internal quotation marks and citation omitted; emphasis in original). This is a "difficult task." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). To prove their entitlement to such relief, Plaintiffs must establish that: (1) they are likely to succeed on the merits, (2) are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Under the Ninth Circuit's sliding scale test for preliminary injunctive relief, "serious questions going to the merits" and "a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## III.    ARGUMENT

### A.    Plaintiffs Fail to Establish a Likelihood of Success on the Merits.

#### 1.    Plaintiffs Fail to Assert a Viable Constitutional Claim and, Even If They Had, AmeriCorps' Instructions Do Not Violate the Spending Clause.

The Spending Clause provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States . . . ." U.S. Const. art. 1, § 8, cl. 1. This "broad" power permits Congress "to set the terms on which it disburses federal funds." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022). Congress has "repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *S. Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citations and internal quotation marks omitted). There are "general restrictions" to Congress' spending power, including that conditioning receipt of federal funds be unambiguous and that "conditions on federal grants might be illegitimate if they are unrelated to the federal interest in particular national projects or programs." *Id.* at 207 (citation and

internal quotation marks omitted).

At the threshold, Plaintiffs do not assert a viable constitutional claim by merely invoking the Spending Clause. Congress did not grant federal funds to Plaintiffs. Nor did Congress direct AmeriCorps to grant federal funds to Plaintiffs. Neither the Spending Clause nor a statute passed by Congress pursuant to that power requires that AmeriCorps grant federal funds to Plaintiffs. Rather, Plaintiffs receive federal funding through specific grant agreements awarded by AmeriCorps. AmeriCorps decided to grant federal funding to Plaintiff City of Santa Fe through a competitive grant process. Plaintiff SFUSD is a subgrantee that received its federal funding from California Volunteers, the State Service Commission of California to which AmeriCorps awarded funding. Congress appropriates funds to AmeriCorps and statutorily permits (but does not require) AmeriCorps, in its discretion, to conduct grant making. *See* 42 U.S.C. § 12571(a) (providing that AmeriCorps "may make grants" to states and subdivisions of states); 42 U.S.C. §§ 5001(a), 5011(a), 5013(a) ("authoriz[ing]" AmeriCorps to "make grants" for AmeriCorps Seniors programs). Congress empowered the head of the agency and its board—who are appointed by the President with the advice and consent of the Senate—to conduct such grant making. *Id.* §§ 12651a(a), 12651b(g)(2), 12651c(a), 12651d(b). Congress explicitly confirmed for AmeriCorps Seniors program grants that payments may be made "on such conditions" as AmeriCorps determines. *Id.* § 5022.

This case is thus distinguishable from those cited in the Court's Order (Dkt. No. 33) ("Order"), which involved funding directly appropriated by Congress.[1] *Cf. Arizona v. Yellen*, 34 F.4th 841, 845 (9th Cir. 2022) (holding that a state had standing to challenge whether an offset provision in federal statute

---

[1] Likewise, throughout their Spending Clause arguments, Plaintiffs invoke cases that they previously litigated in this district in which they challenged certain conditions of federal government funding and were awarded some relief. But each of those cases involves materially different types of funding than this case. *County of Santa Clara v. Trump*, for example, involved a facial challenge to an executive order that the court found "reach[ed]" billions of dollars of *all* federal grants. 250 F. Supp. 3d 497, 508-09 (N.D. Cal. 2017). *City and County of San Francisco v. Sessions* challenged conditions for federal grants by the Attorney General through Byrne JAG, a "formula grant program, meaning that it awards funding to all grantees by a statutorily prescribed formula." 349 F. Supp. 3d 924, 935 (N.D. Cal. 2018), *aff'd in part, vacated in part sub nom. City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020). A subsequent *City and County of San Francisco v. Sessions* likewise challenged conditions for Byrne JAG funding. *City & Cnty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 936 (N.D. Cal. 2019) (citing the statutory language that the Attorney General "shall" allocate the funds by established formula), *aff'd in part, vacated in part, remanded sub nom. City & Cnty. of San Francisco v. Garland*, 42 F.4th 1078 (9th Cir. 2022). Here, in contrast, Plaintiffs' grants were not awarded by statute but rather, were awarded pursuant to agency discretion. Thus, given the significant differences between the funding challenge at issue here, Plaintiffs' previously litigated cases on which it relies are not persuasive for the AmeriCorps discretionary grant specific analysis before this Court.

through which it received COVID relief funding violated the limits of the Spending Clause); *W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1149 (11th Cir. 2023) ("The Rescue Plan's offset provision has affected the States' sovereign authority to tax by binding them to a deal with ambiguous terms and placing them on the hook for billions of dollars in potential recoupment actions."). Here, the mere fact that AmeriCorps is funded through Congressional appropriations does not mean that AmeriCorps' grant making takes on a constitutional dimension.

To the extent Plaintiffs claim that AmeriCorps' grant conditions run afoul of the Spending Clause because Congress directed how AmeriCorps award its funding by listing general purposes in the relevant statutes, that is still not a "constitutional" claim. *See* Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue (Dkt. No. 18) ("Mot.") at 11-12. There is no such statutory mandate here but, even if there were, that would be a statutory claim. The Supreme Court in *Dalton v. Specter* distinguished "claims that an official has acted in excess of his statutory authority" with "claims of constitutional violations" and reiterated that "every action" of an executive official "in excess of [] statutory authority" is not "*ipso facto* in violation of the Constitution." *Dalton v. Specter*, 511 U.S. 462, 472 (1994). Thus, "claims simply alleging that [an executive official] has exceeded his statutory authority are not 'constitutional' claims." *Id.* at 473. At bottom, Plaintiffs' challenge to AmeriCorps' decisions regarding discretionary funding totaling less than $800,000—which AmeriCorps was not statutorily obligated to award—is not a constitutional claim.

Even if Plaintiffs could assert a Spending Clause claim, the restrictions on Congress' spending power are not exceeded here. First, AmeriCorps unambiguously conditioned the receipt of Plaintiffs' federal grant funding on executive order compliance at the outset, which Plaintiffs accepted. AmeriCorps' Instructions thus did not impose new conditions on federal funds; the Instructions guided grantees on compliance with an existing condition of their grants. Both Plaintiffs accepted an explicit term of acceptance that they would comply with executive orders and also certified that they would comply with applicable requirements of all executive orders. Declaration of Carly Bruder (Dkt. No. 30-1) ("Bruder Decl.") ¶¶ 3-4, 7; Declaration of Laurie Vargas-Zeuschner (Dkt. No. 18-3), Ex. A at 13, 125, 152. Nothing in AmeriCorps' required Terms and Conditions or Assurances and Certifications cabined the applicable executive orders to those in effect at the time of signing (versus during the life of the grant). Unlike

statutes or regulations, executive orders, by definition, change as a matter of course with each new administration's priorities. Plaintiffs' interpretation of the grant terms based on case law regarding contract terms that "anticipated" the possibility of future changes in statutes or regulations is thus inapposite. Mot. at 10-11. By agreeing that they would comply with executive orders as a condition of their grant funding, Plaintiffs cannot claim that they did not "exercise their choice knowingly, cognizant of the consequences of their participation." *Dole*, 483 U.S. at 207 (internal quotation marks omitted) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)).

Moreover, Plaintiffs' characterization of AmeriCorps' Instructions as including a separate condition—purportedly distinct from executive order compliance—that Plaintiffs not promote DEI activities, is incorrect. As discussed at the TRO hearing, AmeriCorps' Instructions did not purport to set out a new or different requirement. Dkt. No. 41 ("Tr.") at 73:22-74:12. AmeriCorps' Instructions, prepared and sent within weeks of the executive orders while the agency's review was on-going, made clear that AmeriCorps was merely attempting to bring grantees into compliance with those executive orders (as required by the conditions of their grants). Bruder Decl. ¶¶ 8-10, Ex. 7 ("AmeriCorps conducted a review of active grants to identify activities described in each grant application that may not comply with executive orders."). Plaintiffs' acceptance of the broad but unambiguous condition that they comply with executive orders thus undermines their Spending Clause claim and distinguishes it from the cases they cite.

Second, AmeriCorps' grant condition of executive order compliance clears the low hurdle of being related to the federal interest in the community service programs that it is funding. The requirement that funding conditions "bear *some relationship* to the purpose of the federal spending" is a "low-threshold." *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018) (citation and internal quotation marks omitted). "This standard is not demanding," *City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019), and is met here.

AmeriCorps offers several different programs. Pertinent in this case, Congress' stated purpose for the type of subgrant that Plaintiff SFUSD received is broadly for "national service programs." 42 U.S.C. § 12571. Congress' stated purposes for the grants that Plaintiff Santa Fe received are (1) "to help retired individuals and working older individuals to share their experiences, abilities, and skills to improve their

communities and themselves through service in their communities," *id.* § 5001(a); (2) "providing opportunities for low-income persons age 55 or over to provide supportive person-to-person services in health, education, welfare, and related settings to children having special or exceptional needs or circumstances identified as limiting their academic, social, or emotional development," *id.* § 5011(a); and (3) "providing opportunities for low-income persons age 55 or older to serve as 'senior companions' to persons with exceptional needs," *id.* § 5013(a). AmeriCorps has an interest in maintaining consistency between their discretionary allocation of federal funds for each of those program purposes with the obligation AmeriCorps has to comply with the directives and priorities of the Executive Branch. Plaintiffs may disagree with how AmeriCorps decides to allocate or reprioritize grant funding within those purposes—or how to "meet the unmet human, educational, environmental, and public safety needs of the United States without displacing existing workers," one of the nineteen purposes that Congress enumerated as the overall purpose of the agency that Plaintiffs invoke, 42 U.S.C. § 12501(b). But Congress reserved that decision to AmeriCorps' discretion.[2] *See supra* p. 3. And, as the Ninth Circuit has observed, the Supreme "Court has never struck down a condition on federal grants based on the relatedness prong." *Barr*, 929 F.3d at 1175.

### 2. AmeriCorps' Instructions Are Not Reviewable Under the APA and, Even If They Were, Are Consistent with APA Standards.

Plaintiffs' APA claims will fail for the threshold reason that AmeriCorps' Instructions do not constitute a challengeable "final agency action." 5 U.S.C. § 704. Even if APA review were available, AmeriCorps Instructions were reasonably explained, not in contravention of the Spending Clause, and in accordance with AmeriCorps' statutory authority.

### (i)    AmeriCorps' Instructions Do Not Constitute Final Agency Action.

The APA does not provide for judicial review of every agency action. *See* 5 U.S.C. § 704. The APA only confers jurisdiction on district courts to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." *Id.* Plaintiffs

---

[2] Plaintiffs' reliance on statutory provisions (Mot. at 11-12) that relate to different AmeriCorps programs that are not at issue in this case is misplaced because those provisions do not evidence the purpose for the programs under which Plaintiffs received grant funding. *See* 42 U.S.C. § 12613 (national service program component of the National Civilian Community Corps Program); *id.* § 12526 (state educational agency programs); *id.* § 12561 (higher education programs).

incorrectly contend AmeriCorps' Instructions are subject to review as a final agency action, but AmeriCorps' Instructions meet neither of the two requirements to constitute such a final action.

First, AmeriCorps' Instructions do not "mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted).  The Instructions were instead of an "interlocutory nature."  *Id.*  AmeriCorps' Instructions made clear that it was starting an iterative process by prefacing that the agency was "continuing" to review the new administration's executive orders and was reviewing AmeriCorps awards to identify grants that "may not comply with executive orders." Bruder Decl., Ex. 7.  To be sure, AmeriCorps' Instructions did require a response from each grantee and ask the grantee to "cease" non-compliant activity.  *Id.*  But that did not reflect the agency's final decision about what was or was not compliant.  *See id.*  Instead, the Instructions explicitly outline a multi-step process:  AmeriCorps' initial assessment of whether a grantee "appear[s]" to be or "may not be in compliance"[3]; then, the grantee's own assessment of its compliance by choosing whether to self-certify, amend its grant application, or express an intent to relinquish its grant funding; followed by AmeriCorps' subsequent review and decision on grantees' application amendment requests or requests to relinquish. *Id.*

Second, AmeriCorps' Instructions was not an action "by which rights or obligations have been determined, or from which legal consequences will flow."  *Id.* (citation and internal quotation marks omitted).  Through the Instructions, AmeriCorps merely sought to bring its grantees into compliance with executive orders as already required by the terms and conditions of their grants.  Such an "informational document, in which 'an agency merely expresses its view of what the law requires of a party, is not a final agency action."  *Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022).  AmeriCorps provided guidance to grantees but made clear to them that the agency's review and assessment of the executive orders was ongoing.  Bruder Decl. ¶¶ 8-10, 15, 18.  Plaintiffs identify no legal consequences that flowed to them from the Instructions.  Nor can they.  *AmeriCorps* imposed no legal consequences on grantees through its Instructions:  the Instructions did not pause or terminate grant

---

[3] AmeriCorps specified that its initial assessment was not dispositive and advised that if grantees ultimately "assessed" their own applications to be in compliance, "no changes are needed, and your organization can self-certify."  Bruder Decl., Ex. 7.

funding and did not tell grantees that they had to suspend their grant programs.  The sole case Plaintiffs cite (Mot. at 13) thus does not support their contention that this was a final agency action, as the agency actions at issue in that cited (out-of-Circuit) decision fully stopped (even if temporarily) oil and gas leases so that they could be reconsidered pursuant to an executive order.  *Cf. Louisiana v. Biden*, 622 F. Supp. 3d 267, 283 (W.D. La. 2022).  Concluding that "[t]here is no real question that Plaintiff States have met the second prong of the *Bennett* test, the *Louisiana* court cited other cases in which the action involved, for example, "pauses," "moratoriums," "withdrawals" "suspensions," and "postponements," which it held were all similarly "final" even if not "defined as permanent." *Id.* at 291-92.  Those are not analogous here given that AmeriCorps' grant programs were not paused or terminated during the on-going process through which it sought to bring its grantees into compliance with the executive orders, as required by its grant terms and conditions.  AmeriCorps' Instructions do not satisfy the conditions to be a reviewable agency action under the APA.

### (ii)    Even if Reviewable, AmeriCorps' Instructions Do Not Violate the APA.

The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions" if it is (A) "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (B) "contrary to constitutional right, power, privilege, or immunity"; or (C) "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).  Plaintiffs' challenge to AmeriCorps Instructions fails under each of these standards.

First, AmeriCorps' Instructions would be upheld under the "narrow" arbitrary and capricious standard of review. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).  This merely "requires that agency action be reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).  "Judicial review under that standard is deferential, and a court may not substitute its own policy judgment for that of the agency." *Id.*  Courts should thus "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC*, 556 U.S. at 513-14 (citation and internal quotation marks omitted).  AmeriCorps' Instructions easily satisfy this standard.  AmeriCorps' Instructions explained that they were in response to applicable executive orders issued since the start of a new administration.  AmeriCorps reviewed "all current AmeriCorps awards" for compliance and provided

"guidance on next steps in this process to ensure compliance with [the administration's] directives." Bruder Decl., Ex. 7. As to why it was taking this step, AmeriCorps explained that "as part of the Executive branch of government," its funding was subject to the executive order priorities. *Id.* Its Instructions were reasonable and reasonably explained.

The reasonableness of AmeriCorps' Instructions is further bolstered by the facts that (a) this was discretionarily provided grant funding decided by AmeriCorps (not mandated by Congress, as Plaintiffs claim), and (b) that Plaintiffs had *already* agreed to comply with executive orders in the terms and conditions of the grants. Plaintiffs' arguments about AmeriCorps' purported failure to consider their reliance interests, to consider the consequences of its Instructions, and consider policy alternatives ignore these critical facts (in addition to being devoid of any factual support given the absence of an administrative record at this stage). At bottom, AmeriCorps' discretionary grant priorities are matters of policy discretion for which the APA requires that the agency "display awareness that it is changing position." *FCC*, 556 U.S. at 515 (emphasis omitted). The agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are better than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency believes it to be better, which the conscious change of course adequately indicates." *Id.* (emphasis omitted).

Second, AmeriCorps' Instructions are not contrary to a "constitutional right, power, privilege, or immunity." Plaintiffs' argument rests on their Spending Clause claim (Mot. at 16), on which they are unlikely to prevail. *See supra* III.A.1. Their APA claim premised on that theory of relief thus likewise fails.

Finally, AmeriCorps' Instructions are well within AmeriCorps' statutory authority. As noted above, Plaintiffs selectively cite a mix of statutory provisions across different AmeriCorps' programs as purportedly evidencing Congress' "mandate" that AmeriCorps provide federal funding for activities that may be non-compliant with the administration's executive orders. Review of the statutory provisions enabling AmeriCorps' grant making, however, do not support that. Pertinent to Plaintiff SFUSD's subgrant, Congress conferred broad discretion on AmeriCorps that it "*may* make grants" to states and subdivisions of states for national service programs. 42 U.S.C. § 12571(a) (emphasis added). With respect

to Plaintiff Santa Fe's grants, Congress likewise "authorized" AmeriCorps to make grants for the AmeriCorps Seniors programs described above. *Id.* §§ 5001(a), 5011(a), 5013(a). These governing statutory provisions do not require that AmeriCorps award grants to Plaintiffs or even award grants at all. Congress left that choice to AmeriCorps (through the head of the agency and its board). And Plaintiffs ignore that Congress left no doubt, at least for AmeriCorps Seniors program grants, that payments may be made "on such conditions" as AmeriCorps determines. *Id.* § 5022. AmeriCorps' Instructions do not exceed the agency's statutory authority.

For these reasons, even if APA review were available, Plaintiffs are unlikely to succeed on the merits of their APA claims.

## B. Plaintiffs Are Not Likely to Succeed on the Merits of Their Claims for the Additional Reason That the Court Lacks Jurisdiction Over Plaintiffs' Claims.

Defendants maintain that Plaintiffs have not met their burden of establishing the Court's subject matter jurisdiction for the two reasons articulated in their earlier briefing. Opp. at 10-13. First, the APA does not permit judicial review of "agency action" that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). AmeriCorps' discretionary grant making is an "allocation of funds from a lump-sum appropriation," which the Supreme Court held is an "administrative decision traditionally regarded as committed to agency discretion." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993).[4] Second, this case implicates the parties' rights under a contract, where Plaintiffs' claims exceed $10,000, so exclusive jurisdiction lies with the Court of Federal Claims under the Tucker Act. *See* 28 U.S.C. § 1491(a). Defendants do not restate those arguments here given the Court's Order on Subject Matter Jurisdiction (Dkt. No. 48) ("Jurisdiction Order") but maintain that the Court lacks jurisdiction to review AmeriCorps' grant decisions on both of those grounds.

Defendants, however, supplement their prior briefing to highlight that Plaintiffs' arguments to skirt the jurisdictional limitation of the Tucker Act cannot be squared with the broad relief they seek. It is

---

[4] Defendants respectfully contend that *Bowen v. Massachusetts* does not support Plaintiffs' assertion of jurisdiction here. *Bowen* considered a district court's jurisdiction under 5 U.S.C. §§ 702, 704 to review a state's challenge to Medicaid disallowance decisions regarding funds to which the state was allegedly statutory entitled. 487 U.S. 879, 891-92 (1988). The *Bowen* court noted that the government no longer argued that such disallowance decisions were "committed to the discretion of the Secretary" and did not consider that question. *Id.* at 891 n.16.

Plaintiffs' burden to establish the Court's subject matter jurisdiction over their claims, and they have not done so.

To illustrate, the first provision of Plaintiffs' proposed order, which was adopted in the temporary restraining order, prohibits Defendants from pausing, freezing, impeding, blocking, cancelling, or terminating "AmeriCorps funding awards on the basis of recipients' continued operation . . . of their AmeriCorps-funded programs as originally approved." Order at 11; *see also* Dkt. No. 18-9. This broad prohibition goes beyond Plaintiffs' challenge to the AmeriCorps' Instructions in this case and is untethered from the purported harm from the Instructions that Plaintiffs claim. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 (9th Cir. 2024) (internal quotation marks and citation omitted) (preliminary injunctions "must be tailored to remedy the specific harm alleged" and "must be no broader and no narrower than necessary to redress the injury shown by the plaintiffs"). Far from it, the provision appears to prohibit AmeriCorps from making *any* changes to Plaintiffs' federal funding, without limitation to changes because of AmeriCorps' Instructions and/or executive order compliance. It is thus not an incidental disbursement of funds from "an order setting aside an agency's action." *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)). It is an order requiring AmeriCorps to pay Plaintiffs. The same is true for Plaintiffs' request for relief when executing "new grants." Order at 11-12; Dkt. No. 18-9. Thus, not all aspects of Plaintiffs' request for relief can be characterized as "equitable relief" to "challenge AmeriCorps' imposition and enforcement of new conditions in the AmeriCorps Directive on Plaintiffs' existing grants." Jurisdiction Order at 16.

Plaintiffs' requested relief is like the preliminary injunctive relief granted in *Department of Education v. California* to "restore Plaintiff States to the pre-existing status quo prior to the termination under all previously awarded . . . grants for recipients in Plaintiff States." *California v. U.S. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025). In staying that preliminary injunction, the Supreme Court determined the government "is likely to succeed in showing the District Court lacked jurisdiction" because "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *California*, 145 S. Ct. at 968. Other courts have applied *California* to similarly conclude that claims challenging grant administration belong in the Court of Federal Claims. *See Sols. in Hometown*

*Connnections v. Noem*, No. 25-cv-00885, 2025 WL 1103253, at *8 (D. Md. Apr. 14, 2025) ("Plaintiffs have not demonstrated a substantial likelihood of success upon the merits of their APA claims, because these claims are in essence contract claims against the United States for which the United States Court of Federal Claims has exclusive jurisdiction); *Am. Ass'n of Colleges For Teacher Educ. v. McMahon*, No. 25-1281 (4th Cir. Apr. 10, 2025), ECF No. 30 (staying district court's preliminary injunction in a case involving education-related grants in light of the *California* decision); Order, *Mass. Fair Housing Ctr, v. HUD*, No. 3:25-cv-30041 (D. Mass. Apr. 14, 2025), ECF No. 42 (dissolving a temporary restraining order based on "the Supreme Court's unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims").

Moreover, this Court raised that in *California*, the dispute over "continued payment of grant moneys was, in part, *based* [on] *the contractual obligations resting on the grant*." Jurisdiction Order at 13. That is akin to the dispute in this case: whether Plaintiffs' "AmeriCorps-funded programs as originally approved" required that Plaintiffs comply with executive orders. The Court credited Plaintiffs' representation at the TRO hearing that "Your Honor could decide this case without ever reading the grant agreement. You don't even need to read it." Jurisdiction Order at 14; Tr. at 35:20-21; *see also* Tr. at 39:17-19. But Plaintiffs' statement is belied by their own motion. Plaintiffs asked the Court to interpret the existing terms and conditions of their AmeriCorps grants under, what they argue to be, applicable principles of contract construction to read in a limitation on the executive order compliance condition to which they agreed. Mot. at 10 (citing, *inter alia*, *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339 (Fed. Cir. 2008), an appeal of a government contract case heard before the Court of Federal Claims).

Finally, Plaintiffs' labeling of their claims is not dispositive for the jurisdictional analysis. Opp. at 12. *California* also involved claims under the APA and while the plaintiffs there challenged terminated grants (which is not the case here), they also sought prospective injunctive relief. *See California*, 2025 WL 760825, at *5. The Supreme Court still stayed the injunction in full without distinguishing between the plaintiffs' claims. *California*, 145 S. Ct. at 969. Plaintiffs' assertion of a Spending Clause claim is likewise not dispositive of the jurisdictional inquiry. The Court's analysis still turns on the source of the rights Plaintiffs claim and the type of relief appropriate to vindicate such rights. Opp. at 12 (discussing

*Megapulse* test).  Even if Plaintiffs' Spending Clause claim was viable, such claims are recognized (as Plaintiffs acknowledge (Mot. at 9)) "much in the nature of a contract: in return for federal funds, the [recipients] agree to comply with federally imposed conditions." *Cummings*, 596 U.S. at 216 (internal quotation marks omitted) (citing *Pennhurst*, 451 U.S. at 17).  Ultimately, the source of Plaintiffs' claims are their grant agreements with AmeriCorps.  Plaintiffs point to no statutory provision or Constitutional provision that confers on them a right to AmeriCorps funding.  Stated differently, absent their grant awards, Plaintiffs would have no basis to claim relief.  And the relief that Plaintiffs seek is that "the Government [] keep paying up." *United States Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738, at *5 (D.D.C. Mar. 11, 2025), *appeal voluntarily dismissed*, No. 25-5066 (D.C. Cir. Apr. 24, 2025).  If it is true that Plaintiffs do not seek economic relief then, if the Court finds the *Winter* factors satisfied, any preliminary relief granted should be limited to relief from complying with the Instructions for Plaintiffs' existing grants.

### C.    Plaintiffs Do Not Show Irreparable Harm to Justify the Extraordinary Relief of a Preliminary Injunction.

Plaintiffs have failed to make the requisite, threshold "clear showing of irreparable harm." *See Garcia*, 786 F.3d at 746 (reiterating that "[h]arm must be proved, not presumed").  The "possibility" of harm is insufficient; Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original).  "Speculative injury" does not suffice; Plaintiffs must show both immediacy and likelihood that they will be harmed absent preliminary injunctive relief. *See Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Defendants maintain that the categories of harm credited by the Court do not rise to the level of clear and concrete harm that Plaintiffs would likely suffer; but, in any event, they could be remedied if Plaintiffs were ultimately to succeed on the merits of this lawsuit.  First, with respect to substantive programmatic changes, Plaintiffs fail to show non-speculative injury.  Plaintiffs' declarations assume without explanation, let alone proof, that contemplated program changes would cause irreparable harm even if they are interim modifications that are ultimately reinstated after this case is litigated. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014) (reiterating requirement that irreparable harm must be "grounded in evidence, not in conclusory or speculative allegations of harm").  Indeed, even

when given the opportunity by the Court at the TRO hearing to identify the "real word changes" Plaintiffs claim to have been forced in their federally grant funded programs, Plaintiffs proffered none. Plaintiffs generally stated SFUSD "revamp[ed]" their weekly trainings for AmeriCorps members to eliminate DEI-related topics but could not "identify anything specific" from the trainings that they had to remove. Tr. at 50:24-51:14. Plaintiffs also identified that there was "uncertainty" whether AmeriCorps members would lead SFUSD LGBTQ student alliance groups but did not state if they had stopped. Tr. at 51:22-52:6. And Plaintiffs specified *no* "real word" programmatic changes made by Plaintiff City of Santa Fe. *See id.*

Even assuming irreparable educational harms from contemplated changes (Order at 6), Defendants' challenged Instructions do not prohibit Plaintiffs' ability to carry on with these activities for students' benefit without using their federal funding. This means that any harm that Plaintiffs can claim is ultimately economic loss of federal funds—*i.e.*, what remains of the less than $800,000 total that was granted—which is not irreparable. Holding otherwise would swallow the rule that "monetary injury is not normally considered irreparable," *see Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980), since economic loss can almost always be restated as the inability to do things that cost money. *Cf. City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 981 F.3d 742, 762 (9th Cir. 2020) (finding "heavy financial costs" to state and local governments from disenrollment from federal public benefits programs constituted irreparable harm, citing one estimate of over $500 million in lost state tax revenue). As the Supreme Court observed in *Department of Education v. California*, if the grantees "ultimately prevail, they can recover any wrongfully withheld funds through suit in an appropriate forum." *California*, 145 S. Ct. at 969.

Second, Plaintiffs overstate the uncertainty surrounding what changes they need to make to their respective programs. Both Plaintiffs submitted grant amendment requests to bring their AmeriCorps funded activities into compliance with executive orders, evidencing their own beliefs that they could continue to operate their respective programs in compliance. *See* Bruder Decl. ¶¶ 16-17. AmeriCorps issued Santa Fe's amendment, evidencing AmeriCorps' acceptance that Santa Fe was then compliant. While AmeriCorps has not processed SFUSD's amendment request given the filing of this litigation, *id.* ¶ 16, if review and processing of SFUSD's amendment request is resumed, an approval (like Santa Fe's) would evidence AmeriCorps' belief that SFUSD is compliant. In any event, even an anticipated loss of

Plaintiffs' federal funding would not be irreparable harm since here, Plaintiffs cannot show an entitlement (statutory or constitutional) to AmeriCorps' discretionary funding.

Third, Plaintiffs assertion of a Spending Clause claim does not save their failure to show irreparable harm. As described above, the Spending Clause power is a power granted to Congress; it is not a right granted to Plaintiffs. *See Pennhurst*, 451 U.S. at 17 ("Congress may fix the terms on which it shall disburse federal money to the States."). Case law recognizing irreparable harm from "deprivation of constitutional rights" thus does not apply. *Cf. Melendres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) (finding irreparable harm where plaintiffs alleged racial profiling in violation of the Fourth Amendment); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (considering loss of First Amendment rights of association). And Plaintiffs have cited no case in which a court has found irreparable harm from an alleged Spending Clause violation.

Defendants thus maintain that Plaintiffs have failed to satisfy their burden of proving irreparable harm.

### D.    The Public Interest Does Not Favor a Preliminary Injunction.

Where the government is a party, the balance of equities and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). As discussed at the TRO hearing, the government has an interest in enforcement of the conditions on which the government granted these federal funds—which, again, required compliance with executive orders. Tr. at 65:18-25. AmeriCorps is further harmed by the organizational burden (and diversion of resources) from being forced to revert back and forth between their terms and conditions, and associated administration, of their grants. Tr. at 66:9-21. Plaintiffs' requested preliminary relief also divests AmeriCorps of its discretion over whether and how to allocate its funds, which Congress entrusted to AmeriCorps. *See, e.g.*, 42 U.S.C. §§ 5001(a), 5011(a), 5013(a), 5022, 12571(a). There is harm from enjoining AmeriCorps from exercising that discretion since that federal funding may not be retrievable. *See California*, 145 S. Ct. at 969 (considering that the plaintiffs had "not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed").

On the other hand, Plaintiffs challenge AmeriCorps' enforcement of existing conditions of their grants. And Plaintiffs, relying on their previous arguments by assuming harm from their mere assertion

1   of a constitutional violation under the Spending Clause (Mot. at 21), have alleged no deprivation of their

2   constitutional rights and, in any event, have not established the likelihood of success on their claims.

3   Plaintiffs' broad invocation of harm to "children," "students," "seniors," "residents," and Plaintiffs'

4   communities (Mot. at 21) overlooks the discrete issue in this case:  not Plaintiffs' ability to conduct certain

5   activities altogether, but Plaintiffs' entitlement to AmeriCorps' discretionary award of federal funding to

6   do so.  Defendants thus maintain that the public interest weighs against a preliminary injunction.

7         **E.**    **Any Injunctive Relief Should Be Stayed Pending Appeal and Accompany a Bond.**

8         To the extent the Court issues any injunctive relief, Defendants request that such relief be stayed

9   pending the disposition of any appeal that is authorized by the Solicitor General, or that such relief be

10  administratively stayed for a period of seven days to allow Defendants to seek an emergency, expedited

11  stay from the Ninth Circuit if an appeal is authorized.  Defendants also respectfully request that any

12  injunctive relief accompany a bond under Federal Rule of Civil Procedure 65(c), which provides that

13  "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the

14  court considers proper to pay the costs and damages sustained by any party found to have been wrongfully

15  enjoined or restrained."  A bond totaling the sum of the grant awards for which agency action is enjoined

16  is appropriate here given that any preliminary relief would potentially mandate that AmeriCorps spend

17  money that may not be recouped from Plaintiffs if Defendants are found to have been wrongfully enjoined.

18  **IV.**    **CONCLUSION**

19        For these reasons, and those set forth in Defendants' earlier briefs (Dkt. Nos. 30, 38), the Court

20  should deny Plaintiffs' request for a preliminary injunction.

21

22  DATED: April 29, 2025                              Respectfully submitted,

23

24                                          PATRICK D. ROBBINS
                                        Acting United States Attorney

25                                          */s/ Sapna Mehta*

26                                          SAPNA MEHTA
                                        Assistant United States Attorney

27

28