DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA  94102-5402
Telephone:    (415) 554-3894
Facsimile:    (415) 437-4644
E-Mail:    molly.alarcon@sfcityatty.org

*Attorneys for Plaintiff*
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

WILLKIE FARR & GALLAGHER LLP
BENEDICT Y. HUR, SBN 224018
bhur@willkie.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@willkie.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@willkie.com
STEPHEN HENRICK, SBN 310539
shenrick@willkie.com
ALYXANDRA VERNON, SBN 327699
avernon@willkie.com
MICHAEL MORIZONO, SBN 359395
mmorizono@willkie.com
333 Bush Street, 34th Floor
San Francisco, CA 94104
Telephone:    (415) 858-7400

*Attorneys for Plaintiff*
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE,<br><br>    Plaintiffs,<br><br>    vs.<br><br>AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,<br><br>    Defendants. | Case No. 3:25-cv-02425-EMC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date:    May 30, 2025<br>Time:    9:00 a.m.<br>Place:    Courtroom 5, 17th Fl. |

## <u>TABLE OF CONTENTS</u>

Introduction ............................................................................................................................5

Argument ...............................................................................................................................6

    I.      Plaintiffs Have Established a Likelihood of Success on the Merits .......................6

           A.      Defendants Violated the Spending Clause .................................................6

           B.      Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims ........9

                     1.      The AmeriCorps Directive and New Conditions Constitute Final Agency Action .................................................................................9

                     2.      The AmeriCorps Directive and New Conditions Violate the APA11

    II.     This Court Still Has Jurisdiction Over Plaintiffs' Claims ....................................13

           A.      The AmeriCorps Directive is Reviewable Under the APA .....................13

           B.      Plaintiffs' Claims Do Not Fall Within the Tucker Act ............................14

    III.    Plaintiffs Established Irreparable Harm In the Absence of a Preliminary Injunction .............................................................................................................15

    IV.    A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not ...18

Conclusion ...........................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Advanced Integrative Medical Science Institute, PLLC v. Garland*
   24 F.4th 1249 (9th Cir. 2022) ..................................................................................6

*Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*
   No. 25-1281, 2025 WL 1232337 (4th Cir. Apr. 10, 2025) .......................................11

*Arizona v. Yellen*
   34 F.4th 841 (9th Cir. 2022) ..................................................................................14

*Barahona-Gomez v. Reno*
   167 F.3d 1228 (9th Cir. 1999), *supplemented*, 236 F.3d 1115 (9th Cir. 2001) ..................14, 15

*Bennett v. Spear*
   520 U.S. 154 (1997)..................................................................................................5

*Bowen v. Massachusetts*
   487 U.S. 879 (1988)..................................................................................................9

*City & Cnty. of San Francisco v. Trump*
   2025 WL 1282637 (N.D. Cal. May 3, 2025)..............................................................7

*City & Cty. of San Francisco v. Trump*
   897 F.3d 1225 (9th Cir. 2018) ....................................................................2, 4, 7, 9

*City of Los Angeles v. Barr*
   929 F.3d 1163 (9th Cir. 2019) ..................................................................................5

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*
   No. 25-CV-02847-AMO, 2025 WL 1233674 (N.D. Cal. Apr. 29, 2025) ................10

*Cnty. of Santa Clara v. Trump*
   250 F. Supp. 3d 497 (N.D. Cal. 2017)....................................................................13

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*
   321 F.3d 878 (9th Cir. 2003) ..................................................................................15

*Dalton v. Specter*
   511 U.S. 462 (1994)..................................................................................................3

*Department of Education v. California* ...........................................................................11
   145 S. Ct. 966 (2025)

*DHS v. Regents of the Univ. of Cal.*
   591 U.S. 1 (2020)......................................................................................................7

*F.C.C. v. Fox Television Stations, Inc.*
   556 U.S. 502 (2009)..................................................................................................8

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*
    98 F.4th 1180 (9th Cir. 2024) ...........................................................................10

*Gilmore v. Wells Fargo Bank, N.A.*
    No. C 14-2389 CW, 2014 WL 3749984 (N.D. Cal. July 29, 2014) ...........................15

*Herb Reed Enters. LLC v. Florida Ent. Mgmt., Inc.*
    736 F.3d 1239 (9th Cir. 2013) ...........................................................................12

*Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*
    601 F. App'x 469 (9th Cir. 2015) .......................................................................12

*Lincoln v. Vigil*
    508 U.S. 182 (1993) ...........................................................................................9

*Louisiana Pub. Serv. Comm'n v. F.C.C.*
    476 U.S. 355 (1986) ........................................................................................2, 5

*Lyng v. Payne*
    476 U.S. 926 (1986) ...........................................................................................9

*Martin Luther King, Jr. County v. Turner*
    2025 WL 1331488 (W.D. Wash. May 7, 2025) .................................................10, 12

*Mass. Fair Housing Ctr. v. HUD*
    No. 3:25-cv-30041 (D. Mass. Apr. 14, 2025) .......................................................11

*Massachusetts v. Kennedy*
    1:25-cv-10814-WGY (D. Mass. May 12, 2025) ....................................................10

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29 (1983) ..............................................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman*
    451 U.S. 1 (1981) ............................................................................................3, 4

*Pom Wonderful LLC v. Hubbard*
    775 F.3d 1118 (9th Cir. 2014) ...........................................................................12

*Rhode Island v. Trump*
    No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025).....................10

*Richardson v. Morris*
    409 U.S. 464 (1973)...........................................................................................10

*San Luis & Delta-Mendota Water Auth. v. Locke*
    776 F.3d 971 (9th Cir. 2014) ...............................................................................7

*Sols. in Hometown Connnections v. Noem*
    No. 25-CV-00885-LKG, 2025 WL 1103253 (D. Md. Apr. 14, 2025) .......................11

*South Dakota v. Dole*
 483 U.S. 203 (1987)..................................................................................................3

*State ex rel. Becerra v. Sessions*
 284 F. Supp. 3d 1015 (N.D. Cal. 2018) .....................................................................6

*United States v. Testan*
 424 U.S. 392 (1976)................................................................................................11

*W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*
 59 F.4th 1124 (11th Cir. 2023) ...............................................................................14

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*
 586 U.S. 9 (2018)......................................................................................................9

*Winter v. Nat. Res. Def. Council, Inc.*
 555 U.S. 7 (2008)...............................................................................................11, 12

*Youngstown Sheet & Tube Co. v. Sawyer*
 343 U.S. 579 (1952)..................................................................................................2


**Federal Statutes & Codes**

United States Code, Title V
 § 701(a)(2) .................................................................................................................9
 § 704 ..........................................................................................................................5
 § 706(2)(B) ................................................................................................................8
 § 706(2)(C) ................................................................................................................3

United States Code, Title XLII
 § 4950 *et seq.* ............................................................................................................8
 § 4950(b)....................................................................................................................8
 § 4991 ........................................................................................................................8
 § 5000 ........................................................................................................................9
 § 5001 ........................................................................................................................9
 § 5023 .....................................................................................................................5, 8
 § 5025(b)....................................................................................................................9
 § 5025(b)(13) ............................................................................................................5
 § 12501 *et seq.* ..........................................................................................................8
 § 12501(b)(1) ............................................................................................................8
 § 12525(a)(2) ............................................................................................................9
 § 12525(a)(2)(C)(i) ...................................................................................................5
 § 12561(e)..................................................................................................................9
 § 12651d(b)(14) ........................................................................................................9
 § 12572(a)(2)(B)(iii) ................................................................................................5
 § 12639(g)(1) ............................................................................................................5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Introduction

A month after President Trump took office, AmeriCorps issued a sudden and unexplained directive ordering recipients to certify—in the middle of their grant terms—that their programs "compl[y] with all administration Executive Orders and do[] not include any activities that promote DEI activities." AmeriCorps also ordered recipients to "cease [all noncompliant] activities immediately" or lose their funding. Elections have consequences, and new administrations are entitled to make changes in the way that resources are allocated—but they must do so in compliance with the law. AmeriCorps did not. AmeriCorps' actions were unlawful because the agency imposed new, ambiguous conditions on grant funding in mid-stream. They were unlawful because the conditions exceeded the agency's authority and conflicted with the very purposes the program was designed to support. And they were unlawful because they completely changed the agency's position without any regard for recipients' reliance interests or articulation of reasons for the new policy.

AmeriCorps' responses that Plaintiffs implicitly agreed to these yet-to-be written conditions when they signed the initial grants, Defendants' Response to Order to Show Cause and Opposition to a Preliminary Injunction ("Opp.") (Dkt. No. 49) at 4-5, or that the words on the page mean something less than what they say, *id.* at 5, are contrary to fact and law. Similarly unpersuasive are AmeriCorps' arguments that the court lacks jurisdiction because the directive that recipients immediately comply or lose funding was not final agency action, *id.* at 6-8, because the decisions at issue were committed to agency discretion by Congress, *id.* at 10, or because exclusive jurisdiction lies with the Court of Federal Claims under the Tucker Act, *id.* at 10-12. Finally, this Court has already found that Plaintiffs will suffer irreparable harm absent preliminary relief, and nothing in Defendants' opposition, *id.* at 13-15, changes that conclusion. Plaintiffs still face current and ongoing harm to their programs (and to the students and elderly residents who rely on them), harm from the loss of funding for non-compliance, and constitutional harms. A preliminary injunction is needed to prevent these harms during the pendency of the case.

**Argument**

I.     **Plaintiffs Have Established a Likelihood of Success on the Merits**

Defendants' new conditions violate the Spending Clause because they are ambiguous, imposed retroactively, and conflict with the purpose of the spending program. They violate the APA for these same reasons, and because they are arbitrary and capricious and were imposed in excess of statutory authority. Defendants' contrary arguments are unavailing.

A.     **Defendants Violated the Spending Clause**

Defendants argue that Plaintiffs' Spending Clause claim is neither viable nor even "constitutional" because an agency—not Congress—exercised the discretion Congress provided it to decide how to spend the grant money. *See* Opp. at 3-4. Defendants suggest that only grants "awarded [directly] by statute," such as formula grants, are subject to the constraints of the Spending Clause— and therefore apparently all discretionary grants, including Plaintiffs' AmeriCorps grants, are not subject to the Spending Clause. Opp. at 3 n.1. The Court should reject this dangerous and unfounded argument.

"[W]hen it comes to spending, the President has none of 'his own constitutional powers' to 'rely' upon." *City & Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1233–34 (9th Cir. 2018) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring)). A federal agency only has this power if Congress delegates it to the agency. *See Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986) ("[A] n agency literally has no power to act . . . unless and until Congress confers power upon it."). But Plaintiffs' argument is that not even Congress could impose the challenged conditions because they would run afoul of the Spending Clause. Certainly, Congress cannot avoid these constitutional limitations simply by delegating grant-making authority to an agency rather than exercising it themselves.[1] The Spending Clause therefore necessarily applies to Defendants' attempt to impose the new conditions, regardless of whatever discretion AmeriCorps had in making decisions about grant awards. Regardless, Plaintiffs have identified no authority that

---

[1] *See also* Plaintiffs' Memorandum of Points and Authorities In Support Of Motion for Temporary Restraining Order ("MPA") (Dkt. No. 18-1) at 7 & n.6 (reserving Plaintiffs' separation of powers argument).

supports Defendants' position that the Spending Clause does not apply to agencies' discretionary

grantmaking, and Defendants cite none. Defendants' argument that Plaintiffs lack a Spending Clause

claim is, simply, wrong.[2]

And Plaintiffs' Spending Clause claim will succeed. The new AmeriCorps conditions,

requiring Plaintiffs to immediately comply with new executive orders and stop all "activities that

promote DEI activities" are ambiguous, imposed post-acceptance, and conflict with the grant

programs, all in violation of the Spending Clause. *See Pennhurst State Sch. & Hosp. v. Halderman*,

451 U.S. 1, 17 (1981); *South Dakota v. Dole*, 483 U.S. 203, 206 (1987); MPA at 7-12.

Defendants' only argument as to ambiguity is that "AmeriCorps unambiguously conditioned

the receipt of Plaintiffs' federal grant funding on executive order compliance at the outset, which

Plaintiffs accepted." Opp. at 4; *see also id*. at 5 (suggesting that if Plaintiffs accepted that term then,

they must know what it means now). But this argument does not resolve the ambiguity of the new

conditions introduced by the AmeriCorps Directive.[3] Nor does this address the ambiguity of the

standalone anti-DEI provision, discussed further below.

When Plaintiffs signed their original grant agreements, they agreed to "comply with all . . .

executive orders . . . governing the award." Declaration of Laurie Vargas-Zeuschner In Support Of

Mot. for TRO ("Vargas Decl.") (Dkt. No. 18-3) Ex. A at ECF p. 125. Because executive orders apply

only to federal officials and agencies—not third parties—this provision did not impose any substantive

conditions on Plaintiffs. Yet, when Defendants issued the AmeriCorps Directive, suddenly announcing

that grantees must "review the executive orders in Appendix A" of the Directive and "affirm that

---

[2] Plaintiffs *also* have claims that Defendants exceeded their statutory authority, which arise under APA section 706(2)(C). Defendants rely on *Dalton v. Specter*, in which the Supreme Court explained that not all actions by a President or other executive official in excess of their statutory authority are necessarily also constitutional violations. 511 U.S. 462, 472 (1994); Opp. at 4. Plaintiffs do not disagree with that basic proposition, but find it irrelevant here, where Plaintiffs have distinct statutory and constitutional claims.

[3] Plaintiffs have already explained why their original grant agreements did not incorporate future, unknown executive orders, and therefore why the AmeriCorps Directive attempts to impose new conditions retroactively, also in violation of the Spending Clause. MPA at 10-11. Defendants' suggestion that an agreement to comply with executive orders includes any executive orders issued during the life of the grant, Opp. at 4, is wrong for the same reasons and does not resolve the fundamental ambiguity issue caused by AmeriCorps' position that *any* executive orders impose substantive conditions on Plaintiffs.

[their] AmeriCorps grant/award complies with President Trump's executive orders," Request for Judicial Notice In Support Of Plaintiffs' Motion for Temporary Restraining Order ("RJN") (Dkt. No. 18-2) Ex. A at 3, it became evident that Defendants believe that the new executive orders impose substantive conditions on Plaintiffs—but Plaintiffs cannot decipher what they are (and Defendants have not explained them). That ambiguity violates the Spending Clause. *Pennhurst*, 451 U.S. at 17 (conditions are ambiguous if party is unable to ascertain what is expected of it). Defendants do not address this argument at all.

Next, Defendants advance a red herring by attempting to recharacterize the standalone DEI condition, which prohibits activities that "promote DEI activities." *See* Opp. at 5 (suggesting that this condition is no different than unspecified requirements in unspecified executive orders). If Defendants are no longer requiring AmeriCorps grantees to stop all "activities that promote DEI activities," then they should rescind the AmeriCorps Directive, restore Plaintiffs' original grant terms, and enter into a stipulated injunction. *Cf. City & Cnty. of San Francisco v. Trump*, 897 F.3d at 1238 (rejecting "the Administration's current litigation position," which advanced an interpretation of the relevant executive order that was "not grounded in the text"). Instead, Defendants have required Plaintiffs to do everything from deleting words in their grant applications to changing aspects of their AmeriCorps programs to excise "activities that promote DEI activities," making it clear that the Directive imposes a standalone condition that requires vastly more than any of the recent executive orders purport to require. *See* MPA at 6 (discussing provision in Jan. 21 Anti-DEI Order that directs agencies with respect to future grantmaking). This new standalone condition violates the Spending Clause because it is ambiguous, was applied post-acceptance, and is unrelated to (indeed, at odds with) the laws creating these grant programs.

Finally, Defendants fail to show that requiring compliance with executive orders about "gender ideology," the need to terminate "equity-related" grants, or supposedly illegal DEI and DEIA policies[4] is related to Congress's purpose in providing for AmeriCorps grants.[5] Defendants mischaracterize

---

[4] The Anti-Gender Order, Jan. 20 Anti-DEI Order, and Jan. 21 Anti-DEI Order, respectively. *See* MPA at 5.

[5] Defendants claim that they have an "interest in maintaining consistency" between grantmaking and executive orders that apply to AmeriCorps. Opp. at 6. That may be, but it is not an

Congress's purpose by ignoring relevant statutory language that requires and authorizes diversity, equity, and inclusion. *See e.g.*, 42 U.S.C. § 5023 (requiring that "special efforts" be made to recruit older individuals "from minority populations to serve as volunteers") (related to Plaintiff Santa Fe); 42 U.S.C. § 5025(b)(13) (prioritizing programs to "increase participation of members of ethnic groups who have limited English proficiency") (related to Plaintiff Santa Fe); 42 U.S.C. § 12572(a)(2)(B)(iii) (specifying grants for "educating economically disadvantaged individuals" in areas "for which socioeconomic, geographic, and racial and ethnic health disparities exist") (same National Service Trust Program as Plaintiff SFUSD's grant); 42 U.S.C. § 12639(g)(1) (requiring AmeriCorps to evaluate programs' effectiveness at "recruiting and enrolling diverse participants" based on "economic background, race, ethnicity, age, marital status, education levels, and disability") (same National Service Trust Program as Plaintiff SFUSD's grant); 42 U.S.C. § 12525(a)(2)(C)(i) (applicants must "ensure that students of different ages, races, sexes, ethnic groups, disabilities, and economic backgrounds have opportunities to serve together") (statutory program that neighbors Plaintiff SFUSD's grant under the National Service program). Given these repeated statutory requirements and authorizations to promote equity, diversity, and inclusion, prohibiting the same cannot be "related" to the purpose of these funding streams, even if that threshold is low. *See City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 (9th Cir. 2019).

### B.    Plaintiffs Are Likely to Succeed on the Merits of Their APA Claims

Agency actions must be set aside when they violate the Constitution, exceed the agency's statutory authority, or are arbitrary and capricious. The AmeriCorps Directive does all three.

#### 1.    The AmeriCorps Directive and New Conditions Constitute Final Agency Action

As it previously determined, this Court may review (and set aside) the AmeriCorps Directive and new grant conditions because they mark "the 'consummation' of the agency's decisionmaking process," from which "legal consequences [] flow," and are therefore a final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations omitted); 5 U.S.C. § 704.

---

argument that the new conditions are related to the purpose of AmeriCorps grants. Regardless, because agencies have no power to act without Congressional authorization, *see Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. at 357, an agency may only conform with executive orders to the extent permitted by statute.

First, the AmeriCorps Directive and new grant conditions are not, as Defendants argue, "interlocutory." Opp. at 7. Rather, they articulate specific conditions—grantees *had to* certify "compl[iance] with all administration Executive Orders and not include any activities that promote DEI activities" or *had to* relinquish funds or face termination. *See* RJN Ex. A at 1-3 (informing grantees of *required* responses, the timeline for responses, and resulting impact). Where, as here, an agency sets parameters on grant eligibility, the agency has "consummate[d]" its decisionmaking. *See e.g.*, *City & Cnty. of S.F. v. Trump*, 2025 WL 1282637, at *35 (N.D. Cal. May 3, 2025) (rendering "sanctuary" jurisdictions "ineligible for federal funding" was final agency action); *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031 (N.D. Cal. 2018) ("By imposing the certification condition, the federal government has articulated that certain funds … will require adherence to the certification condition [and] has rendered its final word[.]"); *City & Cnty. of San Francisco v. Sessions*, 349 F. Supp. 3d 924, 961-62 (N.D. Cal. 2018), *affirmed in part and vacated in part on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (collecting cases).

Second, legal consequences flow from the terms of the AmeriCorps Directive and new grant conditions themselves—and have already. The Directive is not, as Defendants urge, an "informational document"[6] that "merely sought to bring [] grantees into compliance with executive orders." Opp. at 7. Such an interpretation forgets the "stick" that AmeriCorps used to force compliance—grantees *had to* either certify compliance, amend their programs to become compliant, or forego funding. RJN Ex. A at 2-3. Those terms are irreconcilable with Defendants' argument that the Directive *itself* did not pause or terminate grant funding or suspend grant programs. Opp. at 7-8. An agency cannot avoid a finding of final agency action through such wording. *See e.g.*, *City & Cnty. of San Francisco*, 2025 WL 1282637 at *34 (legal consequences flowed from directive that "sanctuary" cities are ineligible for federal funding); *State ex rel. Becerra*, 284 F. Supp. 3d at 1032 (conditioning of grants on certification of compliance "open[ed] up the State to potential legal consequences").

---

[6] As support, Defendants cite *Advanced Integrative Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). Opp. at 7. But there, unlike here, the agency's letter merely provided "straightforward guidance" on existing legal requirements. *See id.* at 1261. In contrast, the AmeriCorps Directive imposes new legal requirements, such as the standalone DEI condition, on grants and, further, does so without any guidance on what the enabling statutes require.

### 2.    The AmeriCorps Directive and New Conditions Violate the APA

The AmeriCorps Directive and new grant conditions are arbitrary and capricious, contrary to the Constitution, and in excess of AmeriCorps' statutory authority, and therefore unlawful.

**Arbitrary and Capricious.** The AmeriCorps Directive and new grant conditions are arbitrary and capricious because, as explained in Plaintiff's Motion, AmeriCorps failed to consider (1) any consequences of the Directive and new conditions on programs like Plaintiffs' Healthy Choices and Senior Companion Programs; (2) the impact on the programs' ability to implement Congress's mandate; (3) the significant reliance interests; or (4) any reasonable alternatives. *See* MPA at 14-15. Defendants do not dispute these points, and so they are waived. *See* Opp. at 8-9. Instead, Defendants argue that, regardless, the Directive and conditions are owed deference and that AmeriCorps has discretion over its funding.[7] Opp. at 8-9.

But deference is neither "unlimited" nor "automatic." *See San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 994 (9th Cir. 2014). Rather, where, as here, the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem," or failed to "set forth the reasons for its decision," courts deem the action arbitrary and capricious. *See e.g.*, *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (attempted rescission of Deferred Action for Childhood Arrivals program was arbitrary and capricious in part based on agency's failure to consider reliance interests); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency cannot "entirely fail[] to consider an important aspect of the problem" before it); *City & Cnty. of San Francisco v. Trump*, 2025 WL 1282637 at *36 (failure to consider reliance interests and consequences demonstrated likelihood of success on APA claim).

---

[7] Defendants also argue that there is no "factual support given the absence of an administrative record at this stage" for the argument that AmeriCorps' failed to consider reliance interests, the consequences of the Directive and new conditions, and policy alternatives. Opp. at 9. Plaintiffs submitted the complete public administrative record—RJN Ex. A—and Defendants had the opportunity to introduce anything missing. Defendants simply failed to mention or weigh important and serious foreseeable impacts—e.g., Vargas Decl. ¶¶ 25-32, Hammond Decl. ¶¶ 3-36—and this only further proves that AmeriCorps did not act reasonably or reasonably explain its change of course. *See e.g.*, *City & Cnty. of San Francisco*, 349 F. Supp. 3d at 966 (record lacked evidence to support position of federal government, showing it "failed to consider important problems with its conditions").

Nor does AmeriCorps have the "discretion" to impose new conditions on "policy grounds" without, as Defendants admit, "display[ing] awareness that it is changing [its] position" and "show[ing] that there are good reasons for the new policy." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Doing neither, Defendants contend that AmeriCorps is simply enforcing conditions that Plaintiffs "had already agreed to," Opp. at 9, and that the conditions are necessary because grants "must comply with all applicable executive order and memoranda," RJN Ex. A at 7. Ideological alignment with a new presidential administration, though, is not "good reason." *Cf. Fox Television*, 556 U.S. at 515 (identifying good reason as "factual findings that contradict those which underlay [a] prior policy" or a prior policy "engender[ing] serious reliance interests"). And Plaintiffs did not agree in advance to unknown conditions that would be ushered in with a new administration by agreeing to abide by then-extant executive orders. *See also supra* I.A (regarding lack of clear notice). To hold otherwise would be to eviscerate the already minimal requirement that agencies refrain from acting in an arbitrary and capricious manner.

**Contrary to the Constitution.** As explained above, the AmeriCorps Directive and new grant conditions violate the Spending Clause, *supra* I.A, and should be set aside as contrary to the Constitution under APA section 706(2)(B).

**Excess of Statutory Authority.** The AmeriCorps Directive and new conditions are in excess of statutory authority and contravene Congress's purpose in creating AmeriCorps grant programs. To start, nothing in AmeriCorps' enabling statutes, 42 U.S.C. § 4950 *et seq.* (the "DVSA") and 42 U.S.C. § 12501 *et seq.* (the "NCSA"), confers authority on the agency to withdraw already obligated AmeriCorps grants because those grants "promote DEI activities" or promote "gender ideology," or whatever else Defendants believe the new executive order require of Plaintiffs. Nor would that make sense as a matter of statutory construction—the express purpose of each statute is to help diverse communities, including minority populations. *See e.g.*, 42 U.S.C. § 4950(b) (purpose is to "help the poor, the disadvantaged, the vulnerable, and the elderly"); *id.* § 4991 (purpose is to "strengthen and supplement efforts to meet a broad range of needs, particularly those related to poverty"); *id.* § 5023 (AmeriCorps must take "appropriate steps" to ensure minority seniors serve as volunteers); *id.* § 12501(b)(1) (purpose is to "meet the unmet human, educational, environmental, and public safety

needs of the United States"). Countless other examples in the statutes abound. *See id.* § 5025(b); *id.* § 5000; *id.* § 5001; *id.* § 12525(a)(2); *id.* § 12561(e); *id.* § 12651d(b)(14).

It does not matter that the enabling acts provide AmeriCorps some discretion in authorizing grants. Opp. at 9-10. AmeriCorps has no power to withhold appropriated funds, *City & County of San Francisco v. Trump*, 897 F.3d at 1235 ("Absent congressional authorization, the Administration may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals."), and it also has no power to condition funding on terms inconsistent with its enabling acts, *see Lyng v. Payne*, 476 U.S. 926, 937 (1986) ("An agency's power is no greater than that delegated to it by Congress."). At bottom, this is an attempt to repackage the section 701(a)(2) argument this Court has already twice rejected. Order Granting Plaintiffs' Mot. for a TRO and Order to Show Cause ("TRO") (Dkt. No. 33) at 4; Order on Subject Matter Jurisdiction ("Jurisdiction Order") (Dkt. No. 48) at 5-10. The Court should reject it a third time.

## II.    This Court Still Has Jurisdiction Over Plaintiffs' Claims

### A.    The AmeriCorps Directive is Reviewable Under the APA

Defendants maintain a cursory version of their flawed argument, which this Court rejected, that the AmeriCorps Directive is unreviewable because it was a decision committed to agency discretion by law. *See* Opp. at 10; Jurisdiction Order at 5-10. Defendants continue to advance an incorrect reading of *Lincoln v. Vigil* that ignores the Supreme Court's explicit acknowledgment that an agency must still "meet its statutory responsibilities," even if given the flexibility to do so through lump-sum grantmaking. 508 U.S. 182, 192 (1993). This Court rightly distinguished *Lincoln* for the lack of lump-sum appropriations here, Jurisdiction Order at 6, and properly concluded, with robust support, that the relevant AmeriCorps statutes evince at least some "meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 7 (quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)).[8] This Court's analysis was thorough and its conclusion correct. *See* Jurisdiction Order at 2-10.

---

[8] The conclusion would be the same even if, as Defendants suggest, *Bowen v. Massachusetts* did not decide whether APA § 701(a)(2) applied. *See* Opp. at 10 n.4 (citing 487 U.S. 879, 891–92 (1988)). In its Jurisdiction Order, the Court relied on *Bowen* in its APA-unreviewable analysis not for any holding as to section 701(a)(2), but to illuminate, as the Supreme Court had, that Congress

### B.    Plaintiffs' Claims Do Not Fall Within the Tucker Act

As this Court also rightly decided, Plaintiffs met their burden to show that this Court, not the Court of Federal Claims ("CFC"), has jurisdiction over their claims. Jurisdiction Order at 10-19.[9] The law has not changed since that order, and the Court did not overlook anything that would change its analysis. Plaintiffs have no contract claims and do not seek money damages; instead, they seek to set aside unlawful grant conditions and enjoin Defendants from imposing them.

Defendants' attempts to recharacterize the relief Plaintiffs seek (and obtained in the TRO) are unavailing. *See* Opp. at 11. Preserving the status quo requires enjoining Defendants from terminating Plaintiffs' grants based on Plaintiffs' continued operation of their programs as originally approved (i.e., without the specter of the new grant conditions). This is not the same as "an order requiring AmeriCorps to pay Plaintiffs." Opp. at 11. Nor is it overbroad. *Id.* (citing *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1195 (9th Cir. 2024)). In fact, anything less protective than this injunction would allow Defendants to impose the unlawful conditions through another name. If for some reason Defendants find some other basis—wholly unrelated to the AmeriCorps Directive—to question Plaintiffs' compliance with their original grant terms, then, as Defendants previously stated, there is an administrative process. *See* Defendants' Opp. to Mot. for TRO (Dkt. No. 30) at 8 (citing federal regulations requiring process *before* termination can be effectuated). If anything, the scope of the injunction required to effectively prevent Defendants from imposing the unlawful conditions underscores why the CFC is an improper forum: it *cannot* provide such an injunction, or any other. *Richardson v. Morris*, 409 U.S. 464, 465 (1973) (CFC has no power to grant equitable relief).

---

understood the APA to provide judicial review for agency administration of federal grant programs. *See* Jurisdiction Order at 3-4, 6. Both of Defendants' jurisdictional arguments ignore this.

[9] Since the Court issued its Jurisdiction Order, several other courts have rejected the federal government's Tucker Act defense in federal funding cases. *See* Memorandum and Order on Subject Matter Jurisdiction, *Massachusetts v. Kennedy*, 1:25-cv-10814-WGY (D. Mass. May 12, 2025), ECF No. 105 at 23; *Martin Luther King, Jr. County v. Turner*, No. 2:25-CV-814, 2025 WL 1331488, at *1 (W.D. Wash. May 7, 2025); *Rhode Island v. Trump*, No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868, at *7 (D.R.I. May 6, 2025); *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, No. 25-CV-02847-AMO, 2025 WL 1233674, at *7 (N.D. Cal. Apr. 29, 2025), *appeal filed*, No. 25-2808 (9th Cir. May 1, 2025).

This Court already distinguished this grant conditions case from federal grant termination cases, such as *Department of Education v. California*, in which the plaintiffs claimed the government terminated grants in violation of grant terms and applicable statutes. 145 S. Ct. 966 (2025); Jurisdiction Order at 13; *see also* Opp. at 11-12 (citing *Sols. in Hometown Connnections v. Noem*, No. 25-CV-00885-LKG, 2025 WL 1103253, at *9 (D. Md. Apr. 14, 2025) (claims challenging grant terminations depended on termination regulations incorporated in grants, and therefore were like contract claims)); *cf.* Opp. at 12 (citing *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337, at *1 (4th Cir. Apr. 10, 2025) (unpublished per curiam order with no analysis); Order, *Mass. Fair Housing Ctr. v. HUD*, No. 3:25-cv-30041 (D. Mass. Apr. 14, 2025), ECF No. 42 (plaintiffs challenged grant termination as being in violation of regulations and statutes, and therefore were like contract claims).

In any event, Plaintiffs' primary claim in this case is a constitutional claim completely outside the CFC's jurisdiction: that the AmeriCorps Directive should be set aside because it violates the Spending Clause. *See supra* section I.A; MPA at 7-12; *United States v. Testan*, 424 U.S. 392, 398 (1976) (the Tucker Act confers jurisdiction only when a constitutional provision expressly creates a substantive right enforceable against the federal government for money damages). As this Court rightly concluded, this constitutional provision is the source of that claim—not the grant agreements. Because the AmeriCorps Directive suffers from constitutional infirmities, it must be enjoined and Defendants must be prohibited from imposing the same conditions by another name—hence, relief that merely limits Plaintiffs from "complying with the [AmeriCorps Directive] for Plaintiffs' existing grants," Opp. at 13, does not afford complete relief.

## III. Plaintiffs Established Irreparable Harm In the Absence of a Preliminary Injunction

Plaintiffs have shown concrete, non-speculative harm that cannot be remedied by damages, warranting preliminary relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

First, Plaintiffs have demonstrated concrete harms that are likely to occur in the absence of a preliminary injunction. Plaintiff SFUSD has made "real world changes," including revamping training materials and reworking its method of mentor pairing; and it has identified student groups that may need to stop meeting as they may "promote DEI" in the eyes of the administration. Vargas Decl.

¶¶ 26-28; MPA at 17-18. Further, individual AmeriCorps members and SFUSD employees do not know whether the mentoring or advice they would normally offer students would constitute "promoting DEI," and thus may censor themselves, cutting short critical conversations with students— a harm that Defendants do not address. Vargas Decl. ¶¶ 30-32. Harm to SFUSD's mission, and to students' wellbeing and experiences thus remains ongoing. Vargas Decl. ¶¶ 26, 28.

The same is true for Plaintiff Santa Fe, who, in order to comply with the Directive, will have to either dramatically alter its programs beyond recognition or eliminate them altogether absent a preliminary injunction. MPA at 20; Declaration of Henri Hammond-Paul In Support Of Mot. for TRO ("Hammond Decl.") (Dkt. No. 18-6) ¶ 31. The Foster Grandparents initiative, for example, inherently works to support diverse student populations, *see* Hammond Decl. ¶¶ 26-27, and the RSVP volunteers support culturally inclusive initiatives, *see id*. ¶¶ 28-29. Harm to these, and the Healthy Choices Program, is ongoing and existential: removing anything that "promotes DEI" threatens the existence of the programs altogether.[10]

Defendants argue that Plaintiffs' declarations are inadequate to establish irreparable harm, *see* Opp. at 13, relying only on *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014), which in turn relies on *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013). But *Herb Reed*, a trademark infringement suit, is nothing like this case. There, the district court relied on "platitudes rather than evidence," cited no record evidence, and merely analogized to a similar case to support its finding of irreparable harm. 736 F.3d at 1250. Here, in contrast, Plaintiffs submitted fulsome declarations from knowledgeable employees detailing the impacts of compliance with the Directive. *See Life Alert Emergency Response, Inc. v. LifeWatch, Inc.*, 601 F. App'x 469, 473-74 (9th Cir. 2015) (basing irreparable harm determination on declaration testimony and submitted documents).

---

[10] Although Santa Fe has not yet begun making changes to its programs, due in part to the ambiguity of the new conditions, Defendants correctly note that Plaintiffs merely need to show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original); Opp. at 13. By showing the inherent DEI elements in its programs and the uncertainty surrounding the new conditions, Santa Fe has done just that. *See Martin Luther King, Jr. County*, 2025 WL 1331488 at *1 (enjoining new conditions on homelessness and transit grants as void for vagueness, among other reasons).

Further, damages cannot adequately remedy these injuries after litigation concludes. *See* TRO at 5-6. Plaintiffs need the funding, Declaration of Dr. Maria Su In Support Of Mot. for TRO ("Su Decl.") (Dkt. No. 18-4) ¶¶ 5-6; Vargas Decl. ¶ 33; Hammond Decl. ¶¶ 23, 31, and therefore must comply, *See* RJN Ex. A at 2, or else risk loss of grant funding. *See id*. Indeed, as the Court already pointed out, "[w]hen invited by the Court at the hearing to make a commitment not to penalize conduct during the pendency of the TRO, Defendants refused." TRO at 7 n.3. This coerced compliance will continue to cause serious and long-term impacts on Plaintiffs' programs, of the type that cannot be remedied by damages. Alternatively, without the guarantee of the approximately $667,000 in funding, Plaintiff SFUSD would need to drastically cut the number of mentors in schools and significantly reduce the programming provided to students. Vargas Decl. ¶ 33. Preliminary relief is the only way Plaintiffs can avoid this irreparable harm during the pendency of this litigation.

Second, the ambiguity of the AmeriCorps Directive and new conditions causes ongoing and irreparable harm that is inherently incapable of being redressed by damages. *See* TRO at 7-9; Vargas Decl. ¶¶ 31-32; Hammond Decl. ¶ 26. Indeed, to date, and despite submitting grant amendments, Plaintiffs still do not know what compliance requires, Vargas Decl. ¶ 23; Hammond Decl. ¶ 25, as "the mandated conditions for compliance appear at this junction to be unclear." TRO at 7. Further, before the TRO was in effect, SFUSD staff and mentors were unsure if they could have conversations with students that touched on issues of race, gender, or inclusion. Vargas Decl. ¶¶ 31-32.

Third, there is no requirement, as Defendants claim, that there must be a statutory or constitutional "entitlement" to federal funding to suffer irreparable harm. *See* Opp. at 14-15. Defendants cite no authority for this proposition, and any required showing of such an "entitlement" would be irrelevant as Plaintiffs were *already* entitled to promised AmeriCorps funding.

Last, Plaintiffs' constitutional injury provides an independent basis for finding irreparable harm. TRO at 9-10. While Defendants argue there can be no constitutional injury unless it stems from an individual constitutional right, Opp. at 15, the "distinction between personal and structural constitutional rights is not recognized in the Ninth Circuit" for purposes of determining irreparable harm. *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 538 (N.D. Cal. 2017). Moreover, as this Court pointed out in its TRO order, a Spending Clause violation may constitute injury for Article III

standing purposes, *see Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022), and other Circuits have held such a violation to constitute irreparable harm sufficient to uphold a preliminary injunction, *see W. Virginia by & through Morrisey v. U.S. Dep't of the Treasury*, 59 F.4th 1124, 1149 (11th Cir. 2023). TRO at 10. Plaintiffs have thus established irreparable harm in the absence of a preliminary injunction.

**IV.     A Preliminary Injunction Serves the Public Interest; a Bond or Stay Does Not**

The public interest favors an order enjoining Defendants from imposing their unlawful new grant conditions—without undermining the protection such an order provides to Plaintiffs by requiring Plaintiffs to post a bond or endure a lapse in the PI's effect due to a seven-day stay.

As it did before, this Court should decline Defendants' invitation to minimize the substantial harm to Plaintiffs in either capitulating to AmeriCorps' unlawful grant conditions or foregoing the funding altogether, either of which results in harm to Plaintiffs and the vulnerable populations served by their AmeriCorps programs. TRO at 10-11. Defendants now argue that harm exists in "enjoining AmeriCorps from exercising" discretion it claims to have to decide "whether and how to allocate its funds." Opp. at 15.[11] But this, like the federal government's "interest in being able to enforce a chosen policy," evaporates where, as here, "the policy is not lawful." TRO at 10. The public interest is served by allowing Plaintiffs to continue their lawful grant activities, particularly to support seniors and students—and not by permitting Defendants to impose unlawful grant conditions.

As such, the Court should not entirely undermine its potential PI by requiring Plaintiffs to post a bond in the amount of their AmeriCorps grants. Federal Rule of Civil Procedure 65(c) "invest[s] the district court with discretion as to the amount of security required, if any." *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999), *supplemented*, 236 F.3d 1115 (9th Cir. 2001) (collecting cases). It is within the district court's "wide discretion" to waive the bond requirement "if there is no evidence the party will suffer damages from the injunction," *Conn. Gen. Life Ins. Co. v. New Images of Beverly*

---

[11] Counsel for Defendants argued at the TRO hearing that the federal government was harmed, in part through administrative costs, by having to switch back and forth between different sets of conditions. Opp. at 15 (citing TRO Tr. at 66:9-21). Even if there were evidence of this in the record, which there is not, the federal government *chose* those costs by issuing the AmeriCorps Directive and imposing a new set of conditions.

*Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citations omitted), or if "there is a high probability of success that equity compels waiving the bond, the balance of the equities overwhelmingly favors the movant . . . or the requirement of a bond would negatively impact the movant's constitutional rights," *Gilmore v. Wells Fargo Bank, N.A.*, No. C 14-2389 CW, 2014 WL 3749984, at *6 (N.D. Cal. July 29, 2014); *see also Barahona-Gomez*, 167 F.3d at 1237. Here, Defendants will incur no damages if somehow they are wrongly enjoined—Defendants have already stated that they do not plan to terminate any of Plaintiffs' grants and, while Plaintiffs take no comfort from that, it at least indicates that Defendants have no reliance interest in retaining this money and have no plan to use it for other things (nor could they, for a variety of reasons). Further, a bond in the full amount of Plaintiffs' AmeriCorps grants would entirely obviate the purpose of the Court's potential PI, which would be to provide Plaintiffs with the assurance that they may continue their programs as originally authorized and not lose their funding. A bond would deprive Plaintiffs of the very funds the potential PI would protect. Because Plaintiffs have constitutional injuries (based on Defendants' violations of the Spending Clause), this would "negatively impact [Plaintiffs'] constitutional rights," *Gilmore*, 2014 WL 3749984, at *6. In the alternative, if the Court decides that a bond is needed, Plaintiffs request that the amount be nominal to reflect the hardship that would result from losing access to the very funds Plaintiffs seek to protect.

Just as a bond would undermine the Court's possible PI, so too would a stay. While Defendants request a seven-day administrative stay to allow them to seek a further stay from the Ninth Circuit, Opp. at 16, even a one-week lapse in Plaintiffs' protections against the AmeriCorps Directive could entirely undermine the PI and impose further irreparable harm on Plaintiffs. In seven days, the federal government could re-impose the new conditions, identify some purported violation by Plaintiffs, terminate Plaintiffs' grants entirely, and cause havoc. The Court should afford Plaintiffs the full protection of any PI it issues.

### Conclusion

For the reasons stated herein, Plaintiffs respectfully request that this Court enter a preliminary injunction with the same substantive provisions as the TRO, to last through the conclusion of this suit.

1

2  Dated: May 13, 2025

3                                                  DAVID CHIU
                                                   City Attorney, City and County of San Francisco
4                                                  YVONNE R. MERÉ
                                                   Chief Deputy City Attorney
5                                                  MOLLIE M. LEE
                                                   Chief of Strategic Advocacy
6                                                  SARA J. EISENBERG
                                                   Chief of Complex and Affirmative Litigation
7                                                  MOLLY J. ALARCON
                                                   Deputy City Attorney
8

9                                           By:   */s/ Molly J. Alarcon*
                                                   MOLLY J. ALARCON
10                                                 Deputy City Attorney

11                                                 WILLKIE FARR & GALLAGHER LLP
                                                   Benedict Hur
12                                                 Simona Agnolucci
                                                   Eduardo Santacana
13                                                 Stephen Henrick
                                                   Alyxandra Vernon
14                                                 Michael Morizono
15
                                                   Attorneys for Plaintiff
16                                                 CITY AND COUNTY OF SAN FRANCISCO
17
                                           By:   */s/ Erin K. McSherry*
18                                                 ERIN K. MCSHERRY*
                                                   City Attorney City of Santa Fe, New Mexico
19                                                 200 Lincoln Ave Santa Fe, NM 87501
                                                   505-955-6512
20                                                 ekmcsherry@santafenm.gov
21
                                                   Jill Habig, SBN 268770
22                                                 Jonathan B. Miller*
                                                   Public Rights Project
23                                                 490 43rd Street, Unit #115
                                                   Oakland, CA 94609
24                                                 (510) 738-6788
                                                   jon@publicrightsproject.org
25
                                                   Attorneys for Plaintiff
26                                                 CITY OF SANTA FE, NEW MEXICO
27                                                 * Admitted pro hac vice
28