DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone:    (415) 554-3894
Facsimile:    (415) 437-4644
E-Mail:    molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

*[additional counsel on signature page]*

COOLEY LLP
BENEDICT Y. HUR, SBN 224018
bhur@cooley.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@cooley.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@cooley.com
THILINI CHANDRASEKERA, SBN 333672
tchandrasekera@cooley.com
MICHAEL B. MORIZONO, SBN 359395
mmorizono@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:    (415) 693-2000

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
  SCHOOL DISTRICT

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,, <br><br> Defendants. | Case No. 3:25-cv-02425-EMC <br><br> **PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** <br><br> Date:        May 14, 2026 <br> Time:        1:30 p.m. <br> Place:        Courtroom 5, 17th Floor |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

STATEMENT OF RELIEF REQUESTED ......................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

Introduction .......................................................................................................................... 2

Facts….. ................................................................................................................................. 2

Legal Standard ...................................................................................................................... 5

Argument ............................................................................................................................... 5

I.      Plaintiffs Are Entitled to Summary Judgment on Their Claim That Defendants Violated Constitutional Separation of Powers ........................................................... 5

II.     Plaintiffs Are Entitled to Summary Judgment on Their Claim That Defendants Violated the Spending Clause ................................................................................... 7

        A.      The Directive Imposes Unconstitutionally Ambiguous Conditions ...................... 9

        B.      The Directive is Impermissibly Retroactive ......................................................... 11

        C.      The Directive and New Conditions Conflict with AmeriCorps' Purpose............. 12

III.    Given the Ambiguity of the EO Condition, Plaintiffs Are Entitled to Declaratory Relief................................................................................................................................ 13

IV.     Plaintiffs Are Entitled to Summary Judgment on Their Claims That Defendants Violated the Administrative Procedure Act ............................................................... 15

        A.      The Directive Is Unlawful Because It Is Arbitrary and Capricious ...................... 15

        B.      The Directive is Contrary to the Constitution ....................................................... 18

        C.      The Directive is in Excess of AmeriCorps' Statutory Authority .......................... 19

V.      Plaintiffs Are Entitled to Vacatur of the AmeriCorps Directive and a Permanent Injunction That Prevents Defendants From Imposing Any Similar Conditions ............... 20

        A.      The Court Should Vacate the Directive ................................................................. 20

        B.      The Court Should Permanently Enjoin Defendants from Enforcing Any Similar Conditions Through Other Means........................................................................... 20

                1.      Plaintiffs Have Demonstrated Actual Success on the Merits.................... 21

                2.      Plaintiffs Have Demonstrated Irreparable Harm...................................... 21

                3.      The Legal Remedies are Inadequate ........................................................ 23

                4.      The Public Interest and the Balance of Hardships Strongly Favor Injunctive Relief...................................................................................... 24

Conclusion ............................................................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*AIDS Vaccine Advocacy Coalition v. U.S. Dep't of State*,
5     768 F. Supp. 3d 1 (D.D.C. 2025) ........................................ 23

6   *Al Otro Lado, Inc. v. Mayorkas*,
      619 F. Supp. 3d 1029 (S.D. Cal. 2022) ................................ 23
7

8   *Am. Bioscience, Inc. v. Thompson*,
      269 F.3d 1077 (D.C. Cir. 2001) ...................................... 5, 20

9

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
10    155 F.4th 1082 (9th Cir. 2025) .......................................... 5

11  *Am.-Arab Anti-Discrimination Comm. v. Reno*,
      70 F.3d 1045 (9th Cir. 1995) ........................................... 21
12

13  *Amoco Prod. Co. v. Village of Gambell, Alaska*,
      480 U.S. 531 (1987) ....................................................... 21

14
    *Arizona v. Yellen*,
15    34 F.4th 841 (9th Cir. 2022) ............................................. 7

16  *Ariz. Dream Act Coal. v. Brewer*,
      757 F.3d 1053 (9th Cir. 2014) .......................................... 24
17

18  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
      548 U.S. 291 (2006) .................................................... 9, 10

19
    *Arrington v. Daniels*,
20    516 F.3d 1106 (9th Cir. 2008) ........................................... 5

21  *Bennett v. Spear*,
      520 U.S. 154 (1997) ...................................................... 15
22

23  *Cal. v. U.S. Dep't of Transp.*,
      No. 25-cv-208, — F. Supp. 3d —, 2025 WL 3072541 (D.R.I. Nov. 4, 2025) ................ 18, 23

24  *Camp v. Pitts*,
      411 U.S. 138 (1973) ....................................................... 5
25

26  *City & Cnty. of S.F. v. Sessions*,
      349 F. Supp. 3d 924 (N.D. Cal. 2018), *aff'd in part and vacated in part on
27    other grounds by City & Cnty. of S.F. v. Barr*, 965 F.3d 753 (9th Cir. 2020) ............. 8, 13, 22

28

*City & Cnty. of S.F. v. Sessions*,
  372 F. Supp. 3d at 948–49 .................................................................................... 11

*City & Cnty. of S.F. v. Trump*,
  897 F.3d 1225 (9th Cir. 2018).......................................................................... 5, 6, 7

*City of L.A. v. Barr*,
  929 F.3d 1163 (9th Cir. 2019)..................................................................................... 7

*Clinton v. City of N.Y.*,
  524 U.S. 417 (1998)................................................................................................... 16

*Cnty. of Santa Clara v. Noem*,
  No. 25-cv-08330, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) .............................. 9, 10, 13

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) ............................................................... 11, 13

*D.V.D. v. U.S. Dep't of Homeland Sec.*,
  No. 25-10676, 2025 WL 1453640 (D. Mass. May 21, 2025).................................... 23

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)................................................................................................... 16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
  591 U.S. 1 (2020)....................................................................................................... 17

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014)................................................................................... 24

*eBay Inc. v. MercExchange, L.L.C.*,
  547 U.S. 388 (2006)................................................................................................... 21

*F.C.C. v. Fox Television Stations, Inc.*,
  556 U.S. 502 (2009)................................................................................................... 17

*Farmers Union Ctr. Exch., Inc. v. F.E.R.C.*,
  734 F.2d 1486 (D.C. Cir. 1984) ................................................................................ 18

*Fed. Election Comm'n v. Cruz*,
  596 U.S. 289 (2022)................................................................................................... 5-6

*Housing Auth. of City & Cnty. of S.F. v. Turner*,
  No. 25-cv-08859, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) ............................. 9

*Illinois v. Fed. Emergency Mgmt. Agency*,
  No. 25-206, — F. Supp. 3d —, 2025 WL 2716277 (D.R.I. Sep. 24, 2025) .................... 16, 17

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*,
  730 F.3d 1024 (9th Cir. 2013)................................................................................... 21

*Loving v. United States*,
    517 U.S. 748 (1996) ........................................................................................................ 7

*Marin Audubon Soc'y v. Fed. Aviation Admin.*,
    121 F.4th 902 (D.C. Cir. 2024) ...................................................................................... 19

*Martin Luther King, Jr. Cnty. v. Turner*,
    785 F. Supp. 3d 863 (W.D. Wash. 2025) ...................................................................... 22

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ......................................................................................... 24

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010) ....................................................................................................... 23

*Mont. Wildlife Fed'n v. Haaland*,
    127 F.4th 1 (9th Cir. 2025) ............................................................................................ 20

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) .................................................................................................... 16, 17

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
    767 F. Supp. 3d 243 (D. Md. 2025), *op.* ...................................................................... 10

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
    779 F. Supp. 3d 149 (D.N.H. 2025) .............................................................................. 10

*Nat'l Fed. of Indep. Bus. v. Sebelius*,
    567 U.S. 519 (2012) ..................................................................................................... 7, 8

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
    595 U.S. 109 (2022) .................................................................................................. 19, 20

*Nat'l Parks Conservation Ass'n v. Semonite*,
    422 F. Supp. 3d 92 (D.D.C. 2019) ................................................................................ 20

*New York v. Trump*,
    777 F. Supp. 3d 112 (D.R.I. 2025) ................................................................................ 23

*New York v. U.S. Dep't of Health & Hum. Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019) ........................................................................... 12

*New York v. United States*,
    505 U.S. 144 (1992) ........................................................................................... 8, 12, 18

*Occidental Eng'g Co. v. I.N.S.*,
    753 F.2d 766 (9th Cir. 1985) ........................................................................................... 5

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ............................................................................................... 8, 11, 18

*R.I. Latino Arts v. Nat'l Endowment for the Arts*,
　800 F. Supp. 3d 351 (D.R.I. 2025) ............................................................ 16, 21, 23

*Rhode Island v. Trump*,
　No. 1:25-cv-128, — F. Supp. 3d —, 2025 WL 3251113 (D.R.I. Nov. 21, 2025) .................. 7

*Rodriguez v. Robbins*,
　715 F.3d 1127 (9th Cir. 2013) ........................................................................ 24

*S.F. A.I.D.S. Found. v. Trump*,
　786 F. Supp. 3d 1184 (N.D. Cal. 2025) ............................................................ 10

*Scholl v. Mnuchin*,
　494 F. Supp. 3d 661 (N.D. Cal. 2020) .............................................................. 23

*Seattle Audubon Soc'y v. Moseley*,
　80 F.3d 1401 (9th Cir. 1996) ............................................................................ 14

*Sierra Club v. Bosworth*,
　510 F.3d 1016 (9th Cir. 2007) ............................................................................ 5

*South Dakota v. Dole*,
　483 U.S. 203 (1987) ..................................................................................... 7, 8

*State v. Su*,
　121 F.4th 1 (9th Cir. 2024) .............................................................................. 18

*Texas v. United States*,
　No. 1:18-CV-00068, 2021 WL 3022434 (S.D. Tex. July 16, 2021) ........................ 23

*Thakur v. Trump*,
　787 F. Supp. 3d 955 (N.D. Cal. 2025) ........................................................ 23-24

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) ......................................................................................... 21

*Youngstown Sheet & Tube Co. v. Sawyer*,
　343 U.S. 579 (1952) ................................................................................... 7, 16

**Statutes**

5 U.S.C.
　§ 704 ............................................................................................................ 15
　§ 706 ........................................................................................................ 5, 20
　§ 706(2) ........................................................................................................ 20
　§ 706(2)(B) .................................................................................................. 18
　§ 706(2)(C) .................................................................................................. 19

28 U.S.C. § 2201(a) ........................................................................................ 14

42 U.S.C.
  § 4950 ................................................................................................ 6, 12, 17, 19
  § 12501 .............................................................................................. 12, 17, 19
  § 12561 .............................................................................................. 13, 17, 19
  § 12572 ............................................................................................................ 6, 13
  § 12651d ........................................................................................................ 17, 19

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................... 5

U.S. Const. art. I, § 8, cl. 1 .............................................................................. 5, 7

U.S. Const. art. I, § 9, cl. 7 ............................................................................... 5

U.S. Const. art. II, § 3 ....................................................................................... 7

U.S. Dep't of Justice, Executive Orders, https://bja.ojp.gov/program/it/privacy-
  civil-liberties/authorities/executive-orders (last visited Jan. 9, 2026) ................... 9

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 14, 2025 at 1:30 PM, or as soon thereafter as the matter can be heard, in Courtroom 5 on the 17th Floor of the United States District Court for the Northern District of California, in San Francisco, California, the Honorable Edward M. Chen presiding, Plaintiffs San Francisco Unified School District and City of Santa Fe, New Mexico, will move for summary judgment or, in the alternative, partial summary judgment. Plaintiffs base this motion on this Notice of Motion and Motion; the accompanying memorandum of points and authorities; the accompanying declarations and exhibits thereto; the records on file in this action (including previously filed declarations and requests for judicial notice supporting prior motions); the Administrative Record filed by Defendants; Defendants' Answer; and any other written or oral evidence or argument as may be presented at or before the time this motion is heard by the Court.

## STATEMENT OF RELIEF REQUESTED

Plaintiffs respectfully request that the Court enter judgment in their favor on each of their claims in the Complaint on the grounds that the Administrative Record and the undisputed evidence show that the new conditions imposed by Defendants on Plaintiffs' AmeriCorps grants, described in Defendants' February 13, 2025 "Executive Order Compliance Instructions," are unlawful. Plaintiffs respectfully request that this Court vacate the new conditions and permanently enjoin Defendants from enforcing them or any similar funding conditions. Plaintiffs also seek a declaration that certain recent Administration executive orders do not impose any obligations on Plaintiffs because they are directed solely to executive agencies and officials.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Introduction

Congress created AmeriCorps to help the poor, the disadvantaged, the vulnerable, and the elderly. Plaintiffs San Francisco Unified School District ("SFUSD") and the City of Santa Fe, New Mexico ("Santa Fe") obtained AmeriCorps grants to do exactly that. But in complete disregard of Congress's express intent, AmeriCorps now demands that recipients stop engaging in any activities that promote diversity, equity, and inclusion ("DEI"), and change any aspects of their programs that "may" conflict with any of President Trump's anti-LGBTQ and anti-DEI executive orders. This Court previously found that Plaintiffs were likely to succeed on the merits of its claims that this "radical change of course" was unlawful—that AmeriCorps violated the Spending Clause and the Administrative Procedure Act by imposing these conditions on AmeriCorps grant funding. Preliminary Injunction Order, Dkt. No. 59 at 44 ("PI Order"). The Court was correct then and the same remains true now. Nothing has happened to change the Court's analysis or conclusions. Indeed, the only relevant change since the Court last considered this case is that Defendants have produced an Administrative Record. But that record is most notable for what it does not include: any indication at all that Defendants considered any alternatives, contemplated reliance interests, or had substantial justification for its change in position. Accordingly, the Court's prior conclusions on these claims should be reaffirmed on summary judgment. In addition, Defendants' actions also violate the Separation of Powers principle because Congress never authorized the agency to impose this condition on grantees and, in fact, directed Defendants to promote DEI efforts.

For all of these reasons, this Court can and should grant summary judgment to allow AmeriCorps recipients to continue to provide the full range of services Congress intended and AmeriCorps previously authorized.

### Facts

The material facts in this litigation are not in dispute. Plaintiffs receive AmeriCorps grants from Defendants. Dkt. 1 ("Compl."), ¶¶ 24–25, 37-38; Dkt. No. 69 ("Answer"), ¶¶ 24–25, 37–38. Plaintiff Santa Fe uses its AmeriCorps funding to support programming for its residents related to elder care, child mentoring and development, retiree community-building, and overall community

wellbeing. *Id.*, ¶ 37. Plaintiff SFUSD uses its subgrant (passed through by the State of California) to fund its Healthy Choices AmeriCorps program, through which students obtain mentorship and other support from caring adults. *Id.*, ¶¶ 24–25, 27. Defendant AmeriCorps, also known as the Corporation for National and Community Service ("AmeriCorps" or "the agency"), approved these programs based on grant applications Plaintiffs submitted in response to the agency's notices of funding opportunity, including Plaintiff SFUSD's application in response to AmeriCorps' 2024 Notice of Funding Opportunity ("2024 NOFO") for the first year of a three-year grant cycle (2024-2027). Compl. & Answer, ¶¶ 24–25, 37-38, 42, 49; 2024 NOFO, Dkt. No. 18-2, RJN Ex. C at p. 6; *see also* Supplemental Declaration of Laurie Vargas-Zeuschner in Support of Plaintiffs' Motion for Summary Judgment ("Supp. Vargas Decl."), ¶ 9 (explaining that the 2024 NOFO applies to all three years of SFUSD's grant cycle).

When Plaintiffs applied for their grants, they were "expressly told to verify their commitment to diversity, equity, inclusion, and accessibility in their applications." Compl. & Answer, ¶ 2 (Defendants' admission as to Plaintiff Santa Fe); *see id.*, ¶ 65 (admitting that state commission applicants had to so verify on behalf of their subgrantees); *see also* 2024 NOFO. After Defendants approved Plaintiffs' grants, and in the middle of Plaintiffs' 2024-25 grant terms, Defendants issued a set of "Executive Order Compliance Instructions," dated February 13, 2025, to grant recipients on or around February 14, 2025. Compl. & Answer, ¶ 52 (hereafter, the "Directive"). Because Plaintiffs did not know how to comply with the new funding conditions, but believed they were unlawful and that compliance would likely require prejudicial changes to Plaintiffs' previously approved AmeriCorps programs, Plaintiffs filed this lawsuit. Compl.; *see also* Declaration of Laurie Vargas-Zeuschner in Support of Motion for TRO and Order to Show Cause, Dkt. No. 18-3, ¶¶ 25–34 ("Vargas Decl.") (explaining harms to SFUSD from having to comply with new conditions); Declaration of Henri Hammond-Paul in Support of Motion for TRO and Order to Show Cause, Dkt. No. 18-6, ¶¶ 24–34 ("Hammond-Paul Decl.") (explaining harms to Santa Fe from having to comply with new conditions). After this Court issued a temporary restraining order, Dkt. No. 33 ("TRO"), Plaintiffs obtained a preliminary injunction enjoining Defendants from enforcing the conditions in the AmeriCorps Directive against them for their

current and future grants. PI Order. Since the PI Order issued on June 18, 2025, Plaintiffs have executed continuation grants for the 2025-26 grant year based on Plaintiffs' 2024-25 proposals, and will soon execute 2026-27 program year grants. Supp. Vargas Decl., ¶¶ 7–8; Supplemental Declaration of Andrea Phillips in Support of Plaintiffs' Motion for Summary Judgment, ¶¶ 5, 9 ("Phillips Decl.").[1]

The presently enjoined AmeriCorps Directive announced new conditions for all AmeriCorps grantees, including Plaintiffs, and required one of three nearly immediate responses: "a self-certification statement, a grant amendment to move [the grantee's] program into compliance with the executive orders, or a relinquishment letter." Administrative Record, Dkt. 70-1 at AR056 (hereafter cited by Bates No.); *see also* Compl. & Answer, ¶¶ 55, 57–58. The AmeriCorps Directive required each grantee to "immediately cease" all "noncompliant" activities, AR057, and certify that their AmeriCorps-funded program "complies with all administration Executive Orders and does not include any activities that promote DEI activities." AR058; AR060. The AmeriCorps Directive identified four recent Administration executive orders with which grantees must comply: (1) "Ending Radical and Wasteful Government DEI Programs and Preferencing" (Executive Order 14151; Jan. 20, 2025) ("Jan. 20 Anti-DEI Order"); (2) "Ending Illegal Discrimination and Restoring Merit-Based Opportunity" (Executive Order 14173; Jan. 21, 2025) ("Jan. 21 Anti-DEI Order"); (3) "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government" (Executive Order 14168; Jan. 20, 2025) ("Anti-Gender Order"); and (4) "Unleashing American Energy" (Executive Order 14154; Jan. 20, 2025) ("Unleashing American Energy"). AR052-053. Plaintiffs refer to the requirement to comply with these recent administration Executive Orders as the "EO Condition" and the prohibition on "any activities that promote DEI activities" as the "DEI Condition."

The PI Order enjoined Defendants from imposing these or similar conditions on Plaintiffs' 2024-25 grants or future grants because Plaintiffs demonstrated a likelihood of success on several claims alleged in this lawsuit—namely, that the new AmeriCorps conditions violated the

---

[1] One of Plaintiff Santa Fe's three AmeriCorps grants, worth $2,500, was a one-time grant for 2024-25, for which Santa Fe did not seek additional funds for 2025-26. Hammond-Paul Decl., ¶ 9; Phillips Decl., ¶ 13.

Administrative Procedure Act ("APA") and the Spending Clause of the United States Constitution. PI Order at 23–44. Plaintiffs now seek summary judgment as to all of their claims, vacatur of the AmeriCorps Directive under the APA, a declaration regarding the effect of the recent executive orders ("EOs"), and a permanent injunction preventing Defendants from imposing the same or similar conditions on Plaintiffs' future AmeriCorps grants.

### Legal Standard

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Sierra Club v. Bosworth*, 510 F.3d 1016, 1022 (9th Cir. 2007). In a case reviewing agency action under the APA, "[t]he 'entire case' on review is a question of law" and "the district judge sits as an appellate tribunal." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001); *see also Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985) (explaining that in reviewing agency action, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did"). Judicial review under the APA is generally limited to "the whole [administrative] record or those parts of it cited by a party[.]" 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973); *Arrington v. Daniels*, 516 F.3d 1106, 1112 (9th Cir. 2008). But "[r]eview of an *ultra vires* challenge [is not] limited to an administrative record." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025).

### Argument

### I.    Plaintiffs Are Entitled to Summary Judgment on Their Claim That Defendants Violated Constitutional Separation of Powers

The AmeriCorps Directive violates fundamental Separation of Powers principles. The Constitution vests Congress, not the Executive, with the Spending power. U.S. Const. art. I, § 9, cl. 7 (Appropriations Clause); U.S. Const. art. I, § 8, cl. 1 (Spending Clause); *see also City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) ("[The] United States Constitution exclusively grants the power of the purse to Congress, not the President."). Because Congress possesses the Legislative power, agencies "literally ha[ve] no power to act" absent Congressional statute. *Fed.*

*Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) (quoting *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 357 (1986)). By adding conditions on federal spending that Congress itself did not authorize—and by threatening to withhold duly appropriated funds based on those conditions—the AmeriCorps Directive violates these principles. Judgment on this claim, Count One of Plaintiffs' Complaint, should therefore be entered for Plaintiffs. *See City & Cnty. of S.F.*, 897 F.3d at 1235.

Defendants' new DEI Condition, which requires grantees to immediately cease "any activities that promote DEI activities," AR058, violates the Separation of Powers because Congress never authorized the agency to impose this condition on grantees. To the contrary, and as discussed further in Section II.C, *infra*, Congress directed the agency to *promote* diversity, equity, and inclusion by supporting programs that, among other things, "help the poor, the disadvantaged, the vulnerable, and the elderly," 42 U.S.C § 4950(b), "assist[] economically disadvantaged students in navigating the college admissions process," 42 U.S.C. § 12572(a)(1)(B)(x), "educat[e] . . . individuals who are members of medically underserved populations about . . . health conditions . . . for which socioeconomic, geographic, and racial and ethnic health disparities exist," 42 U.S.C. § 12572(a)(2)(B)(iii), and "promote[] greater community unity through the use of organized teams of participants of varied social and economic backgrounds, skill levels, physical and developmental capabilities, ages, ethnic backgrounds, or genders." 42 U.S.C. § 12572(c)(1)(A). By requiring grantees to cease the very activities that Congress specifically directed the agency to support, the DEI Condition violates the Separation of Powers. *See City & Cnty. of S.F.*, 897 F.3d at 1235.

Likewise, the new EO Condition purports to "withhold properly appropriated funds in order to effectuate [the Administration's] own policy goals." *City & Cnty. of S.F.*, 897 F.3d at 1235. Those policy goals are varied and often unintelligible, but can generally be described as anti-"gender ideology," AR063, anti-green energy, AR064, and opposed to diversity, equity, and inclusion, *id*. The AmeriCorps Directive requires grantees to "review the executive orders in Appendix A [of the Directive] and affirm that [their] AmeriCorps grant/award complies" and "make updates as necessary" if any aspects of their programs "conflict[] with any executive orders[.]" AR058. By forcing grantees to relinquish their grants unless they agree to "comply,"

Defendants have arrogated to themselves legislative power that Congress did not delegate to AmeriCorps. "[I]t remains a basic principle of our constitutional scheme that one branch of the Government may not intrude upon the central prerogatives of another." *Loving v. United States*, 517 U.S. 748, 757 (1996). The President can only take care that the laws be faithfully executed, U.S. Const. art. II, § 3; he is not "lawmaker." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 587 (1952); *see also City & Cnty. of S.F.*, 897 F.3d at 1234 ("Because Congress's legislative power is inextricable from its spending power, the President's duty to enforce the laws necessarily extends to appropriations."). Thus, it violates the Separation of Powers for Defendants to require grantees to adopt the Trump Administration's policy views in these areas by purporting to require compliance with recent executive orders. *See, e.g., Rhode Island v. Trump*, No. 1:25-cv-128, — F. Supp. 3d —, 2025 WL 3251113, at *15–16 (D.R.I. Nov. 21, 2025) (finding federal agencies' cancelation of Congressionally authorized grants based on presidential executive order violated Separation of Powers).

## II.    Plaintiffs Are Entitled to Summary Judgment on Their Claim That Defendants Violated the Spending Clause

As explained above, only Congress has the power to impose conditions on federal funds, and the AmeriCorps Directive violates the constitution for that reason alone. *See* U.S. Const. art. I, § 8, cl. 1; *see also South Dakota v. Dole*, 483 U.S. 203, 206 (1987); PI Order at 30 ("The 'Spending Clause of the Constitution' provides Congress with 'broad power . . . to set the terms on which it disburses federal funds.'" (quoting *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 216 (2022))). But even assuming that Defendants were authorized by Congress to impose conditions on AmeriCorps grants, the conditions expressed in the AmeriCorps Directive exceed constitutional limits on the government's spending power.[2]

"The Spending Clause grants Congress the power 'to pay the Debts and provide for the . . . general Welfare of the United States." *Nat'l Fed. of Indep. Bus. v. Sebelius* ("*NFIB*"), 567 U.S. 519, 576 (2012) (quoting U.S. Const. art. I, § 8, cl. 1). The Supreme Court has "long recognized

---

[2] The limits of the Spending Clause apply to the Executive Branch, and not only Congress. *See* PI Order at 20 (citing *Arizona v. Yellen*, 34 F.4th 841, 853 (9th Cir. 2022)); *City of L.A. v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019).

that Congress may use this power to grant federal funds to the States, and may condition such a grant upon the States' 'taking certain actions that Congress could not require them to take.'" *Id.* (quoting *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 686 (1999)). However, the Court has also enforced several limitations on the permissible scope of the spending power, including that grant conditions be (1) unambiguous, (2) set forth before a recipient enters into the grant agreement with the federal government, and (3) related to the subject matter of the grant program. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981); *Dole*, 483 U.S. at 207. In addition, conditions may not be "so coercive as to pass the point at which 'pressure turns into compulsion.'" *Dole*, 483 U.S. at 208 (quoting *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)); *NFIB*, 567 U.S. at 582 (noting that conditions causing "economic dragooning that leaves the States with no real option but to acquiesce" may be invalidated as coercive).

The first two requirements ensure that the grant recipient "voluntarily and knowingly accepts the terms of the 'contract'" and thereby preserve the "legitimacy of Congress' power to legislate under the spending power." *Pennhurst*, 451 U.S. at 17 (citing *Steward Machine Co. v. Davis*, 301 U.S. 548, 585–98 (1937); *Harris v. McRae*, 448 U.S. 297 (1980)); *see id.* at 25 ("Though Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or 'retroactive' conditions."); *City & Cnty. of S.F. v. Sessions*, 349 F. Supp. 3d 924, 955 (N.D. Cal. 2018) ("[The government] cannot implement new conditions after-the-fact because states must decide to opt-in to a federal program willingly and aware of the conditions." (citing *NFIB*, 567 U.S. at 519)), *aff'd in part and vacated in part on other grounds by City & Cnty. of S.F. v. Barr*, 965 F.3d 753 (9th Cir. 2020). The third and fourth requirements—that conditions be reasonably related to the purpose of the spending—crucially prevent the spending power from "render[ing] academic the Constitution's other grants and limits of federal authority." *New York v. United States*, 505 U.S. 144, 167 (1992); *see also NFIB*, 567 U.S. at 578.

Nothing has occurred since the issuance of the PI Order to disturb the Court's prior determinations that the AmeriCorps Directive imposed conditions that are "insurmountably

1    ambiguous" and do not "relate sufficiently to AmeriCorps' purpose." PI Order at 31; *see generally*
2    *id.* at 30–44.

3    **A.     The Directive Imposes Unconstitutionally Ambiguous Conditions**

4    The conditions of the AmeriCorps Directive, which require grant recipients to (a) "comply
5    with all executive orders" and (b) not "promote DEI activities"—*see* AR056–064—remain "highly
6    ambiguous." PI Order at 31–32. Conditions are impermissibly ambiguous when they are subject to
7    "various interpretations" and none are "self-evident." *Id.* at 36 (quoting *Sch. Dist. of City of Pontiac*
8    *v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 272–73 (6th Cir. 2009)); *see also Cnty. of Santa*
9    *Clara v. Noem*, No. 25-cv-08330, 2025 WL 3251660, at *38 (N.D. Cal. Nov. 21, 2025) ("When
10   determining the ambiguity of conditions on federal grants, courts evaluate whether a recipient
11   would clearly understand the obligations of the conditions." (citation modified)); *Arlington Cent.*
12   *Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006) (similar).

13   The EO Condition is ambiguous at the outset because executive orders cannot impose
14   requirements on state or local governments (or private parties); rather, they only impose
15   requirements on executive agencies, officers, and employees. *See Housing Auth. of City & Cnty. of*
16   *S.F. v. Turner*, No. 25-cv-08859, 2025 WL 3187761, at *14 (N.D. Cal. Nov. 14, 2025) ("Executive
17   orders vary in scope and subject matter, are subject to change at any time, and are addressed
18   exclusively to executive branch actors." (citation omitted)); U.S. Dep't of Justice, Executive
19   Orders,     https://bja.ojp.gov/program/it/privacy-civil-liberties/authorities/executive-orders     (last
20   visited Jan. 9, 2026) (executive orders are "official documents . . . through which the President of
21   the United States manages the operations of the Federal Government"); *see also infra* Section III.
22   Nor do any of the executive orders at issue here purport to do so. *See, e.g.*, Jan. 20 Anti-DEI Order
23   § 2(b)(i) (directing agencies to "terminate, to the maximum extent allowed by law, all DEI, DEIA,
24   and 'environmental justice' offices and positions (including but not limited to 'Chief Diversity
25   Office' positions); [and] all 'equity action plans,' 'equity' actions, initiatives, or programs, [and]
26   'equity-related' grants or contracts").

27   It therefore makes no sense for *Plaintiffs* to be subject to the instruction for *agencies* to
28   terminate their DEI offices and positions, and the AmeriCorps Directive creates ambiguity by

1  failing to clarify what Plaintiffs' compliance with these executive orders would entail, as it provides

2  only that compliance "may require changing . . . any other components of a program that may

3  conflict with the executive orders." *See* AR061. For example, does compliance with the Jan. 20

4  Anti-DEI Order require Plaintiffs to ensure they themselves terminate any "DEI . . . offices and

5  positions"? Are Plaintiffs supposed to assist Defendants' obligation to comply with the executive

6  orders by structuring their grant-funded programs such that Defendants' grants to Plaintiffs are not

7  "equity-related," if such a thing is possible? There is no way to know, and that ambiguity alone

8  invalidates the compliance condition. *See, e.g.*, *Noem*, 2025 WL 3251660, at *38 (finding condition

9  that funding recipients "comply with the requirements of Presidential Executive Orders related to

10  grants" was ambiguous due to failure "to articulate to what extent plaintiffs would be expected to

11  adhere to President Trump's Executive Orders"); *Arlington*, 548 U.S. at 296 (stating ambiguity of

12  condition depends on "whether [a recipient] would clearly understand . . . [its] obligations").

13       Further, even if the executive orders applied to grant recipients such that compliance was

14  theoretically possible, the orders and AmeriCorps Directive remain ambiguous because—as the

15  Court previously noted—they fail to define terms such as "DEI," "DEIA," "equity," and "equity-

16  related." PI Order at 32, 36–37. Both this Court and others have recognized that terms like "DEI"

17  and "equity-related" may encompass a broad range of plausible interpretations. *See id.*; *see also*

18  *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 767 F. Supp. 3d 243, 279 (D. Md. 2025)

19  ("[C]urrent grant recipients and contractual counterparts . . . have no reasonable way to know what,

20  if anything, they can do to bring their grants into compliance such that they are not considered

21  'equity-related.'"), *op. clarified*, 769 F. Supp. 465 (D. Md. 2025); *S.F. A.I.D.S. Found. v. Trump*,

22  786 F. Supp. 3d 1184, 1225 (N.D. Cal. 2025) ("[I]t is hard to imagine an Executive Order vaguer

23  in its command (providing that agencies *shall* terminate any grant or contract for being 'equity-

24  related')[.]"); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025)

25  ("DEI as a concept is broad: one can imagine a wide range of viewpoints on what the values of

26  diversity, equity, and inclusion mean[.]"). Plaintiffs' programs involve, for example, diversity and

27  equity training for AmeriCorps members to be able to meaningfully interact with SFUSD's diverse

28  students and provide demonstrably more effective mentorship, and the provision of care for elderly

homebound individuals in Santa Fe. Vargas Decl., ¶¶ 26, 30–31; Hammond-Paul Decl., ¶¶ 28–31. The undefined nature of terms like "DEIA" and "equity" makes ambiguous the conditions to "compl[y] with all administrative executive orders" and not "promote DEI activities" because Defendants "fail[] to 'clarify what conduct is proscribed.'" PI Order at 33 (quoting *City & Cnty. of S.F. v. Sessions*, 372 F. Supp. 3d 928, 950 (N.D. Cal. 2019)).

In addition to the issue of undefined terms, the AmeriCorps Directive introduced yet another ambiguity by prohibiting programs that "promote DEI activities" without the qualifier—present in the Jan. 21 Anti-DEI Order—that agency heads require recipients to certify they do not operate programs "promoting DEI *that violate any applicable Federal anti-discrimination laws.*" *Compare* Directive at 5, *with* Jan. 21 Anti-DEI Order § 3(iv)(B). Thus, as the Court previously noted, "the Directive is completely unmoored to existing law, leaving grantees to guess what conduct 'promotes DEI activities' irrespective of whether it violates existing applicable law." PI Order at 33.[3]

Each of these ambiguities means that Plaintiffs would not be able to "knowingly accept" the terms of their grant, and the conditions must therefore be held invalid.

## B.     The Directive is Impermissibly Retroactive

The Directive also violates the "knowing acceptance" requirement because it is impermissibly retroactive with respect to the current grant cycle. *Pennhurst*, 451 U.S. at 25 ("Though Congress' power to legislate under the spending power is broad, it does not include surprising participating States with post acceptance or 'retroactive' conditions."). Plaintiffs, to receive funding for later years within a multi-year grant cycle, submit short "continuation applications" affirming their performance of the programs described in their original grant narrative. *See* Supp. Vargas Decl., ¶¶ 8–9; *id.* at Ex. B at 2 ("Describe any changes to your performance measures and provide a justification for the change . . . Member activities must remain

---

[3] Defendants' answer that they clarified this point about federal law "in the AmeriCorps grant management system," Answer, ¶ 61, is no cure, since they never revised or rescinded the AmeriCorps Directive itself, which omits this qualifier. The language of the AmeriCorps Directive governs this inquiry—not representations by counsel or the agency's subsequent gloss on that language. *See Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 508 (N.D. Cal. 2017) (rejecting federal government's interpretation of executive order put forward by counsel).

within the program's awarded scope, and targets must remain the same."). Plaintiffs' original grant applications verified their programs' commitment to diversity, equity, inclusion, and accessibility ("DEIA") principles.[4] Plaintiffs' continuation applications for ongoing funding require compliance with those same programs (including the DEIA commitment), yet the AmeriCorps Directive imposes anti-DEI requirements. The Directive is thus a retroactive, invalid change to the terms under which Plaintiffs were awarded funds, and with which they must comply to continue receiving funds within the current grant cycle. *See, e.g.*, *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 568–69 (S.D.N.Y. 2019) ("Nor would [Plaintiffs] have foreseen that non-compliance with such a new standard could cost a State all of its HHS funding. The *post hoc* imposition of these standards strains federal-state relations [and] is disfavored under the Spending Clause[.]").

### C.    The Directive and New Conditions Conflict with AmeriCorps' Purpose

The Directive and conditions also violate the Spending Clause because they fail to satisfy the requirement that the conditions "bear some relationship to the purpose of the federal spending"—and in fact directly conflict with the statutory purpose of the grant funding. *New York v. United States*, 505 U.S. at 167.

As the Court previously stated, AmeriCorps grants are "designed to help the poor, the disadvantaged, the vulnerable, and the elderly." PI Order at 2 (quoting 42 U.S.C. § 4950(b)). And in selecting members to participate in AmeriCorps—which is intended to "renew the ethic of civic responsibility and the spirit of community and service throughout the varied and diverse communities of the United States; . . . [and] encourage citizens of the United States, regardless of age, income, geographic location, or disability, to engage in full-time or part-time national service," 42 U.S.C. § 12501(b)—AmeriCorps is to "endeavor to ensure that participants are from economically, geographically, and ethnically diverse backgrounds," *id.* § 12613(c). For service programs carried out by institutions of higher education, the statute specifically provides for

---

[4] *E.g.*, "Commitment to Diversity, Equity, Inclusion, and Accessibility" was a subcategory of the AmeriCorps "Organizational Capability" metric that was weighted as worth 4% of the overall funding decision in the 2024 NOFO. *See* Compl. & Answer, ¶¶ 2, 65–66; 2024 NOFO at 21; Supp. Vargas Decl., Ex A at Narrative pp. 7–10.

"special consideration" of applications from "institutions serving primarily low-income populations," including HBCUs, "[p]redominantly black institutions," Asian American and Pacific Islander-serving institutions, Latino-serving institutions, Native American-serving institutions, and "community colleges serving predominantly minority populations." *Id.* § 12561(e). And Congress has directed that AmeriCorps grant recipients should "promote[] greater community unity through the use of organized teams of participants of varied social and economic backgrounds, skill levels, physical and developmental capabilities, ages, ethnic backgrounds, or genders." *Id.* § 12572(c)(1)(A).

These statutes evince a purpose of selecting members and helping communities with express consideration of principles of diversity, equity, and inclusion. *See* PI Order at 39 ("AmeriCorps' overall statutory purpose[] . . . bakes into its core principles of diversity, equity, inclusion, and accessibility."). Yet the Directive and executive orders expressly contradict these principles. *See, e.g.*, Exec. Order No. 14173 (requiring that all grants "[e]xcise references to DEI and DEIA principles, under whatever name they may appear"). For this reason, as the Court has already observed, the Directive "conflicts with the statutory objectives of the AmeriCorps statute and bars that which is required or at least permitted and encouraged by the enabling statutes." PI Order at 39. As such, the new conditions lack a "nexus with the purpose of the implicated funds." *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d at 532; *see also, e.g.*, *City & Cnty. of S.F. v. Sessions*, 349 F. Supp. 3d at 961, *vacated on other grounds by City & Cnty. of San Francisco v. Barr*, 965 F.3d 753 (9th Cir. 2020) (holding that immigration related conditions were unconstitutional under the Spending Clause because they were not related to the grant funds at issue); *City & Cnty. of S.F. v. Sessions*, 372 F. Supp. 3d at 948–49 (same); *Noem*, 2025 WL 3251660, at *40 ("It is hard to imagine that the Discrimination and EO Conditions are 'related' to these grants [whose enabling statutes required assistance to "vulnerable communities" or the "young and the elderly"], as they squarely conflict with many of their statutory authorization provisions.").

### III.    Given the Ambiguity of the EO Condition, Plaintiffs Are Entitled to Declaratory Relief

Plaintiffs maintain that the executive orders identified in the AmeriCorps Directive do not impose conditions on Plaintiffs, yet, nonetheless, the AmeriCorps Directive purports to require

1    compliance with them. *See* AR063–064 (response to, "Which Executive Orders must I comply

2    with?"); *see also* Answer, ¶ 60 (contending that the executive orders "impose requirements

3    indirectly on Plaintiffs."). For this reason, Plaintiffs also seek a declaratory judgment confirming

4    that the relevant executive orders, *see* AR063-064, do not, in fact, impose any obligations on third-

5    party grantees, including Plaintiffs. Compl. ¶¶ 133–36 & Prayer for Relief ¶ 3 ("A declaration that

6    the Anti-Gender Order, the Jan. 20 Anti-DEI Order, the Jan. 21 Anti-DEI Order, and Unleashing

7    American Energy do not impose any obligations on Plaintiffs because they are directed solely to

8    executive agencies and officials."). Plaintiffs have satisfied their burden on summary judgment for

9    this purely legal question regarding the EO Condition.

10          The Declaratory Judgment Act provides that where parties have an "actual controversy," a

11    court "may declare the rights and other legal relations of any interested party seeking such

12    declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In the Ninth

13    Circuit, declaratory judgment actions are justiciable if "there is a substantial controversy, between

14    parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

15    of a declaratory judgment." *Seattle Audubon Soc'y v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996)

16    (quoting *Nat'l Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir. 1987)).

17    Here, Plaintiffs and AmeriCorps have an actual and substantial controversy regarding the EO

18    Condition: AmeriCorps believes that grantees must comply with (at least) four executive orders,

19    but Plaintiffs do not understand how those executive orders impose conditions on them, since they

20    do not, by their terms, require anything of third parties. *See* AR028–045. Nonetheless, the

21    AmeriCorps Directive requires compliance with the EO Condition for Plaintiffs to continue

22    receiving their AmeriCorps funds. AR056–064. This controversy has high stakes and, absent relief,

23    immediate consequences for Plaintiffs and the communities they serve. *See infra* Section V.B.2

24    (discussing the irreparable harm Plaintiffs face in the absence of a permanent injunction preventing

25    Defendants from imposing the new conditions). A declaration clarifying that the executive orders

26    do not impose any requirements on Plaintiffs would resolve the controversy created by Defendants'

27    insistence that Plaintiffs "comply" with the executive orders.

28

**IV.    Plaintiffs Are Entitled to Summary Judgment on Their Claims That Defendants Violated the Administrative Procedure Act**

The AmeriCorps Directive violates the APA because the new conditions are arbitrary and capricious (Count Three), contrary to the U.S. Constitution (Count Four), and issued in excess of statutory authority (Count Five). Plaintiffs are therefore entitled to summary judgment on these three claims.

As the Court previously determined, the AmeriCorps Directive is a final agency action subject to review under the APA because it (1) "mark[s] the 'consummation' of the agency's decision-making process" and (2) is a directive from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations omitted); 5 U.S.C. § 704; PI Order at 23–24 (quoting *Bennett*, 520 U.S. at 177–78). The AmeriCorps Directive reflects the consummation of the agency's decision-making process because it announced a requirement that grant recipients comply with specific new grant conditions detailed in the Directive. AR056–064; *see also* PI Order at 24. Legal consequences flowed from the Directive, as grantees had to take one of three immediate actions: (1) certify compliance with those new conditions, (2) amend their grant program to ensure compliance and cease "noncompliant" activities, or (3) relinquish their funds. AR056–064; Compl. & Answer ¶¶ 55, 57; *see also* PI Order at 26.

**A.    The Directive Is Unlawful Because It Is Arbitrary and Capricious**

The AmeriCorps Directive and new grant conditions are arbitrary and capricious because AmeriCorps failed to: (1) articulate a reasoned basis for imposing the new conditions; (2) consider the consequences of the new conditions on grantees, including their significant reliance interests; (3) evaluate the impact of the new conditions on grantees' ability to implement Congress's purpose in appropriating AmeriCorps grants; or (4) consider any reasonable alternatives.[5]

First, AmeriCorps did not offer a reasoned basis for imposing these new conditions on grant funds. Rather, AmeriCorps relied solely on executive branch directives as its rationale, announcing

---

[5] The Court previously decided that Plaintiffs were likely to succeed in showing that Defendants did not supply a reasoned basis for the change (1), PI Order at 41, failed to consider reliance interests (2), *id.* at 42–43, and failed to consider alternatives (4), *id.* at 43–44, and nothing Defendants have produced in the scant Administrative Record changes those analyses in any way.

that it acted "[p]er White House directive," AR048, and reviewed "all current AmeriCorps awards to ensure compliance with [administration] directives and administration priorities," AR056. But Presidential directives to agencies do not satisfy the APA's reasoned explanation requirement, which "is meant to ensure that agencies offer genuine justifications for important decisions [and] reasons that can be scrutinized by courts and the interested public." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019); *see also Illinois v. Fed. Emergency Mgmt. Agency*, No. 25-206, — F. Supp. 3d —, 2025 WL 2716277, at *12 (D.R.I. Sep. 24, 2025) ("DHS cannot avoid the arbitrary and capricious analysis simply by claiming it was acting at the instruction of the President."). And with these specific conditions, AmeriCorps' explanation is particularly unjustified because "[t]here is no provision in the Constitution that authorizes the President to enact, to amend, or to repeal statutes." *Clinton v. City of N.Y.*, 524 U.S. 417, 438 (1998); *see also Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J. concurring); *see also R.I. Latino Arts v. Nat'l Endowment for the Arts*, 800 F. Supp. 3d 351, 373 (D.R.I. 2025) ("Because the NEA has failed to explain its action outside of complying with the EO, the Court concludes that the Final Notice is arbitrary and capricious in violation of the APA."). AmeriCorps' action thus lacks a *reasoned* basis and is necessarily arbitrary and capricious.

Additionally, AmeriCorps did not acknowledge that the new conditions reversed a prior agency position, nor did it explain the change of course. When an agency reverses policy, the level of justification is more exacting than if the agency had not acted in the first place. *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 41-42 (1983); *see also* PI Order at 41. Prior to issuing the AmeriCorps Directive and consistent with the agency's implementing statutes, AmeriCorps *required* grantees to verify their "Commitment to Diversity, Equity, Inclusion, and Accessibility" in their grant applications. Compl. & Answer, ¶¶ 2, 65-66; 2024 NOFO at 21; *see also* Phillips Decl., ¶ 12 (noting responses to 2023 NOFO regarding diversity, equity, and inclusion commitments). Reversing course, the AmeriCorps Directive requires Plaintiffs to certify that grant funds are *not* used for DEI activities. *E.g.*, AR058. The agency's complete failure to justify this reversal (apart from following presidential directives) was arbitrary and capricious.

Second, AmeriCorps also failed to consider the impact of these new conditions on grantees' AmeriCorps programs or their significant reliance interests. The agency had a legal obligation to recognize "that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (citation modified). Grantees such as SFUSD and Santa Fe had structured their AmeriCorps programs around the policy priorities Congress articulated in the AmeriCorps statutes, including supporting low-income, environmentally vulnerable, and disadvantaged communities through service and mentoring programs that recognize various forms of societal disadvantage. *See generally* Vargas Decl., ¶¶ 6, 14-17; Hammond-Paul Decl., ¶¶ 4-16; Supp. Vargas Decl., ¶¶ 3-5; Phillips Decl., ¶ 2. Plaintiffs had additional reliance interests because they already received grants for their programs, including to fund the suddenly "noncompliant" aspects, over the course of three-year grant terms. Supp. Vargas Decl., ¶ 6. Defendants entirely failed to consider these reliance interests, and it was "arbitrary and capricious" for them "to ignore such matters." *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see also FEMA*, 2025 WL 2716277, at *12 (finding agency action was arbitrary and capricious due in part to failure to "meaningfully evaluate the states' reliance interests, even though the record shows that states have structured their budgets and emergency preparedness planning for decades around consistent federal support").

Third, Defendants also "relied on factors which Congress has not intended it to consider," *State Farm*, 463 U.S. at 43, namely, by imposing conditions that directly contravene the relevant statutory authorities. The express purpose of the relevant enabling statutes is to help diverse communities, including minority populations. *See, e.g.*, 42 U.S.C. § 4950(b) (purpose is to "help the poor, the disadvantaged, the vulnerable, and the elderly"); *id.* § 4991 (purpose is to "strengthen and supplement efforts to meet a broad range of needs, particularly those related to poverty"); *id.* § 5023 (AmeriCorps must take "appropriate steps" to ensure minority seniors serve as volunteers); *id.* § 12501(b)(1) (purpose is to "meet the unmet human, educational, environmental, and public safety); *see also id.* § 5025(b); *id.* § 5000; *id.* § 5001; *id.* § 12525(a)(2); *id.* § 12561(e); *id.* § 12651d(b)(14). Defendants' new grant conditions requiring Plaintiffs to excise all program aspects related to climate change, diversity, equity, and inclusion, or "gender ideology," among

other things, contravenes these clear statutory directives. This conflict shows that AmeriCorps failed to consider the impact of its actions on grantees in relation to Congress's purpose in enacting AmeriCorps grant programs, which further supports the conclusion that the agency acted arbitrarily and capriciously. *See, e.g.*, *Cal. v. U.S. Dep't of Transp.*, No. 25-cv-208, — F. Supp. 3d —, 2025 WL 3072541, at *9 (D.R.I. Nov. 4, 2025) (holding agency action was arbitrary and capricious due to consideration of impermissible factors "related to State cooperation with federal civil immigration enforcement in determining conditions for federal transportation funding").

Finally, the AmeriCorps Directive entirely fails to "consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives." *Farmers Union Ctr. Exch., Inc. v. F.E.R.C.*, 734 F.2d 1486, 1511 (D.C. Cir. 1984); *see also State v. Su*, 121 F.4th 1, 17 (9th Cir. 2024) (obligation to consider alternatives is "well settled"). Defendants' Administrative Record confirms this complete failure to consider any alternatives. *See generally* AR001–064; *see also* PI Order at 43 ("Defendants provide no evidence or argument that they evaluated and rejected alternatives to imposing the new conditions."). Indeed, the agency apparently did not even consider the NOFOs that shaped Plaintiff Santa Fe's and Plaintiff SFUSD's programs, respectively, for their three-year grant periods. AmeriCorps failed to include these documents as part of the Administrative Record in this case. *See generally* AR001–064.

For all these reasons, the AmeriCorps Directive and its new conditions should be set aside as arbitrary and capricious.

### B.    The Directive is Contrary to the Constitution

For the reasons detailed in Sections I and II, *supra*, the AmeriCorps Directive and new conditions also violate the APA because they are contrary to the Constitution. 5 U.S.C. § 706(2)(B) (reviewing courts must set aside agency action found to be "contrary to constitutional right, power, privilege, or immunity"). Either the agency's usurpation of Congress's role violates constitutional Separation of Powers, or the conditions exceed Congress's authority under the Spending Clause because the conditions are ambiguous, *Pennhurst*, 451 U.S. at 17, and do not relate to the purpose of the funding, *New York v. United States*, 505 U.S. at 167.

C.    **The Directive is in Excess of AmeriCorps' Statutory Authority**

"Administrative agencies are creatures of statute" and "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022); *see also Marin Audubon Soc'y v. Fed. Aviation Admin.*, 121 F.4th 902, 912 (D.C. Cir. 2024). This Court has stated that "AmeriCorps does not have the authority to impose anti-DEI grant conditions that are antithetical to its statutory purposes of AmeriCorps, purposes which are infused with the stated goal of addressing economic, racial and other equities. Nor does AmeriCorps have statutory authority to ban what the governing statutes expressly permit and even encourages." PI Order at 27. That conclusion should be left undisturbed because there are no new facts or changes in law that would disturb the Court's reasoning.

First, as described above, Defendants' actions contravene Congress's purpose in creating AmeriCorps grant programs. *See supra* Section II.C. For this reason, the Directive exceeds Defendants' authority and is unlawful. *See* 5 U.S.C. § 706(2)(C). Under AmeriCorps' enabling statutes, 42 U.S.C. § 4950 *et seq*. and 42 U.S.C. § 12501 *et seq*., only AmeriCorps' Chief Executive Officer is permitted to make grants; once grants are made, neither the Chief Executive Officer nor anyone else has authority to impose new conditions on those funds. *See* 42 U.S.C. § 12651d(b)(2)(B). There is certainly no authority to withdraw already-granted funds based on any new conditions, let alone conditions that are odious to the very purpose of the enabling statutes. *Compare, e.g.*, 42 U.S.C. § 4950(b) ("The purpose of this chapter is to foster and expand voluntary citizen service in communities throughout the Nation *in activities designed to help the poor, the disadvantaged, the vulnerable, and the elderly*." (emphasis added)) and 42 U.S.C. § 12561(e) ("[I]n making grants and entering into contracts . . . [AmeriCorps] shall give special consideration to . . . institutions serving primarily low-income populations, including . . . (3) Hispanic-serving institutions; . . . (7) Predominantly black institutions; . . . and (9) community colleges serving predominantly minority populations"), *with, e.g.*, AR058, AR060 (requiring grantees to certify that programs did not "include any activities that promote DEI").

Second, reflecting these statutory directions and principles from Congress, AmeriCorps instructed applicants to discuss and verify their commitments to DEI as part of their grant programs.

Compl. & Answer, ¶¶ 2, 65; *see also* 2024 NOFO; Phillips Decl., ¶ 12. AmeriCorps thereby "incentivized grant applicants to highlight how their organization advanced the very principles it now seeks to prohibit," PI Order at 29, and Plaintiffs relied on those statements in their applications, and were required to continue those program aspects to receive continuation grants for the second and third years of their grant cycles. Supp. Vargas Decl., ¶¶ 8–9; *see also* Phillips Decl., ¶¶ 11-12. Independent of Plaintiffs' reliance interests in continuing the programs described in their original proposals, AmeriCorps has no statutory authority to impose conditions on continuation grants that contradict both the conditions required of the original proposals and its statutory purpose. *See Nat'l Fed'n of Indep. Bus.*, 595 U.S. at 117.

Accordingly, because the Directive and its new conditions conflict with the express statutory provisions of AmeriCorps' priorities and core values, as well as with the NOFO(s) and original program requirements, Defendants are flouting the limits of their statutory authority to implement the AmeriCorps program.

## V.    Plaintiffs Are Entitled to Vacatur of the AmeriCorps Directive and a Permanent Injunction That Prevents Defendants From Imposing Any Similar Conditions

### A.    The Court Should Vacate the Directive

Section 706 of the APA provides that a court "*shall* . . . hold unlawful and set aside agency action[s]" that violate the statute. 5 U.S.C. § 706(2) (emphasis added). "[V]acatur and remand is the default remedy under the APA[.]" *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025); *see also Am. Bioscience*, 269 F.3d at 1084 (noting that relief under the APA "normally will be a vacatur of the agency's order"). As such, Defendants bear the burden to prove that vacatur is unnecessary. *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019). At minimum, based on Defendants' APA violations, the Court should set aside the AmeriCorps Directive in its entirety.

### B.    The Court Should Permanently Enjoin Defendants from Enforcing Any Similar Conditions Through Other Means

To further protect Plaintiffs' rights, the Court should permanently enjoin Defendants from imposing similar conditions in the future. To obtain a permanent injunction, a plaintiff must

demonstrate: (1) actual success on the merits; (2) that it has suffered an irreparable injury; (3) that remedies available at law are inadequate; (4) that the balance of hardships justify an equitable remedy; and (5) that the public interest would not be disserved by a permanent injunction. *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Relations*, 730 F.3d 1024, 1032 (9th Cir. 2013). The main differences between the standards for obtaining permanent injunctive relief and preliminary injunctive relief are that, to obtain the former, a plaintiff must show actual success on the merits and the inadequacy of legal remedies. *See Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987); *compare eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (explaining that the inadequacy of legal remedies is an element for permanent injunctive relief), *with Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (omitting the inadequacy of legal remedies as an element for obtaining a preliminary injunction). Courts may issue permanent injunctions in addition to vacatur under the APA when a plaintiff satisfies the requirements for injunctive relief. *See R.I. Latino Arts*, 800 F. Supp. 3d at 374–75. Separately, Plaintiffs' constitutional claims (Counts One and Two) justify permanent injunctive relief where, as here, there are inadequate remedies at law and plaintiffs face a likelihood of substantial and immediate irreparable injury. *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1067 (9th Cir. 1995).

### 1.    Plaintiffs Have Demonstrated Actual Success on the Merits

The threshold step of the analysis—whether Plaintiffs actually succeeded on the merits—is coextensive with the Court's decision on Plaintiffs' arguments above that the AmeriCorps Directive violates (1) constitutional separation of powers principles; (2) the Spending Clause; and/or (3) the APA. The Court should find Plaintiffs' claims meritorious for the reasons set forth above.

### 2.    Plaintiffs Have Demonstrated Irreparable Harm

The undisputed material facts establish that Plaintiffs suffered irreparable harm, and that, without a permanent injunction, Plaintiffs would suffer further irreparable harm.

As the Court already found, the Plaintiffs would face three categories of harm in the absence

of an injunction.[6] TRO at 8–10; PI Order at 19. First, absent an injunction, Plaintiffs would face harm by having to make substantive programmatic changes. TRO at 5–6. Plaintiff SFUSD already made changes to its programs and training materials, and identified student groups that might have had to stop meeting, in order to comply with the Directive. Vargas Decl., ¶¶ 26–28. AmeriCorps members and SFUSD employees, out of fear of non-compliance, censored themselves during sensitive conversations with students, cutting critical conversations short. *Id.*, ¶¶ 30–32. Similarly, Plaintiff Santa Fe would either have to eliminate their programs or alter them beyond recognition since diversity and inclusion are inherent to their programs. Hammond-Paul Decl., ¶¶ 26–29.

Second, Plaintiffs would face harm based on the ongoing threat of the loss of funding from the potential enforcement of the Executive Orders. TRO at 7–9; *see Martin Luther King, Jr. Cnty. v. Turner*, 785 F. Supp. 3d 863, 890 (W.D. Wash. 2025). The funding is critical. Supplemental Declaration of Maria Su in Support of Plaintiffs' Motion for Summary Judgment, ¶ 6 ("Supp. Su Decl."); Phillips Decl., ¶ 15. The looming possibility of losing it would, itself, present an ongoing harm. TRO at 7; Declaration of Maria Su in Support of Motion for TRO and Order to Show Cause, Dkt. No. 18-4, ¶¶ 5–6 ("Su Decl."); Hammond-Paul Decl., ¶ 23; Phillips Decl., ¶ 14; Vargas Decl., ¶ 33; Supp. Vargas Decl., ¶ 10. And the ambiguity of the Executive Orders only multiplies the harm to Plaintiffs, as Plaintiffs would face the continuous uncertainty of losing funding if their interpretation of the Executive Orders differed from Defendants' interpretations. TRO at 8–9.

Finally, the constitutional harms are independently sufficient to justify permanent injunctive relief. As discussed above, Plaintiffs have shown a Spending Clause violation, which the Court twice held was sufficient to establish irreparable harm. TRO at 9–10; PI Order at 20–21. And the violation of the separation of powers principle similarly provides a sufficient basis. *See City & Cnty. of S.F. v. Sessions*, 349 F. Supp. 3d at 970.

But, apart from these clearly established injuries, an injunction is further warranted by the conduct of this federal administration. Vacatur alone is unlikely to protect Plaintiffs. To be sure,

---

[6] As "there are no substantive changes to the factual record" with respect to harm, the Court's previous findings should "remain unchanged." PI Order at 19; *see also* Supp. Vargas Decl., ¶ 10 (confirming same harms would follow if the Directive were allowed to stand); Phillips Decl., ¶¶ 14-15 (similar).

"vacatur does not restrain the enjoined defendants from pursuing other courses of action to reach the same or a similar result as the vacated agency action." *Al Otro Lado, Inc. v. Mayorkas*, 619 F. Supp. 3d 1029, 1045 (S.D. Cal. 2022). Here, Defendants have never rescinded or sought to modify the AmeriCorps Directive, even after this Court preliminarily enjoined it as unlawful. The same federal administration remains in power. And the same Executive Orders under which AmeriCorps justified its Directive remain on the books. Plaintiffs are therefore vulnerable to future efforts by AmeriCorps to impose similar unlawful grant terms. Further, the Administration's track record of undermining court orders underscores Plaintiffs' need for complete relief from this Court. *See, e.g.,* *D.V.D. v. U.S. Dep't of Homeland Sec.*, No. 25-10676, 2025 WL 1453640, at *1 (D. Mass. May 21, 2025) (finding the defendants violated preliminary injunction); *New York v. Trump*, 777 F. Supp. 3d 112, 119–20 (D.R.I. 2025) (same); *AIDS Vaccine Advocacy Coalition v. U.S. Dep't of State*, 768 F. Supp. 3d 1, 5 (D.D.C. 2025) (granting motion to enforce TRO "to the extent Defendants have not complied with [it]").

Where, as here, vacatur is not sufficient to redress a plaintiff's injury, injunctive relief may also be awarded. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010). Courts often award both. *See, e.g., R.I. Latino Arts*, 800 F. Supp. 3d at 374–75; *California v. U.S. Dep't of Transp.*, 2025 WL 3072541, at *11–13; *Texas v. United States*, No. 1:18-CV-00068, 2021 WL 3022434, at *13 (S.D. Tex. July 16, 2021); *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 692 (N.D. Cal. 2020). And this Court should as well by enjoining Defendants from imposing similar conditions to those in the AmeriCorps Directive on Plaintiffs, as it did in the PI Order. PI Order at 46.

### 3.    The Legal Remedies are Inadequate

Further justifying a permanent injunction, Plaintiffs lack legal remedies to *prevent* the federal government from imposing unlawful conditions on them. The relief Plaintiffs seek here is purely equitable. Plaintiffs do not seek damages, but rather require declaratory and injunctive relief that permits them to receive grant awards without unlawful conditions attached, and to be free from having to litigate the same unlawful conditions in the future, imposed through other means. *See Thakur v. Trump*, 787 F. Supp. 3d 955, 990–91 (N.D. Cal. 2025) (finding that plaintiffs' claims were for injunctive relief and not money damages where plaintiffs sought to enjoin the allegedly

1    illegal terminations of the grants that would result in payment of money) (citing *Bowen v.*

2    *Massachusetts*, 487 U.S. 879, 893 (1988)).

3    **4.    The Public Interest and the Balance of Hardships Strongly Favor**
     **Injunctive Relief**

4

5    Finally, the equitable factors weigh in favor of an injunction to prevent Defendants from

6    imposing similar conditions in the future. When the government is a party, the balance of hardships

7    and public interest factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.

8    2014). Here, both favor an injunction.

9    The requirements are satisfied by actual success on the merits of an underlying

10   constitutional claim. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014);

11   *see also Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (finding that "it is always in the

12   public interest to prevent the violation of a party's constitutional rights" (citation omitted)). Indeed,

13   there can be no harm to Defendants from an injunction preventing them from acting

14   unconstitutionally, let alone unlawfully. TRO at 10; PI Order at 22; *Rodriguez v. Robbins*, 715 F.3d

15   1127, 1145 (9th Cir. 2013). Any harm from precluding Defendants from enforcing a chosen policy

16   is therefore illegitimate.

17   In the absence of permanent injunctive relief, Plaintiffs face serious harm to their programs

18   and communities they serve. *See supra* Section V.B.2. These hardships outweigh any hardship

19   faced by Defendants. TRO at 10; PI Order at 22. Further, the public would greatly benefit from

20   permanent injunctive relief. The public has an interest in preventing Defendants from engaging in

21   unconstitutional and unlawful behavior. *See* TRO at 10-11; PI Order at 22–23. The public is directly

22   benefitted by Plaintiffs' programs, and any continued threat to those programs would operate as a

23   harm to the public. *See* TRO at 11; PI Order at 22–23.

24   Both the balance of hardships and public interest sharply tip in Plaintiffs' favor, as the Court

25   concluded twice previously.

26   **Conclusion**

27   For these reasons, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs'

28   favor as to each count in their Complaint, vacate the AmeriCorps Directive, declare that the

1    executive orders identified in the AmeriCorps Directive impose no obligations on Plaintiffs, and

2    permanently enjoin Defendants from imposing the conditions in the AmeriCorps Directive or any

3    similar conditions in the future.

4

5

6

7    Dated: January 9, 2026                               Respectfully submitted,

8
                                                          DAVID CHIU
9                                                         City Attorney, City and County of San
                                                          Francisco
10                                                        YVONNE R. MERÉ
                                                          Chief Deputy City Attorney
11                                                        MOLLIE M. LEE
                                                          Chief of Strategic Advocacy
12                                                        SARA J. EISENBERG
                                                          Chief of Complex and Affirmative Litigation
13                                                        MOLLY J. ALARCON
                                                          Deputy City Attorney
14

15                                                        COOLEY LLP
                                                          Benedict Hur
16                                                        Simona Agnolucci
                                                          Eduardo Santacana
17                                                        Thilini Chandrasekera
                                                          Michael B. Morizono
18

19                                              By: /s/ Eduardo Santacana
                                                          EDUARDO SANTACANA
20
                                                          Attorneys for Plaintiff
21                                                        SAN FRANCISCO UNIFIED SCHOOL
                                                          DISTRICT
22
                                                          MARCOS D. MARTINEZ**
23                                                        City Attorney City of Santa Fe, New Mexico
                                                          200 Lincoln Ave Santa Fe, NM 87501
24                                                        505-955-6512
                                                          mdmartinez@santafenm.gov
25
                                                          Jill Habig, SBN 268770
26                                                        Jonathan B. Miller*
                                                          Erin Monju*
27                                                        Public Rights Project
                                                          490 43rd Street, Unit #115
28

PLAINTIFFS' MTN FOR SUMMARY JUDGMENT;
CASE NO. 3:25-cv-02425-EMC                            - 25 -

Oakland, CA 94609
(510) 738-6788
jon@publicrightsproject.org

By: */s/ Jonathan B. Miller*
    JONATHAN B. MILLER

Attorneys for Plaintiff
CITY OF SANTA FE, NEW MEXICO

*Admitted pro hac vice
**Application for admission pro hac vice
forthcoming