1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
   Chief, Civil Division
3  JEVECHIUS D. BERNARDONI (CABN 281892)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102-3495
        Telephone:  (415) 436-7224
6       Facsimile:  (415) 436-6748
        jevechius.bernardoni@usdoj.gov
7
   Attorneys for Defendants
8
                        UNITED STATES DISTRICT COURT
9
                     NORTHERN DISTRICT OF CALIFORNIA
10
                          SAN FRANCISCO DIVISION
11

12 SAN FRANCISCO UNIFIED SCHOOL          Case No. 3:25-cv-02425-EMC
   DISTRICT and CITY OF SANTA FE,
13                                        **DEFENDANTS' OPPOSITION TO
           Plaintiffs,                    PLAINTIFFS' MOTION FOR SUMMARY
14                                        JUDGMENT AND DEFENDANTS' NOTICE OF
        v.                                MOTION AND CROSS-MOTION FOR
15                                        SUMMARY JUDGMENT; MEMORANDUM OF
   AMERICORPS and JENNIFER BASTRESS       POINTS AND AUTHORITIES**
16 TAHMASEBI, Interim Agency Head of
   AmeriCorps,                            Date:  May 14, 2026
17                                        Time:  1:30 p.m.
           Defendants.                    Location:  Courtroom 5, 17th Floor
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.  Introduction ........................................................................................................................1

II.  Background .........................................................................................................................2

    A.  AmeriCorps And Plaintiffs' Grant Awards ..............................................................2

    B.  AmeriCorps' February 13 Instructions And Plaintiffs' Responses .........................2

    C.  The Instructions Effectively Expire And AmeriCorps Eliminates The DEI
        Certification Requirement For All Existing And New AmeriCorps Grants .....................4

    D.  Challenged Conditions ..............................................................................................5

III.  Legal Standards ..................................................................................................................5

    A.  Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject Matter
        Jurisdiction ................................................................................................................5

    B.  Motions For Summary Judgment On Administrative Record ....................................6

IV.  Argument ............................................................................................................................7

    A.  The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Do Not Have
        A Cognizable Injury In Fact And This Dispute Is Moot ...........................................7

        1.  There Is No Injury In Fact To Support Article III Standing Here ..........................7

        2.  AmeriCorps Has Abandoned The Instructions And Eliminated The
            Challenged Conditions, And This Lawsuit Is Thus Moot .................................8

    B.  Although They No Longer Exist, The Instructions And The Challenged
        Conditions Were Lawful And Constitutional ..........................................................10

        1.  The DEI Condition Was Constitutional ...............................................................10

            (i)  The DEI Condition Did Not Violate The "Separation Of
                Powers" ......................................................................................................12

            (ii)  The DEI Condition Did Not Violate The Spending Clause......................13

        2.  The EO Condition Was Constitutional ................................................................15

            (i)  The EO Condition Did Not Violate The "Separation of
                Powers" ......................................................................................................16

            (ii)  The EO Condition Did Not Violate The Spending Clause ......................16

    C.  The Instructions Did Not Violate The APA ............................................................18

        1.  The Instructions Did Not Constitute Final Agency Action .................................18

        2.  Plaintiffs' Grant Awards Are Committed To Agency Discretion ........................19

        3.  Plaintiffs' APA Claims Also Fail On The Merits.................................................20

(i)      The Instructions Were Not Arbitrary Or Capricious ................................20

(ii)      The Instructions Were Not Contrary To The Constitution ......................22

(iii)      The Instructions Were Not Contrary To Statutory Authority...................22

V.      Conclusion ..........................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Advanced Integrative Med. Sci. Inst., PLLC v. Garland*, 24 F.4th 1249 (9th Cir. 2022) ........................ 19

*Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29 (2019)............................................................. 8

*Arizonans for Official English v. Arizona*, 520 U.S. 43 (1997) .................................................. 7

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ............................................. 8, 9

*Bd. of Educ. for the Silver Consol. Schs. v. McMahon*,
    No. 25-cv-586, 2025 WL 2017177 (D.N.M. July 18, 2025) ................................................ 13

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................................ 18

*Burns v. Unum Life Ins. Co. of Am.*,
    No. 07-cv-00122-SI, 2007 WL 1793779 (N.D. Cal. June 19, 2007)..................................... 8, 9

*Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247 (9th Cir. 1979) ................................................. 5

*Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939 (9th Cir. 2011)............................................ 9

*City of Chelsea v. Trump*, No. 25-10442, 2025 WL 2807831 (D. Mass. Oct. 2, 2025) ....................... 22

*City of Fresno, et al. v. Turner et al.*,
    No. 25-CV-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025)................................... 10

*City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019)........................................ 13, 14, 18, 20

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .............................................................. 7, 9

*Clark v. City of Seattle*, 899 F.3d 802 (9th Cir. 2018)............................................................ 8

*Cnty. of Santa Clara, et al. v. Noem, et al.*,
    No. 25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) ............................. 10

*County Sch. Bd. v. RT*, 433 F. Supp. 2d 692 (E.D. Va. 2006) ................................................ 13

*Ctr. for Biological Diversity v. Gould*, 150 F. Supp. 3d 1170 (E.D. Cal. 2015) ........................... 6

*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008)............................... 7

*Dalton v. Specter*, 511 U.S. 462 (1994).............................................................................. 12

*Doe v. Hagee*, 473 F. Supp. 2d 989 (N.D. Cal. 2007) ............................................................ 5

*Dreier v. United States*, 106 F.3d 844 (9th Cir. 1997)............................................................. 6

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862 (9th Cir. 2014) .................... 9

*FBI v. Fikre*, 601 U.S. 234 (2004) .................................................................................. 9, 10

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009).................................................... 21

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) .................................................................. 20

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
    82 F.4th 664 (9th Cir. 2023) ........................................................................................................ 9

*Flast v. Cohen*, 392 U.S. 83 (1968) ...................................................................................................... 8

*Gill v. Whitford*, 585 U.S. 48 (2018) ................................................................................................... 7

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) ......................... 11, 17

*Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194 (D.D.C. 2025) ........................................................ 13

*Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232 (9th Cir. 2022) ........................................ 6

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......................................................................................... 19

*Hollingsworth v. Perry*, 570 U.S. 693 (2013) .................................................................................... 8

*Hous. Auth. of the Cnty. of San Francisco, et al. v. Turner*,
    No. 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) .................................... 10

*J.F. v. New Haven Unified Sch. Dist.*,
    No. 13-cv-03808-SI, 2014 WL 6485643 (N.D. Cal. Nov. 19, 2014) ................................. 8, 9

*Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375 (1994) ........................................................ 6

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................................................................... 20

*Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025 (9th Cir. 2013) .................... 20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 7, 8

*Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021) ..................................................... 8

*Mayweathers v. Newland*, 314 F.3d 1062 (9th Cir. 2002) ............................................................ 14, 16

*Milk Train, Inc. v. Veneman*, 310 F.3d 747 (D.C. Cir. 2002) .......................................................... 20

*Mitchell v. Dupnik*, 75 F.3d 517 (9th Cir. 1996) ............................................................................... 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) ............................ 20

*Murthy v. Missouri*, 603 U.S. 43 (2024) ............................................................................................ 7

*Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ... 11, 17

*Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) .................................................. 17

*National Ass'n of Diversity Officers in Higher Educ. v. Trump*,
    No. 25-1189 (4th Cir. Mar. 14, 2025) ..................................................................................... 11

*New York v. NSF*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025) ............................................................... 12

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......................................................................................... 9

*Partridge v. Reich*, 141 F.3d 920 (9th Cir. 1998) ............................................................... 6

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981) ....................................... 14, 16

*Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62 (D.D.C. 2018) ........................................ 20

*Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451 (9th Cir.1996) ........................ 8

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) ................................................... 6

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ........................................ 6

*San Francisco Unified School Dist., et al. v. AmeriCorps, et al.*,
    789 F. Supp. 3d 716 (N.D. Cal. 2025) ........................................................................... 10

*Savage v. Glendale Union High School*, 343 F.3d 1036 (9th Cir. 2003) ........................... 5

*Serrato v. Clark*, 486 F.3d 560 (9th Cir. 2007) ................................................................. 20

*SF A.I.D.S. Found., et al. v. Trump, et al.*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025) ........................ 10, 12

*Shah v. U. S. Citizenship & Immigr. Servs.*,
    No. 18-cv-1345, 2019 WL 6877929 (W.D. Wash. Dec. 17, 2019) ................................ 6

*South Dakota v. Dole*, 483 U.S. 203 (1987) ...................................................................... 14, 16

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................................... 8

*State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015 (N.D. Cal. 2018) ................. 14, 15, 17

*State v. Dep't of Just.*, 951 F.3d 84 (2d Cir. 2020) ......................................................... 15, 17

*Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134 (9th Cir. 2000) ................ 7

*Tosco Corp. v. Communities for Better Environment*, 236 F.3d 495 (9th Cir. 2001) ........ 6

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......................................................... 8

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) ................................... 8

*United States v. Juv. Male*, 564 U.S. 932 (2011) ............................................................. 7

*Updike v. Multnomah Cty.*, 870 F.3d 939 (9th Cir. 2017) ............................................... 7

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .................................................................... 6, 9

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517 (9th Cir. 2023) ............... 8

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) .................................... 12

## STATUTES

42 U.S.C. § 12501(b) .......................................................................................................... 18

42 U.S.C. § 12571 ............................................................................................................... 17

42 U.S.C. § 12571(a) ............................................................................................................ 2, 13, 22

42 U.S.C. § 12613(c) ...................................................................................................................... 15

42 U.S.C. § 12651 ............................................................................................................................ 2

42 U.S.C. § 2000d ..................................................................................................................... passim

5 U.S.C. § 701(a)(2) ...................................................................................................................... 19

5 U.S.C. § 704 ................................................................................................................................. 18

**RULES**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................... 5, 6, 9

**REGULATIONS**

2 C.F.R. § 200.211(c)(1)(ii) ................................................................................................ 10, 12, 16

2 C.F.R. § 200.300 ......................................................................................................................... 16

2 C.F.R. § 200.300(a) ............................................................................................................... 10, 12

2 C.F.R. § 200.303(b) ........................................................................................................... 10, 12, 15

45 C.F.R. § 2510.10 .......................................................................................................................... 2

I.      **Introduction**

During a brief 49-day period at the beginning of 2025, the Corporation for National and Community Service ("AmeriCorps") asked grant recipients and applicants to certify that any diversity, equity, and inclusion ("DEI") programs funded by AmeriCorps federal grants did not violate federal anti-discrimination laws.  The contours of the certification varied during that short time, but the certification, in its various forms, was intended to eliminate discrimination in federal grant programs to the maximum extent permitted under existing federal anti-discrimination laws.  That certification was lawful and well-within AmeriCorps' authority because Title VI requires *all* recipients of federal grant funds to comply with federal anti-discrimination laws (42 U.S.C. § 2000d), and San Francisco Unified School District ("SFUSD") and the City of Santa Fe ("Santa Fe," and together with SFUSD, "Plaintiffs") had *already agreed* to comply with executive orders in all the grant awards at issue here.

However, those are no longer the operative facts of this lawsuit.  On April 3, 2025, AmeriCorps eliminated the DEI certification requirement for new grant applications through its electronic grants system for *all* AmeriCorps grant applicants nationwide.  Further, although AmeriCorps sent instructions to existing grantees, including Plaintiffs, on February 13, 2025 requiring grantees to respond to the Executive Order Compliance Instructions (the "Instructions") by providing a similar certification about existing AmeriCorps grant programs, AmeriCorps received responses from active grantees with grants in effect at that time and currently does not—and will not—require existing grantees (including Plaintiffs) to respond to the Instructions in the future.[1]  Moreover, these Plaintiffs suffered no harm from the Instructions for the brief period they were in place—AmeriCorps never withheld awarded grant funds to either SFUSD or Santa Fe, and AmeriCorps did not require any substantive changes to Plaintiffs' programmatic offerings funded by AmeriCorps grants.  The only thing that AmeriCorps asked for was wording modifications to the grant agreements to clarify obligations that Plaintiffs *already* had.

In short, there is no Article III case or controversy at issue, and the lawsuit should be dismissed for lack of subject matter jurisdiction.  But even if Plaintiffs had Article III standing to pursue this lawsuit, granting summary judgment in Defendants' favor is appropriate because the challenged conduct was

---

[1] To be clear, AmeriCorps' elimination of the DEI certification requirement applies to *all* existing grantees and *all* new grant applications nationwide, not just to Plaintiffs.

1  well-within AmeriCorps' authority, as established below.

2  **II.    Background**

3      **A.    AmeriCorps And Plaintiffs' Grant Awards**

4      AmeriCorps is a federal agency that was established by the National and Community Service Act

5  of 1990.  42 U.S.C. § 12651.  Its mission is to improve lives, strengthen communities, and foster civic

6  engagement through service and volunteering.  Declaration of Bonnie Janicki ("Janicki Decl.") ¶ 2;

7  45 C.F.R. § 2510.10 ("The Corporation's mission is to engage Americans of all ages and backgrounds in

8  community-based service.").  One of the ways AmeriCorps advances its mission is by investing in efforts

9  of members and volunteers to serve in their communities across the country.  Janicki Decl. ¶ 2.

10  AmeriCorps offers a number of programs that provide volunteer opportunities.  *Id.*  AmeriCorps

11  administers some of these programs through grant awards by providing federal financial assistance to

12  states and nonprofits; it directly funds and operates some of its other programs, which are not at issue here.

13  *Id.*  For AmeriCorps State and National program, AmeriCorps is empowered by statute to make

14  discretionary grants to states and subdivisions of states "subject to the availability of appropriations" in

15  furtherance of national service programs.  42 U.S.C. § 12571(a).

16      SFUSD and Santa Fe are both recipients of AmeriCorps grant funds.  *See* Janicki Decl. ¶¶ 4-9;

17  ECF No. 80-1 (Supplemental Administrative Record, "SAR") at SAR001-10.  When Plaintiffs accepted

18  each of these grant awards, Plaintiffs agreed to be subject to AmeriCorps' General Terms and Conditions,

19  which required them to comply with federal statutes (including federal anti-discrimination laws) *and* with

20  executive orders.  *See* SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, 9, & 24.

21      **B.    AmeriCorps' February 13 Instructions And Plaintiffs' Responses**

22      After President Trump took office on January 20, 2025, AmeriCorps took steps to align its

23  programs and grant funding with the administration's executive orders.  Janicki Decl. ¶¶ 10-11.

24  Accordingly, on February 13, 2025, AmeriCorps issued Instructions to AmeriCorps grantees related to

25  updating current AmeriCorps grants to comply with the President's executive orders.  ECF No. 70-1

26  (Administrative Record, "AR") at AR055-64.  Each grantee was asked to respond to its portfolio manager

27  by February 19 with one of three actions:  (1) a "self-certification statement," (2) a grant amendment "to

28  move your program into compliance with the executive orders," or (3) a request to relinquish the grant.

AR056.  Grantees were directed to ensure subapplicants who received subgrants are compliant through "their memorandum of understanding and subsite monitoring."  AR057.  AmeriCorps explained in its Instructions that it, "as part of the Executive branch of government, must comply with all applicable executive orders and memoranda.  No AmeriCorps funding may be spent on any activity not compliant with the executive orders and memoranda."  AR062.

AmeriCorps sent Santa Fe letters on February 14, 2025 identifying specific language from each of Santa Fe's grants that required clarification to confirm that federal funds were not being used to promote or provide services that did not comply with executive orders.  SAR021-26; Janicki Decl. ¶ 14.  Santa Fe responded with a request to amend language in its grants to remove references to racial diversity, among other changes.  SAR042-65; Janicki Decl. ¶ 19.  AmeriCorps approved Santa Fe's amendments for all three grants, and those changes also apply to Santa Fe's FY25 continuation grants.  Janicki Decl. ¶ 19. Santa Fe has received uninterrupted grant funding for all its AmeriCorps grant awards at issue in this lawsuit, and AmeriCorps has not required any changes to Santa Fe's substantive programming funded by AmeriCorps federal grants.  Janicki Decl. ¶ 19.

SFUSD is a subgrantee of an AmeriCorps grant award to California Volunteers.  AmeriCorps sent California Volunteers a letter with the Instructions on February 14, 2025.  SAR016-20; Janicki Decl. ¶ 13. The letter identified language from California Volunteers' grant that required clarification as to whether the quoted language indicated that the program was using federal funds to promote or provide services that did not comply with executive orders.  SAR016-20; Janicki Decl. ¶ 13.  The letter also attached a spreadsheet identifying language that required clarification for California Volunteer's subgrantees. Janicki Decl. ¶ 13.  California Volunteers relayed the Instructions to SFUSD as a subgrantee on February 19, 2025.  Declaration of Laurie Vargas-Zeuschner (ECF No. 18, "Vargas-Zeuschner Decl.") ¶ 20, Ex. B.  California Volunteers advised SFUSD that "AmeriCorps is a federal program, and that grant agreements require that recipients comply with federal law and executive orders," and California Volunteers requested that SFUSD assess its compliance.  *Id.*  It advised SFUSD that "[t]his review applies only to activities directly supported by federal grant funding from AmeriCorps."  *Id.*  SFUSD responded to California Volunteers, not to AmeriCorps.  *Id.* ¶ 22, Exs. D, E.  SFUSD's requested grant amendment would have changed language in its grants to remove references to equity training, Black, Indigenous, and

1  People of Color, and racial equity, among other changes.  SAR028-34; Janicki Decl. ¶ 18.  AmeriCorps

2  has not processed SFUSD's grant amendment.  Janicki Decl. ¶ 18.  In correspondence with grantee

3  California Volunteers on March 13, 2025, AmeriCorps advised that "no additional action is needed at this

4  time and you may continue with grant activities."  SAR066; Janicki Decl. ¶ 20.  Like Santa Fe, SFUSD

5  has received uninterrupted grant funding for all its AmeriCorps grant awards at issue in this lawsuit, and

6  AmeriCorps has not required any changes to SFUSD's substantive programming funded by AmeriCorps

7  federal grants.  Janicki Decl. ¶ 18.

8          C.      **The Instructions Effectively Expire And AmeriCorps Eliminates The DEI**
                  **Certification Requirement For All Existing And New AmeriCorps Grants**
9

10         On March 13, 2025, AmeriCorps communicated to SFUSD it was requiring no additional action

11  with regard to the Instructions for existing AmeriCorps grantees.  Janicki Decl. ¶ 20.  The Instructions

12  were a temporary tool for AmeriCorps to comply with executive orders with regard to grants in effect at

13  that point in time.  AmeriCorps thus is taking no further action on the Instructions with respect to any

14  grantees nationwide.  *Id.* ¶ 21.  For the avoidance of doubt, as to Plaintiffs specifically, AmeriCorps does

15  not and will not seek to enforce the Instructions, including, but not limited to, with respect to SFUSD's

16  and/or Santa Fe's continuation grants for the 2025-26 grant year or for the 2026-27 program year grants.

17  *Id.*

18         With respect to AmeriCorps grant applications more broadly, upon submission of a grant

19  application in the electronic grants system (eGrants), the duly authorized representative of the applicant

20  generally must certify that the applicant will comply with Assurances and Certifications.  *Id.* ¶ 22.  From

21  February 25, 2025 to March 7, 2025, the required AmeriCorps eGrants certifications included a

22  certification specific to "Ending Illegal Discrimination and Restoring Merit-Based Opportunity, Executive

23  Order January 21, 2025," which required applicants to certify "that the activities under this grant comply

24  with applicable Executive Orders and do not include any activities that promote DEI activities."  Janicki

25  Decl. ¶ 22.  On March 7, 2025, AmeriCorps updated the eGrants portal to require applicants to certify

26  "that the activities under this grant comply with all applicable Executive Orders and do not include any

27  activities promoting Diversity, Equity, and Inclusion (DEI) *that violate any applicable Federal*

28  *anti-discrimination laws*."  Janicki Decl. ¶ 22 (emphasis added).  On April 3, 2025, AmeriCorps removed

1  this certification in its entirety.  Janicki Decl. ¶¶ 22-23.

2      **D.    Challenged Conditions**

3      In this lawsuit, Plaintiffs challenge two aspects of the Instructions and the eGrants certification

4  requirements.  First, Plaintiffs challenge the condition requiring grantees to certify that activities funded

5  by AmeriCorps grant funds do not "promote DEI activities"; Plaintiffs refer to this provision as the "DEI

6  Condition."  *See* Mot. at 4.  Plaintiffs focus on the preliminary version of the DEI Condition but, as

7  discussed above, AmeriCorps amended this condition on March 7, 2025, clarifying that grantees must

8  certify that activities funded by AmeriCorps grants do not promote DEI "that violate any applicable

9  Federal anti-discrimination laws."[2]  Janicki Decl. ¶ 22.  AmeriCorps then eliminated the DEI Condition

10  in its entirety on April 3, 2025, and it no longer applies to any existing AmeriCorps grant programs or any

11  new AmeriCorps grant applications.  *Id.* ¶¶ 22-23.

12      Second, Plaintiffs challenge the requirement that they comply with "applicable Executive Orders";

13  Plaintiffs define this challenged condition as the "EO Condition."  Mot. at 4.  AmeriCorps also eliminated

14  the EO Condition on April 3, 2025, and it no longer applies to any existing AmeriCorps grant programs

15  or any new AmeriCorps grant applications.  Janicki Decl. ¶ 22.  For the avoidance of doubt, however,

16  since at least 2016, AmeriCorps' General Terms and Conditions have required grant recipients to comply

17  with executive orders.  *Id.* ¶ 24.  Each of Plaintiffs' AmeriCorps grant agreements contains this pre-

18  existing obligation.  SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶ 24.

19      Defendants refer to the DEI Condition and the EO Condition collectively as the "Challenged

20  Conditions."

21  **III.    Legal Standards**

22      **A.    Motions To Dismiss Under Rule 12(b)(1) For Lack Of Subject Matter Jurisdiction**

23      A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  *Savage*

24  *v. Glendale Union High School*, 343 F.3d 1036, 1039-40 (9th Cir. 2003); *Doe v. Hagee*, 473 F. Supp. 2d

25  989, 994 (N.D. Cal. 2007).  A federal court is presumed to lack jurisdiction in a particular case unless the

26  contrary affirmatively appears.  *Cal. ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979).

27

28  _____
[2] Plaintiffs acknowledge this amendment for the first time on page 11 of their Motion, but claim that this clarification somehow "introduced yet another ambiguity[.]"  Mot. at 11.

1   Courts will not infer evidence supporting subject matter jurisdiction.  *Kokkonen v. Guardian Life*

2   *Insurance Co.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [the federal court's]

3   limited jurisdiction.").  "Lack of subject matter jurisdiction can be asserted by any party at any time or

4   raised by a court sua sponte." *Hayday Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1238 (9th Cir.

5   2022)) (citation omitted).

6          "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the

7   plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v.*

8   *Communities for Better Environment*, 236 F.3d 495, 499 (9th Cir. 2001).  "A Rule 12(b)(1) jurisdictional

9   attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A

10  facial attack "asserts that the allegations contained in a complaint are insufficient on their face to invoke

11  federal jurisdiction." *Id*.  A factual challenge, on the other hand, allows the court to look beyond the

12  complaint without "presum[ing] the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d

13  1214, 1242 (9th Cir. 2000).  On a Rule 12(b)(1) motion, the Court can hear evidence outside the pleadings

14  and resolve factual disputes, if necessary, without treating the motion as one for summary judgment.

15  *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Dreier v. United States*, 106 F.3d 844, 847

16  (9th Cir. 1997).

17          **B.      Motions For Summary Judgment On Administrative Record**

18          "Generally, judicial review of agency action is limited to review of the record on which the

19  administrative decision was based." *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th Cir. 1998) (quotation

20  omitted); *see also Shah v. U. S. Citizenship & Immigr. Servs.*, No. 18-cv-1345, 2019 WL 6877929, at *3

21  (W.D. Wash. Dec. 17, 2019) ("Courts routinely resolve APA challenges to an agency's administrative

22  decision by summary judgment").  Furthermore, "[t]he court's role on motions for summary judgment is

23  not to resolve contested fact questions which may exist in the underlying administrative record, but to

24  determine whether or not, as a matter of law, the evidence in the administrative record permitted the

25  agency to make the decision it did." *Ctr. for Biological Diversity v. Gould*, 150 F. Supp. 3d 1170, 1177

26  (E.D. Cal. 2015) (quotation omitted).

27

28

1

2

3

## IV.    Argument

### A.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs Do Not Have A Cognizable Injury In Fact And This Dispute Is Moot

4    "Article III of the Constitution limits federal courts to hearing only cases and controversies."

5    *Updike v. Multnomah Cty.*, 870 F.3d 939, 947 (9th Cir. 2017); *Murthy v. Missouri*, 603 U.S. 43, 56 (2024)

6    ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'").

7    "It is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages

8    of review, not merely at the time the complaint is filed.'"    *United States v. Juv. Male*, 564 U.S. 932, 936

9    (2011) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)).    As the Supreme Court

10    has observed, "those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold

11    requirements imposed by Article III of the Constitution by alleging an actual case or controversy."    *City*

12    *of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also D'Lil v. Best Western Encina Lodge & Suites*,

13    538 F.3d 1031, 1036 (9th Cir. 2008) ("A party invoking federal jurisdiction has the burden of establishing

14    that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution") (quoting

15    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).    To establish standing to sue, a plaintiff must

16    show: "(1) an injury that is concrete and particularized and actual or imminent; (2) a causal connection

17    between the injury and defendant's challenged action; and (3) redressability."    *Updike*, 870 F.3d at 947

18    (citing *Lujan*, 504 U.S. at 560-61).    "Foremost among" the Article III standing requirements "is injury in

19    fact—a plaintiff's pleading and proof that he has suffered the 'invasion of a legally protected interest' that

20    is 'concrete and particularized.'"    *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (quoting *Lujan*, 504 U.S. at

21    560).

### 1.    There Is No Injury In Fact To Support Article III Standing Here

23    "This is a case in search of a controversy."    *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d

24    1134, 1137 (9th Cir. 2000) (en banc).    At base, this lawsuit is about a 49-day period during which

25    AmeriCorps asked Plaintiffs to make wording modifications to their grant agreements to clarify

26    obligations to which Plaintiffs had already agreed and to which Plaintiffs were otherwise required to

27    comply (*i.e.*, to use federal grant funds in accordance with existing federal anti-discrimination law and

28    executive orders).    Further, AmeriCorps did not withhold *any* awarded grant funding to either SFUSD or

1  Santa Fe, and AmeriCorps has not required either SFUSD or Santa Fe to make changes to substantive

2  program offerings that are funded by AmeriCorps grants.  Janicki Decl. ¶¶ 18-19.

3         Under these facts, there is no cognizable Article III injury.  The Supreme Court and the Ninth

4  Circuit have repeatedly noted that Article III standing cannot be based on abstract harms.  *See, e.g.*,

5  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (Article III injury "must actually exist . . . and not

6  'abstract'"); *Lujan*, 504 U.S. at 583 ("abstract injury is not enough"); *TransUnion LLC v. Ramirez*, 594

7  U.S. 413, 423 (2021) ("Federal courts do not possess a roving commission to publicly opine on every

8  legal question.  Federal courts do not exercise general legal oversight of the Legislative and Executive

9  Branches"); *Clark v. City of Seattle*, 899 F.3d 802, 810 (9th Cir. 2018) ("a bare procedural violation,

10 divorced from any concrete harm, does not satisfy the injury-in-fact requirement of Article III") (citation

11 and quotation marks omitted); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir.

12 2023); *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 29, 80-81 (2019).

13          **2.       AmeriCorps Has Abandoned The Instructions And Eliminated The**
                       **Challenged Conditions, And This Lawsuit Is Thus Moot**
14

15        Even assuming that Article III standing existed when this lawsuit was initiated, subsequent

16 developments have since mooted the case or controversy presented here.  "Standing must 'persist

17 throughout all stages of [the] litigation.'"  *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir.

18 2021) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)).  The concept of mootness is "the

19 doctrine of standing set in a time frame."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

20 2007) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  "A claim is moot

21 if it has lost its character as a present, live controversy, and if no effective relief can be granted:  'Where

22 the question sought to be adjudicated has been mooted by developments subsequent to filing of the

23 complaint, no justiciable controversy is presented.'"  *Burns v. Unum Life Ins. Co. of Am.*, No. 07-cv-

24 00122-SI, 2007 WL 1793779, at *2 (N.D. Cal. June 19, 2007) (quoting *Flast v. Cohen*, 392 U.S. 83, 95

25 (1968)).  If a court is unable to grant effective relief as a result of subsequent developments, "it lacks

26 jurisdiction and must dismiss[.]"  *J.F. v. New Haven Unified Sch. Dist.*, No. 13-cv-03808-SI, 2014 WL

27 6485643, at *3 (N.D. Cal. Nov. 19, 2014) (quoting *Pub. Utils. Comm'n v. Fed. Energy Regulatory*

28 *Comm'n*, 100 F.3d 1451, 1458 (9th Cir.1996)).  "Where injunctive relief is involved, questions of

1    mootness are determined in light of the present circumstances." *Burns*, 2007 WL 1793779, at *2 (citing

2    *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996)). "Mootness relates to a federal court's subject matter

3    jurisdiction and is properly raised in a motion to dismiss pursuant to Federal Rule of Civil

4    Procedure 12(b)(1)." *J.F.*, 2014 WL 6485643, at *3 (citing *White*, 227 F.3d at 1242).

5        Further, where—as here—a plaintiff seeks permanent injunctive relief, Article III standing also

6    requires a plaintiff to show "a real and immediate threat of repeated injury." *Id.* (quoting *O'Shea v.

7    Littleton*, 414 U.S. 488, 496 (1974)); *see also Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 948

8    (9th Cir. 2011) (same); *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir.

9    2014) (same). A plaintiff seeking injunctive relief "cannot rely solely on past injury and instead must

10   demonstrate 'a sufficient likelihood that [he] will again be wronged in a similar way' and a 'real and

11   immediate threat of repeated injury.'" *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd.

12   of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023) (quoting *Bates*, 511 F.3d at 985). "[P]ast wrongs do not in

13   themselves amount to [a] real and immediate threat of injury," unless accompanied by "continuing, present

14   adverse effects." *Lyons*, 461 U.S. at 102-03 (citation omitted). A threated injury "'must be *certainly

15   impending* to constitute injury in fact,' and 'allegations of *possible* future injury are not sufficient.'"

16   *Fellowship of Christian Athletes*, 82 F.4th at 723 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

17   409 (2013)) (emphasis in original); *see also FBI v. Fikre*, 601 U.S. 234, 241 (2004) (voluntary cessation

18   moots Article III jurisdiction where the defendant shows that challenged "practice cannot reasonably be

19   expected to recur") (citation and quotation marks omitted).

20       Here, on April 3, 2025, AmeriCorps updated its eGrants portal to remove the DEI certification

21   requirement for all new AmeriCorps grant applications nationwide. Janicki Decl. ¶ 22. As such, no

22   AmeriCorps grant applicant—including Plaintiffs in this case—will be asked to certify either of the

23   Challenged Conditions at issue in this case. Similarly, AmeriCorps has abandoned the Instructions for all

24   existing AmeriCorps grantees, and AmeriCorps is taking no further action on the Instructions with respect

25   to any grantees nationwide. *Id.* ¶ 21. As such, AmeriCorps does not and will not seek to enforce the

26   Instructions, including, but not limited to, with respect to SFUSD's and/or Santa Fe's continuation grants

27   for the 2025-26 grant year or for the 2026-27 program year grants. *Id.* ¶¶ 20-21. Under these facts, there

28   is no future, impending risk of repeated conduct for the Court to permanently enjoin and there is no case

1    or controversy to decide. *See Fikre*, 601 U.S. at 241 (dispute is moot where there is no reasonable

2    expectation that the challenged conduct will reoccur). Simply stated, Plaintiffs have no risk of *future*

3    repeated injury, and any dispute that might have previously existed is moot. The lawsuit thus should be

4    dismissed for lack of subject matter jurisdiction.

5        **B.    Although They No Longer Exist, The Instructions And The Challenged Conditions Were Lawful And Constitutional[3]**

6

7        Although this lawsuit should be dismissed for lack of subject matter jurisdiction because Plaintiffs

8    suffered no injury in fact (*supra* Part IV.A.1) and any case or controversy that might have originally

9    existed is now moot as a result of AmeriCorps elimination of the Challenged Conditions and abandonment

10   of the Instructions (*supra* Part IV.A.2), to the extent the Court reaches the merits here, summary judgment

11   in Defendants' favor is appropriate because AmeriCorps' conduct was lawful.

12        **1.    The DEI Condition Was Constitutional**

13       Under Title VI of the Civil Rights Act of 1964, recipients of federal assistance must comply with

14   federal anti-discrimination law. *See* 42 U.S.C. § 2000d. Title VI "authorize[s] and direct[s]" federal

15   agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. *Id.*

16   § 2000d-1. Pursuant to this authority, AmeriCorps, as a federal agency, is required to ensure that all grant

17   awards comply with federal law. Specifically, AmeriCorps must administer federal awards in a manner

18   that ensures "that Federal funding is expended and associated programs are implemented in full

19   accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R.

20   § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b).

21       The DEI Condition at issue here was no different; it simply required recipients to certify their

22

23       ───────────────
         [3] Defendants understand that other non-binding district court opinions from this district and others, including this Court's preliminary injunction analysis here, have disagreed with the legal positions advanced herein. *See, e.g., Cnty. of Santa Clara, et al. v. Noem, et al.*, No. 25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025); *Hous. Auth. of the Cnty. of San Francisco, et al. v. Turner*, No. 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025); *City of Fresno, et al. v. Turner et al.*, No. 25-CV-07070-RS, 2025 WL 2721390 (N.D. Cal. Sept. 23, 2025); *SF A.I.D.S. Found., et al. v. Trump, et al.*, 786 F. Supp. 3d 1184 (N.D. Cal. 2025); *San Francisco Unified School Dist., et al. v. AmeriCorps, et al.*, 789 F. Supp. 3d 716 (N.D. Cal. 2025). Defendants acknowledge that these rulings, and the common questions of law between this case and those rulings, would likely control the result in this case should the Court adhere to the legal reasoning in those decisions. However, the government disagrees with those decisions and has appealed adverse orders in similar grant conditions cases.

compliance with existing law, including that any DEI programs they operate with AmeriCorps funds do not "violate any applicable Federal anti-discrimination laws." Janicki Decl. ¶ 22. This requirement was inherent in each of the grant awards at the time that Plaintiffs accepted those awards—each of those grant awards required Plaintiffs to comply with applicable federal laws and statutes, including federal anti-discrimination law. *See* SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶ 5, 7, & 9. Under similar facts, the Fourth Circuit unanimously granted the government's motion for a stay in a case challenging Executive Order 14,173, which directs federal agencies to require grant recipients to certify that they do not operate unlawful DEI programs. Order Granting Defendants' Motion for a Stay Pending Appeal, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that violates existing federal anti-discrimination law"); *see also Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ("Plaintiffs suggest that defendants view all DEI programs as illegal under existing antidiscrimination law. Perhaps, but the Certification Provision doesn't say that"). The DEI condition challenged here was plainly lawful under Title VI and regulations issued under Title VI. 42 U.S.C. § 2000d-1.

The DEI Condition was not novel. It has been true for decades that "[e]very application for Federal financial assistance must, 'as a condition to its approval and the extension of any Federal financial assistance,' contain assurances that the program will comply with Title VI and with all requirements imposed pursuant to the executive regulations issued under Title VI." *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting) (citing regulations from more than ten federal agencies). These "assurances" of compliance are "given in consideration of" federal aid, "and the federal government extends assistance in reliance on the assurance of compliance"— but the obligations of Title VI apply regardless of any certification. *Id.* at 630 (citation omitted). The requirement here was no different. Although recipients were asked to certify—during a brief 49-day period—that any DEI programs they run comply with federal antidiscrimination law, this certification did "not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law." *Id.*

Accordingly, another judge in this district denied a similar challenge to a DEI provision, finding

1   that the plaintiffs "have not demonstrated that they [are] likely to succeed in their challenge to the

2   Certification Provision because they have not shown at this juncture that the provision goes beyond

3   targeting DEI programs that violate federal antidiscrimination law." *San Francisco A.I.D.S. Found.*, 786

4   F. Supp. 3d at 1200, appeal filed No. 25-4988 (9th Cir. 2025).

5       In light of AmeriCorps' express statutory authorization—and requirement—to ensure that grant

6   recipients comply with federal anti-discrimination law, Plaintiffs' constitutional challenges to the DEI

7   Condition are incorrect.

8           **(i)      The DEI Condition Did Not Violate The "Separation Of Powers"**

9       Plaintiffs argue that the DEI Condition "violates the Separation of Powers because Congress never

10  authorized the agency to impose this condition on grantees." Mot. at 6.  Plaintiffs' argument fails.  To

11  start, *Dalton v. Specter*, 511 U.S. 462 (1994), forecloses Plaintiffs' ability to raise statutory arguments

12  with constitutional dressing.   There, the Supreme Court reversed a federal circuit court that had

13  "reasoned, relying primarily on *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952), that

14  whenever the President acts in excess of his statutory authority, he also violates the constitutional

15  separation-of-powers doctrine." *Id.* at 471.   The Court stated this reasoning was incorrect because the

16  Supreme Court's "cases do not support the proposition that every action by the President, or by another

17  executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.*

18  at 472.  Instead, the Court "often distinguished between claims of constitutional violations and claims that

19  an official has acted in excess of his statutory authority." *Id.*  Therefore, "claims simply alleging that the

20  President [or an executive officer] has exceeded his statutory authority are not 'constitutional' claims,

21  subject to judicial review." *Id.* at 473.  The Court thus should ignore Plaintiffs' attempt to constitutionalize

22  their claim.  *See New York v. NSF*, 793 F. Supp. 3d 562, 604-07 (S.D.N.Y. 2025) (challenge to directives

23  and grants was statutory, not constitutional, under *Dalton*).

24      In any event, as discussed *supra*, AmeriCorps fully complied with the relevant governing statutes.

25  Indeed, AmeriCorps is required to ensure that grant recipients comply with federal anti-discrimination

26  law.  *See* 42 U.S.C. § 2000d; 2 C.F.R. § 200.300(a); 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b).

27  The DEI Condition sensibly implemented Title VI.  That Congress did not specifically spell out that

28  AmeriCorps must enforce anti-discrimination laws in each statute governing a grant program does not

1   remove the AmeriCorps' authority to ensure that recipients follow those laws.  There is thus no basis for

2   a "Separation of Powers" violation, and summary judgment should be granted in favor of Defendants on

3   the DEI Condition aspects of Count I.

4                   **(ii)      The DEI Condition Did Not Violate The Spending Clause**

5          Plaintiffs also argue that the DEI Condition was unlawful under the U.S. Constitution's Spending

6   Clause.  U.S. Const. art. I, § 8, cl. 1.  Mot. at 7-13.  As an initial matter, the Spending Clause does not

7   apply here because it limits Congress' power to legislate only and has no application to Executive Branch

8   decisions about how to expend funds appropriated by Congress.  *See Bd. of Educ. for the Silver Consol.*

9   *Schs. v. McMahon*, No. 25-cv-586, 2025 WL 2017177, at *10 (D.N.M. July 18, 2025) ("[T]he Spending

10  Clause is only implicated 'when Congress imposes a spending or funding condition.'  And without alleging

11  congressional action, Plaintiff 'cannot state a claim under the Spending Clause.'") (citation omitted).

12  Although the Ninth Circuit has held in a footnote that the Spending Clause applies to executive action,

13  *see City of Los Angeles v. Barr*, 929 F.3d 1163, 1175 n.6 (9th Cir. 2019) (finding "no reason" that spending

14  power constraints do not apply to "agency-drawn conditions on grants"), Defendants submit that decision

15  is incorrect.[4]  In any event, Congress appropriates funds to AmeriCorps and statutorily permits (but does

16  not require) AmeriCorps, in its discretion, to conduct grant making.  *See* 42 U.S.C. § 12571(a) (providing

17  that AmeriCorps "may make grants" to states and subdivisions of states); 42 U.S.C. §§ 5001(a), 5011(a),

18  5013(a) ("authoriz[ing]" AmeriCorps to "make grants" for AmeriCorps Seniors programs).  Congress

19  empowered the head of the agency and its board—who are appointed by the President with the advice and

20  consent of the Senate—to conduct such grant making.  *Id.* §§ 12651a(a), 12651b(g)(2), 12651c(a),

21  12651d(b).  The mere fact that AmeriCorps is funded through Congressional appropriations does not mean

22  that AmeriCorps' grant making takes on a constitutional dimension.

23         However, even if the Spending Clause applied, the challenge still would fail because the DEI

24  Condition was unambiguous and related to the general purpose of enforcing anti-discrimination law.

25  Under the Spending Clause, statutes passed by Congress must meet certain criteria.  Absent a violation of

26

27         [4] *See, e.g.*, *Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 212 (D.D.C. 2025) ("At the outset, it is
    unclear that this limitation on Congress's spending power applies to the Executive Branch."); *County Sch.*
28  *Bd. v. RT*, 433 F. Supp. 2d 692, 701 n.18 (E.D. Va. 2006) ("the Spending Clause relates to congressional
    power, not executive power").

another constitutional provision, all that is required is that they must be "in pursuit of the general welfare" and "unambiguous, clearly communicating . . . the consequences of [] participation in the federally funded scheme." *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002) (citation omitted).  The funding must "bear some relationship to the purpose of the federal spending," but that is a "low-threshold."  *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1034 (N.D. Cal. 2018).  In any event, "Congress may . . . 'further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives.'"  *South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (citation omitted).  Applying these principles, the Ninth Circuit has rejected a Spending Clause challenge to competitive grant programs under the first Trump Administration.  *See Barr*, 929 F.3d at 1175 ("the applicable Spending Clause principles do not readily apply to an allocation of grant funds through a competitive grant process").

Plaintiffs' first argument on this front is that the DEI Condition is ambiguous.  *See* Mot. at 9-11. It is not.  The provision requires Plaintiffs to certify that they do not operate DEI programs "that violate any applicable Federal anti-discrimination laws."  Janicki Decl. ¶ 22.  To comply with the clear notice requirement of Spending Clause jurisprudence, Congress must only make clear that acceptance of federal funds obligates States to comply with a condition.  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981).  *Pennhurst* explicitly recognized that a State's obligations under a Spending Clause program may be "largely indeterminate," so long as Congress gives "clear notice to the States that they, by accepting funds under the Act, would indeed be obligated to comply with" the condition.  *Id.* at 24-25. States make an "informed choice" when the federal government simply makes clear that acceptance of federal money obligates the States to comply with a condition.  *Id.* at 25.  Indeed, the Ninth Circuit has recognized that the Spending Clause is satisfied where a "statute's intention to impose a condition is expressed clearly," even though the operation of a funding condition "is perhaps unpredictable." *Mayweathers*, 314 F.3d at 1067.  There is no requirement to "list every factual instance in which a [funding recipient] will fail to comply with a condition" because requiring "[s]uch specificity would prove too onerous, and perhaps, impossible."  *Id.*

Here, while AmeriCorps asked recipients to certify that their AmeriCorps-funded DEI programs complied with federal anti-discrimination law, Plaintiffs cannot plausibly argue that this certification was

1  ambiguous given that the certification requested was subsumed within the broader requirement that

2  funding recipients—like Plaintiffs—do not operate *any* programs that violate anti-discrimination law.

3      Next, Plaintiffs argue that the DEI Condition is "impermissibly retroactive." Mot. at 11-12. But

4  Plaintiffs were always required to comply with federal anti-discrimination law as a condition to receiving

5  federal grant funds. 42 U.S.C. § 2000d. Indeed, Plaintiffs agreed in every grant award at issue in this

6  case that they would comply with federal statutes, including federal anti-discrimination law. SAR002;

7  SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, & 9. There is nothing retroactive about this condition.

8      Finally, Plaintiffs argue that the DEI Condition "expressly contradict[s]" the principles underlying

9  the statutes that created AmeriCorps. Mot. at 12-13. But there was no conflict between the DEI Condition

10 and AmeriCorps' goal of ensuring "that participants are from economically, geographically, and ethnically

11 diverse backgrounds." 42 U.S.C. § 12613(c). Indeed, the DEI Condition simply sought to require grant

12 recipients to comply with anti-discrimination law (as the recipients are independently required to do); in

13 no way did it preclude participants from diverse backgrounds. *Id.* In any event, the reasonable relation

14 requirement is a "low-threshold," *Becerra*, 284 F. Supp. 3d at 1034, and "not demanding." *Barr*, 929 F.3d

15 at 1175. The Supreme "Court has never struck down a condition on federal grants based on th[e]

16 relatedness prong." *Id.*

17     Agencies have long applied grant conditions like the DEI Condition to further all manner of

18 purposes and objectives. *See, e.g.*, 2 C.F.R. § 200.303(b) (requiring all recipients of federal grants to

19 "[c]omply with the U.S. Constitution, Federal statutes, regulations, and the terms and conditions of the

20 Federal award"). The DEI Condition here simply prevented the expenditure of federal funds on activities

21 that violate the law. *Cf. State v. Dep't of Just.*, 951 F.3d 84, 107 (2d Cir. 2020) ("[T]here is something

22 disquieting in the idea of States and localities seeking federal funds to enforce their own laws while

23 themselves hampering the enforcement of federal laws, or worse, violating those laws.").

24          **2.    The EO Condition Was Constitutional**

25     Plaintiffs' challenges to the EO Condition are similarly misguided. Here, Plaintiffs again argue

26 that the EO Condition violated the "Separation of Powers" and the Spending Clause. Both arguments lack

27 merit.

28

1

### (i)    The EO Condition Did Not Violate The "Separation of Powers"

2      AmeriCorps is required to incorporate into the terms of its grants "national policy requirements,"

3  including those flowing from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R.

4  § 200.300.  And AmeriCorps has also applied similar conditions since, at minimum, 2016.  Janicki Decl.

5  ¶ 24.  Indeed, Plaintiffs' grant agreements *all* require compliance with executive orders; that obligation

6  pre-existed the EO Condition that Plaintiffs now challenge in this lawsuit.  *See* SAR002; SAR005;

7  SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, & 9.  Accordingly, there is nothing new about this obligation;

8  the EO Condition here was lawful and within AmeriCorps' authority, and Plaintiffs already agreed to

9  comply with executive orders when they accepted the federal funding at issue.

10

### (ii)    The EO Condition Did Not Violate The Spending Clause

11      The EO Condition also did not violate the Spending Clause because it was unambiguous and

12  related to the purpose of the grants.  To start, this condition was unambiguous.  Like AmeriCorps grant

13  conditions issued in prior years, the EO Condition merely required Plaintiffs to comply with executive

14  orders in the same manner as they would have to follow any changes to federal statutes or regulations or

15  intervening court decisions.  The EO Condition here was as clear as those prior requirements and readily

16  satisfies the Spending Clause standard.  *See Mayweathers*, 314 F.3d at 1067.  Moreover, unlike statutes

17  or regulations, executive orders, by definition, change as a matter of course with each new administration's

18  priorities—by agreeing that they would comply with executive orders as a condition of their grant funding

19  (*see* SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, & 9), Plaintiffs cannot claim that they

20  did not "exercise their choice knowingly, cognizant of the consequences of their participation."  *Dole*, 483

21  U.S. at 207 (internal quotation marks omitted) (quoting *Pennhurst*, 451 U.S. at 17).

22      Notwithstanding the fact that they already agreed to comply with executive orders, Plaintiffs first

23  argue that the EO Condition is ambiguous because executive orders only impose requirements on

24  executive agencies, officers, and employees, and they thus have no impact on state or local governments.

25  Mot. at 9-10.  This is a red herring—Plaintiffs admit that executive orders apply to executive agencies like

26  AmeriCorps (*id.*), and, as noted above, AmeriCorps is required to incorporate into the terms of its grants

27  "national policy requirements," including from "executive order[s]." 2 C.F.R. § 200.211(c)(1)(ii); *see also*

28  2 C.F.R. § 200.300.  As such, the question is not whether executive orders apply directly to state and local

governments (Defendants agree that they do not), but rather whether Plaintiffs can demand federal funds administered by an executive agency without complying with the national policy requirements that same federal agency is required to incorporate into the terms of its grantmaking.  Plaintiffs have no right to do so, much less does AmeriCorps' requiring Plaintiffs to comply with executive orders (consistent with the grant agreements that Plaintiffs entered into) render that requirement ambiguous.  *State*, 951 F.3d at 107.

Plaintiffs next claim that the EO Condition is ambiguous because the executive orders fail to define terms such as DEI, DEIA, equity, and equity-related.  Mot. at 10.  But such conditions, incorporating sources of law with which Plaintiffs are already generally required to comply (here, federal anti-discrimination law), cannot be facially vague.  *See, e.g.*, *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to DEI—and gender ideology—executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit"); *Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) (rejecting challenge to executive orders involving DEI programs and finding that grant recipients are required to comply with federal anti-discrimination laws).  Indeed, the EO Condition "does not place upon a recipient any unanticipated burdens because any recipient must anticipate having to comply with the law," even as federal law shifts when Congress passes laws or the Supreme Court interprets laws differently.  *Guardians Ass'n*, 463 U.S. at 630 (Marshall, J., dissenting).

The EO Condition surpasses the "low-threshold" of being reasonably related to the purpose of expenditure.  *See Becerra*, 284 F. Supp. 3d at 1034.  AmeriCorps is required to ensure that all grants comply with federal law, and the EO Condition was another way AmeriCorps sought to ensure that requirement was met.  Pertinent in this case, Congress' stated purpose for the type of subgrant that Plaintiff SFUSD received is broadly for "national service programs."  42 U.S.C. § 12571.  Congress' stated purposes for the grants that Plaintiff Santa Fe received are (1) "to help retired individuals and working older individuals to share their experiences, abilities, and skills to improve their communities and themselves through service in their communities," *id.* § 5001(a); (2) "providing opportunities for low-income persons age 55 or over to provide supportive person-to-person services in health, education, welfare, and related settings to children having special or exceptional needs or circumstances identified as limiting their academic, social, or emotional development," *id.* § 5011(a); and (3) "providing

opportunities for low-income persons age 55 or older to serve as 'senior companions' to persons with exceptional needs," *id.* § 5013(a). AmeriCorps has an interest in maintaining consistency between their discretionary allocation of federal funds for each of those program purposes with the obligation AmeriCorps has to comply with the directives and priorities of the Executive Branch. Plaintiffs may disagree with how AmeriCorps decides to allocate or reprioritize grant funding within those purposes— or how to "meet the unmet human, educational, environmental, and public safety needs of the United States without displacing existing workers," one of the nineteen purposes that Congress enumerated as the overall purpose of the agency, 42 U.S.C. § 12501(b). But Congress reserved that decision to AmeriCorps' discretion. And, as the Ninth Circuit has observed, the Supreme "Court has never struck down a condition on federal grants based on the relatedness prong." *Barr*, 929 F.3d at 1175.

### C. The Instructions Did Not Violate The APA

#### 1. The Instructions Did Not Constitute Final Agency Action

The APA does not provide for judicial review of every agency action. *See* 5 U.S.C. § 704. The APA only confers jurisdiction on district courts to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." *Id.* Plaintiffs incorrectly contend the Instructions are subject to review as a final agency action (Mot. at 15), but the Instructions meet neither of the two requirements to constitute such a final action.

First, the Instructions do not "mark the 'consummation' of the agency's decisionmaking process." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). The Instructions were instead of an "interlocutory nature." *Id.* The Instructions made clear that it was starting an iterative process by prefacing that the agency was "continuing" to review the new administration's executive orders and was reviewing AmeriCorps awards to identify grants that "may not comply with executive orders. AR055-64; Janicki Decl. ¶ 11. And AmeriCorps repeatedly emphasized the preliminary nature of its review. SAR011-26. To be sure, the Instructions did require a response from each grantee and ask the grantee to "cease" non-compliant activity. AR055-64. But that did not reflect the agency's final decision about what was or was not compliant. *See id.* Instead, the Instructions explicitly outline a multi-step process: AmeriCorps' initial assessment of whether a grantee "appear[s]" to be or "may not be in compliance"; then, the grantee's own assessment of its compliance by choosing whether to self-certify, amend its grant

1  application, or express an intent to relinquish its grant funding; followed by AmeriCorps' subsequent

2  review and decision on grantees' application amendment requests or requests to relinquish. *Id.* The fact

3  that AmeriCorps Instructions and eGrants certification requirements continued to evolve over that brief

4  49-day period itself demonstrates that these were not final agency actions. Janicki Decl. ¶ 22.

5        Second, the Instructions were not an action by which rights or obligations have been determined,

6  or from which legal consequences will flow. Through the Instructions, AmeriCorps merely sought to

7  bring its grantees into compliance with executive orders as already required by the terms and conditions

8  of their grants. Such an "informational document, in which 'an agency merely expresses its view of what

9  the law requires of a party, is not a final agency action." *Advanced Integrative Med. Sci. Inst., PLLC v.*

10  *Garland*, 24 F.4th 1249, 1258 (9th Cir. 2022). AmeriCorps provided guidance to grantees but made clear

11  to them that the agency's review and assessment of the executive orders was ongoing. AR055-64l;

12  SAR011-26; Janicki Decl. ¶¶ 10-11. Plaintiffs identify no legal or monetary consequences that flowed

13  from the Instructions. Nor can they. AmeriCorps imposed no legal consequences on Plaintiffs through

14  its Instructions: the Instructions did not pause or terminate grant funding, did not tell grantees that they

15  had to suspend their grant programs, and did not require any changes to Plaintiffs' substantive

16  AmeriCorps-funded programming. Janicki Decl. ¶¶ 18-19. In short, the Instructions do not satisfy the

17  conditions to be a reviewable agency action under the APA.

### 2.    Plaintiffs' Grant Awards Are Committed To Agency Discretion

19        Plaintiffs' APA claims further fail because the grant awards at issue are discretionary, and there

20  are thus no standards for the Court to apply in reviewing the Challenged Conditions. Ordinarily, for

21  discretionary grants, agencies are free to reject applications in what is a competitive process. And "before

22  any review at all may be had, a party must first clear the hurdle of § 701(a)," *Heckler v. Chaney*, 470 U.S.

23  821, 828 (1985), which precludes review under the APA if the challenged agency action is "committed to

24  agency discretion by law." 5 U.S.C. § 701(a)(2). Under § 701(a)(2), "review is not to be had if the statute

25  is drawn so that a court would have no meaningful standard against which to judge the agency's exercise

26  of discretion." *Heckler*, 470 U.S. at 830. "In such a case," the relevant statutory provision "can be taken

27  to have committed the decisionmaking to the agency's judgment absolutely." *Id.* (internal quotation marks

28  omitted).

An agency's allocation of appropriated funds is typically and presumptively committed to agency discretion by law because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln v. Vigil*, 508 U.S. 182, 192 (1993); *see Milk Train, Inc. v. Veneman*, 310 F.3d 747, 748-51 (D.C. Cir. 2002); *Los Coyotes Band of Cahuilla & Cupeño Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013); *Serrato v. Clark*, 486 F.3d 560, 568-70 (9th Cir. 2007). This is why agency grant-award decisions are presumptively unreviewable. *See Lincoln*, 508 U.S. at 191-92 (including "allocation of funds from a lump-sum appropriation" among the "administrative decision[s] traditionally regarded as committed to agency discretion" that have been held "to be presumptively unreviewable"); *see also Milk Train, Inc.*, 310 F.3d at 750–51 (applying *Lincoln* in the context of non-lump-sum appropriations).

Plaintiffs cannot overcome the presumption that the Challenged Conditions—which merely reiterated that grant recipients must comply with federal anti-discrimination law and executive orders— are unreviewable for these discretionary grants. No statutory provision limits AmeriCorps' discretion to issue funding, much less do the statutes prevent requiring compliance with federal anti-discrimination law or Executive Branch policy directives, making those decisions presumptively unreviewable. *Cf. Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 75-76 (D.D.C. 2018) (holding that decision to stop funding and recompete the funds is a "presumptively unreviewable" type of agency action, but holding that a denial to continue funding without explanation was arbitrary and capricious under the APA).

### 3. Plaintiffs' APA Claims Also Fail On The Merits

#### (i) The Instructions Were Not Arbitrary Or Capricious

AmeriCorps' implementation of the Instructions also was not arbitrary or capricious. Mot. at 15-18. Judicial review under the APA's arbitrary-and-capricious standard "is deferential, and a court may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). That review is "narrow." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). All that is required is for the agency to "act[] within a zone of reasonableness." *Prometheus*, 592 U.S. at 423; *Barr*, 929 F.3d at 1181 ("The agency need provide only a minimal level of analysis to avoid its action being deemed arbitrary and capricious"). Here, given the agency's discretion to impose appropriate terms and conditions on the receipt of federal funds, and

general grantmaking requirements that the recipients of such funds follow federal law, the adoption of grant conditions that require recipients to comply with executive orders and federal anti-discrimination laws can hardly be considered arbitrary or capricious. *See id.* at 1182 (rejecting APA arbitrary and capricious challenge to COPS grant programs and holding that "the wisdom of DOJ's policy is not an element of our arbitrary and capricious review"). And AmeriCorps once again observes that Plaintiffs agreed to these obligations when they originally accepted the grant agreements. SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, 9, & 24.

Plaintiffs first contend that AmeriCorps did not provide a reasoned basis for the Instructions (Mot. at 15-16), but that is not correct. Courts should "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citation and internal quotation marks omitted). The Instructions easily satisfy this standard. The Instructions explained that they were in response to executive orders issued since the start of a new administration. AR056. AmeriCorps reviewed "all current AmeriCorps awards" for compliance and provided "guidance on next steps in this process to ensure compliance with [the administration's] directives." *Id.* As to why it was taking this step, AmeriCorps explained that "as part of the Executive branch of government," its funding was subject to the executive order priorities. AR062. The Instructions were reasonable and reasonably explained.

Plaintiffs also argue that the "new conditions reversed a prior agency position" and that Plaintiffs have a reliance interest on AmeriCorps' grants. Mot. at 16-17. But although AmeriCorps' grant conditions may have been worded differently in the past, the Challenged Conditions are not new, nor did they "reverse policy" applicable to AmeriCorps' grants. As discussed above, the DEI Condition simply required Plaintiffs to certify compliance with otherwise applicable federal anti-discrimination law, which Plaintiffs had already agreed to do in every grant award at issue. SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, & 9. And Plaintiffs similarly previously agreed to comply with executive orders in each of the grant agreements at issue here. SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, 9, & 24. Further, Plaintiffs' claim that they have a reliance interest in their grant programs misapprehends the standard. The issue is not whether Plaintiffs have a reliance interest in federal funding—Plaintiffs

1   unquestionably are free to accept the awarded federal funding in this case.[5]  Instead, the issue is whether

2   Plaintiffs have a right to accept federal funds while violating federal anti-discrimination law; Plaintiffs

3   have no such right or reliance interest.  Plaintiffs also do not explain what reliance interests they could

4   have in being able to violate federal anti-discrimination law and/or executive orders while participating in

5   programs funded by the federal government, and which executive agencies—like AmeriCorps—are

6   required to follow.

7                   **(ii)     The Instructions Were Not Contrary To The Constitution**

8          Plaintiffs' contrary to the Constitution APA argument parrots Plaintiffs' earlier claims that

9   AmeriCorps violated the Constitution by supposedly exceeding its statutory authority to implement the

10  Challenged Conditions.  Mot. at 18.  But that is wrong.  As discussed above, AmeriCorps is required to

11  enforce all federal anti-discrimination laws and has the authority to require recipients to follow executive

12  orders, as it did in prior fiscal years (and as Plaintiffs unquestionably already agreed to do in their

13  pre-existing grant awards, *see* SAR002; SAR005; SAR007; SAR009; Janicki Decl. ¶¶ 5, 7, 9, & 24).

14                  **(iii)    The Instructions Were Not Contrary To Statutory Authority**

15         Finally, the Instructions are well-within AmeriCorps' statutory authority.  As noted above,

16  Plaintiffs selectively cite a mix of statutory provisions across different AmeriCorps' programs as

17  purportedly evidencing Congress' "mandate" that AmeriCorps provide federal funding for activities that

18  may be non-compliant with the administration's executive orders.  Review of the statutory provisions

19  enabling AmeriCorps' grant making, however, do not support that.  Pertinent to Plaintiff SFUSD's

20  subgrant, Congress conferred broad discretion on AmeriCorps that it "may make grants" to states and

21  subdivisions of states for national service programs.  42 U.S.C. § 12571(a).  With respect to Plaintiff

22  Santa Fe's grants, Congress likewise "authorized" AmeriCorps to make grants for the AmeriCorps

23  Seniors programs described above.  *Id.* §§ 5001(a), 5011(a), 5013(a).  These governing statutory

24  provisions do not require that AmeriCorps award grants to Plaintiffs or even award the grants at issue in

25  this lawsuit at all.  Congress left that choice to AmeriCorps (through the head of the agency and its board).

26

27        [5] In any event, each of the grant programs at issue are discretionary, and Plaintiffs thus cannot
    reasonably argue that they have a reliance interest in funds that are "fraught with unpredictability due to
28  the competitive nature of the grant application process."  *City of Chelsea v. Trump*, No. 25-10442, 2025
    WL 2807831, at *7 (D. Mass. Oct. 2, 2025).

And Plaintiffs ignore that Congress left no doubt, at least for AmeriCorps Seniors program grants, that payments may be made "on such conditions" as AmeriCorps determines. *Id.* § 5022. The Instructions do not exceed the agency's statutory authority.

And undercutting Plaintiffs' contrary to statutory authority arguments is the statutory obligation for all federal grant recipients, including Plaintiffs here, to comply with federal anti-discrimination laws. 42 U.S.C. §§ 2000d, 2000d-1. It is unclear how AmeriCorps could act contrary to statutory authority by implementing a condition that expressly seeks to enforce such a statutory mandate.

## V.    Conclusion

For these reasons, and those set forth in Defendants' earlier briefs (ECF Nos. 30, 38, 49), the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

DATED: February 18, 2026                      Respectfully submitted,

                                              CRAIG H. MISSAKIAN
                                              United States Attorney

                                              */s/ Jevechius D. Bernardoni*
                                              JEVECHIUS D. BERNARDONI
                                              Assistant United States Attorney

                                              Attorneys for Defendants