DAVID CHIU, SBN 189542
City Attorney
YVONNE R. MERÉ, SBN 175394
Chief Deputy City Attorney
MOLLIE M. LEE, SBN 251404
Chief of Strategic Advocacy
SARA J. EISENBERG, SBN 269303
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON, SBN 315244
Deputy City Attorney
Fox Plaza
1390 Market Street, 7th Floor
San Francisco, CA 94102-5402
Telephone:    (415) 554-3894
Facsimile:    (415) 437-4644
E-Mail:        molly.alarcon@sfcityatty.org

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

COOLEY LLP
BENEDICT Y. HUR, SBN 224018
bhur@cooley.com
SIMONA AGNOLUCCI, SBN 246943
sagnolucci@cooley.com
EDUARDO E. SANTACANA, SBN 281668
esantacana@cooley.com
THILINI CHANDRASEKERA, SBN 333672
tchandrasekera@cooley.com
MICHAEL MORIZONO, SBN 359395
mmorizono@cooley.com
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
Telephone:    (415) 693-2000

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED
SCHOOL DISTRICT

*[additional counsel on signature page]*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT; CITY OF SANTA FE,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICORPS (a.k.a. the CORPORATION FOR NATIONAL AND COMMUNITY SERVICE); JENNIFER BASTRESS TAHMASEBI in her official capacity as Interim Agency Head of AmeriCorps,<br><br>Defendants. | Case No. 3:25-cv-02425-EMC<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    May 14, 2026<br>Time:              1:30 p.m.<br>Place:             Courtroom 5, 17th Floor |

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................................... 1

Argument ............................................................................................................................... 1

I.    Plaintiffs' Challenge to the AmeriCorps Directive is Justiciable .......................... 1

    A.    Defendants Have Followed Court Orders; They Have Not Made A Legally Binding Policy Change ................................................................... 2

    B.    Even If Defendants Can Show They Stopped Enforcing the AmeriCorps Directive, They Cannot Meet Their Heavy Burden of Proving Mootness ............................................................................................ 3

    C.    Plaintiffs Experienced Injury in Fact and Will Face Future Injury in Fact if Defendants Are Not Enjoined From Enforcing The New Conditions ................................................................................................. 7

II.   Plaintiffs are Entitled to Summary Judgment on Their Constitutional Claims ........................................................................................................................ 8

    A.    The Directive Violates the Separation of Powers ....................................... 8

    B.    The Directive Violates the Spending Clause ............................................. 10

III.  Plaintiffs Are Entitled to Summary Judgment on Their Claims That Defendants Violated the Administrative Procedure Act ....................................... 15

    A.    The Directive is Subject to Judicial Review ............................................. 15

        1.    Issuance of the Directive Constitutes Final Agency Action. ......... 15

        2.    The Grant Awards Are Not Committed to Agency Discretion. ...................................................................................... 16

    B.    Defendants' Actions Violate the Administrative Procedure Act .............. 17

        1.    The Directive is Arbitrary and Capricious. .................................... 17

        2.    The Directive is Contrary to the Constitution. ............................... 19

        3.    The Directive is in Excess of AmeriCorps' Statutory Authority. ........................................................................................ 20

Conclusion .......................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Integrative Medical Science Institute, PLLC v. Garland,*
  24 F.4th 1249 (9th Cir. 2022)............................................................................................... 15

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,*
  548 U.S. 291 (2006).............................................................................................................. 13

*State ex rel. Becerra v. Sessions,*
  284 F. Supp. 3d 1015 (N.D. Cal. 2018) ............................................................................... 15

*Bennett v. Spear,*
  520 U.S. 154 (1997).............................................................................................................. 15

*Beno v. Shalala,*
  30 F.3d 1057 (9th Cir. 1994)................................................................................................ 17

*California v. Trump,*
  379 F. Supp. 3d 928 (N.D. Cal. 2019) ................................................................................. 17

*California v. United States Dep't of Transp.,*
  808 F. Supp. 3d 291 (D.R.I. 2025)....................................................................................... 11

*City & Cnty. of S.F. v. Trump,*
  783 F. Supp. 3d 1148 (N.D. Cal. 2025) ............................................................................... 15

*City & Cnty. of S.F. v. Trump,*
  897 F.3d 1225 (9th Cir. 2018)................................................................................................ 8

*City & Cnty. of S.F. v. Trump,*
  --- F. Supp. 3d ---, 2026 WL 145874 (N.D. Cal. Jan. 20, 2026).......................................... 9, 15

*City of Chelsea v. Trump,*
  No. 25-10442, 2025 WL 2807831 (D. Mass. Oct. 2, 2025).................................................... 19

*City of Fresno v. Turner,*
  No. 25-cv-07070, 2025 WL 2721390 (N.D. Cal. Sep. 23, 2025) ........................................... 10

*City of Los Angeles v. Barr,*
  929 F.3d 1163 (9th Cir. 2019)............................................................................................... 11

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .................................................................................................................. 6

*Cnty. of Santa Clara v. Noem,*
  No. 25-CV-08330, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) ............................. 6, 11, 13

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Dalton v. Specter*,
511 U.S. 462 (1994)................................................................................................ 8, 9, 10

*Dep't of Commerce v. New York*,
588 U.S. 752 (2019)..................................................................................................... 16, 18

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020)............................................................................................................. 19

*Doe v. Rumsfeld*,
435 F.3d 980 (9th Cir. 2006)........................................................................................... 12

*FBI v. Fikre*,
601 U.S. 234 (2024)........................................................................................................... 3

*Fed. Election Comm'n v. Cruz*,
596 U.S. 289 (2022)............................................................................................................ 8

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
82 F.4th 664 (9th Cir. 2023)........................................................................................ 3, 6, 7

*Fikre v. FBI*,
904 F.3d 1033 (9th Cir. 2018)......................................................................................... 3, 4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000).......................................................................................................... 3

*Gengler v. United States ex rel Dep't of Def. & Navy*,
453 F. Supp. 2d 1217 (E.D. Cal. 2006)........................................................................... 12

*Illinois v. Fed. Emergency Mgmt. Agency*,
801 F. Supp. 3d 75 (D.R.I. 2025)............................................................................... 3, 18

*Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*,
730 F.3d 1024 (9th Cir. 2013)........................................................................................... 3

*Jajati v. U.S. Customs & Border Prot.*,
102 F.4th 1011 (9th Cir. 2024).......................................................................................... 16

*Keita v. U.S. Small Bus. Admin.*,
No. 07-cv-4958, 2010 WL 395980 (E.D.N.Y. Feb. 3, 2010) .......................................... 16

*La. Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986)..................................................................................................... 8, 11

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**Cases**

*Lincoln v. Vigil*,
508 U.S. 182 (1993) ................................................................................................ 16, 17

*Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*,
729 F.3d 1025 (9th Cir. 2013) ...................................................................................... 17

*McCormack v. Herzog*,
788 F.3d 1017 (9th Cir. 2015) ........................................................................................ 4

*Milk Train, Inc. v. Veneman*,
310 F.3d 747 (D.C. Cir. 2002) ...................................................................................... 17

*Murphy Co. v. Biden*,
65 F.4th 1122 (9th Cir. 2023) ......................................................................................... 9

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
167 F.4th 86 (4th Cir. Feb. 6, 2026) ........................................................................ 13, 14

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
779 F. Supp. 3d 149 (D.N.H. 2025) ............................................................................... 13

*Nat'l Urban League v. Trump*,
783 F. Supp. 3d 61 (D.D.C. 2025) ................................................................................. 13

*New York v. Nat'l Sci. Found.*,
793 F. Supp. 3d 562 (S.D.N.Y. 2025) ......................................................................... 8, 9

*Nguyen v. Kissinger*,
528 F.2d 1194 (9th Cir. 1975) ....................................................................................... 16

*Nielsen v. Preap*,
586 U.S. 392 (2019) ......................................................................................................... 2

*Northrop Grumman Info. Tech., Inc. v. United States*,
535 F.3d 1339 (Fed. Cir. 2008) ..................................................................................... 12

*O'Shea v. Littleton*,
414 U.S. 488 (1974) ......................................................................................................... 6

*Pac. Dawn LLC v. Pritzker*,
831 F.3d 1166 (9th Cir. 2016) ....................................................................................... 18

*Pennhurst State Sch. & Hosp. v. Halderman*,
451 U.S. 1 (1981) ..................................................................................................... 10, 12

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador,*
  122 F.4th 825 (9th Cir. 2024)...................................................................................... 5, 6

*Policy & Rsch., LLC v. U.S. Dep't of Health & Human Servs.,*
  313 F. Supp. 3d 62 (D.D.C. 2018) ................................................................................ 17

*Pub. Hous. Auths. Dirs. Ass'n v. United States,*
  130 Fed. Cl. 522 (2017) ................................................................................................ 12

*R.I. Latino Arts v. Nat'l Endowment for the Arts,*
  800 F. Supp. 3d 351 (D.R.I. 2025)................................................................................ 18

*Rhode Island v. Trump,*
  --- F. Supp. 3d ---, 2025 WL 3251113 (D.R.I. Nov. 21, 2025)................................. 9, 10

*Rosebrock v. Mathis,*
  745 F.3d 963 (9th Cir. 2014)...................................................................................... 5, 6

*S.F. A.I.D.S. Found. v. Trump,*
  786 F. Supp. 3d 1184 (N.D. Cal. 2025) ....................................................................... 13

*Santiago v. Rumsfeld,*
  425 F.3d 549 (9th Cir. 2005)........................................................................................ 12

*Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.,*
  584 F.3d 253 (6th Cir. 2009)........................................................................................ 13

*Serrato v. Clark,*
  486 F.3d 560 (9th Cir. 2007).................................................................................. 16, 17

*Sierra Club v. Trump,*
  929 F.3d 670 (9th Cir. 2019).................................................................................... 9, 10

*South Dakota v. Dole,*
  483 U.S. 203 (1987)...................................................................................................... 10

*United States v. W. T. Grant Co.,*
  345 U.S. 629 (1953)........................................................................................................ 6

*Washington v. U.S. Dep't of Health & Human Servs.,*
  No. 25-cv-01748, 2025 WL 3002366 (D. Or. Oct. 27, 2025).................................... 11

*Webster v. Doe,*
  486 U.S. 592 (1988)...................................................................................................... 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Cases**

*Wong v. Warden, FCI Raybrook*,
171 F.3d 148 (2d Cir. 1999)...................................................................................... 16

**Statutes**

5 U.S.C.
§ 701 .............................................................................................................. 16, 17
§ 706 ................................................................................................................... 19

42 U.S.C.
§ 4950 ............................................................................................................... 9, 20
§ 12501 ................................................................................................................. 14
§ 12526 ................................................................................................................... 6
§ 12561 ................................................................................................................. 20
§ 12572 ................................................................................................................. 16

**Other Authorities**

*2025 Terms and Conditions for AmeriCorps RSVP Grants*,
https://www.americorps.gov/sites/default/files/document/2025-03/FY2025-
RSVP-Terms-and-Conditions.pdf ........................................................................... 5

*2025 Terms and Conditions for AmeriCorps State and National Grants*,
https://www.americorps.gov/sites/default/files/document/2025-
06/2025_ASN_Program_Specific_T%26C.pdf ....................................................... 4

*2025 Terms and Conditions for AmeriCorps Seniors Foster Grandparent and
Senior Companion Programs*,
https://www.americorps.gov/sites/default/files/document/2025-
06/2025_FGP_SCP_T%26C_508.pdf ...................................................................... 5

**Introduction**

The Court should grant summary judgment to Plaintiffs. This case presents a justiciable controversy over Defendants' extant policy to impose ambiguous and unlawful conditions on Plaintiffs' AmeriCorps grants. Defendants' argument that the case is now moot because the agency has stopped enforcing the unlawful conditions is self-serving and unsupported, particularly because the agency has not rescinded or repudiated its prior position. Moreover, Defendants' claim of mootness is inconsistent with Defendants' argument that the AmeriCorps Directive (ARO55-065) meant nothing because Plaintiffs were already subject to requirements not to violate anti-discrimination law or applicable executive orders. The record is clear: the AmeriCorps Directive imposed and, absent Court intervention, would continue to impose immediate obligations on all grantees to cease all "activities that promote DEI activities" ("DEI Condition") and certify "compliance" with specific executive orders ("EO Condition"). Plaintiffs remain under the threat of this fickle Administration simply for continuing their grant activities as previously approved. The harms that Plaintiffs face from Defendants' unlawful policy remain.

**Argument**

**I.      Plaintiffs' Challenge to the AmeriCorps Directive is Justiciable**

Defendants argue that Plaintiffs lack standing to bring this challenge to the AmeriCorps Directive because, Defendants assert, the case is now moot. Opp. at 8-10. This argument is both factually and legally incorrect. In reality, Defendants have not enforced the AmeriCorps Directive because this Court enjoined them from doing so. Defendants have not rescinded the AmeriCorps Directive, have never repudiated the DEI Condition or the EO Condition, and admit that they still forbid grantees from engaging in activities supposedly "prohibited" by executive orders. Defendants' unwillingness to repudiate the unlawful AmeriCorps Directive demonstrates the need for permanent injunctive relief from this Court. *See* Sections I(A)-(B), *infra*.

Likewise, Defendants have no basis to claim that Plaintiffs have always lacked Article III standing because they were never injured. Dkt. No. 81 ("Opp.") at 7-8. Defendants did not just ask Plaintiffs to make "wording modifications" to their grants, Opp. at 7; Defendants threatened them with the loss of hundreds of thousands of dollars and forced them to make substantive changes to

the detriment of their grant programs before the Court issued preliminary relief. Dkt. No. 33 ("TRO") at 5-10 (describing Plaintiffs' injuries and imminent harms); Dkt. No. 59 ("PI Order") at 18-21 (same). The Court should reject Defendants' disingenuous argument that Plaintiffs have suffered no injury. This case remains justiciable. *See* Section I(C), *infra*.

**A.      Defendants Have Followed Court Orders; They Have Not Made A Legally Binding Policy Change**

Defendants lack factual support for their argument that this case is now moot, and there is every reason to doubt Defendants' assertion that they abandoned the new conditions. Indeed, Defendants have never raised this argument before, despite claiming now that AmeriCorps decided nearly a year ago, on April 3, 2025, to stop enforcing the challenged conditions. Opp. at 1, 5, 9. Crucially, this date is just three days after this Court issued a temporary restraining order enjoining AmeriCorps from enforcing the new conditions against Plaintiffs or other grantees. Dkt. No. 33. Defendants filed two briefs in April of 2025 shortly after the supposed abandonment of the AmeriCorps Directive, including an opposition to Plaintiffs' motion for preliminary injunction, neither of which mentioned standing, mootness, or Defendants' supposed policy change. *See* Dkt. Nos. 43 & 49.

The declaration from the grant specialist submitted to support Defendants' claim of mootness leaves much open. It stated only that "AmeriCorps is taking no further action with regard to the February 13, 2025 Executive Order Compliance Instructions" and "will not seek to enforce" it for Plaintiffs' "continuation grants." Dkt. No. 82 (Janicki Decl.) ¶ 21. This official did *not* state that AmeriCorps had rescinded the AmeriCorps Directive, will never include those conditions in future grant agreements, or changed its views about the effect of various recent EOs. The statement that the agency is *currently* not "taking [] further action" provides no assurance because the agency is currently subject to a preliminary injunction.[1] *See Nielsen v. Preap*, 586 U.S. 392, 403 (2019) (explaining that "[u]nless th[e] preliminary injunction was made permanent and was not disturbed

_____
[1] Any changes in eGrants to excise the challenged conditions in this case, *see* Opp. at 9, or remarks that "AmeriCorps never withheld awarded grant funds," Opp. at 1, can only be understood as actions taken to comply with this Court's orders, particularly in the absence of any disavowal of the AmeriCorps Directive.

on appeal," then the claim was not moot). "Put simply, the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past." *FBI v. Fikre*, 601 U.S. 234, 242 (2024) (affirming Ninth Circuit); *see also Illinois v. Fed. Emergency Mgmt. Agency*, 801 F. Supp. 3d 75, 86-87 (D.R.I. 2025) (*Illinois v. FEMA*) (federal official's declaration that it would not impose conditions on certain grants was inadequate to show mootness).

### B. Even If Defendants Can Show They Stopped Enforcing the AmeriCorps Directive, They Cannot Meet Their Heavy Burden of Proving Mootness

Even if the Janicki declaration can be read to confirm a binding change in AmeriCorps' policy (a premise Plaintiffs reject), this case is not moot. To succeed in demonstrating mootness based on Defendants' voluntary cessation of challenged conduct, Defendants must meet a "heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again[.]" *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (cleaned up). Defendants attempt to foist this burden onto Plaintiffs, claiming *Plaintiffs* must show a likelihood that Defendants will repeat their misconduct to justify Plaintiffs' request for a permanent injunction. *See* Opp. at 9. But that is not what the law requires. *See* Dkt. No. 77 ("MSJ") at 20-21 (citing *Indep. Training & Apprenticeship Program v. Cal. Dep't of Indus. Rels.*, 730 F.3d 1024, 1032 (9th Cir. 2013) (setting forth standard for permanent injunction)). Plaintiffs easily satisfy their burden to justify a permanent injunction based on the various injuries they suffered and would continue to suffer. MSJ at 20-24. Further, to the extent Ninth Circuit law requires Plaintiffs to demonstrate, as a matter of Article III standing, a sufficient likelihood of future harm, Plaintiffs easily meet this burden based on AmeriCorps' "written policy." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 681 (9th Cir. 2023) ("Plaintiffs may demonstrate that an injury is likely to recur by showing that the defendant had a written policy, and that the injury stems from that policy." (cleaned up)). Defendants, however, cannot meet their burden to prove mootness for several reasons.

First, the Ninth Circuit has held with respect to voluntary cessation that, "the form the governmental action takes is critical and, sometimes, dispositive," *Fikre v. FBI*, 904 F.3d 1033,

1038 (9th Cir. 2018), and that "an executive action that is not governed by any clear or codified procedures cannot moot a claim." *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022). Here, the form of the federal government's action is the statement in a declaration that "AmeriCorps is taking no further action with regard to the February 13, 2025 Executive Order Compliance Instructions[.]" Dkt. No. 82 (Janicki Decl.) ¶ 21. There are no "clear or codified procedures" governing this supposed policy change: no public announcement, no rescission of the AmeriCorps Directive, no repudiation of the EO Condition or the DEI Condition, and no explanation of the change in light of AmeriCorps' previous position that it was *required* to implement various recent executive orders in this manner. AR062[2]; *see also* Dkt. No. 49 (Defendants' PI Opp.) at 8-9. Defendants did not effectuate this supposed policy change in a manner that rules out the possibility that the position "could be easily abandoned or altered in the future." *Fikre*, 904 F.3d at 1038 (citation omitted). The Court should reject Defendants' mootness argument on this basis alone.

Second, with respect to the EO Condition, Defendants have admitted that they are still requiring grantees to comply with executive orders. It is not true, as Defendants asserted in their brief, that AmeriCorps is no longer asking grant applicants to certify to the EO Condition. *See* Opp. at 9:21-23. Their own evidence contradicts this. The Janicki declaration stated that in the agency's general terms and conditions, AmeriCorps is still requiring grantees to certify that they "comply with executive orders." Dkt. No. 82 ¶ 24.

Moreover, the other grant documents identified in the Janicki declaration contain terms prohibiting violations of executive orders. The first linked document[3] in Paragraph 25 of the Janicki declaration includes language in Section V.C prohibiting "staff and members" from "[a]ny activity

---

[2] Defendants filed a Supplemental Administrative Record ("SAR") immediately prior to filing their Opposition and Cross-MSJ. *See* Dkt. Nos. 80, 80-1. The Administrative Record has been on file since September 19, 2025, pursuant to the parties' stipulation, and the Court subsequently set a briefing schedule that did not provide an opportunity to file a supplemental administrative record, particularly after Plaintiffs filed their motion. *See* Dkt. Nos. 67, 76. Accordingly, Defendants' SAR is improper and the Court need not consider it.

[3] 2025 Terms and Conditions for AmeriCorps State and National Grants, *available at* https://www.americorps.gov/sites/default/files/document/2025-06/2025_ASN_Program_Specific_T%26C.pdf (last visited Mar. 19, 2026).

prohibited by applicable Executive Order/Memorandum." The second linked document[4] in Paragraph 25 states: "AmeriCorps funds may not be used for activities that are prohibited by applicable executive orders, regulations, or other law." And Section III of the third linked document[5] prohibits "[a]ctivities that are prohibited by applicable executive orders." The Janicki declaration inaccurately stated that these program-specific documents do not "require certification of compliance with executive orders." Dkt. No. 82 (Janicki Decl.) ¶ 25. Defendants' representations appear demonstrably false.[6]

Given these terms, Defendants would need to repudiate, unequivocally, their prior position to meet their burden to prove mootness. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 841 (9th Cir. 2024) (holding case was not moot because Idaho Attorney General did not repudiate legal position taken in opinion letter after withdrawing it, and nothing prevented him from applying the same interpretation in the future). But nothing in Defendants' brief or the Janicki declaration provides any assurance that AmeriCorps no longer seeks to enforce the executive orders listed in the AmeriCorps Directive, such as those related to DEI or "gender identity," against grantees. *See* AR052-053 (listing specific EOs with which grantees must "comply"). Plaintiffs have no reassurance that their grants will not be revoked in the future based on their lawful activities.

---

[4] 2025 Terms and Conditions for AmeriCorps Seniors Foster Grandparent (FGP) and Senior Companion Programs (SCP), *available at* https://www.americorps.gov/sites/default/files/document/2025-06/2025_FGP_SCP_T%26C_508.pdf (last visited Mar. 19, 2026).

[5] 2025 Terms and Conditions for AmeriCorps RSVP Grants, *available at* https://www.americorps.gov/sites/default/files/document/2025-03/FY2025-RSVP-Terms-and-Conditions.pdf (last visited Mar. 19, 2026).

[6] For this reason, Plaintiffs do not understand Defendants' contradictory positions that, on one hand, they are no longer enforcing the EO Condition, Opp. at 9:21-23, and that on the other, AmeriCorps grantees have always been required to agree to comply with executive orders, Opp. at 5:15-18. Regardless, the injury Plaintiffs face is caused by Defendants' apparent belief, enforced under threat of grant termination, that recent Trump Administration executive orders impose conditions on Plaintiffs (and other grantees). *See* MSJ at 9-11, 13-14.

At the very least, because Defendants have never repudiated the AmeriCorps Directive's requirements regarding compliance with recent executive orders, Defendants' purported policy change, if credible, clearly fails to "address[] all of the objectionable measures," yet another reason they cannot demonstrate mootness. *Rosebrock v. Mathis*, 745 F.3d 963, 972 (9th Cir. 2014).

---

Even if executive-order related grant terms are longstanding, the agency's "*interpretation* has starkly changed." *Cnty. of Santa Clara v. Noem*, No. 25-CV-08330, 2025 WL 3251660, at *42 (N.D. Cal. Nov. 21, 2025) (emphasis in original), *appeal filed* No. 26-402 (9th Cir. Jan. 20, 2026). And based on AmeriCorps' interpretation, Plaintiffs remain subject to the same uncertainties and experience the same injuries previously recognized by the Court. PI Order at 31-38 (discussing ambiguity in the EOs); TRO at 5-11 (detailing injuries and harms therefrom); MSJ at 21-23. Plaintiffs' claims are not moot because absent Court order, Defendants remain "free to return to [their] old ways." *Planned Parenthood*, 122 F.4th at 841 (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)).

Thus, the Article III inquiry in this case differs dramatically from *City of Los Angeles v. Lyons* and *O'Shea v. Littleton*, on which Defendants rely. *See* Opp. at 9 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *O'Shea v. Littleton*, 414 U.S. 488 (1974)).[7] Those cases, involving patterns of police violence and civil rights violations, respectively, are distinguishable. The plaintiffs in those cases faced legitimate but diffuse threats at the end of a series of "ifs"—i.e., *if* an officer pulled Lyons over and then put him in a choke hold despite his lack of resistance, *Lyons*, *supra*, 461 U.S. at 105, or *if* the *O'Shea* plaintiffs were charged, held to answer, tried, and faced the alleged discriminatory practices, *O'Shea*, 414 U.S. at 497. In contrast, there are no "ifs" standing between Plaintiffs—or any AmeriCorps grantees—and the federal government's unlawful grant conditions. AmeriCorps issued a directive to all grantees requiring them to "comply" with recent executive orders and immediately cease all "activities that promote DEI activities." AR055-64. The policy is the harm.[8]

---

[7] Defendants included an "*Id.*" citation on line 6 of page 9, seeming to refer to a different case, but Plaintiffs determined that the quotation is from *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

[8] Defendants twice cited the dissent in *Fellowship of Christian Athletes v. San Jose Unified School District Board of Education*, 82 F.4th 664 (9th Cir. 2023) without so specifying. Opp at 9:9-12 & 9:14-16. In that case, the en banc majority stated the rule that Plaintiffs in this case clearly satisfy:

> To bring a claim for prospective injunctive relief, the plaintiff must demonstrate that he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way. . . . **Plaintiffs may demonstrate that an injury is likely to recur by showing that the**

**C. Plaintiffs Experienced Injury in Fact and Will Face Future Injury in Fact if Defendants Are Not Enjoined From Enforcing The New Conditions**

Defendants also argue that Plaintiffs lack Article III injury because Plaintiffs only had to make "wording modifications to their grant agreements to clarify obligations to which Plaintiffs had already agreed and [with] which Plaintiffs were otherwise required to comply[.]" Opp at 7:25-27. This is inaccurate in several ways. Plaintiffs clearly have standing to pursue summary judgment.

First, Plaintiffs' "wording modifications" to their grant program descriptions memorialized harmful changes Defendants forced them to make in the real world. For example, before the TRO and PI were in place, SFUSD was "forced to spend time and resources to remove diversity, equity, and inclusion-related materials from [program] trainings[.]" Dkt. No. 18-3 (Vargas Decl.) ¶ 26; *see also* Dkt. No. 77-1 (Supp. Vargas Decl.) ¶ 5. It also had to "revamp how it pairs students with mentors who work closely with students to support their learning, literacy, and attendance" to avoid methods the federal government might find prohibited. Dkt. No. 18-3 (Vargas Decl.) ¶ 27. And SFUSD staff and AmeriCorps members alike felt the chilling effect on their activities and conversations. *Id*. ¶¶ 31-32. These changes inured to the detriment of students. *Id*. This Court already observed that Plaintiffs had to make substantive programmatic changes "with consequences that money cannot remedy." TRO at 5.

Second, these are not the only harms Plaintiffs face. Under the continued threat of the AmeriCorps Directive and Defendants' announced views about recent executive orders, Plaintiffs face an untenable choice: attempt totally to revamp their previously approved grant programs to excise all possibly offending activities (which Plaintiffs do not even know how to do) or forego hundreds of thousands of dollars that improve their communities. Dkt. No. 77-1 (Supp. Vargas Decl.) ¶ 10; Dkt. No 77-3 (Phillips Decl.) ¶¶ 14-15. As the Court rightly concluded, "having to decide between two losing options constitutes irreparable injury." TRO at 8; *see also* PI Order at 18-19.

---

**defendant had a written policy, and that the injury stems from that policy.** Where the harm alleged is directly traceable to a written policy, there is an implicit likelihood of its repetition in the immediate future.

*Fellowship of Christian Athletes*, 82 F.4th at 680–81 (cleaned up, emphasis added).

Finally, as the Court also previously concluded, Plaintiffs face a constitutional violation under the Spending Clause (and, as demonstrated in Plaintiffs' MSJ, also under Separation of Powers principles), which provides an independent basis for the Court to confirm that an Article III case or controversy exists and Plaintiffs face future harm. PI Order at 20-21.

The Court should reject Defendants' suggestion that Plaintiffs lack standing.

## II.    Plaintiffs are Entitled to Summary Judgment on Their Constitutional Claims

### A.    The Directive Violates the Separation of Powers

Defendants resort to engaging in sleight-of-hand tactics to avoid the inescapable conclusion that the Directive violates the Separation of Powers enshrined in the Constitution by infringing on the legislature's Spending Power. The Constitution vests Congress alone with the spending power and Plaintiffs were awarded funds under that power, and thus the Directive, by adding unauthorized conditions, usurped that power in violation of the Constitution. *See City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018) ("The United States Constitution exclusively grants the power of the purse to Congress, not the President."); *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency, after all, 'literally has no power to act'—including under its regulations— unless and until Congress authorizes it to do so by statute.") (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986))).

Neither of the two cases cited by Defendants supports their position that Plaintiffs' Separation of Powers claim is a concealed statutory argument and therefore nonjusticiable. *See* Opp. at 12–13 (citing *Dalton v. Specter*, 511 U.S. 462 (1994); *New York v. Nat'l Sci. Found.*, 793 F. Supp. 3d 562 (S.D.N.Y. 2025)). First, in *Dalton*, the Supreme Court confirmed the unremarkable proposition that not every claim alleging an excess of statutory authority is automatically a constitutional Separation of Powers violation. 511 U.S. at 474 ("The distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established[.]"). The Plaintiffs in *Dalton* brought only an APA claim based on the Defense Base Closure and Realignment Act of 1990, which committed to the President decisions on closing military bases; the appellate court independently engaged in a Separation of Powers analysis after recognizing that APA review was

not available for other reasons. *See id.* at 464, 476. The Supreme Court reasoned that as the plaintiffs had not alleged any independent constitutional violation, the claim they raised was purely statutory, rather than constitutional. *See id.* at 476.

In the Ninth Circuit, a challenge to an Executive Branch action is "constitutional, and therefore justiciable" as long as the plaintiff ties the Separation of Powers claim to the executive branch's lack of "statutory authority and background constitutional authority." *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023) (cleaned up), *cert. denied* 144 S. Ct. 1111 (2024). Plaintiffs have alleged precisely this—specifically, that the statutes governing Defendants' AmeriCorps grants do not authorize Defendants to impose the EO Condition or DEI Condition, and AmeriCorps lacks any other background constitutional authority to impose these conditions. This is a Separation of Powers argument. Unlike in *Dalton*, Congress did not give the Executive Branch unfettered discretion here; Congress acted pursuant to its Spending power to provide funding for specified programs that, among other things, "help the poor, the disadvantaged, the vulnerable, and the elderly," 42 U.S.C § 4950(b). Plaintiffs have alleged specific constitutional violations in an area so committed to the Legislative branch that the executive branch, including agencies, cannot act without authorization. *Murphy Co.*, 65 F.4th at 1130; *Sierra Club v. Trump*, 929 F.3d 670, 697 (9th Cir. 2019); *see also Rhode Island v. Trump*, No. 25-cv-128,--- F. Supp. 3d ---, 2025 WL 3251113, at *13-14 (D.R.I. Nov. 21, 2025); *City & Cnty. of S.F. v. Trump*, No. 25-cv-01350, --- F. Supp. 3d ---, 2026 WL 145874, at *10 (N.D. Cal. Jan. 20, 2026) (rejecting argument that there is no independent separation of powers claim since the allegations were based on a violation of the Impoundment Control Act).

*New York v. National Science Foundation* ("*NSF*") has no application here because it is based on the reasoning in *Dalton*, which, as explained above, is inapt. In *NSF*, the plaintiffs challenged an agency directive as *ultra vires* and argued that the government violated the terms of several statutes. *See id.*, 793 F. Supp. 3d at 607. The district court found that *Dalton* applied to the *ultra vires* challenges, and consequently concluded that the Tucker Act likely served as an "implied statutory limitation on [the plaintiffs'] ability to challenge *ultra vires* grant terminations." *Id.* at 607, 609. Not only does *Dalton* not apply here, but this Court has already determined that the

PLAINTIFFS' REPLY ISO MSJ AND OPP TO    9
CROSS-MSJ; CASE NO. 3:25-cv-02425-EMC

Tucker Act does not preclude judicial review. *See* Dkt. No. 48, Apr. 23, 2025 Order on Subject Matter Jurisdiction ("SMJ Order") at 10–19; *see also Rhode Island*, 2025 WL 3251113, at *4–6. Put simply, *Dalton* does not preclude plaintiffs from alleging both constitutional claims against the Executive Branch and claims that an agency acted in excess of statutory authority. *Sierra Club v. Trump*, 929 F.3d 670, 696–97 (9th Cir. 2019).

Defendants make a final, cursory argument that AmeriCorps did not violate the Separation of Powers principle because it "fully complied with the relevant governing statutes," "sensibly implemented Title VI," and was merely "enforc[ing] anti-discrimination laws in each statute" governing the grant programs at issue here. Opp. at 12–13. The Court should reject this attempt to rewrite the AmeriCorps Directive through briefing. *Compare* AR058, 060 (prohibiting programs that "promote DEI activities") *with* Jan. 21 Anti-DEI Order § 3(b)(iv)(B) (discussing requirements for programs "promoting DEI that violate any applicable Federal anti-discrimination laws"); *see also City of Fresno v. Turner*, No. 25-cv-07070, 2025 WL 2721390, at *10 (N.D. Cal. Sep. 23, 2025) (rejecting argument that defendants acted within their statutory jurisdiction and deciding that savings clauses did not "magically ensure" that agencies are operating within their statutory authority), *appeal filed* No. 25-7378 (9th Cir. Nov. 24, 2025). Further, as described in Plaintiffs' Motion, the new conditions are in direct contradiction to—rather than in full compliance with—the AmeriCorps enabling statutes, which expressly seek to help diverse communities, including minority populations.

For these reasons, the Court should grant summary judgment for Plaintiffs on their Separation of Powers claim, and deny Defendants' cross-motion for summary judgment on this issue.

**B.      The Directive Violates the Spending Clause**

The Directive violates limitations of the Spending Clause by imposing conditions that are: (1) ambiguous, (2) retroactive, and (3) unrelated to the subject matter of the grant program. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 25 (1981); *South Dakota v. Dole*, 483 U.S. 203, 207 (1987). The Court's prior determination that the Directive likely violates the

Spending Clause is correct. PI Order at 30–40. Defendants largely ignore the PI Order and offer no new arguments. *See* Opp. at 13–18.

First, as a threshold matter, the Spending Clause does apply to executive agencies when they are carrying out (or purporting to carry out) their statutorily defined duties. *See* PI Order at 30 (quoting *City of Los Angeles v. Barr*, 929 F.3d 1163, 1176 (9th Cir. 2019)); *see also Barr*, 929 F.3d at 1175 n.6. Defendants concede this circuit precedent, and offer no response except to say they "submit that decision is incorrect" based on district court decisions from other circuits that have reached a contrary conclusion. *See* Opp. at 13. Beyond the fact that Defendants appear to be asking this Court to ignore the Ninth Circuit, it is well-settled that "an agency literally has no power to act . . . unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n*, 476 U.S. at 357. Congress cannot usurp its Spending Clause limitations by creating an agency and delegating authority to it, which the Executive Branch then wields in ways Congress could not. This is precisely why the Spending Clause applies to agency actions when they are acting as a "middleman" between Congress and the Executive, as AmeriCorps is acting now. *See Barr*, 929 F.3d at 1175 n.6.[9] Other district courts have reached the same conclusion. *See Cnty. of Santa Clara*, 2025 WL 3251660, at *34; *Washington v. U.S. Dep't of Health & Human Servs.*, No. 25-cv-01748, 2025 WL 3002366, at *22 (D. Or. Oct. 27, 2025); *California v. United States Dep't of Transp.*, 808 F. Supp. 3d 291, 310 n.2 (D.R.I. 2025).

Second, the Directive is not in harmony with existing federal anti-discrimination law. Defendants attempt to argue that the DEI and EO Conditions and existing anti-discrimination law are one-to-one (making them unambiguous, not retroactive, and related to AmeriCorps' statutory purpose). *See* Opp. at 13-18. But even assuming, for the sake of argument, that the Executive Orders only operate to enforce existing anti-discrimination law (which Plaintiffs dispute), the Directive

---

[9] The reason the "applicable Spending Clause principles [did] not readily apply" in *Barr* were because the agency in that case, the DOJ, did nothing that AmeriCorps here has done. "DOJ does not propose to withdraw significant federal funds from a state or local jurisdiction unless they comply with specified federal requirements. Nor does DOJ propose to reinterpret the terms of a grant retroactively to impose costly new responsibilities on a recipient. . . . Nor did DOJ impose surprise or ambiguous conditions on recipients of the funds[.]" *Barr*, 929 F.3d at 1175-76 (citations omitted). Defendants have done all these things. *See* PI Order at 25-26, 31-38; *see also id*. at 30 n.7 (distinguishing *City of Los Angeles v. Barr*, 929 F.3d 1163 (9th Cir. 2019)).

clearly does not. It includes no indication that it is cabined by existing federal anti-discrimination law. *See* AR055-064. As the Court previously observed, the Directive broadly prohibits programs that "promote[] DEI activities," making it "completely unmoored to existing law." PI Order at 33.

Third, it is of no moment that Plaintiffs previously agreed to "comply with federal law" in their original grant applications because the AmeriCorps Directive interposes new conditions with retroactive effect. The incorporation of law into an agreement must be "express and clear." *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008) (emphasis omitted). Defendants rest on *Pennhurst State School & Hospital v. Halderman*, but *Pennhurst* makes clear that the Spending Clause does not permit the government to "surpris[e] participating States with post acceptance or 'retroactive' conditions." 451 U.S. at 25; *see also* MSJ at 11. Here, there is no indication that the terms to comply with federal law included any statutes, regulations, or executive orders yet to be enacted or issued, unlike those that the federal courts have deemed explicitly "provided for modification of the contract terms by subsequent orders." *Gengler v. United States ex rel Dep't of Def. & Navy*, 453 F. Supp. 2d 1217, 1234 (E.D. Cal. 2006) (describing contracts in *Doe v. Rumsfeld*, 435 F.3d 980 (9th Cir. 2006), and *Santiago v. Rumsfeld*, 425 F.3d 549 (9th Cir. 2005)); *see, e.g.*, *Santiago*, 425 F.3d at 556 (approving of a term that clarified: "Laws and regulations that govern military personnel *may change without notice to me*. Such changes may affect my status, pay, allowances, benefits, and responsibilities as a member of the Armed Forces REGARDLESS of the provisions of this enlistment/reenlistment document." (emphasis added)); *Pub. Hous. Auths. Dirs. Ass'n v. United States*, 130 Fed. Cl. 522, 526-27, 532 (2017) (approving term that provided: "[T]hose regulations promulgated by HUD at Title 24 of the Code of Federal Regulations, which are hereby incorporated into this [contract] by reference as if fully set forth herein, *and as such regulations shall be amended from time to time*." (emphasis added)). Thus, any promise to comply with "applicable executive orders" prior to the issuance of the at-issue Executive Orders does not defeat Plaintiffs' retroactivity arguments.

But even more critical to the retroactivity of the Directive is that, through their continuation applications, Plaintiffs must continue to operate their programs as originally designed, which included commitments, based on the agency's request, to DEIA principles. *See* MSJ at 11-12. By

now purporting to prohibit those same activities, the Directive operates as a retroactive and invalid change across the multi-year grant cycle. *Id*. Defendants failed to address this argument.

Fourth, Defendants failed to establish that the new conditions are unambiguous. As Plaintiffs argued and the Court previously determined, they are facially ambiguous because they fail to define terms such as "DEI," DEIA," "equity," and "equity-related." *See* MSJ at 10-12; PI Order at 32, 36-37. Absent a concrete definition, these terms are subject to a broad range of reasonable interpretations. *See* PI Order at 36 (quoting *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 272–73 (6th Cir. 2009)); *Cnty. of Santa Clara*, 2025 WL 3251660, at *38; *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). Defendants again insist that there is no ambiguity, since all that the Conditions require is compliance with federal anti-discrimination law. *See* Opp. at 17. As the Court already found, the Directive is far broader than existing anti-discrimination law. *See* PI Order at 33. Defendants' cited authority only involves cases where the plaintiffs challenged Executive Orders directly, and where the courts found that the challenged provisions were limited to complying with existing federal anti-discrimination law. *See Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 103–04 (4th Cir. Feb. 6, 2026). These cases are inapposite, as the Directive is not so limited, but broadly requires Plaintiffs to cease "promot[ing] DEI activities." Defendants fail to address the case law discussing how terms like "DEI" and "equity" are vague and ambiguous. *See* MSJ at 10 (citing *S.F. A.I.D.S. Found. v. Trump*, 786 F. Supp. 3d 1184, 1225 (N.D. Cal. 2025); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 188 (D.N.H. 2025)).

Defendants have no answer for the fundamental ambiguity of the EO Condition: the Executive Orders themselves impose no requirements on Plaintiffs, only on executive agencies, officers, and employees. Plaintiffs remain in the dark about how to "comply" with the EO Condition—for example, one EO's direction to terminate any "DEI . . . offices and positions" within executive agencies. MSJ at 9-10. Despite labelling this as a "red herring," Defendants offer no explanation as to how this issue does not implicate ambiguity. *See* Opp. at 16-17. Indeed, Defendants' own authority illustrates the oddity of complying with Executive Orders that direct

executive agencies, not private parties, to act. *See Nat'l Ass'n of Diversity Officers*, 167 F.4th at 96–97 (holding that the plaintiff lacked Article III standing to challenge Executive Order provisions that are purely "intra-governmental"). Instead, Defendants insist that they are required to enforce "national policy requirements," and Plaintiffs have no "right" to "demand federal funds" without complying with those requirements. *See* Opp. at 16-17. This ignores the issue. Regardless of what *Defendants* are required to do, it violates the Constitution to impose the EO Condition on Plaintiffs (or any AmeriCorps grantees).

Finally, Defendants offer no convincing explanation as to how the Directive is related to AmeriCorps' enabling statute. *See* Opp. at 17-18. They seem to argue that, because Defendants retain discretion in allocating funds for their programs, they can reprioritize the allocation of funds so long as the decision comports with *one of the other* nineteen purposes in the enabling statute. *See id.*; 42 U.S.C. § 12501(b). But that is not what AmeriCorps is doing. The Directive is clearly, directly in conflict with the statutes that govern these grants. MSJ at 12-13; PI Order at 39-40. Principles of diversity, equity, inclusion, and accessibility are "bake[d] into" AmeriCorps' statutory purpose. PI Order at 39-40. As the Court observed, "the Directive now appears to bar what the governing statutes expressly authorize and permit." *Id*. at 39. Even the statutory purposes that *Defendants* cite can be said to "promote DEI:" (1) "to help retired individuals and working older individuals to share their experiences, abilities, and skills;" (2) to provide opportunities for "low-income persons age 55 or over to provide supportive person-to-person services in health, education, welfare, and related settings to children having special or exception needs;" and (3) provide "opportunities for low-income persons age 55 or older to serve as 'senior companions' to persons with exceptional needs." *See* Opp. at 17-18. Defendants cannot avoid the conclusion that the new conditions contravene Congress's purpose in providing for these grants.

**III.    Plaintiffs Are Entitled to Summary Judgment on Their Claims That Defendants Violated the Administrative Procedure Act**

    **A.    The Directive is Subject to Judicial Review**

        **1.    Issuance of the Directive Constitutes Final Agency Action.**

As this Court previously determined, the AmeriCorps Directive is a final agency action subject to review under the APA. PI Order at 23-24. The document (1) marked the "consummation" of the agency's decision-making process and (2) "legal consequences" have already flowed from it, and absent Court intervention, would continue to flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

It makes no difference whether the agency said it was "continuing" to review executive orders and grant awards. *See* Opp. at 18. The agency's steps to implement its new policy do not convert the agency's action into an interlocutory one. *See, e.g.*, *State ex rel. Becerra v. Sessions*, 284 F. Supp. 3d 1015, 1031 (N.D. Cal. 2018) ("By imposing the certification condition, the federal government has articulated that certain funds . . . will require adherence to the certification condition. It has rendered its final word, satisfying the first prong of the *Bennett* test."); *City & Cnty. of S.F. v. Trump*, 783 F. Supp. 3d 1148, 1198-99 (N.D. Cal. 2025) (rejecting argument that Bondi Directive "merely instructs executive agencies to *evaluate* federal funding decisions"); *City & Cnty. of S.F. v. Trump*, 2026 WL 145874, at \*14 (similar). For the same reason, it makes no difference that the Directive did not reflect a final decision about whether a particular program would be compliant. *See* Opp. at 18-19.

Defendants' arguments that no legal consequences flowed from the Directive strain credulity. Far from a mere "informational document," *see* Opp. at 19, the Directive required Plaintiffs to act under penalty of grant termination. PI Order at 25-26. As Defendants conceded, legal consequences will flow from noncompliance with the Directive. PI Order at 25.[10]

---

[10] The one case Defendants rely on is "easily distinguishable." PI Order at 25. In *Advanced Integrative Medical Science Institute, PLLC v. Garland*, 24 F.4th 1249, 1261 (9th Cir. 2022), the contested letter issued by the DEA "did no more than point to the plain language of existing law," whereas here the Directive "imposes new grant conditions." PI Order at 25-26 (citations omitted).

**2.      The Grant Awards Are Not Committed to Agency Discretion.**

Defendants recycle the same arguments that the Court rejected long ago. *See* Opp. at 19-20; SMJ Order at 5-10. Yet it remains true that Defendants' issuance of the Directive is not "committed to agency discretion by law" under the APA. 5 U.S.C. § 701(a)(2).

First, absent clear congressional intent, Section 701(a)(2) does not bar review of a constitutional claim. *See Webster v. Doe*, 486 U.S. 592, 603 (1988).[11] Defendants fail to address this point, and identify no clear congressional intent in AmeriCorps' statutory mandate precluding judicial review of constitutional claims. *See* Opp. at 19-20. Thus, the Court may review Plaintiffs' claims under the Spending Clause and Separation of Powers.

Second, Defendants' arguments with respect to Plaintiffs' APA claims are unavailing. Agency actions are presumptively reviewable under the APA. *Dep't of Commerce v. New York*, 588 U.S. 752, 771 (2019). Section 701(a)(2) is a "quite narrow" exception to this presumption, and is limited to "those rare circumstances where the relevant statute is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion" or if there is truly "no law to apply." *Id*. at 772–73 (citation omitted); *Jajati v. U.S. Customs & Border Prot.*, 102 F.4th 1011, 1017 (9th Cir. 2024). Far from there being "[n]o statutory provision [that] limits AmeriCorps' discretion to issue funding," Opp. at 20, there are numerous "direct restrictions" detailing how "AmeriCorps must allow recipients to use funds for certain purposes." SMJ Order at 8-9 (citing, for example, 42 U.S.C. §§ 12572(a)(1)(B), 12572(b)(2)(C), 12572(c)(1)(A), 12526(b)).

Defendants' cited authority remains inapposite. Both *Lincoln v. Vigil* and *Serrato v. Clark* involved challenges to the allocation of funds from "lump-sum appropriations," whereas here, given the funding limitations imposed by Congress, it is clear "there is no indication that Congress intended to commit the agency's imposition of grant conditions to its discretion thereby exempting such actions entirely from judicial review." *See* 508 U.S. 182, 192-93 (1993); 486 F.3d 560, 567-

---

[11] *See also Nguyen v. Kissinger*, 528 F.2d 1194, 1199 (9th Cir. 1975) ("[N]othing in the APA purports to sanction the violation of constitutional rights committed under the guise of the exercise of discretion, or prevents a court from inquiring into and remedying the deprivation."); *Wong v. Warden, FCI Raybrook*, 171 F.3d 148, 149 (2d Cir. 1999) ("It is well-established that judicial review exists over allegations of constitutional violations even when the agency decisions underlying the allegations are discretionary."); *Keita v. U.S. Small Bus. Admin.*, No. 07-cv-4958, 2010 WL 395980, at *4 (E.D.N.Y. Feb. 3, 2010) (collecting cases).

69 (9th Cir. 2007); SMJ Order at 6. Further, in both cases cited by Defendants, the courts first assured themselves that the funding allocations were consistent with statutory objectives. *See Lincoln*, 508 U.S. at 198; *Serrato*, 486 F.3d at 568-69. Nothing in either of these cases authorizes agencies to arbitrarily and unlawfully rescind or re-allocate funds in a manner contrary to statutory objectives, which is precisely the case here. Indeed, one of Defendants' cases confirms that a presumptively unreviewable agency action *is* reviewable when Congress has "cabined" an agency's discretion to allocate resources. *See Policy & Rsch., LLC v. U.S. Dep't of Health & Human Servs.*, 313 F. Supp. 3d 62, 75–78 (D.D.C. 2018). The remaining cases that Defendants rely on each involved situations where executive agencies retained much wider discretion. *See Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (funds were to be used "to provide assistance directly to … dairy producers, *in a manner determined <u>appropriate</u> by the Secretary*" (alteration in original; emphasis added)); *Los Coyotes Band of Cahuilla & Cupeno Indians v. Jewell*, 729 F.3d 1025, 1038 (9th Cir. 2013) (finding that the plaintiff failed to identify "specific language . . . that deprive[d] the Secretary the discretion to allocate the funds."). Here, Congress provided clear limitations on AmeriCorps' grantmaking discretion, which Defendants violated. In such cases, Section 701(a)(2) is inapplicable. *See California v. Trump*, 379 F. Supp. 3d 928, 953 (N.D. Cal. 2019) ("[J]udicial review is available because Plaintiffs maintain that the Treasury is transferring funds in a statutorily *impermissible* manner."), *aff'd*, 963 F.3d 926 (9th Cir. 2020); *Beno v. Shalala*, 30 F.3d 1057, 1067 (9th Cir. 1994) (authorizing statute permitted "meaningful standard by which to judge" the agency's action where it prescribed how the action could be undertaken).

**B.      Defendants' Actions Violate the Administrative Procedure Act**

The AmeriCorps Directive remains the same document the Court determined would likely violate the APA in several ways. *See* PI Order at 26-44. Plaintiffs are entitled to summary judgment on their APA claims because the Directive is arbitrary and capricious, contrary to the Constitution, and in excess of AmeriCorps' statutory authority.

**1.      The Directive is Arbitrary and Capricious.**

Of the four independent bases on which the Court should find the Directive was arbitrary and capricious—i.e., that AmeriCorps failed to: (1) articulate a reasoned basis for imposing the new

conditions; (2) consider the consequences of the new conditions on grantees, including their significant reliance interests; (3) evaluate the impact of the new conditions on grantees' ability to implement Congress's purpose in appropriating AmeriCorps grants; or (4) consider any reasonable alternatives, *see* MSJ at 15—Defendants do not even address reasons (3) and (4). These arguments are accordingly waived. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016).

As for the failure to articulate a reasoned basis for imposing the new conditions, Defendants concede that there is none beyond the AmeriCorps Directive itself, which explained that AmeriCorps was subject to executive order priorities due to AmeriCorps' status "as part of the Executive branch of government." *See* Opp. at 21 (citing AR056, AR062). This rationale is insufficient as a matter of law. *See, e.g.*, *Illinois v. FEMA*, 801 F. Supp. 3d at 93 ("DHS cannot avoid the arbitrary and capricious analysis simply by claiming it was acting at the instruction of the President."); *Dep't of Com. v. New York*, 588 U.S. at 785 (explaining that the reasoned explanation requirement "is meant to ensure that agencies offer genuine justifications for important decisions [and] reasons that can be scrutinized by courts and the interested public"); *R.I. Latino Arts v. Nat'l Endowment for the Arts*, 800 F. Supp. 3d 351, 373 (D.R.I. 2025) ("Because the NEA has failed to explain its action outside of complying with the EO, the Court concludes that the Final Notice is arbitrary and capricious in violation of the APA."). Accordingly, Defendants have no reasoned explanation for the Directive, and the Directive must be found arbitrary and capricious.

Defendants are simply wrong to suggest that the conditions imposed by the Directive were not new and did not reverse prior policy, such that Plaintiffs had no reliance interests. *See* Opp. at 21–22. There could not be a clearer policy reversal than to first require grantees to verify their "Commitment to Diversity, Equity, Inclusion, and Accessibility" in their grant applications, and then require those same grantees to immediately cease all DEI activities. *See* 2024 NOFO at 21; AR058; *see also* Dkt. No. 77-3 (Phillips Decl.) ¶ 12 (describing responses to 2023 NOFO regarding diversity, equity, and inclusion commitments). *See Illinois v. FEMA*, 801 F. Supp. 3d at 94 (finding agency failed to "meaningfully evaluate the states' reliance interests, even though the record shows that states have structured their budgets and emergency preparedness planning for decades around consistent federal support").

Defendants ignore this argument in favor of suggesting several others: that the Directive "simply required Plaintiffs to certify compliance with otherwise applicable federal anti-discrimination law," that Plaintiffs previously agreed to comply with executive orders, that Plaintiffs have no reliance interests in violating federal anti-discrimination law (a straw man), and that the funding here was unpredictable due to a competitive grant application process such that Plaintiffs could have had no reliance. *See* Opp. at 21–22 & n.5 (citing *City of Chelsea v. Trump*, No. 25-10442, 2025 WL 2807831, at *7 (D. Mass. Oct. 2, 2025)). None of these positions hold water. First, as explained above, the Directive specifically *omitted* any mention of federal anti-discrimination law and imposed an unmoored DEI Condition. *See* Section II(A), *supra*. Second, that Plaintiffs previously agreed to comply with executive orders does not change the key fact that Plaintiffs were awarded their grants under one set of conditions—to promote DEI—and were then told they would not receive continuation grants without agreeing to conditions imposing opposite requirements. The "reliance interest in violating federal anti-discrimination law" straw-man argument is worth no consideration at all because the AmeriCorps Directive imposes different requirements than any federal anti-discrimination law. Lastly, the funding was not "fraught with unpredictability due to the competitive nature of the grant application process" because Plaintiffs' grants were already approved and the funds awarded, such that Plaintiffs were expecting to receive continuation funds based on their adherence to the programs described in their original applications.

Defendants' arguments serve only to highlight the fact that the agency did not consider any reliance interests by Plaintiffs. As this Court has already observed, the Directive violates the APA because AmeriCorps did not undertake such consideration. *See* PI Order at 43 (citing *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 31 (2020)). Summary judgment should issue in Plaintiffs' favor on Count Three.

### 2.    The Directive is Contrary to the Constitution.

For the reasons discussed in Sections II(A)–(B) regarding the Defendants' violation of the Separation of Powers principle and the Spending Clause, the Directive and new conditions also violate the APA because they are contrary to the Constitution. *See* 5 U.S.C. § 706(2)(B) (reviewing courts must set aside agency action found to be "contrary to constitutional right, power, privilege,

or immunity"). Accordingly, the Court should grant summary judgment for Plaintiffs on Count Four.

### 3. The Directive is in Excess of AmeriCorps' Statutory Authority.

As Plaintiffs explained in their Motion, the Directive exceeded AmeriCorps' statutory authority because AmeriCorps had no statutory basis to (1) contravene the relevant statutes and (2) impose conditions on continuations grants that contradicted both the original proposal requirements and AmeriCorps' statutory purpose. *See* MSJ at 19–20. Defendants' arguments once again hinge on the incorrect assertion that AmeriCorps had "broad discretion" under enabling statutes that "do not require that AmeriCorps award grants to Plaintiffs or even award the grants at issue in this lawsuit at all." Opp. at 22–23. But as explained above, the agency awards were not committed to AmeriCorps' discretion. *See* Section III(A)(2), *supra*. And the DEI Condition and EO Condition clearly do more than ask Plaintiffs "to comply with federal anti-discrimination laws." Opp. at 23. Defendants cannot escape the fact that Congress "made principles of diversity, equity, and inclusion integral to AmeriCorps." PI Order at 28–29 & n.6 (citations omitted); *see also* MSJ at 19 (citing 42 U.S.C. § 4950(b); 42 U.S.C. § 12561(e)). The Court should once again find, for the same reasons, that AmeriCorps acted in excess of statutory authority in issuing the Directive, and accordingly grant summary judgment for Plaintiffs on Count Five.

### Conclusion

For these reasons, Plaintiffs respectfully request that the Court enter judgment in their favor on all counts and issue a permanent injunction prohibiting Defendants from imposing the new conditions—or any like them—on Plaintiffs' AmeriCorps grants again.

Dated:  March 19, 2026

DAVID CHIU
City Attorney, City and County of San Francisco
YVONNE R. MERÉ
Chief Deputy City Attorney
MOLLIE M. LEE
Chief of Strategic Advocacy
SARA J. EISENBERG
Chief of Complex and Affirmative Litigation
MOLLY J. ALARCON
Deputy City Attorney

By: /s/    *Molly J. Alarcon*
MOLLY J. ALARCON
Deputy City Attorney

COOLEY LLP
Benedict Hur
Simona Agnolucci
Eduardo Santacana
Thilini Chandrasekera
Michael B. Morizono

Attorneys for Plaintiff
SAN FRANCISCO UNIFIED SCHOOL DISTRICT

By: /s/    *Marcos D. Martinez*
MARCOS D. MARTINEZ**
City Attorney City of Santa Fe, New Mexico
200 Lincoln Ave Santa Fe, NM 87501
505-955-6512
mdmartinez@santafenm.gov

Jill Habig, SBN 268770
Jonathan B. Miller*
Erin Monju*
Grace Lee**
Public Rights Project
490 43rd Street, Unit #115
Oakland, CA 94609
(510) 738-6788
jon@publicrightsproject.org

Attorneys for Plaintiff
CITY OF SANTA FE, NEW MEXICO
*Admitted pro hac vice
**Application for admission pro hac vice pending

PLAINTIFFS' REPLY ISO MSJ AND OPP TO
CROSS-MSJ; CASE NO. 3:25-cv-02425-EMC

21