CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7224
Facsimile: (415) 436-6748
jevechius.bernardoni@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO UNIFIED SCHOOL DISTRICT and CITY OF SANTA FE,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICORPS and JENNIFER BASTRESS TAHMASEBI, Interim Agency Head of AmeriCorps,<br><br>    Defendants. | Case No. 3:25-cv-02425-EMC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date: May 14, 2026<br>Time: 1:30 p.m.<br>Location: Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

I.      Introduction.................................................................................................................ii

II.     There Is No Justiciable Article III Case Or Controversy.................................................1

        A.      Plaintiffs' Challenges To The Expired Instructions Are Moot...........................1

        B.      There Is No Injury-In-Fact At Issue..................................................................5

III.    Although Now Expired, The Challenged Conditions Were Lawful And Constitutional ...............6

        A.      The Challenged Conditions Complied With The Separation Of Powers ...........................6

        B.      The Challenged Conditions Did Not Violate The Spending Clause....................................7

IV.     Defendants Did Not Violate The Administrative Procedure Act .....................................9

        A.      The Instructions Were Not A Final Agency Action .........................................9

        B.      The Grant Awards Are Committed To Agency Discretion .................................10

        C.      The Instructions Were Not Arbitrary Or Capricious .........................................11

V.      Conclusion .................................................................................................................12

# TABLE OF AUTHORITIES

## CASES

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ................................................. 4

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................................... 5

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ......................................................................... 4

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664 (9th Cir. 2023) ............................................................................................ 4, 5

*Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582 (1983) .............................................................................................................. 6

*Lincoln v. Vigil*, 508 U.S. 182 (1993) .......................................................................................... 10

*Nat'l Ass'n of Diversity Officer s in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) ..................................................................................................... 9

*Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61 (D.D.C. 2025) ............................................... 8

*National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) .................................................................................................. 8

*Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339 (Fed. Cir. 2008) ...................................................................................................................... 8

*Preiser v. Newkirk*, 422 U.S. 395 (1975) ...................................................................................... 2

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237 (1952) .................................................. 2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ................................................................................. 6

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) .................................................................................... 3

*West v. Sec'y of Dep't of Transp.*, 206 F.3d 920 (9th Cir. 2000) .................................................. 2

## STATUTES

28 U.S.C. § 1491(a)(1) ................................................................................................................... 4

42 U.S.C § 4950(b) ....................................................................................................................... 11

42 U.S.C. § 12526(b) .................................................................................................................... 11

42 U.S.C. § 12571(a) ...................................................................................................................... 9

42 U.S.C. § 2000d-1 ....................................................................................................................... 6

42 U.S.C. § 5011(a) ........................................................................................................................ 9

42 U.S.C. § 5013(a) ........................................................................................................................ 9

## OTHER AUTHORITIES

Executive Order 14173, Ending Illegal Discrimination and Restoring
   Merit-Based Opportunity .................................................................................................. 1, 11

**REGULATIONS**

2 C.F.R. § 200.211(c)(1)(ii) ................................................................................. 6, 7, 11

2 C.F.R. § 200.300 ................................................................................................. 7, 11

2 C.F.R. § 200.300(a) ................................................................................................... 6

2 C.F.R. § 200.303(b) .................................................................................................. 6

## I.    Introduction

Plaintiffs frame their theory of the case in the first paragraph of their motion for summary judgment:  they object that "AmeriCorps now demands that recipients stop engaging in any activities that promote diversity, equity, and inclusion ('DEI')[.]"  ECF No. 77 at 1.  Plaintiffs return to this language repeatedly in their summary judgment briefing.  *See id.* at 4, 6, 9, 11, 19; *see also* ECF No. 85 ("Reply") at 1, 6, 10, 12, 14, 19.  But AmeriCorps makes no such demand, and it abandoned the language challenged by Plaintiffs *before* this lawsuit was even filed.  Plaintiffs' claims are thus moot.  But even if Plaintiffs' claims are not moot, they still fail because the challenged conduct was well within AmeriCorps' authority.

## II.    There Is No Justiciable Article III Case Or Controversy

### A.    Plaintiffs' Challenges To The Expired Instructions Are Moot[1]

This lawsuit was motivated by a purported discrepancy between the January 21, 2025 Executive Order Ending Illegal Discrimination and Restoring Merit-Based Opportunity, "Executive Order 14173" (which prohibited federal funding for DEI programs that violated federal anti-discrimination law) and a preliminary version of AmeriCorps' efforts to comply with that executive order that Plaintiffs contend was broader than required, including by prohibiting AmeriCorps-funded programs "that promote DEI activities."  *See* Compl. ¶¶ 61-62.  But AmeriCorps updated its eGrants certifications on March 7, 2025 to bring the certification requirement in line with Executive Order 14173 (*i.e.*, that AmeriCorps funding cannot be used to support "Diversity, Equity, and Inclusion (DEI) that violate any applicable Federal anti-discrimination laws").  ECF No. 82 (Declaration of Bonnie Janicki, "Janicki Decl.") ¶ 22.  Although this change was implemented before Plaintiffs filed this lawsuit on March 10, 2025, there is no acknowledgement of that change in the Complaint, and Plaintiffs' summary judgment briefing continues to focus on AmeriCorps' preliminary, non-operative, certification language.

Notwithstanding that the language challenged by Plaintiffs in this lawsuit does not exist in their (or any other) AmeriCorps grants, Plaintiffs continue to assert that they have a justiciable case or controversy that is appropriate for federal district court adjudication because—in Plaintiffs' telling—

---

[1] At minimum, Santa Fe's claims are either already moot or will become moot shortly after the summary judgment hearing in this case.  One of Santa Fe's AmeriCorps' grants already expired.  Janicki Decl. ¶ 8a.  The two remaining Santa Fe AmeriCorps' grants will expire in June 2026, approximately a month and a half after the currently scheduled hearing.  *Id.* ¶ 8b-c.

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                                    1

AmeriCorps' grant conditions changes were simply the result of AmeriCorps following this Court's orders. Reply at 1-3. That assertion finds no support in the administrative record.

The AmeriCorps Executive Order Compliance Instructions ("Instructions") were a temporary tool for AmeriCorps to comply with executive orders with regard to grants in effect at that time. Janicki Decl. ¶ 21. SFUSD and Santa Fe responded to the Instructions almost two weeks before Plaintiffs filed this lawsuit and at least one month before this Court issued the temporary restraining order on March 31, 2025. *See* ECF No. 33; Janicki Decl. ¶¶ 18-19. Because they had already responded and the temporary purpose of the Instructions thus already had been accomplished—*before* this lawsuit was initiated and *before* this Court issued preliminary relief—there was no need for AmeriCorps to continue to apply the Instructions to Plaintiffs. Accordingly, AmeriCorps does not and will not seek to enforce the Instructions with respect to SFUSD and/or Santa Fe. Janicki Decl. ¶ 21. The Instructions also have expired as to all other existing AmeriCorps grant recipients, and AmeriCorps thus is taking no further action on the Instructions with respect to any AmeriCorps grants nationwide. *Id.* That outcome had nothing to do with either this lawsuit or the Court's prior orders.

Further, to the extent Plaintiffs' lawsuit is intended to encompass AmeriCorps grants that Plaintiffs might apply for in the future (as opposed to the previously awarded grants that are the subject of this Complaint), the Instructions do not apply to future grants, and AmeriCorps updated the eGrants portal on March 7, 2025 to clarify that future AmeriCorps grants cannot be used to fund DEI programs that violate federal anti-discrimination laws.[2] Janicki Decl. ¶¶ 12 & 22. Presumably, Plaintiffs do not seek to operate *any* programs (DEI or otherwise) that violate federal anti-discrimination laws, and Plaintiffs have not articulated a colorable objection to this formulation of AmeriCorps' certification requirement. That March 7, 2025 update, and the new certification language, happened before Plaintiffs filed this lawsuit on

---

[2] Any relief issued with respect to future grants that Plaintiffs might apply for would present a different set of Article III justiciability issues. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (Federal courts lack "the power to render advisory opinions . . . advising what the law would be upon a hypothetical state of facts.") (cleaned up); *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them."); *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) ("The parties' "controversy must be definite and concrete" to avoid an impermissible advisory "opinion advising what the law would be upon a hypothetical state of facts.").

March 10, 2025 and weeks before this Court issued the temporary restraining order. There is thus no basis for Plaintiffs' contention that AmeriCorps changed its certification requirements because this Court required AmeriCorps to do so.

Finally, AmeriCorps voluntarily removed the challenged certification requirement in its entirety from eGrants on April 3, 2025, and that certification requirement thus does not apply to any current or future AmeriCorps grant application nationwide. Janicki Decl. ¶ 22. Plaintiffs speculate that "any changes in eGrants to excise the challenged conditions in this case . . . can only be understood as actions taken to comply with this Court's orders[.]" Reply at 2 n.1. Once again, Plaintiffs ignore the administrative record to reach this unsupported conclusion. While AmeriCorps' removal of the certification requirement from eGrants on April 3, 2025 post-dated this Court's temporary restraining order by three days (*compare* Janicki Decl. ¶ 22 *with* ECF No. 33), that change applied not just to the two Plaintiffs in this lawsuit, but rather to *all* AmeriCorps grant applicants nationwide. Janicki Decl. ¶ 22. Plaintiffs' characterization of this change as an attempt "to comply with this Court's orders" thus interprets this Court's temporary restraining order as a universal injunction, which Supreme Court precedent demonstrates is "outside the bounds of a federal court's equitable authority under the Judiciary Act." *Trump v. CASA, Inc.*, 606 U.S. 831, 847 (2025). Because this Court has authority to issue equitable relief "*between the parties*" only (*id.* (citation omitted, emphasis in original)), AmeriCorps' removal of the certification requirement as to *all* grant applicants nationwide cannot be understood as an effort to comply with this Court's order (which AmeriCorps does not interpret to be a prohibited universal injunction).[3]

In sum, the Instructions have expired and no longer apply to SFUSD and Santa Fe (or any other AmeriCorps grantee nationwide). Similarly, even at the time Plaintiffs filed this lawsuit, the DEI Condition did not exist as alleged in the Complaint. And AmeriCorps subsequently removed the challenged certification requirement from its eGrants portal for all AmeriCorps grant applicants nationwide (not just for SFUSD and Santa Fe). Under these circumstances, there is no remaining Article III case or controversy underlying this case. The claims are moot.

---

[3] For the avoidance of doubt, even if this Court's temporary restraining order or preliminary injunction order were intended to be universal injunctions, Plaintiffs do not contend that—and Defendants are aware of no assertion that—Defendants violated this Court's orders.

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                    3

In support of their argument that a live dispute remains between the parties, Plaintiffs make a few additional arguments that are not factually supported. First, Plaintiffs argue that Defendants' assertion that the EO Condition was removed from the eGrants portal on April 3, 2025 "appear[s] demonstrably false" because AmeriCorps' terms and conditions still require grantees to comply with executive orders. Reply at 5. But it is indisputable that the executive order certification requirement no longer appears in the Certifications section of the eGrants portal. Janicki Decl. ¶ 22. Regardless, Plaintiffs' statement ignores that Defendants have consistently represented, including in the very brief that Plaintiffs claim includes "demonstrably false" assertions, that AmeriCorps' terms and conditions require grantees to comply with executive orders; indeed, Defendants expressly noted that AmeriCorps' terms and conditions have required all grantees to comply with executive orders since 2016. ECF No. 81 at 5; *see also* Janicki Decl. ¶ 23. Notably, that includes *all* the SFUSD and Santa Fe grants at issue in this lawsuit. As such, SFUSD and Santa Fe agreed—years ago—to comply with executive orders, and the current terms of that aspect of their AmeriCorps grants are no different than when SFUSD and Santa Fe first entered into those agreements. Janicki Decl. ¶¶ 5, 7, 9. To the extent Plaintiffs take issue with this term, that would be a contractual dispute about the meaning of their long-standing commitment to comply with executive orders (which has always existed in the grant agreements currently before the Court) that should be heard in the Court of Federal Claims. 28 U.S.C. § 1491(a)(1); *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (the "Tucker Act grants the Court of Federal Claims jurisdiction over suits based on any express or implied contract with the United States") (citation and quotation marks omitted).

Second, Plaintiffs assert in a footnote that Defendants twice cited a dissent in *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 723 (9th Cir. 2023). Reply at 6 n.8. Plaintiffs are correct that the quoted language came from the dissent section of that opinion, and the undersigned takes responsibility for a drafting error that led to the unintentional omission of a clarifying parenthetical. Regardless of where the cited language is found, however, the legal standard in the first *Fellowship of Christin Athletes* quote is precedential and controlling on this Court because it is derived from the majority Ninth Circuit opinion in *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). Moreover, the language in the second *Fellowship of Christian Athletes* quote comes verbatim—including with emphasis—from the majority opinion in *Clapper v. Amnesty Int'l USA*, 568

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                                4

U.S. 398, 409 (2013), a Supreme Court decision that is binding on this Court.

In any event, the legal standards in both the *Fellowship of Christian Athletes* majority and dissent opinions lead to the same result—that Plaintiffs' claims are moot. Here, Plaintiffs argue that they can "demonstrate that an injury is likely to recur by showing that the defendant had a written policy, and that the injury stems from that policy." Reply at 6-7 n.7 (quoting *Fellowship of Christin Athletes*, 82 F.4th 680-81) (emphasis omitted); *see also id.* at 3. But Plaintiffs cannot, and do not, show such an extant written policy in this case because AmeriCorps already has removed the written policy at issue. Janicki Decl. ¶¶ 21-22. In other words, Plaintiffs' own mootness standard does not support a cognizable Article III case or controversy, and this lawsuit should be dismissed.

### B.        There Is No Injury-In-Fact At Issue

As set forth in Defendants' opening brief, none of the purported injuries identified by Plaintiffs satisfies the injury-in-fact requirement of Article III of the Constitution. ECF No. 81 at 7-8. Notably, Plaintiffs do not cite a single case in the injury-in-fact section of their reply brief. Reply at 7-8,

Plaintiffs first claim that "before the TRO and PI were in place, SFUSD was forced to spend time and resources to remove diversity, equity, and inclusion-related materials from [program] trainings" and it purportedly had to "revamp how it pairs students with mentors." Reply at 7 (citation and quotation marks omitted). But these assertions of forced programmatic changes are not supported by the record. Indeed, the Instructions did not require *any* programmatic changes—instead, existing grantees like SFUSD and Santa Fe were given three options: (1) a "self-certification statement," (2) a grant amendment "to move your program into compliance with the executive orders," or (3) a request to relinquish the grant. AR056. As such, if Plaintiffs' AmeriCorps-funded program offerings complied with federal anti-discrimination law, Plaintiffs could have simply submitted a self-certification statement; there would be no need for Plaintiffs to remove content from program trainings or change how Plaintiffs pair students with mentors. To the extent Plaintiffs needed to make any programmatic changes, it would be to bring their programs in compliance with existing anti-discrimination laws, and AmeriCorps' demand that federally funded programs comply with federal anti-discrimination law cannot be an injury-in-fact. At worst, the bare wording changes at issue here—which simply clarified obligations that already existed in Plaintiffs' AmeriCorps grants and to which Plaintiffs had already agreed—are abstract harms that do not

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                                  5

give rise to an Article III case or controversy. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016).

Plaintiffs also claim that the "untenable choice" to revamp previously approved grant programs or forego receiving federal funds constitutes a cognizable Article III injury. Reply at 7. But that framing, as described above, is inaccurate. Finally, Plaintiffs argue that they have an injury-in-fact from their Constitutional claims, but those claims fail on their own merits and cannot provide an injury sufficient to support standing. *See* ECF No. 81 ("Cross-MSJ") at 10-18; *see also infra* Part III.

## III.   Although Now Expired, The Challenged Conditions Were Lawful And Constitutional

### A.   The Challenged Conditions Complied With The Separation Of Powers

Plaintiffs' separation of powers arguments boil down to the assertion that "the statutes governing Defendants' AmeriCorps grants do not authorize Defendants to impose the EO Condition or DEI Condition[.]" Reply at 9. Plaintiffs are incorrect.

With respect to the DEI Condition, it is indisputable that Title VI of the Civil Rights Act of 1964 expressly "authorize[s] and direct[s]" federal agencies that award federal funds to effectuate section 2000d by issuing rules and regulations. 42 U.S.C. § 2000d-1. Pursuant to this authority, AmeriCorps must administer federal awards in a manner that ensures "that Federal funding is expended and associated programs are implemented in full accordance with the U.S. Constitution, applicable Federal statutes and regulations." 2 C.F.R. § 200.300(a); *see also* 2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.303(b). As such, there is an explicit statutory authorization—and mandate—to enshrine federal anti-discrimination law into AmeriCorps' federal grantmaking. While the DEI Condition as originally expressed in the Instructions may have been imprecisely worded, AmeriCorps' subsequent updates demonstrate that AmeriCorps was attempting to prohibit the use of federal taxpayer money to support DEI programs *that violate federal anti-discrimination laws*. Janicki Decl. ¶ 22 (requiring grantee certification "that the activities under this grant comply with all applicable Executive Orders and do not include any activities promoting Diversity, Equity, and Inclusion (DEI) that violate any applicable Federal anti-discrimination laws."). The requirement to comply with federal anti-discrimination law is a bedrock principle that has been a part of federal grantmaking for decades. *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 629-30 (1983) (Marshall, J., dissenting). There is thus no tension between AmeriCorps' statutory authority and the DEI Condition, and Plaintiffs' separation of powers claim fails.

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                              6

Other than the general assertion that "the statutes governing Defendants' AmeriCorps grants do not authorize Defendants to impose the EO Condition" (Opp. at 9), the Reply does not supply any analysis about why required compliance with applicable executive orders in the federal grant sphere amounts to a separation of powers violation.  Taken at face value, Plaintiffs appear to suggest that AmeriCorps grant funds are immune from executive orders (notwithstanding that, under a previous administration, Plaintiffs agreed that they "will comply" with executive orders in the very grant agreements at issue in this lawsuit) and that the Executive Branch has no role in guiding AmeriCorps' administration of grant programs funded by discretionary appropriations.  Not only have Plaintiffs provided no support for such a position, but their position would upend settled and published federal grantmaking regulations, which require AmeriCorps to incorporate into the terms of its grants "national policy requirements," including "executive order[s]."  2 C.F.R. § 200.211(c)(1)(ii); 2 C.F.R. § 200.300.  Plaintiffs do not challenge those published regulations in this lawsuit, which again require AmeriCorps to integrate executive orders.  Finally, Plaintiffs' separation of powers argument challenges not just *this* administration's executive orders, but *every* administration's executive orders.  Any finding that AmeriCorps grants under this administration cannot incorporate an executive order prohibiting  use of federal funds to support activities that violate federal anti-discrimination law would also prohibit, for example, the next administration from imposing an executive order requiring every discretionary AmeriCorps grant to include a DEI component.

**B.      The Challenged Conditions Did Not Violate The Spending Clause**

Plaintiffs contend that the Instructions were "not in harmony with existing federal anti-discrimination law."  Reply at 11.  As discussed above, however, while the Instructions in their preliminary form may have been imprecisely worded, AmeriCorps' subsequent updates clarified that AmeriCorps grantees were simply prohibited from using AmeriCorps funds to support DEI programs that violate federal anti-discrimination laws.  *Supra* Part III.A; Janicki Decl. ¶ 22.

Plaintiffs next argue that "it is of no moment that Plaintiffs previously agreed to 'comply with federal law' in their original grant applications."  Opp. at 12.  That is an incomplete recitation of the record; Plaintiffs' grant applications instead each agreed that Plaintiffs "*will comply* with all applicable requirements of *all other Federal laws, executive orders, regulations* . . . ."  Janicki Decl. ¶¶ 5, 7, 9 (emphasis added).  Plaintiffs counter that "incorporation of law into an agreement must be 'express and

clear,'" and suggest that "statutes, regulations, or executive orders yet to be enacted or issued" cannot be imposed on Plaintiffs' grants (Opp. at 12 (quoting *Northrop Grumman Info. Tech., Inc. v. United States*, 535 F.3d 1339, 1344 (Fed. Cir. 2008))). In effect, Plaintiffs suggest that they are immune to changing legal landscapes, notwithstanding the fact that they expressly agreed that they "will comply"—in the future tense—with all applicable requirements of each of those sources of law: federal statutes, executive orders, and regulations. Janicki Decl. ¶¶ 5, 7, 9. Plaintiffs are sophisticated governmental entities; they are aware that statutes change, regulations change, administrations change, and political priorities change; and they agreed in advance to comply with those exact sources of legal obligations. The incorporation of these other obligations was "express and clear," and there is nothing retroactive here.

The Reply next contends that the Instructions place Plaintiffs in an impossible situation because they must continue to operate their programs to receive funding, the original commitments necessitated "DEIA principles," and the (non-operative) DEI and EO Conditions "now . . . prohibit those same activities[.]" Reply at 12. Once again, that argument is not supported in the record: AmeriCorps does not prevent DEIA, even in existing grant programs. Instead, the Instructions were simply intended to have Plaintiffs certify that they were not using AmeriCorps funds to support DEI programs that violate federal anti-discrimination laws.

Plaintiffs' ambiguity arguments similarly miss the mark. Although "diversity, equity, and inclusion," may not be a defined term, the class of prohibited DEI programs is subsumed within the broader category of other programs that violate federal anti-discrimination law, a body of law with which Plaintiffs are familiar. In other words, just like any other type of program funded by federal monies, DEI programs are prohibited only if they violate federal anti-discrimination law. Plaintiffs presumably do not endeavor to violate established federal anti-discrimination law (whether under the guise of DEI or any other program), and there is thus nothing ambiguous about either the DEI Condition or the EO Condition. *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 94-96 (D.D.C. 2025) (rejecting vagueness challenges to DEI executive orders that "tells agencies to cancel equity related agreements in accordance with the law, not whenever they see fit"); *see also* Order Granting Defendants' Motion for a Stay Pending Appeal, *National Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025); *see id.* at 7 (Harris, J. concurring) (explaining that the challenged provision "appl[ies] only to conduct that

violates existing federal anti-discrimination law"); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, No. 25-1189 (4th Cir. Feb. 6, 2026) (vacating preliminary injunction and finding that "Plaintiffs suggest that defendants view all DEI programs as illegal under existing antidiscrimination law.  Perhaps, but the Certification Provision doesn't say that").

Plaintiffs also attempt to manufacture an ambiguity by asserting that they cannot comply with one portion of the executive order because it instructs the executive branch "to terminate any 'DEI . . . offices and positions' within executive agencies."  Reply at 13.  But the answer is simple—if it is a practical impossibility for a particular portion of an executive order to apply to AmeriCorps grantees (as in the example provided by Plaintiffs), then that portion has no operative effect as to those AmeriCorps grantees.  Plaintiffs cannot cherry pick inapposite and inapplicable portions of executive orders to invalidate the executive order sections that unquestionably do apply to federal grantees.  But that is the precise thrust of Plaintiffs' argument.

Finally, Plaintiffs contend that, under the guise of the spending clause, Plaintiffs—and this Court— have the authority to direct AmeriCorps how to administer its discretionary grant programs and how to allocate discretionary federal funding, even within the confines of the objectives of the enabling statutes. Reply at 14.  But Congress reserved those decisions to AmeriCorps' discretion (*see* 42 U.S.C. §§ 12501(b), 12571(a), 5011(a), 5013(a)), and there can be no spending clause violation when AmeriCorps exercises that statutory discretion.

## IV.    Defendants Did Not Violate The Administrative Procedure Act

### A.    The Instructions Were Not A Final Agency Action

At the preliminary injunction stage, the Court held that the Instructions likely were a final agency action (PI Order at 23-24), but in reaching that finding, the Court did not have the benefit of the complete administrative record.  On the full record, the short duration, multiple versions, and ultimate abandonment of the challenged certification requirements in the eGrants portal (Janicki Decl. ¶¶ 22) reinforce the text on the face of the Instructions:  AmeriCorps was "continuing" to review the administration's executive orders, it was seeking to identify grants that "may not comply with executive orders," and it created a multi-step process to facilitate that review.  AR055-64.  AmeriCorps repeatedly emphasized the preliminary nature of that review.  SAR011-26.  Yet Plaintiffs ignore this administrative record and

contend that the Instructions "marked the 'consummation' of the agency's decision-making process." Reply at 15. But the Instructions were just the first step—they did not reflect a final agency decision about what was or was not compliant.

Plaintiffs also contend that the Instructions "required Plaintiffs to act under penalty of grant termination" and that "legal consequences will flow from noncompliance with the Directive." *Id.* To be sure, if Plaintiffs had not responded to the Instructions, legal consequences might have issued. But Plaintiffs cannot reframe consequences for failure to *respond* to an interlocutory informational document as a final merits decision on whether or not Plaintiffs' grant programs complied with executive orders. The administrative record instead demonstrates that the agency's review and assessment of the executive orders was ongoing (and the challenged conditions themselves morphed over that time). SAR011-26; Janicki Decl. ¶¶ 10-11, 22. Any outcome of that multi-step inquiry is separate from the failure to respond consequences that Plaintiffs identify in their Reply.

In short, the Instructions do not constitute a reviewable final agency action under the APA.

**B.      The Grant Awards Are Committed To Agency Discretion**

Plaintiffs first argue that Section 701(a)(2) does not bar review of constitutional claims, and that the Court can review Plaintiffs' claims under the spending clause and separation of powers. Reply at 16. But Plaintiffs' spending clause and separation of powers claims fail on their own merits and thus do not provide a basis for review here. *Supra* Part III.

Next, Plaintiffs contend that APA review is available because the statutes require AmeriCorps to "allow recipients to use funds for certain purposes." Reply at 16. But there is no indication that AmeriCorps is redirecting SFUSD and/or Santa Fe's grant funding for purposes antithetical to or even inconsistent with the statutory objectives of these grant funds. *See* Janicki Decl. ¶¶ 18-19. That AmeriCorps, in its discretionary grantmaking, may not be embracing *every* alternative objective specified in those statutes does not undermine AmeriCorps' discretion to allocate appropriated funds for other purposes specified in those statutes. *See Lincoln v. Vigil*, 508 U.S. 182, 191-92 (1993) (agency grant-award decisions are presumptively unreviewable because "the very point . . . is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way"). In fact, many of Plaintiffs' statutory citations are unrelated to the

DEFENDANTS' REPLY IN SUPPORT OF CROSS-MSJ
No. 3:25-cv-02425-EMC                            10

AmeriCorps grant programs at issue in this lawsuit, and those statutory citations thus have no bearing on purported limitations on AmeriCorps' discretion.  *See* Reply at 16 (citing, *inter alia*, 42 U.S.C. § 12526(b)); *id.* at 20 (citing 42 U.S.C. § 12561(e)).  Even where Plaintiffs cite the correct statutes, the DEI Condition did not violate those statutory objectives; it instead simply required Plaintiffs to pursue those purposes within the limits of federal anti-discrimination law.  *See* Reply at 9 & 20 (citing 42 U.S.C § 4950(b)).

### C.    The Instructions Were Not Arbitrary Or Capricious[4]

Plaintiffs first argue that the Instructions were arbitrary and capricious because the only reasoned basis for the "new" conditions was that AmeriCorps is part of the Executive Branch.  Reply at 18.  But this reasoning incorporates a larger substantive basis for the agency's actions that cannot be disregarded.  As part of the Executive Branch, AmeriCorps is obligated—by regulation—to incorporate national priorities (including executive orders) in its federal grantmaking.  2 C.F.R. § 200.211(c)(1)(ii); *see also* 2 C.F.R. § 200.300.  Moreover, Executive Order 14173 itself provides the reasoned explanation here—it is the policy of the United States to:

> protect the civil rights of all Americans and to promote individual initiative, excellence, and hard work.  I therefore order all executive departments and agencies (agencies) to terminate all discriminatory and illegal preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements.  I further order all agencies to enforce our longstanding civil-rights laws and to combat illegal private-sector DEI preferences, mandates, policies, programs, and activities.

Executive Order 14173.  The Instructions were the agency's preliminary effort at effectuating that national priority, as AmeriCorps was required to do under the governing regulations.

Finally, Plaintiffs contend that the Instruction implicated Plaintiffs' reliance interests because it reversed prior policy to the extent it required AmeriCorps grantees "to immediate cease all DEI activities." Reply at 18.  But as discussed elsewhere in this brief, AmeriCorps did not require Plaintiffs to immediately cease all DEI activities; it required them to certify that their AmeriCorps-funded DEI activities do not violate federal anti-discrimination laws.  There can be no reliance interests in operating federally funded

---

[4] Plaintiffs' APA review arguments that AmeriCorps' actions were contrary to the Constitution and in excess of statutory authority (Reply at 19-20) are addressed elsewhere in this brief.  In the interest of efficiency, Defendants incorporate those arguments by reference here.

programs that violate federal anti-discrimination laws.

**V.     Conclusion**

For these reasons, and those set forth in Defendants' earlier briefs (ECF Nos. 30, 38, 49, 81), the Court should deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motion for summary judgment.

DATED: April 8, 2026                                         Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Jevechius D. Bernardoni*
JEVECHIUS D. BERNARDONI
Assistant United States Attorney

Attorneys for Defendants